**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

GEM YIELD BAHAMAS LIMITED and GEM GLOBAL YIELD LLC SCS,

       Petitioners,

             vs.

MULLEN TECHNOLOGIES, INC. and MULLEN AUTOMOTIVE, INC.,

       Respondents.

Case No. _____

**APPLICATION TO CONFIRM AND ENTER JUDGMENT ON**
**INTERIM MEASURES ARBITRATION AWARD**

Petitioners GEM Yield Bahamas Limited and GEM Global Yield LLC SCS (collectively, "GEM" or "Petitioners"), by their undersigned attorneys, respectfully apply to this Court, pursuant to the New York Convention on the Recognition and Enforcement of Foreign Arbitral Awards, which is implemented by Chapter 2 of the Federal Arbitration Act, 9 U.S.C. § 201 *et seq.*, for an Order (i) confirming under the Court's primary jurisdiction an interim measures nondomestic arbitration award issued on January 24, 2024 (the "Interim Measures Order"), attached to the Declaration of Alexander L. Cheney ("Cheney Decl.") as **Exhibit 1**, by the arbitrator in an arbitration proceeding between Petitioners and Respondents Mullen Technologies, Inc. and Mullen Automotive, Inc. (collectively, "Mullen" or "Respondents"), entitled *GEM Yield Bahamas Limited and GEM Global Yield LLC SCS v. Mullen Technologies, Inc. and Mullen Automotive, Inc.*, AAA Case No. 01-21-0016-7001 (the "Arbitration"); (ii) directing that judgment be entered upon the Interim Measures Order, and (iii) granting such

other and further relief as the Court deems just and proper. In support thereof, Petitioners allege as follows:

## INTRODUCTION

1. This is an application to confirm the nondomestic Interim Measures Order, which was rendered in the Arbitration on January 24, 2024 by Mark C. Morril (the "Arbitrator"), who was jointly selected by the parties to arbitrate their dispute. The Interim Measures Order provides: ███████████████████████

███████████████████████████████

███████████████████████████████

███████████████████████████████

███████████████████ Ex. 1 at 22.

2. The Arbitration is being conducted under the auspices of the American Arbitration Association ("AAA") and its affiliate the International Center for Dispute Resolution ("ICDR"), pursuant to a written arbitration agreement.

3. This application is brought within one year after the Interim Measures Order was rendered.

4. The Interim Measures Order is an award of temporary equitable relief, separable from the merits of the Arbitration, and is thus ripe for confirmation and entry of a judgment.

5. Accordingly, this application should be granted, and an Order should be entered (i) confirming the Interim Measures Order, (ii) directing that judgment be entered upon the Interim Measures Order, and (iii) granting such other and further relief as the Court deems just and proper.

## THE PARTIES

6.     Petitioner GEM Yield Bahamas Limited ("GYBL") is a limited company formed under the laws of the Commonwealth of the Bahamas and maintains its principal place of business at CUB Financial Centre, Unit GF5, Lyford Cay, Nassau, Commonwealth of the Bahamas.  Petitioner GEM Global Yield LLC SCS ("GGYL") is a "société en commandite simple" formed under the laws of Luxembourg whose registered office is 12C Rue Guillaume Kroll, L-1882, Luxembourg.

7.     Upon information and belief, Respondent Mullen Technologies, Inc. ("MTI") is currently a private used car sales company incorporated and headquartered in California.  Upon information and belief, Respondent Mullen Automotive, Inc. ("MAI") is a public automotive and electric vehicle manufacturer incorporated in Delaware and headquartered in Brea, California.  In November 2021, MAI completed a reverse merger transaction with Net Element, Inc. ("NETE").  The combined company, which operates under the name Mullen Automotive, Inc., began trading on the Nasdaq Stock Market with the stock ticker symbol "MULN" in November 2021.  Prior to the reverse merger, MTI was a private electric vehicle company, which contributed its electric vehicle assets to the company now known as MAI.

## JURISDICTION AND VENUE

8.     This Court has original jurisdiction over this action pursuant to 9 U.S.C. § 203, in that this is a civil action seeking confirmation of an award rendered in an arbitration falling under the New York Convention on Recognition and Enforcement of Foreign Arbitral Awards.

9.     Venue is proper in this judicial district pursuant to 9 U.S.C. § 204, because the parties agreed to arbitration in New York City.

## BACKGROUND

10.     On August 4, 2020, NETE and MTI entered into an Agreement and Plan of Merger.  At that time, MAI did not exist.  In or around the same time period, an intermediary introduced MTI's electric vehicle business to GEM.

11.     On January 4, 2021, GEM and MTI executed: (1) a Share Purchase Agreement by which GEM granted a financing facility to provide liquidity to Mullen in connection with its plans to become a public company (the "SPA"), attached to the Cheney Decl. as **Exhibit 2**; (2) a Registration Rights Agreement (the "RRA"), attached to the Cheney Decl. as **Exhibit 3**; and (3) a Warrant, attached to the Cheney Decl. as **Exhibit 4** (the "Warrant," and collectively, the "GEM Agreements").

12.     The SPA required GEM, once Mullen became a public company, to purchase Mullen's common shares from time-to-time upon Mullen's delivery of Draw Down Notices up to the number of shares valued at an agreed Aggregate Limit, which was set initially at $350 million, with provision for Mullen unilaterally to increase the Aggregate Limit to $500 million. As consideration for providing the financing facility, GEM was to receive a Commitment Fee and an option to exercise the Warrant by purchasing shares after Mullen became a publicly traded company by initial public offering ("IPO") or Reverse Merger Transaction, as defined in the SPA.  In the event of a Reverse Merger Transaction, Mullen was obligated to notify GGYL within five days that it had determined to prepare and file a Form S-4 registration statement with the U.S. Securities and Exchange Commission ("SEC") in connection with the reverse merger.  That notice would provide GGYL the right to request that Mullen include GGYL's securities, purchasable via the Warrant, in the registration statement.  The Warrant entitled GEM to purchase shares valued at 6.6 percent of Mullen's public shares on a fully-diluted basis

at a defined price. Mullen was also obligated to pay GYBL a Commitment Fee equal to 2 percent of the Aggregate Limit within one year of the First Trading Day, as defined in the GEM Agreements, after Mullen became a publicly traded company via an IPO or Reverse Merger Transaction.

13.     On May 14, 2021, NETE filed a Form S-4 Registration Statement with the SEC in connection with the proposed reverse merger with Mullen. Mullen did not provide notice to GGYL pursuant to the GEM Agreements.

14.     On June 3, 2021, Petitioners sent a letter via their counsel to Mullen's counsel to inquire about Mullen's failure to provide notice.

15.     In its Notes to Condensed Consolidated Financial Statements that were filed publicly with NETE's July 22, 2021 Schedule 14A Proxy Statement, Mullen claimed that the reverse merger with NETE was not a Reverse Merger Transaction under the Purchase Agreement because "Net Element is not a [SPAC]," and therefore, Mullen "does not believe it is obligated under the [Purchase Agreement] to pay fees nor issue warrants to [GYBL]."

16.     Throughout August 2021, Petitioner's counsel further corresponded with Mullen's counsel in an attempt to amicably resolve the dispute between the parties.

17.     On or about November 5, 2021, the combined company resulting from the merger between NETE and MAI began trading on the Nasdaq Stock Market under the name Mullen Automotive, Inc. with the stock ticker symbol "MULN." On November 9, 2021, MAI and NETE announced that its reverse merger transaction had been completed.

## THE ARBITRATION

18.     In September 2021, Petitioners commenced the Arbitration and filed their initial Arbitration Demand and Statement of Claim with the AAA and ICDR ▮▮▮▮▮▮▮▮▮▮▮▮

███████ After the November 5, 2021 reverse merger was completed, Petitioners filed an Amended Statement of Claim in January 2022, ████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████

19.     MTI filed an Answer to the initial Statement of Claim on October 21, 2021, ████████████████████████████████████████ MTI and MAI collectively filed an Answer to the Amended Statement of Claim on February 1, 2022, ████████

████████████████████████████████████████████████████████████

████████████████████████

20.     The parties consented to the appointment of Mark C. Morril as the arbitrator of their dispute, and on November 16, 2021, the ICDR issued a letter to the parties confirming that the appointment of Mark Morril had been completed.  That letter is attached to the Cheney Decl. as **Exhibit 5**.  On December 21, 2023, the Arbitrator issued Procedural Order No. 1, which confirmed that the parties had accepted the Arbitrator's appointment and waived any objection to the jurisdiction of the Arbitrator over the parties and the dispute.

21.     The jurisdiction of the Arbitrator in the Arbitration is derived from Section 9.02(b) of the SPA, which contains the arbitration agreement between the parties:

All disputes, controversies or claims between the Parties arising out of or in connection with this agreement (including its existence, validity or termination) which cannot be amicably resolved shall be finally resolved and settled under the Rules of Arbitration of the American Arbitration Association and its affiliate, the International Center for Dispute Resolution, in New York City. The arbitration tribunal shall be composed of one arbitrator. The arbitration will take place in New York City, New York, and shall be conducted in the English language. The arbitration award shall be final and binding on the Parties.

22.     Section 9.08(a) of the SPA designated New York law as the substantive law in the arbitration.  The AAA's Commercial Arbitration Rules in effect as of October 1, 2013, including the Procedures for Large, Complex Commercial Disputes, apply to the claims in the Arbitration, including Rule 52, which provides: "Parties to an arbitration under these rules shall be deemed to have consented that judgment upon the arbitration award may be entered in any federal or state court having jurisdiction thereof."  After accepting appointment of the Arbitrator and participating in the Arbitration (thus waiving any objection to his jurisdiction over this dispute), ███████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████

23.     The Parties thereafter agreed to bifurcate the proceedings, with the parties to initially address liability. Damages and indemnification were reserved for a later phase of the Arbitration (and referenced as the "Remaining Issues").  In January 2023, the parties submitted extensive written briefing on liability.  On May 18 and 23, 2023 the Arbitrator held a live hearing to hear the testimony of both sides' principal witnesses.  On June 6, 2023, the Arbitrator

heard post-hearing arguments, after which the parties confirmed that they had no further witnesses or proof to offer in the liability phase of the Arbitration.

24.    On June 13, 2023, Petitioners sought leave to make a motion seeking interim measures requiring ███████████████████████████████████████████████

███████████████ On June 30, 2023, the Arbitrator granted leave, and on August 3, 2023, the Arbitrator granted Petitioners' application, requiring █████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████

25.    On November 17, 2023, the Arbitrator issued the Partial Final Award on Liability (the "Partial Final Award"), attached to the Cheney Decl. as **Exhibit 6**, in which the Arbitrator declared, *inter alia*: ██████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████
████████████████████████████████████
████████████████████████████████████
████████████████████████████████████
████████████████████████████████████
████████████████████████████████████
████████████████████████████████████
████████████████████████████████████
████████████████████████████████████
████████████████████████████████████
███████████████████

26.     On November 21, 2023, Petitioners sought leave to file their second request for interim measures, which was granted on November 30, 2023.   On December 15, 2023, Petitioners submitted their second application for interim award of relief, requesting an order requiring ████████████████████████████
████████████████████████████████████
████████████████████████████████████
████████████████████████████████████
████████████████████████████████████
████████████████████████████████████
████████████████████████████████████
███████████████████

27.      On January 24, 2024, the Arbitrator issued the Interim Measures Order, which

████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████

28.      ████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
██████████████████████████████████

29.      ████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
██████████████████████████████

30.      ████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████

████████████████████████████████████████████

█████████████████

31.  ██████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████████

32.  ██████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████

33.    The Interim Measures Order ordered the following: █████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████



34.     On January 12 and 29, 2024, the parties submitted their opening and responsive briefs on the Remaining Issues.  The parties are currently awaiting a final award from the Arbitrator on the Remaining Issues.

### THE INTERIM MEASURES ORDER IS RIPE FOR CONFIRMATION

35.     The Interim Measures Order is ripe for confirmation.  Although a district court does not typically have the power to confirm an interlocutory ruling by an arbitrator or arbitration panel, an award of temporary equitable relief such as a security award, separable from the merits of the arbitration, is subject to confirmation.  *See CE Intern. Resources Holdings LLC v. S.A. Minerals Ltd. P'ship*, No. 12 Civ. 8087(CM), 2012 WL 6178236, at *2 (S.D.N.Y. Dec. 10, 2012) (granting petitioner's application for confirmation of interim arbitral award requiring respondents to post security in the amount of $10 million); *Yonir Techs v. Duration Sys.,* 244 F. Supp. 2d 195, 205 (S.D.N.Y. 2002) ("[T]emporary equitable awards to preserve assets are considered final arbitral awards subject to judicial review.").

36. The Interim Measures Order is a security award of temporary equitable relief to preserve assets that is separable from the merits of the Arbitration.  Accordingly, this Court should confirm the Interim Measures Order.

**COUNT I**
**Confirmation of Award and Entry of Judgment**
**(9 U.S.C. § 207)**

37. Petitioners incorporate by reference and repeat the allegations set forth in paragraphs 1 through 36 above.

38. Petitioners have a statutory right to an order confirming the Interim Measures Order in its entirety pursuant to the New York Convention on the Recognition and Enforcement of Foreign Arbitral Awards, which is implemented by Chapter 2 of the Federal Arbitration Act, 9 U.S.C. § 207.

39. This Court has jurisdiction to confirm the Interim Measures Order, which is subject to federal review.

40. The Interim Measures Order has not been and should not be vacated, modified, or corrected.

41. Petitioners have brought this application within three years of the Interim Measures Order, dated January 24, 2024.

42. A copy of a proposed Order and Judgment is attached hereto.

## RELIEF REQUESTED

WHEREFORE, Petitioners respectfully request that the Court issue an order: (i) confirming the Interim Measures Order, (ii) directing that judgment be entered upon the Interim Measures Order, and (iii) granting such other and further relief as the Court deems just and proper.


Dated: February 13, 2024

WILLKIE FARR & GALLAGHER LLP

Alexander L. Cheney
Jonathan A. Patchen (pro hac vice pending)
Jennifer Maybee (pro hac vice pending)
333 Bush Street
San Francisco, California 94104
(415) 858-7418
(415) 858-7494
(415) 858-7424
acheney@willkie.com
jpatchen@willkie.com
jmaybee@willkie.com

Madeleine Tayer
Justin Garbacz
787 Seventh Avenue
New York, New York 10019
(212) 728-8914
(212) 728-8801
mtayer@willkie.com
jgarbacz@willkie.com

*Attorneys for Petitioners*