## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| GEM YIELD BAHAMAS LIMITED and GEM GLOBAL YIELD LLC SCS,<br><br>    Petitioners,<br><br>        vs.<br><br>MULLEN TECHNOLOGIES, INC. and MULLEN AUTOMOTIVE, INC.,<br><br>    Respondents. | Case No. _____ |

### PETITIONERS' MEMORANDUM OF LAW IN SUPPORT OF APPLICATION TO CONFIRM AND ENTER JUDGMENT ON <u>INTERIM MEASURES ARBITRATION AWARD</u>

Petitioners GEM Yield Bahamas Limited and GEM Global Yield LLC SCS (collectively, "GEM" or "Petitioners") respectfully submit this Memorandum of Law in support of their Application, pursuant to the New York Convention on the Recognition and Enforcement of Foreign Arbitral Awards, which is implemented by Chapter 2 of the Federal Arbitration Act, 9 U.S.C. § 201 *et seq.*, for an Order (i) confirming, under the Court's primary jurisdiction, an interim measures nondomestic arbitration award issued on January 24, 2024 (the "Interim Measures Order") by the arbitrator in an arbitration proceeding between Petitioners and Respondents Mullen Technologies, Inc. and Mullen Automotive, Inc. (collectively, "Mullen" or "Respondents"), entitled *GEM Yield Bahamas Limited and GEM Global Yield LLC SCS v. Mullen Technologies, Inc. and Mullen Automotive, Inc.*, AAA Case No. 01-21-0016-7001 (the "Arbitration"); (ii) directing that judgment be entered upon the Interim Measures Order, and (iii) granting such other and further relief as the Court deems just and proper.

## BACKGROUND

Petitioner GEM Yield Bahamas Limited ("GYBL") is a limited company formed under the laws of the Commonwealth of the Bahamas, and Petitioner GEM Global Yield LLC SCS ("GGYL") is a "société en commandite simple" formed under the laws of Luxembourg. *See* Application ¶ 6. Petitioners are part of the GEM Group, an alternate investment group that manages a diverse set of investments focused on emerging markets across the world. *Id.* Respondent Mullen Technologies, Inc. ("MTI") is currently a private used car sales company, which used to have an electric vehicle business, and Respondent Mullen Automotive, Inc. ("MAI") is a public automotive and electric vehicle manufacturer headquartered in Brea, California. *Id.* ¶ 7.

On August 4, 2020, Net Element, Inc. ("NETE") and MTI entered into an Agreement and Plan of Merger. *Id.* ¶ 10. At that time, MAI did not exist. *Id.* In or around the same time period, an intermediary introduced MTI's electric vehicle business to GEM. *Id.* On January 4, 2021, GEM and MTI executed: (1) a Share Purchase Agreement by which GEM granted a financing facility to provide liquidity to Mullen in connection with its plans to become a public company (the "SPA"); (2) a Registration Rights Agreement (the "RRA"); and (3) a Warrant (the "Warrant," and collectively, the "GEM Agreements"). *Id.* ¶ 11. The SPA required GEM to purchase Mullen's common shares from time-to-time, after Mullen went public, upon Mullen's delivery of Draw Down Notices up to the number of shares valued at an agreed Aggregate Limit, which was set initially at $350 million, with provision for Mullen unilaterally to increase the Aggregate Limit to $500 million. *Id.* ¶ 12. As consideration for providing the financing facility, GEM was to receive a Commitment Fee and an option to exercise the Warrant by purchasing shares if Mullen became a publicly traded company by initial public

- 2 -

offering ("IPO") or Reverse Merger Transaction, as defined in the SPA. *Id*. Section 9.02(b) of the SPA contains the following arbitration agreement between the parties:

> All disputes, controversies or claims between the Parties arising out of or in connection with this agreement (including its existence, validity or termination) which cannot be amicably resolved shall be finally resolved and settled under the Rules of Arbitration of the American Arbitration Association and its affiliate, the International Center for Dispute Resolution, in New York City. The arbitration tribunal shall be composed of one arbitrator. The arbitration will take place in New York City, New York, and shall be conducted in the English language. The arbitration award shall be final and binding on the Parties.

*Id.* ¶ 21. Section 9.08(a) of the SPA designated New York law as the substantive law in the arbitration. *Id.* at ¶ 22.

In November 2021, MAI completed a reverse merger transaction with NETE. *Id.* ¶ 7. The combined company, which operates under the name Mullen Automotive, Inc., began trading on the Nasdaq Stock Market with the stock ticker symbol "MULN" in November 2021. *Id.* Prior to the reverse merger, Mullen Technologies, Inc. was a private electric vehicle company, which contributed its electric vehicle assets to the company now known as Mullen Automotive, Inc. *Id.*

A dispute arose between Petitioners and MTI after NETE filed a Form S-4 Registration Statement with the SEC in connection with the proposed reverse merger with Mullen on May 14, 2021, and among other things, Mullen did not provide notice to GGYL pursuant to the GEM Agreements. *See id.* at ¶ 13. On June 3, 2021, Petitioners sent a letter via their counsel to Mullen's counsel to inquire about Mullen's failure to provide notice. *Id.* at ¶ 14. In its Notes to Condensed Consolidated Financial Statements that were filed publicly with Net Element's July 22, 2021 Schedule 14A Proxy Statement, Mullen claimed that the reverse merger with Net Element was not a Reverse Merger Transaction under the Purchase Agreement because "Net

- 3 -

Element is not a [SPAC]," and therefore, Mullen "does not believe it is obligated under the [Purchase Agreement] to pay fees nor issue warrants to [GYBL]." *Id.* at ¶ 15.

In September 2021, Petitioners commenced the Arbitration, and filed an Amended Statement of Claim in January 2022, which ████████████████████████████

████████████████████████████

████████████████████████████

████████████████████████████

████████████████████████████

████████████████████████████ *Id.* at ¶ 18.

The AAA's Commercial Arbitration Rules in effect as of October 1, 2013, including the Procedures for Large, Complex Commercial Disputes, apply to the claims in the Arbitration, including Rule 52, which provides: "Parties to an arbitration under these rules shall be deemed to have consented that judgment upon the arbitration award may be entered in any federal or state court having jurisdiction thereof." *Id.*

The parties agreed to bifurcate proceedings: Liability was to be resolved first and Damages and indemnification were reserved for a later phase of the Arbitration. *Id.* at ¶ 23.

After the post-hearing arguments on liability, Petitioners sought interim security measures, which were granted. *Id.* at ¶ 24. On November 17, 2023, the Arbitrator issued the Partial Final Award on Liability. *Id.* at ¶ 25. On November 21, 2023, Petitioners sought leave to file their second request for interim measures, which was granted on November 30, 2023. *Id.* at ¶ 26. Thereafter, on December 15, 2023, Petitioners submitted their second application for

interim award of relief, which was granted on January 24, 2024 when the Arbitrator issued the Interim Measures Order. *Id.* at ¶ 26.

The relevant facts regarding the Arbitration and the Interim Measures Order are set forth in the Application. Petitioners now seek to confirm the Interim Measures Order pursuant to the New York Convention on the Recognition and Enforcement of Foreign Arbitral Awards, which is implemented by Chapter 2 of the Federal Arbitration Act, 9 U.S.C. § 207.

## ARGUMENT

Under 9 U.S.C. § 207, which applies to this Arbitration, "[w]ithin three years after an arbitral award falling under the Convention is made, any party to the arbitration may apply to any court having jurisdiction under this chapter for an order confirming the award as against any other party to the arbitration. The court shall confirm the award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the said Convention."

Although a district court does not typically have the power to confirm an interlocutory ruling by an arbitrator or arbitration panel, the styling of an award as "interim" does not insulate it from review if it finally determines a severable issue in the case. *See CE Intern. Resources Holdings LLC v. S.A. Minerals Ltd. P'ship*, No. 12 Civ. 8087(CM), 2012 WL 6178236, at *2 (S.D.N.Y. Dec. 10, 2012). An award of temporary equitable relief such as a security award, is separable from the merits of the arbitration, is therefore subject to immediate confirmation. *See CE Intern. Resources Holdings LLC*, 2012 WL 6178236, at *2 (granting petitioner's application for confirmation of interim arbitral award requiring respondents to post security in the amount of $10 million); *Yonir Techs v. Duration Sys.,* 244 F. Supp. 2d 195, 205 (S.D.N.Y. 2002)

("[T]emporary equitable awards to preserve assets are considered final arbitral awards subject to judicial review.").

The Interim Measures Order is ripe for confirmation and should be confirmed. The Interim Measures Order is a security award of temporary equitable relief to preserve assets that is separable from the merits of the Arbitration. Additionally, all statutory requirements for confirmation have been met. The GEM Agreements contain an arbitration provision that requires binding arbitration under the Rules of Arbitration of the American Arbitration Association ("AAA") and its affiliate, the International Center for Dispute Resolution. Under AAA Rule 52, which applies to this Arbitration, the parties here are deemed to have consented that judgment upon an arbitration award may be entered in any federal or state court having jurisdiction thereof. The Application has been brought within three years after the Interim Measures Order was entered in this Court, which has jurisdiction, the Interim Measures Order has not been vacated, modified, or corrected, and there are no grounds for refusal or deferral of recognition or enforcement of the Interim Measures Order. As such, the Application should be granted, the Interim Measures Order confirmed, and judgment entered thereon. *See* 9 U.S.C. § 207.

## CONCLUSION

For the reasons set forth above and in the Application, Petitioners respectfully request that this Court issue an order: (i) confirming the Interim Measures Order, (ii) directing that judgment be entered upon the Interim Measures Order, and (iii) granting such other and further relief as the Court deems just and proper.

Dated: February 13, 2024

WILLKIE FARR & GALLAGHER LLP

*/s/ Alexander L. Cheney*

Alexander L. Cheney
Jonathan A. Patchen (pro hac vice pending)
Jennifer Maybee (pro hac vice pending)
333 Bush Street
San Francisco, California 94104
(415) 858-7418
(415) 858-7494
(415) 858-7424
acheney@willkie.com
jpatchen@willkie.com
jmaybee@willkie.com

Madeleine Tayer
Justin Garbacz
787 Seventh Avenue
New York, New York 10019
(212) 728-8914
(212) 728-8801
mtayer@willkie.com
jgarbacz@willkie.com

*Attorneys for Petitioners*