**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

GEM YIELD BAHAMAS LIMITED and GEM
GLOBAL YIELD LLC SCS,

      Petitioners,

               vs.

MULLEN TECHNOLOGIES, INC. and MULLEN
AUTOMOTIVE, INC.,

      Respondents.

Case No. 1:24-cv-01120-KPF

---

## APPLICATION TO CONFIRM AND ENTER JUDGMENT ON
## <u>PARTIAL FINAL AWARD</u>

Petitioners GEM Yield Bahamas Limited and GEM Global Yield LLC SCS
(collectively, "GEM" or "Petitioners"), by their undersigned attorneys, respectfully apply to this
Court, pursuant to 9 U.S.C. §§ 9 and 207, for an Order (i) confirming under the Court's primary
jurisdiction a partial final nondomestic arbitration award issued on November 17, 2023 (the
"Partial Final Award"), attached to the previously filed Declaration of Alexander L. Cheney
(ECF 5) as **<u>Exhibit 6</u>**, by the arbitrator in an arbitration proceeding between Petitioners and
Respondents Mullen Technologies, Inc. and Mullen Automotive, Inc. (collectively, "Mullen" or
"Respondents" and together with the Petitioners, the "Parties"), entitled *GEM Yield Bahamas*
*Limited and GEM Global Yield LLC SCS v. Mullen Technologies, Inc. and Mullen Automotive,*
*Inc.*, AAA Case No. 01-21-0016-7001 (the "Arbitration"); (ii) directing that judgment be
entered upon the Partial Final Award, and (iii) granting such other and further relief as the
Court deems just and proper.  This application is made separate from and in addition to

Petitioners' initial Application to confirm and enter judgment on the Interim Measures Arbitration Award (ECF 1).  In support of this application, Petitioners allege as follows:

<b>INTRODUCTION</b>

1.      This is an application to confirm the nondomestic Partial Final Award, which was rendered in the Arbitration on November 17, 2023 by Mark C. Morril (the "Arbitrator"), who was jointly selected by the Parties to arbitrate their dispute.  The Partial Final Award was issued as a final award on the question of Respondents' liability, following an agreement between the Parties to bifurcate the Arbitration into a liability and damages phase.  ECF 5, Ex. 6 ¶¶ 47, 182; *see also* Declaration of Jonathan Patchen at **Exhibit 1** and **Exhibit 2**.  The Partial Final Award provides, among other things, that ██████████████████████████████ ███████████████████████████ ECF 5, Ex. 6  ¶¶ 185-189.  The Partial Final Award further provides that it is a ██████████████████████████████████ ███████████████ *Id.* ¶ 190.

2.      The Arbitration is being conducted under the auspices of the American Arbitration Association ("AAA") and its affiliate the International Center for Dispute Resolution ("ICDR"), pursuant to a written arbitration agreement.

3.      This application is brought within one year after the Partial Final Award was rendered.

4.      The Partial Final Award is a final award on liability in an Arbitration that the Parties agreed would be bifurcated, and is thus ripe for confirmation and entry of a judgment.

5.      Accordingly, this application should be granted, and an Order should be entered (i) confirming the Partial Final Award, (ii) directing that judgment be entered upon the Partial Final Award, and (iii) granting such other and further relief as the Court deems just and proper.

**THE PARTIES**

6.      Petitioner GEM Yield Bahamas Limited ("GYBL") is a limited company formed under the laws of the Commonwealth of the Bahamas and maintains its principal place of business at CUB Financial Centre, Unit GF5, Lyford Cay, Nassau, Commonwealth of the Bahamas.  Petitioner GEM Global Yield LLC SCS ("GGYL") is a "société en commandite simple" formed under the laws of Luxembourg whose registered office is 12C Rue Guillaume Kroll, L-1882, Luxembourg.

7.      Upon information and belief, Respondent Mullen Technologies, Inc. ("MTI") is currently a private used car sales company incorporated and headquartered in California.  Upon information and belief, Respondent Mullen Automotive, Inc. ("MAI") is a public automotive and electric vehicle manufacturer incorporated in Delaware and headquartered in Brea, California.  In November 2021, MAI completed a reverse merger transaction with Net Element, Inc. ("NETE").  The combined company, which operates under the name Mullen Automotive, Inc., began trading on the Nasdaq Stock Market with the stock ticker symbol "MULN" in November 2021.  Prior to the reverse merger, MTI was a private electric vehicle company, which contributed its electric vehicle assets to the company now known as MAI.

**JURISDICTION AND VENUE**

8.      This Court has original jurisdiction over this action pursuant to 9 U.S.C. § 203, in that this is a civil action seeking confirmation of an award rendered in an arbitration falling under the New York Convention on Recognition and Enforcement of Foreign Arbitral Awards.

9.      Venue is proper in this judicial district pursuant to 9 U.S.C. § 204, because the Parties agreed to arbitration in New York City.

## BACKGROUND

10.     On August 4, 2020, NETE and MTI entered into an Agreement and Plan of Merger.  At that time, MAI did not exist.  In or around the same time period, an intermediary introduced MTI's electric vehicle business to GEM.

11.     On January 4, 2021, GEM and MTI executed: (1) a Share Purchase Agreement by which GEM granted a financing facility to provide liquidity to Mullen in connection with its plans to become a public company (the "SPA") (ECF 5, Ex. 2); (2) a Registration Rights Agreement (the "RRA"), (ECF 5, Ex. 3); and (3) a Warrant (ECF 5, Ex. 4) (the "Warrant," and collectively, the "GEM Agreements").

12.     The SPA required GEM, once Mullen became a public company, to purchase Mullen's common shares from time-to-time upon Mullen's delivery of Draw Down Notices up to the number of shares valued at an agreed Aggregate Limit, which was set initially at $350 million, with provision for Mullen unilaterally to increase the Aggregate Limit to $500 million.  As consideration for providing the financing facility, GEM was to receive a Commitment Fee and an option to exercise the Warrant by purchasing shares after Mullen became a publicly traded company by initial public offering ("IPO") or Reverse Merger Transaction, as defined in the SPA.  In the event of a Reverse Merger Transaction, Mullen was obligated to notify GGYL within five days that it had determined to prepare and file a Form S-4 registration statement with the U.S. Securities and Exchange Commission ("SEC") in connection with the reverse merger.  That notice would provide GGYL the right to request that Mullen include GGYL's securities, purchasable via the Warrant, in the registration statement.  The Warrant entitled GEM to purchase shares valued at 6.6 percent of Mullen's public shares on a fully-diluted basis at a defined price.  Mullen was also obligated to pay GYBL a Commitment Fee equal to 2

percent of the Aggregate Limit within one year of the First Trading Day, as defined in the GEM Agreements, after Mullen became a publicly traded company via an IPO or Reverse Merger Transaction.

13.     On May 14, 2021, NETE filed a Form S-4 Registration Statement with the SEC in connection with the proposed reverse merger with Mullen.  Mullen did not provide notice to GGYL pursuant to the GEM Agreements.

14.     On June 3, 2021, Petitioners sent a letter via their counsel to Mullen's counsel to inquire about Mullen's failure to provide notice.

15.     In its Notes to Condensed Consolidated Financial Statements that were filed publicly with NETE's July 22, 2021 Schedule 14A Proxy Statement, Mullen claimed that the reverse merger with NETE was not a Reverse Merger Transaction under the Purchase Agreement because "Net Element is not a [SPAC]," and therefore, Mullen "does not believe it is obligated under the [Purchase Agreement] to pay fees nor issue warrants to [GYBL]."

16.     Throughout August 2021, Petitioner's counsel further corresponded with Mullen's counsel in an attempt to amicably resolve the dispute between the Parties.

17.     On or about November 5, 2021, the combined company resulting from the merger between NETE and MAI began trading on the Nasdaq Stock Market under the name Mullen Automotive, Inc. with the stock ticker symbol "MULN."  On November 9, 2021, MAI and NETE announced that its reverse merger transaction had been completed.

## THE ARBITRATION

18.     In September 2021, Petitioners commenced the Arbitration and filed their initial Arbitration Demand and Statement of Claim with the AAA and ICDR, ████████████████ ████████    After the November 5, 2021 reverse merger was completed, Petitioners filed an

Amended Statement of Claim in January 2022, ████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████

19.     MTI filed an Answer to the initial Statement of Claim on October 21, 2021,

████████████████████████████████████ MTI and MAI collectively

filed an Answer to the Amended Statement of Claim on February 1, 2022, ████████████

████████████████████████████████████████████████████

███████████████████

20.     The Parties consented to the appointment of Mark C. Morril as the arbitrator of their dispute, and on November 17, 2021, the ICDR issued a letter to the Parties confirming that the appointment of Mark Morril had been completed.  ECF 5, Ex. 5.  On December 21, 2023, the Arbitrator issued Procedural Order No. 1, which confirmed that the Parties had accepted the Arbitrator's appointment and waived any objection to the jurisdiction of the Arbitrator over the Parties and the dispute.

21.     The jurisdiction of the Arbitrator in the Arbitration is derived from Section 9.02(b) of the SPA, which contains the arbitration agreement between the Parties:

> All disputes, controversies or claims between the Parties arising out of or in connection with this agreement (including its existence, validity or termination) which cannot be amicably resolved shall be finally resolved and settled under the Rules of Arbitration of the American Arbitration Association

and its affiliate, the International Center for Dispute Resolution, in New York City. The arbitration tribunal shall be composed of one arbitrator. The arbitration will take place in New York City, New York, and shall be conducted in the English language. The arbitration award shall be final and binding on the Parties.

22.     Section 9.08(a) of the SPA designated New York law as the substantive law in the arbitration.  The AAA's Commercial Arbitration Rules in effect as of October 1, 2013, including the Procedures for Large, Complex Commercial Disputes, apply to the claims in the Arbitration, including Rule 52, which provides: "Parties to an arbitration under these rules shall be deemed to have consented that judgment upon the arbitration award may be entered in any federal or state court having jurisdiction thereof."   After accepting appointment of the Arbitrator and participating in the Arbitration (thus waiving any objection to his jurisdiction over this dispute), ████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

██████████████

23.     The Parties thereafter agreed to bifurcate the proceedings, with the Parties to initially address liability. ECF 5, Ex. 6 at ¶¶ 47, 182; *see also* Patchen Decl., Exs. 1, 2. Damages and indemnification were reserved for a later phase of the Arbitration.  ECF 5, Ex. 6 at ¶¶ 47, 182; *see also* Patchen Decl., Exs. 1, 2.   In January 2023, the Parties submitted extensive written briefing on liability.  *Id*. ¶ 47.  On May 18 and 23, 2023 the Arbitrator held a live hearing to hear the testimony of both sides' principal witnesses.  *Id*. ¶¶ 47-48.  On June 6,

2023, the Arbitrator heard post-hearing arguments, after which the Parties confirmed that they had no further witnesses or proof to offer in the liability phase of the Arbitration.  *Id.* ¶ 50.

24.     On November 17, 2023, the Arbitrator issued the Partial Final Award on Liability (the "Partial Final Award") (ECF 5, Ex. 6) in which the Arbitrator declared, *inter alia*:

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

25.     On January 12 and 29, 2024, the Parties submitted their opening and responsive briefs on the Remaining Issues.  The Parties are currently awaiting a final award from the Arbitrator on the Remaining Issues.

**THE PARTIAL FINAL AWARD IS RIPE FOR CONFIRMATION**

26.     The Partial Final Award is ripe for confirmation.  Courts routinely confirm final awards as to liability, where both parties have agreed to bifurcate liability and damages. Specifically, "if the parties agree that the [arbitration] panel is to make a final decision as to part of the dispute, the arbitrators have the authority and responsibility to do so." *Trade & Transp., Inc. v. Natural Petroleum Charterers Inc.*, 931 F.2d 191, 195 (2d Cir. 1991); *Glob. Gold Min. LLC v. Caldera Resources, Inc.*, 941 F. Supp. 2d 374, 382 (S.D.N.Y. 2013) (same).   Thus, courts have repeatedly held that a partial award as to liability is final and confirmable "where the parties expressly agree to bifurcate liability and damages." *Glob. Gold Min. LLC,* 941 F. Supp. 2d at 382; *Mitsubishi Heavy Indus., Ltd. v. Stone & Webster, Inc.,* No. 08–CV–509, 2009 WL 3169973, at *5 (S.D.N.Y. Sept. 29, 2009); *see also Andrea Doreen, Ltd. v. Bldg. Material Local Union 282,* 250 F.Supp.2d 107, 112 (E.D.N.Y.2003) (same).

27.     The award here is clearly of the type that is confirmable by this Court.  Both Parties agreed in a written stipulation that the Arbitration would be bifurcated into a liability and damages phase, with both phases to result in their own final award.  ECF 5, Ex. 6 ¶¶ 47, 182; Patchen Decl. Ex. 1, 2.  And in issuing the Partial Final Award, the Arbitrator expressly determined that ███████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████████ ███████████████████████████████████████ *Id*. ¶ 190.  Accordingly, this Court can and should confirm the Partial Final Award.

28.     Moreover, Mullen cannot object to confirmation.  Mullen has waived any basis to seek to vacate, modify, or correct the Partial Final Award.  In particular, a party to an arbitration that wishes to vacate, modify or correct an award must serve notice of a motion to do so "within three months after the award is filed or delivered."  9 U.S.C. § 12.  Failure to timely

serve such notice precludes a party from raising any argument regarding the award in response to a petition to confirm. *Florasynth, Inc. v. Pickholz*, 750 F.2d 171, 175 (2d Cir. 1984). And when parties have agreed to bifurcate proceedings in arbitration, the award in the first phase of the proceeding is considered final, starting the three-month clock under Section 12. Here, the Partial Final Award was issued on November 17, 2023. More than three months have passed from that date and Mullen cannot now raise any basis to vacate, modify or correct the Partial Final Award. This Court "must grant" GEM's confirmation petition. 9 U.S.C. § 9.

### COUNT I
### Confirmation of Award and Entry of Judgment
### (9 U.S.C. § 207)

29.     Petitioners incorporate by reference and repeat the allegations set forth in paragraphs 1 through 27 above.

30.     Petitioners have a statutory right to an order confirming the Partial Final Award in its entirety pursuant to the Sections 9 and 207 of the Federal Arbitration Act (9 U.S.C. §§ 9, 207).

31.     This Court has jurisdiction to confirm the Partial Final Award.

32.     The Partial Final Award has not been vacated, modified, or corrected and Mullen's time to seek vacation, modification or correction has lapsed.

33.     Petitioners have brought this application within one year of the Partial Final Award, dated November 17, 2023.

34.     A copy of a proposed Order and Judgment is attached hereto.

**RELIEF REQUESTED**

WHEREFORE, Petitioners respectfully request that the Court issue an order: (i) confirming the Partial Final Award, (ii) directing that judgment be entered upon the Partial Final Award, and (iii) granting such other and further relief as the Court deems just and proper.

Dated:  February 23, 2024                          **WILLKIE FARR & GALLAGHER LLP**

       San Francisco, California

/s/ Jonathan A. Patchen
Jonathan A. Patchen
Jennifer S. Maybee
333 Bush Street
San Francisco, California 94104
(415) 858-7594
jpatchen@willkie.com
jmaybee@willkie.com

Madeleine Tayer
Justin Garbacz
787 Seventh Avenue
New York, New York 10019
(212) 728-8914
mtayer@willkie.com
jgarbacz@willkie.com

*Attorneys for Claimants*

## CERTIFICATE OF SERVICE

I hereby certify that on February 23, 2024, I caused the foregoing Application to Confirm and Enter Judgment on Partial Final Award and accompanying Proposed Order and Judgement to be served on the following counsel for Respondents via email.  The following counsel have confirmed that they represent Respondents in this action and provided written consent to electronic service via email.

David K. Momborquette
MCDERMOTT WILL & EMERY LLP
One Vanderbilt Avenue
New York, New York 10017
(212) 547-5400
dmomborquette@mwe.com

William L. Miltner
MILTNER & MENCK, APC
402 West Broadway, Suite 960
San Diego, California 92101
(619) 615-5333
Bill@miltnerlaw.com


                                                    /s/ Jonathan A. Patchen

                                                    Jonathan A. Patchen