UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| GEM YIELD BAHAMAS LIMITED and GEM GLOBAL YIELD LLC SCS,<br><br>    Petitioners,<br><br>    vs.<br><br>MULLEN TECHNOLOGIES, INC. and MULLEN AUTOMOTIVE, INC.,<br><br>    Respondents. | Case No. 1:24-cv-01120-KPF |

**PETITIONERS' MEMORANDUM OF LAW IN SUPPORT OF APPLICATION TO CONFIRM AND ENTER JUDGMENT ON PARTIAL FINAL AWARD[1]**

Petitioners GEM Yield Bahamas Limited and GEM Global Yield LLC SCS (collectively, "GEM" or "Petitioners") respectfully submit this Memorandum of Law in support of their Application, pursuant to Section 9 and 207 of the Federal Arbitration Act (9 U.S.C. §§ 9, 207), for an Order (i) confirming, under the Court's primary jurisdiction, a partial final nondomestic arbitration award issued on November 17, 2023 (the "Partial Final Award") by the arbitrator in an arbitration proceeding between Petitioners and Respondents Mullen Technologies, Inc. and Mullen Automotive, Inc. (collectively, "Mullen" or "Respondents"), entitled *GEM Yield Bahamas Limited and GEM Global Yield LLC SCS v. Mullen Technologies, Inc. and Mullen Automotive, Inc.*, AAA Case No. 01-21-0016-7001 (the "Arbitration"); (ii)

---

[1]   Petitioners' instant application to confirm the Partial Final Award is made in addition to Petitioners' February 16, 2024 Application to confirm the Interim Measurers Arbitration Award (ECF 1). Petitioners submitted a separate memorandum of law in support of their initial Application to confirm the Interim Measurers Arbitration Award.  ECF 6.  Herein, Petitioners refer to the instant application to confirm the Partial Final Award as the "PFA Application."

directing that judgment be entered upon the Partial Final Award, and (iii) granting such other and further relief as the Court deems just and proper.

## BACKGROUND

Petitioner GEM Yield Bahamas Limited ("GYBL") is a limited company formed under the laws of the Commonwealth of the Bahamas, and Petitioner GEM Global Yield LLC SCS ("GGYL") is a "société en commandite simple" formed under the laws of Luxembourg. *See* Application to Confirm Partial Final Award (the "PFA Application") ¶ 6. Petitioners are part of the GEM Group, an alternate investment group that manages a diverse set of investments focused on emerging markets across the world. *Id.* Respondent Mullen Technologies, Inc. ("MTI") is currently a private used car sales company, which used to have an electric vehicle business, and Respondent Mullen Automotive, Inc. ("MAI") is a public automotive and electric vehicle manufacturer headquartered in Brea, California. *Id.* ¶ 7.

On August 4, 2020, Net Element, Inc. ("NETE") and MTI entered into an Agreement and Plan of Merger. *Id.* ¶ 10. At that time, MAI did not exist. *Id.* In or around the same time period, an intermediary introduced MTI's electric vehicle business to GEM. *Id.* On January 4, 2021, GEM and MTI executed: (1) a Share Purchase Agreement by which GEM granted a financing facility to provide liquidity to Mullen in connection with its plans to become a public company (the "SPA"); (2) a Registration Rights Agreement (the "RRA"); and (3) a Warrant (the "Warrant," and collectively, the "GEM Agreements"). *Id.* ¶ 11. The SPA required GEM to purchase Mullen's common shares from time-to-time, after Mullen went public, upon Mullen's delivery of Draw Down Notices up to the number of shares valued at an agreed Aggregate Limit, which was set initially at $350 million, with provision for Mullen unilaterally to increase the Aggregate Limit to $500 million. *Id.* ¶ 12. As consideration for providing the

financing facility, GEM was to receive a Commitment Fee and an option to exercise the Warrant by purchasing shares if Mullen became a publicly traded company by initial public offering ("IPO") or Reverse Merger Transaction, as defined in the SPA. *Id.* Section 9.02(b) of the SPA contains the following arbitration agreement between the Parties:

> All disputes, controversies or claims between the Parties arising out of or in connection with this agreement (including its existence, validity or termination) which cannot be amicably resolved shall be finally resolved and settled under the Rules of Arbitration of the American Arbitration Association and its affiliate, the International Center for Dispute Resolution, in New York City. The arbitration tribunal shall be composed of one arbitrator. The arbitration will take place in New York City, New York, and shall be conducted in the English language. The arbitration award shall be final and binding on the Parties.

*Id.* ¶ 21. Section 9.08(a) of the SPA designated New York law as the substantive law in the arbitration. *Id.* at ¶ 22.

In November 2021, MAI completed a reverse merger transaction with NETE. *Id.* ¶ 7. The combined company, which operates under the name Mullen Automotive, Inc., began trading on the Nasdaq Stock Market with the stock ticker symbol "MULN" in November 2021. *Id.* Prior to the reverse merger, Mullen Technologies, Inc. was a private electric vehicle company, which contributed its electric vehicle assets to the company now known as Mullen Automotive, Inc. *Id.*

A dispute arose between Petitioners and MTI after NETE filed a Form S-4 Registration Statement with the SEC in connection with the proposed reverse merger with Mullen on May 14, 2021, and among other things, Mullen did not provide notice to GGYL pursuant to the GEM Agreements. *See id.* at ¶ 13. On June 3, 2021, Petitioners sent a letter via their counsel to Mullen's counsel to inquire about Mullen's failure to provide notice. *Id.* at ¶ 14. In its Notes to Condensed Consolidated Financial Statements that were filed publicly with Net Element's July 22, 2021 Schedule 14A Proxy Statement, Mullen claimed that the reverse merger with Net

Element was not a Reverse Merger Transaction under the Purchase Agreement because "Net Element is not a [SPAC]," and therefore, Mullen "does not believe it is obligated under the [Purchase Agreement] to pay fees nor issue warrants to [GYBL]." *Id.* at ¶ 15.

In September 2021, Petitioners commenced the Arbitration, and filed an Amended Statement of Claim in January 2022, which ██████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████ *Id.* at ¶ 18.

The AAA's Commercial Arbitration Rules in effect as of October 1, 2013, including the Procedures for Large, Complex Commercial Disputes, apply to the claims in the Arbitration, including Rule 52, which provides: "Parties to an arbitration under these rules shall be deemed to have consented that judgment upon the arbitration award may be entered in any federal or state court having jurisdiction thereof." *Id.*

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

The relevant facts regarding the Arbitration and the Partial Final Award are set forth in the PFA Application. Petitioners now seek to confirm, under this Court's primary jurisdiction, the Partial Final Award pursuant to Sections 9 and 207 of the Federal Arbitration Act.[2]

## ARGUMENT

---

[2] The PFA is a nondomestic award and Petitioners are seeking its confirmation under this Court's primary jurisdiction. *CBF Industria de Gusa S/A v. AMCI Holdings, Inc.*, 850 F.3d 58, 75 (2d Cir. 2017).

Under 9 U.S.C. § 9, a court "must grant" confirmation of an arbitration award unless the award is vacated, modified, or corrected as prescribed by the FAA. Similarly, under 9 U.S.C. § 207 "[w]ithin three years after an arbitral award falling under the Convention is made, any party to the arbitration may apply to any court having jurisdiction under this chapter for an order confirming the award as against any other party to the arbitration. The court shall confirm the award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the said Convention." Because no basis exists to deny confirmation of the Partial Final Award, respectfully, this Court should summarily confirm it.

"'Confirmation of an arbitration award'" pursuant to the FAA "is 'a summary proceeding that merely makes what is already a final arbitration award a judgment of the court.'" *New York City District Council of Carpenters v. Nguyen Custom Woodworking LLC*, No. 18-cv-3970, 2018 WL 5919520, at *1 (S.D.N.Y. Nov. 13, 2018) quoting *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 110 (2d Cir. 2006). Arbitration awards are "'subject to very limited review in order to avoid undermining the twin goals of arbitration, namely, settling disputes efficiently and avoiding long expensive litigation.'" *Fellus v. Sterne, Agee & Leach, Inc.*, 783 F. Supp. 2d 612, 618 (S.D.N.Y. 2011) quoting *Rich v. Spartis*, 516 F.3d 75, 81 (2d Cir. 2008). Section 9 of the FAA makes clear that a court "must grant" a motion to confirm "unless the award is vacated, modified, or corrected." 9 U.S.C. § 9 (emphasis added). And when, as here, the time for a party to seek to vacate, modify or correct an arbitration award has run, the district court is required to confirm the award. *Florasynth, Inc. v. Pickholz*, 750 F.2d 171, 177 (2d Cir. 1984) ("When the three month limitations period has run without vacation of the arbitration award, the successful party has a right to assume the award is valid and untainted, and to obtain its confirmation in a summary proceeding.")

Courts routinely confirm partial final awards as to liability, where both parties have agreed to bifurcate liability and damages. Specifically, "if the parties agree that the [arbitration] panel is to make a final decision as to part of the dispute, the arbitrators have the authority and responsibility to do so." *Trade & Transp., Inc. v. Natural Petroleum Charterers Inc.*, 931 F.2d 191, 195 (2d Cir. 1991); *Glob. Gold Min. LLC v. Caldera Resources, Inc.*, 941 F. Supp. 2d 374, 382 (S.D.N.Y. 2013) (same). Thus, courts have repeatedly held that a partial award as to liability is final and confirmable "where the parties expressly agree to bifurcate liability and damages." *Glob. Gold Min. LLC*, 941 F. Supp. 2d at 382; *Mitsubishi Heavy Indus., Ltd. v. Stone & Webster, Inc.*, No. 08–CV–509, 2009 WL 3169973, at *5 (S.D.N.Y. Sept. 29, 2009); *see also Andrea Doreen, Ltd. v. Bldg. Material Local Union* 282, 250 F.Supp.2d 107, 112 (E.D.N.Y.2003) ("[T]he parties agreed during an arbitration hearing to bifurcate liability from remedy. . .[t]herefore, the Arbitrator's decision as to liability can be deemed "final" and confirmed by this Court.")

Here, both Parties agreed in a written stipulation, which the Arbitrator accepted, that the Arbitration would be bifurcated into a liability and damages phase, both of which would result in their own final award. ECF 5, Ex. 6 ¶¶ 47, 182; Patchen Declaration Ex. 1 & 2. And in issuing the Partial Final Award, the Arbitrator expressly determined that ███████████████████████████████████████████████████████████████████████████████████████████████████████████ ECF 5, Ex. 6 ¶ 190. Accordingly, this Court can and should confirm the Partial Final Award.

All statutory requirements for confirmation have been met. The GEM Agreements contain an arbitration provision that requires binding arbitration under the Rules of Arbitration

of the American Arbitration Association ("AAA") and its affiliate, the International Center for Dispute Resolution. Under AAA Rule 52, which applies to this Arbitration, the Parties here are deemed to have consented that judgment upon an arbitration award may be entered in any federal or state court having jurisdiction thereof. The PFA Application has been brought within one year after the Partial Final Award was entered in this Court, which has jurisdiction, the Partial Final Award has not been vacated, modified, or corrected, and there are no grounds for refusal or deferral of recognition or enforcement of the Partial Final Award. The Partial Final Award provides this Court "[w]ith substantially more than just a barely colorable justification for the outcome reached," *Matthew v. Papua New Guinea*, 398 Fed. App'x 646, 649 (2d Cir. 2010); indeed, it contains a detailed and thorough assessment of each Parties' arguments regarding Respondents' liability.

Moreover, Mullen cannot object to confirmation because Mullen has waived any basis to seek to vacate, modify, or correct the Partial Final Award. A party to an arbitration that wishes to vacate, modify or correct an award must serve notice of a motion to do so "within three months after the award is filed or delivered." 9 U.S.C. § 12. Failure to timely serve such notice precludes a party from raising any argument regarding the award in response to a petition to confirm. *Florasynth, Inc. v. Pickholz*, 750 F.2d 171, 175 (2d Cir. 1984). And when parties have agreed to bifurcate proceedings in arbitration, the award in the first phase of the proceeding is considered final, starting the three-month clock under Section 12. *See Ribadeneira v. New Balance Athletics, Inc.,* 65 F. 4th 1, 14 (1st Cir. 2023) (explaining "the three-month clock" would start on a partial award if there were agreement to bifurcate); *Northwest Marine Iron Works v. B.S.L. Cruises, Inc.*, No. 92-Civ-5684, 1992 WL 349841 (S.D.N.Y. Nov. 10, 1992) (applying rule to Partial Final Award). Here, the Partial Final Award

was issued on November 17, 2023. More than three months have passed from that date and Mullen cannot now raise any basis to vacate, modify or correct the Partial Final Award. This Court "must grant" GEM's confirmation petition. 9 U.S.C. §§ 9, 12, 207.

## CONCLUSION

For the reasons set forth above and in the PFA Application, Petitioners respectfully request that this Court issue an order: (i) confirming the Partial Final Award, (ii) directing that judgment be entered upon the Partial Final Award, and (iii) granting such other and further relief as the Court deems just and proper.

Dated:  February 23, 2024                    **WILLKIE FARR & GALLAGHER LLP**

San Francisco, California

/s/ Jonathan A. Patchen
Jonathan A. Patchen
Jennifer S. Maybee
333 Bush Street
San Francisco, California 94104
(415) 858-7594
jpatchen@willkie.com
jmaybee@willkie.com

Madeleine Tayer
Justin Garbacz
787 Seventh Avenue
New York, New York 10019
(212) 728-8914
mtayer@willkie.com
jgarbacz@willkie.com

*Attorneys for Claimants*

## CERTIFICATE OF SERVICE

I hereby certify that on February 23, 2024, I caused the foregoing Petitioners' Memorandum of Law in Support of Application to Confirm and Enter Judgment on Partial Final Award to be served on the following counsel for Respondents via email. The following counsel have confirmed that they represent Respondents in this action and provided written consent to electronic service via email.

David K. Momborquette
MCDERMOTT WILL & EMERY LLP
One Vanderbilt Avenue
New York, New York 10017
(212) 547-5400
dmomborquette@mwe.com

William L. Miltner
MILTNER & MENCK, APC
402 West Broadway, Suite 960
San Diego, California 92101
(619) 615-5333
Bill@miltnerlaw.com

/s/ Jonathan A. Patchen

Jonathan A. Patchen