**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

GEM YIELD BAHAMAS LIMITED and GEM
GLOBAL YIELD LLC SCS,

      Petitioners,

          vs.

MULLEN TECHNOLOGIES, INC. and
MULLEN AUTOMOTIVE, INC.,

      Respondents.

Case No. 1:24-cv-01120-KPF

Related Case No. 1:23-cv-11268-KPF

---

**RESPONDENTS' MEMORANDUM OF LAW IN OPPOSITION TO PETITIONERS'
APPLICATION TO CONFIRM INTERIM MEASURES ARBITRATION AWARD
AND IN SUPPORT OF RESPONDENTS' CROSS-MOTION TO VACATE INTERIM
MEASURES ARBITRATION AWARD AND TO STAY APPLICATION TO CONFIRM**

**MCDERMOTT WILL & EMERY LLP**
David K. Momborquette
Antonios G. Koulotouros
One Vanderbilt Avenue
New York, New York 10017
(212) 547-5400
dmomborquette@mwe.com
akoulotouros@mwe.com

*Attorneys for Respondents Mullen Automotive, Inc.
and Mullen Technologies, Inc.*

**TABLE OF CONTENTS**

I.      PRELIMINARY STATEMENT ................................................................................. 1

II.     BACKGROUND ...................................................................................................... 4

        A.      The Parties ................................................................................................... 4

        B.      The GEM Agreements ................................................................................. 4

        C.      The NETE Transaction ................................................................................ 6

        D.      The Arbitration ............................................................................................ 6

        E.      The Liability Award ..................................................................................... 7

        F.      The Interim Award ....................................................................................... 7

        G.      Respondents' Related Action ..................................................................... 10

III.    JURISDICTION AND VENUE ............................................................................. 10

IV.     THE INTERIM AWARD SHOULD BE VACATED BECAUSE
        THE ARBITRATOR EXCEEDED HIS POWERS UNDER THE AAA RULES ........... 11

        A.      The Interim Award Is Not Supported By A Finding That Serious
                Injury Was Likely To Occur Prior To The Issuance Of A Final
                Award ......................................................................................................... 11

V.      THE INTERIM AWARD WAS RENDERED  IN MANIFEST DISREGARD OF
        THE LAW ............................................................................................................. 18

VI.     ENFORCEMENT OF THE INTERIM AWARD SHOULD BE STAYED ................... 20

VII.    CONCLUSION ...................................................................................................... 22

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*187 Concourse Assocs. v. Fishman,*
   399 F.3d 524 (2d Cir. 2005)........................................................................11

*British Ins. Co. of Cayman v. Water St. Ins. Co.,*
   93 F. Supp. 2d 506 (S.D.N.Y. 2000)............................................................14

*Cooper v. TWA Airlines, LLC,*
   274 F. Supp. 2d 231 (E.D.N.Y. 2003) .........................................................17

*Copragri S.A. v. Agribusiness United DMCC,*
   2021 WL 961751 (S.D.N.Y. Mar. 15, 2021) ...........................................11, 18

*Diatek Licensing LLC v. Estrella Media, Inc.,*
   2022 WL 5108090 (S.D.N.Y. Oct. 4, 2022) ............................................20, 21

*Finn v. Barney,*
   2008 WL 5215699 (S.D.N.Y. Dec. 8, 2008) ................................................21

*Great E. Sec., Inc. v. Goldendale Invs., Ltd.,*
   2006 WL 3851159 (S.D.N.Y. Dec. 20, 2006) ..............................................13

*Halligan v. Piper Jaffray, Inc.,*
   148 F.3d 197 (2d Cir. 1998).........................................................................18

*Kamine/Besicorp Allegany L.P. v. Rochester Gas & Elec. Corp.,*
   908 F. Supp. 1194 (W.D.N.Y. 1995) ............................................................17

*Litwin v. OceanFreight, Inc.,*
   865 F. Supp. 2d 385 (S.D.N.Y. 2011)...........................................................17

*Marblegate Asset Mgmt. v. Educ. Mgmt. Corp.,*
   75 F. Supp. 3d 592 (S.D.N.Y. 2014).............................................................17

*Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Source One Staffing LLC,*
   2017 WL 2198160 (S.D.N.Y. May 17, 2017) ...............................................14

*Petersen-Dean, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA.,*
   2020 WL 635665 (S.D.N.Y. Feb. 11, 2020)..............................................16, 17

*Scandinavian Reinsurance Co. v. Saint Paul Fire & Marine Ins. Co.,*
   668 F.3d 60 (2d Cir. 2012)...........................................................................10

*Trade & Transport, Inc. v. Nat. Petroleum Charterers Inc.,*
   931 F.2d 191 (2d Cir. 1991).........................................................................13

*Vidaplan S.A., Inc. v. Cipriani Int'l S.A.*,
2006 WL 8461283 (S.D.N.Y. Aug. 7, 2006)........................................................................10

*Yusuf Ahmed Alghanim & Sons v. Toys "R" US, Inc.*,
126 F.3d 15 (2d Cir. 1997).............................................................................................11

**Statutes**

9 U.S.C. § 10................................................................................................................11

9 U.S.C. § 202.................................................................................................................1

9 U.S.C. § 203..........................................................................................................10, 11

9 U.S.C. § 204..............................................................................................................11

Section 15(a) of the Securities Exchange Act of 1934,
15 U.S.C. § 78o(a)(1)...............................................................................................10, 20

Section 29(b) of the Securities Exchange Act of 1934,
15 U.S.C. § 78cc(b).................................................................................................10, 20

**Other Authorities**

AAA Rule R-37 .......................................................................................................11, 12

AAA Rule R-50 ............................................................................................................13

Complaint, *Mullen Technologies, Inc. v. GEM Global Yield LLC SCS, et al.*,
No. 1:23-cv-11268-KPF (S.D.N.Y. Dec. 28, 2023), ECF No. 1 .....................................10, 20

Gary B. Born, *Provisional Relief in International Arbitration, International
Commercial Arbitration* § 17 (3d ed. 2021) ................................................................8, 12, 13

Pursuant to the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, 9 U.S.C. § 202 (the "New York Convention"), and the Federal Arbitration Act ("FAA"), Respondents Mullen Automotive, Inc. ("MAI") and Mullen Technologies, Inc. ("MTI," and together with MAI, "Respondents") respectfully submit this Memorandum of Law in Opposition to Petitioners' Application to Confirm and Enter Judgment on Interim Measures Arbitration Award[1] and in Support of Respondents' Cross-Motion to Vacate Interim Measures Arbitration Award and to Stay Application to Confirm.[2]

## I.    PRELIMINARY STATEMENT

By this Cross-Motion, Respondents seek to vacate an interim measures arbitration award (the "Interim Award") entered by an arbitrator in an AAA arbitration (the "Arbitration") that



However, there is no authority under the applicable AAA rules for this type of relief. Those

---

[1] Petitioners' Application to Confirm and Enter Judgment on Interim Measures Arbitration Award is referred to throughout as the "Application." Respondents' Cross-Motion to Vacate Interim Measures Arbitration Award and to Stay Application to Confirm is referred to throughout as the "Cross-Motion." Respondents also submit the Declaration of David K. Momborquette ("Momborquette Decl.") and the Declaration of Jonathan New ("New Decl.") in opposition to the Application and in support of the Cross-Motion.

[2] As an initial matter, there is no basis to consider, let alone grant, Petitioners' Application with respect to MTI. Although Petitioners have named and included MTI in their Application

As such, Petitioners' inclusion of MTI in the Application appears to be nothing more than Petitioners' latest ploy (in a series of misguided attempts) to improperly lump MAI and MTI together when there is no apparent basis to do so.

rules grant the arbitrator the authority to take certain "interim measures" where "necessary" "for the protection or conservation of property and disposition of perishable goods" prior to the issuance of a final award.  Such measures are typically imposed where a party has attempted to dissipate assets or otherwise taken affirmative steps to frustrate another party's ability to satisfy a money judgment—

In those cases where an arbitrator has ordered that money be escrowed, the arbitrator has found that such an interim measure was necessary given the urgent risk of serious injury to a moving party prior to the issuance of a final award.

It is well settled under New York law that joint and several liability may only be imposed for a breach of contract claim in certain limited circumstances not present here, namely where parties to a contract are co-promisors on that agreement or where the evidence justifies piercing the corporate veil and ignoring a corporation's independent existence.  Despite that governing law,

2

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

████████████

████████████████████████████████████████████ MAI is an early-stage

company that has commenced its commercial operations and started to generate revenues. ████

███████████████████████████████████████████████

███████████████████████████████████████ In the past, MAI (a

public company) has been able to fund its capital expenditures and working capital demands

primarily through the sale of common stock and convertible securities. ████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

██████████████████████████

Courts routinely have denied requests for injunctive relief where a proposed injunction

would impose a substantial economic cost on the non-moving party, or worse, accelerate the non-

moving party's insolvency. ████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

3

██████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████      As such, the Interim Award simply cannot stand, Petitioners' Application should

be denied in its entirety, and Respondents' Cross-Motion should be granted.

## II.   BACKGROUND[3]

### A.   The Parties

MAI is a Delaware corporation and NASDAQ-listed, development-stage electric vehicle

manufacturer.  (Application at ¶ 7.)  MTI is a privately held corporation that is a wholly distinct

corporate entity from MAI.  (*Id.*)  Petitioners GEM Yield Bahamas Limited ("GEM Bahamas")

and GEM Global Yield LLC SCS ("GEM Global Yield," and together with GEM Bahamas,

"GEM") are part of the GEM Group, an alternative investment group that manages investments

focused on emerging markets around the world.  (*See* GEM's Memorandum of Law in Support of

Application to Confirm and Enter Judgment on Interim Measures Arbitration Award (ECF No. 6)

at 2.)

### B.   The GEM Agreements

On January 4, 2021, GEM Bahamas, GEM Global Yield, and MTI entered into three

integrated equity financing agreements: (i) a Share Purchase Agreement ("SPA"), (ii) a

Registration Rights Agreement ("RRA"), and (iii) a Warrant ("Warrant," and together with the

SPA and RRA, the "GEM Agreements").  (*See* Application at ¶ 11.)[4]  Under the GEM Agreements,

---

[3] The factual recitation below is taken from Petitioners' Application, the arbitrator's Partial Final Award on Liability ("Liability Award"), and the Interim Award.  Respondents contest the factual findings of the arbitrator in both of his awards, as reflected by the instant Cross-Motion.  Respondents also will move to vacate any Final Award on Liability and Damages to be issued by the arbitrator.  Respondents thus deny the factual findings discussed herein and reserve all rights.

[4] The SPA, RRA, and Warrant are attached as Exhibits 2, 3, and 4 respectively to the Declaration of Alexander L.

if MTI became a publicly traded company, MTI could draw down on an equity facility provided by GEM in an amount up to $500 million and GEM could exercise the Warrant in certain circumstances to purchase up to 6.6% of MTI. (*See id.* at ¶ 12.) The RRA, in turn, governed the registration of any shares issued by MTI pursuant to the Warrant. (*See* Cheney Decl., Ex. 3.)

Pursuant to the SPA, MTI was also obligated to pay GEM a commitment fee (the "Commitment Fee") worth approximately $7 million no later than the one-year anniversary that shares of MTI first began trading publicly on a "Principal Market," as that term is defined in the GEM Agreements. (*See* Application at ¶ 12; *see also* Cheney Decl., Ex. 2 at § 4.12(a).) Under the SPA and RRA, the parties also agreed that any disputes arising out of those agreements would be resolved through arbitration under the Rules of the AAA and that the agreements would be construed in accordance with New York law. (*See* Cheney Decl., Ex. 2 at §§ 9.02(b), 9.08(a); *see also id.*, Ex. 3 at § 11(d), (e); Application at ¶ 21.) The Warrant, on the other hand, states that the "venue for any dispute arising under th[e] Warrant will lie exclusively in the state or federal courts located in New York . . . ." (Cheney Decl., Ex. 4 at § 11.) The parties also "irrevocably consent[ed] to personal jurisdiction in the state and federal courts of the state of New York." (*Id.*)

Notably, the GEM Agreements were executed by GEM and MTI only. (*See* Application at ¶ 11; Cheney Decl., Exs. 2-4.) MAI did not exist when the GEM Agreements were executed, and thus, was neither a signatory nor a party to any of the GEM Agreements. (*See* Cheney Decl., Exs. 2-4; *see also* Momborquette Decl., Ex. A at Introductory Note, Item 5.03.) Indeed, MAI and MTI remain two separate companies that operate two different ongoing businesses to this day. (Application at ¶ 7.)

---

Cheney (ECF No. 5, "Cheney Decl."), which was filed in support of GEM's Application.

### C.    The NETE Transaction

In the Spring and Summer of 2021, Mullen Automotive Inc., a wholly separate entity from MTI and MAI, entered into an arms-length merger with a third-party public company then known as Net Element, Inc. ("NETE"). (*See* Momborquette Decl., Ex. A at Introductory Note.)  As part of the merger (the "NETE Transaction"), Mullen Automotive Inc. merged with a subsidiary formed by NETE, called Mullen Acquisition, Inc.  (*See id*.)  In November 2021, after the merger formally closed, NETE was renamed to MAI (the Respondent in the instant dispute), and on November 5, 2021, MAI's shares began trading on NASDAQ under the ticker symbol "MULN." (*See id.* at Item 5.03; *see also* Application at ¶ 7.)

### D.    The Arbitration

GEM commenced its Arbitration against ███ on September 27, 2021.  (*See* Application at ¶ 18.)  Several months later, on January 7, 2022, GEM filed an Amended Statement of Claim and

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

█████████████████

The parties thereafter entered into a stipulation to bifurcate the Arbitration proceedings, with the parties agreeing to brief liability issues in Phase One and submit briefing on damages issues in Phase Two, after the arbitrator's issuance of a partial final award on liability.  (*See* Application at ¶ 23.) On November 17, 2023, the arbitrator entered a Partial Final Award on Liability (the "Liability Award"), and as of January 29, 2024, Phase Two of the Arbitration is fully briefed.  (*See* Application at ¶¶ 25, 34.) ████████████████████████

████████████████████████████████████

### E.     <u>The Liability Award</u>

On November 17, 2023, the arbitrator issued the Liability Award.  (*See* Cheney Decl., Ex.

6.) ██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████████████████████████ The

Contribution and Spin-Off Agreement does not include an arbitration clause and was not before

the arbitrator.  (*See* Momborquette Decl., Ex. C.)  Yet, the interpretation of this agreement forms

a substantial basis for the Liability Award.

### F.     <u>The Interim Award</u>

On December 15, 2023, GEM filed with the arbitrator an application for interim measures.

(*See* Application at ¶ 26.) ████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

███████████████████████████████████ On January 24, 2024,

7

the arbitrator issued the Interim Award, ██████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████ [5]

████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

---

[5] On August 3, 2023, ████████████████

████████████████████████████████████████ That August 3rd
Order is not the subject of Petitioners' Application or Respondents' Cross-Motion.

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████

### G.   Respondents' Related Action

On December 28, 2023, Respondents filed a related action (the "Related Action") in this Court alleging, among other things, that (i) GEM acted as an unregistered securities dealer in violation of Section 15(a) of the Securities Exchange Act of 1934 (the "Exchange Act") when it entered into the Warrant and (ii) the Warrant should be deemed void and rescinded pursuant to Section 29(b) of the Exchange Act. *See* Complaint, *Mullen Technologies, Inc. v. GEM Global Yield LLC SCS, et al.*, No. 1:23-cv-11268-KPF (S.D.N.Y. Dec. 28, 2023), ECF No. 1. The Related Action remains pending before this Court.

## III.   JURISDICTION AND VENUE

This Court has jurisdiction over this action—including Respondents' Cross-Motion to vacate—pursuant to 9 U.S.C. § 203 because it falls under the New York Convention. *See Scandinavian Reinsurance Co. v. Saint Paul Fire & Marine Ins. Co.*, 668 F.3d 60, 71 (2d Cir. 2012) (recognizing that the lower court had subject-matter jurisdiction over the relevant petition to vacate under 9 U.S.C. § 203 because the action involved a foreign corporation and thus, fell under the New York Convention); *see also Vidaplan S.A., Inc. v. Cipriani Int'l S.A.*, 2006 WL 8461283, at *5 (S.D.N.Y. Aug. 7, 2006) (noting that the parties had "consented to personal jurisdiction in New York" because they had signed an agreement which provided for arbitration in New York and stated that New York law would govern). Venue is also proper in this judicial

district pursuant to 9 U.S.C. § 204 because the parties agreed to arbitration in New York.  (*See* Application at ¶ 9.)

## IV.     THE INTERIM AWARD SHOULD BE VACATED BECAUSE THE ARBITRATOR EXCEEDED HIS POWERS UNDER THE AAA RULES

### A.     The Interim Award Is Not Supported By A Finding That Serious Injury Was Likely To Occur Prior To The Issuance Of A Final Award

Under the FAA, an arbitration award must be vacated where an "arbitrator[] exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter was not made." *See* 9 U.S.C. § 10(a)(4).[6]  In deciding whether an arbitrator exceeded or imperfectly executed their powers, the question is whether the arbitrator had the power to reach the issue in question, not whether they correctly decided the issue.  *See Copragri S.A. v. Agribusiness United DMCC*, 2021 WL 961751, at *4 (S.D.N.Y. Mar. 15, 2021).  A court may vacate an arbitration award "if the arbitrator acts outside the scope of his contractually delegated authority [and] issu[es] an award that simply reflects his own notions of economic justice rather than drawing its essence from the [parties'] contract . . . ." *See Id.* at *5 (quoting *Oxford Health Plans LLC v. Sutter*, 569 U.S. 564, 569 (2013)); *see also 187 Concourse Assocs. v. Fishman*, 399 F.3d 524, 527 (2d Cir. 2005) ("The principal question for the reviewing court is whether the arbitrator's award draws its essence from the . . . agreement, since the arbitrator is not free merely to dispense his own brand of industrial justice.").

With respect to interim measures, Rule R-37 of the AAA Rules provides, as follows:

> (a) The arbitrator may take whatever interim measures he or she deems necessary, including injunctive relief and measures for the protection or conservation of property and disposition of perishable goods.

---

[6] The Second Circuit has concluded that a district court possesses the authority under the New York Convention to apply the FAA's grounds for vacating an award where, as here, the award was rendered in the United States.  *See, e.g., Yusuf Ahmed Alghanim & Sons v. Toys "R" US, Inc.*, 126 F.3d 15, 20-23 (2d Cir. 1997).

     (b) Such interim measures may take the form of an interim award, and the arbitrator may require security for the costs of such measures.

     (c) A request for interim measures addressed by a party to a judicial authority shall not be deemed incompatible with the agreement to arbitrate or a waiver of the right to arbitrate.

(AAA Rules, R-37.)

██████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████ The Born Treatise states that a party requesting interim measures to protect a potential arbitration award must typically show, among other things, "(a) a risk of serious or irreparable harm to the [applicant]; (b) *urgency*; and (c) no prejudgment of the merits . . . ." Born Treatise at 2650 (emphasis added). To establish urgency, in particular, a movant must demonstrate that "serious injury" is "'likely' to occur *before the issuance of a final award . . . .*" *Id.* at 2650 (emphasis added) (internal citation omitted) (observing that likely "impl[ies] a requirement of a 50% or greater likelihood"). Thus, while an arbitrator need not wait "until dire consequences are only days away" to issue interim relief, he or she must "take a realistic commercial view of the likelihood that serious damages will occur *prior to the end of the arbitral proceedings.*" *Id.* at 2658 (emphasis added). Indeed, pre-award relief will generally not be deemed urgent or ordered "until such time as is necessary to prevent . . . serious damage from taking place." *Id.*; *see also id.* at 2678 ("[W]here there is evidence that a party has begun to, or appears likely to, engage in conduct that goes beyond the ordinary course of business, by attempting to dissipate assets, encumber property, or grant preferential security to insiders, then provisional measures will ordinarily be appropriate . . . .").

██████████████████████████████████████████████████

██████████████████████████████████████████████████



Accordingly, as detailed below, the Interim Award should not be confirmed, but rather, should be vacated as being outside of the scope of the arbitrator's authority.

To determine whether interim relief is urgently required, "[m]ost authorities consider whether there is a risk that serious injury will occur *prior* to the issuance the [arbitrator's] final award . . . ." *Id.* at 2658; *see also, e.g.*, *Great E. Sec., Inc. v. Goldendale Invs., Ltd.*, 2006 WL 3851159, at *2 (S.D.N.Y. Dec. 20, 2006) ("[I]t was reasonable for the Arbitration Panel to order Great Eastern to escrow funds, pending completion of the arbitration proceedings, given the concern over the company's solvency."). Indeed, Respondents have not identified a single interim award which was entered and confirmed based on an estimation of the non-movant's financial condition following the issuance of the relevant final award.[7]

---

[7] That makes perfect sense. Under the *functus officio* doctrine, "once arbitrators have finally decided the submitted issues, they are, in common-law parlance, '*functus officio*,' meaning that their authority over those questions is ended." *See, e.g.*, *Trade & Transport, Inc. v. Nat. Petroleum Charterers Inc.*, 931 F.2d 191, 195 (2d Cir. 1991); *see also* AAA Rule R-50 ("The arbitrator is not empowered to redetermine the merits of any claim already decided."). Thus, it would be improper for an arbitrator to consider circumstances that may arise after the entry of a final award.

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████

                  ████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████ interim measures are warranted only in limited circumstances, *i.e.*, to protect a potential future award in the face of urgent financial difficulties that may lead to insolvency or because a company is dissipating assets or engaging in other financial maneuvering that will likely render a final award meaningless.  In fact, courts have generally only confirmed interim awards where the evidence shows that a party has begun to dissipate assets or otherwise finds itself in a precarious financial position such that a final award likely would be rendered meaningless in the absence of provisional relief.  *See, e.g.*, *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Source One Staffing LLC*, 2017 WL 2198160, at *2 (S.D.N.Y. May 17, 2017) (confirming arbitration panel's interim award given respondent's "undisputed financial difficulties," including respondent's potential need to seek bankruptcy protection before the entry of a final award); *British Ins. Co. of Cayman v. Water St. Ins. Co.*, 93 F. Supp. 2d 506, 516 (S.D.N.Y. 2000) (holding that a "colorable justification" existed for the arbitration panel's interim order where "[t]he evidence provided of [defendant's] history of financial and geographical maneuvers clearly raise[d] the specter that any final award could be rendered meaningless").

Put differently, MAI has continued to

operate its business despite the going concern opinion. ██████████████████████

██████████████████████████████████████

████████████████████████████████████████████████████

███████ MAI is an early-stage company that has commenced its commercial operations and

started to generate revenues.  (*See* "New Decl." at ¶ 6.) ██████████████████████

████████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████ MAI is a public

company whose common stock is traded on NASDAQ.  It has in the past been able to fund its

capital expenditures and working capital demands primarily through the sale of common stock and

convertible securities.  (*See id.* at ¶ 8.) ██████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

Where, ███████ an interim measure stands to impose a significant burden on a party,

tribunals often seek to find a middle ground and craft a measure that minimizes the costs placed

on the party.  *See, e.g.*, *Petersen-Dean, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA.*, 2020

WL 635665, at *5 (S.D.N.Y. Feb. 11, 2020) (confirming award that was $25 million smaller than

the relief sought to minimize the risk of the company's collapse and noting that "the panel staked

out a middle ground, ordering an award small enough to minimize the risk of Petersen's collapse

. . . but large enough to avoid the distasteful result of National Union succeeding in an arbitration

only to suffer a net loss due to costs"). ██████████████████████████████████

16

████████████████████████████████████████████████████

████████████████████████████      Outside the arbitration context, courts routinely deny requests

for preliminary injunctions where the proposed injunction stands to impose substantial economic

costs on the non-moving party or worse, accelerate the non-moving party's insolvency. *See*

*Marblegate Asset Mgmt. v. Educ. Mgmt. Corp.*, 75 F. Supp. 3d 592, 609 (S.D.N.Y. 2014)

(reasoning that the non-moving party's "serious risk of insolvency" resulting from the injunction

outweighed the movant's risk of losing the nominal value of their notes); *Litwin v. OceanFreight,*

*Inc.*, 865 F. Supp. 2d 385, 401-02 (S.D.N.Y. 2011) (refusing to enjoin non-movant corporation

from holding special shareholder meeting to vote on company's proposal to acquire corporation

for $239 million); *Cooper v. TWA Airlines, LLC*, 274 F. Supp. 2d 231, 250-51 (E.D.N.Y. 2003)

(concluding that the balance of the hardship did not tip in the plaintiffs' favor where the "highly

probable result" of the injunction would be to force the non-movant to declare bankruptcy);

*Kamine/Besicorp Allegany L.P. v. Rochester Gas & Elec. Corp.*, 908 F. Supp. 1194, 1201

(W.D.N.Y. 1995) (denying an injunction requiring a utility to continue purchasing from the

movant at a certain price because "it would cost [the non-moving party] significantly more

money," calculated at $20 million per year).

████████████████████████████████████████████████████

████████      *See Petersen-Dean, Inc.*, 2020 WL 635665, at *5.      ████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

17

██████████████████████████████████████████████████████████ As such,

the arbitrator exceeded his authority, and the Interim Award should be vacated.

## V.     THE INTERIM AWARD WAS RENDERED
## IN MANIFEST DISREGARD OF THE LAW

"An award is rendered in manifest disregard of the law, 'when the arbitrator knew of the relevant [legal] principle, appreciated that this principle controlled the outcome of the disputed issue, and nonetheless willfully flouted the governing law by refusing to apply it.'" *Copragri S.A.*, 2021 WL 961751, at *5 (quoting *Kuczynski v. Viad Corp.*, 2019 WL 6216689, at *5 (D. Conn. Nov. 21, 2019)); *see also Halligan v. Piper Jaffray, Inc.*, 148 F.3d 197, 202 (2d Cir. 1998) ("[T]o . . . vacate an award on this ground, a court must find both that (1) the arbitrators knew of a governing legal principle yet refused to apply it or ignored it altogether, and (2) the law ignored by the arbitrators was well defined, explicit, and clearly applicable to the case.").





In short, the arbitrator imposed his own brand of economic justice, in complete and utter disregard of controlling New York law.  As a result, the Interim Award should be vacated.

## VI.   <u>ENFORCEMENT OF THE INTERIM AWARD SHOULD BE STAYED</u>

As noted above, in the Related Action, MTI and MAI have sought, among other things, recission of the Warrant because GEM violated Section 15(a) of the Exchange Act by failing to be registered as a dealer when entering into the Warrant.  *See* Complaint, *Mullen Technologies, Inc., et al. v. GEM Global Yield LLC SCS, et al.*, No. 1:23-cv-11268-KPF (S.D.N.Y. Dec. 28, 2023), ECF No. 1; *see also* 15 U.S.C. § 78o(a)(1).  If the Warrant was indeed "made in violation" of Section 15(a) of the Exchange Act, it "shall be void" and subject to rescission.  *See* 15 U.S.C. § 78cc(b).  If the Warrant is void, then the arbitrator lacked the authority to issue the Interim Award, or it is otherwise unnecessary.  ███████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████  As such, the issues presented in the Related Action must be resolved before the Court can fully adjudicate Petitioners' Application.

"The power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants."  *Diatek Licensing LLC v. Estrella Media, Inc.*, 2022 WL 5108090, at *1 (S.D.N.Y. Oct. 4, 2022) (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936)).  Courts typically consider five factors in deciding whether to grant a stay: "(1) the private interests of the plaintiffs in proceeding expeditiously with the civil litigation as balanced against the prejudice to the plaintiffs if delayed; (2) the private interests of and burden on the defendants; (3) the interests of the courts; (4) the interests of persons not parties to the civil litigation; and (5) the public interest."  *Id.* (quoting *Kappel v. Comfort*, 914 F. Supp. 1056, 1058 (S.D.N.Y. 1996)).  Indeed, courts in this district have routinely opted to stay an action pending the resolution of an independent proceeding

where, as here, the resolution or outcome of that proceeding bears upon the action. *See, e.g.*, *Finn v. Barney*, 2008 WL 5215699, at *3 (S.D.N.Y. Dec. 8, 2008) ("A stay may similarly be appropriate when awaiting 'the outcome of proceedings which bear upon the case, even if such proceedings are not necessarily controlling of the action that is to be stayed'"; staying case where resolution of a related class action would impact the plaintiffs' claims in the case and defendants' contractual right to demand arbitration of the claims); *see also Diatek*, 2022 WL 5108090, at *2 (staying case pending decision in parallel proceeding that would decide controlling point of law in case).

The aforementioned factors indisputably favor staying Petitioners' Application (and the accompanying enforcement of the Interim Award) pending resolution of the Related Action. Although a stay may delay Petitioners' litigation and enforcement of the Interim Award, it will not unduly prejudice Petitioners. ██████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ██████████████████████████████ A stay, however, would serve the interests of this Court by promoting "judicial economy and efficiency," *see Finn*, 2008 WL 5215699, at *3, and avoiding potentially "inconsistent adjudication[s]." *See Diatek*, 2022 WL 5108090, at *2. There is also nothing—on the face of the Interim Award or GEM's Application for the matter—to suggest that the fourth and fifth factors articulated above counsel against a stay. As such, GEM's Application should be stayed pending the resolution of the Related Action.

## VII.    <u>CONCLUSION</u>

For the foregoing reasons, Respondents respectfully request that the Petitioners'
Application to confirm the Interim Award be denied, and further, that Respondents' Cross-Motion
to vacate the Interim Award be granted.   At a minimum, Respondents request that the Interim
Award be stayed until the Court has resolved the Related Action or decided the instant Cross-
Motion.

Dated:  New York, New York          Respectfully Submitted,
       March 1, 2024

                                   **MCDERMOTT WILL & EMERY LLP**

                              By:  *<u>/s/ David K. Momborquette</u>*
                                  David K. Momborquette
                                  Antonios G. Koulotouros
                                  One Vanderbilt Avenue
                                  New York, New York 10017
                                  (212) 547-5400
                                  dmomborquette@mwe.com
                                  akoulotouros@mwe.com

                                  *Attorneys for Respondents Mullen Automotive,*
                                  *Inc. and Mullen Technologies, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on March 1, 2024, I caused the foregoing Memorandum of Law in Opposition to Petitioners' Application to Confirm Interim Measures Arbitration Award and in Support of Respondents' Cross-Motion to Vacate Interim Measures Arbitration Award and to Stay Application to Confirm to be served on the following counsel for Petitioners via email. The following counsel have confirmed that they represent Petitioners in this action and provided written consent to electronic service via email.

Jonathan A. Patchen
WILLKIE FARR & GALLAGHER LLP
333 Bush Street
San Francisco, CA 94104
(415) 858-7594
jpatchen@willkie.com

_/s/ David K. Momborquette_
David K. Momborquette