**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| GEM YIELD BAHAMAS LIMITED and GEM GLOBAL YIELD LLC SCS,<br><br>Petitioners,<br><br>vs.<br><br>MULLEN TECHNOLOGIES, INC. and MULLEN AUTOMOTIVE, INC.,<br><br>Respondents. | Case No. 1:24-cv-01120-KPF<br><br>Related Case No. 1:23-cv-11268-KPF<br><br>Hon. Katherine Polk Failla |

**PETITIONERS' BRIEF IN FURTHER SUPPORT OF APPLICATION TO CONFIRM AND ENTER JUDGMENT ON INTERIM MEASURES ARBITRATION AWARD AND <u>REQUEST TO STAY RELATED ACTION</u>**

WILLKIE FARR & GALLAGHER LLP
Jonathan A. Patchen (admitted pro hac vice)
333 Bush Street
San Francisco, California  94104
(415) 858-7594
(415) 858-7418
jpatchen@willkie.com

Madeleine Tayer
Justin Garbacz
787 Seventh Avenue
New York, New York  10019
(212) 782-8914
(212) 728-8801
mtayer@willkie.com
jgarbacz@willkie.com

*Attorneys for Petitioners GEM Yield Bahamas Limited and GEM Global Yield LLC SCS, and for Defendants GEM Yield Bahamas Limited, GEM Global Yield LLC SCS, and Christopher Brown in Related Case No. 1:23-cv-11268-KPF*

## **TABLE OF CONTENTS**

INTRODUCTION ...................................................................................................................1

ARGUMENT ........................................................................................................................2

I.     THE RESCISSION ACTION SHOULD BE STAYED, NOT CONFIRMATION OF THE INTERIM MEASURES ORDER ....................................................................2

     A.     The Rescission Action Should Be Stayed Pending Completion Of The Arbitration ................................................................................................2

          i.     Stay of the Rescission Action Is Mandatory Under the FAA .....................2

               1.     The Arbitrator's Determination That The Warrant Claims Were Arbitrable Is Controlling .......................................................3

               2.     Even If This Court Were to Evaluate Arbitrability, It Should Conclude That The Warrant Claims Were Arbitrable ....................5

                    a.     Mullen Waived Its Right To Object To Arbitrability Of The Warrant By Fully Participating In The Arbitration, Including On Issues Related To The Warrant ................................................................................5

                    b.     Warrant-Related Claims Are Within The Scope Of The Parties' Broad Agreement To Arbitrate .......................8

          ii.     Alternatively, The Court Should Exercise Its Discretion To Stay The Rescission Action ................................................................11

     B.     There Is No Basis To Stay Enforcement Of The Interim Measures Order; The Interim Measures Order Should Be Enforced Immediately ..........................15

II.     THE COURT SHOULD CONFIRM THE INTERIM MEASURES ORDER AND ORDER ████████████████████ ..................................................17

     A.     The Interim Measures Order Should Be Confirmed ............................................17

     B.     The Court Can And Should Order ████████████████ ..........18

     C.     There Is No Basis To Vacate The Interim Measures Order ..................................20

          i.     The Arbitrator Did Not Exceed His Powers Under The AAA Rules ........22

          ii.     The Interim Measures Order Was Not Rendered In Manifest Disregard Of The Law ..........................................................................25

CONCLUSION......................................................................................................................29

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*ABNL Ltd. v. Baker Hughes Process Sys.*,
　　No. CV H-04-4662, 2005 WL 8164068 (S.D. Tex. May 16, 2005) .......................................12

*Adar Bays, LLC v. Aim Expl., Inc.*,
　　251 F. Supp. 3d 704 (S.D.N.Y. 2017) ....................................................................................10

*Allied Int'l Union v. Tristar Patrol Servs., Inc.*,
　　No. 06 Civ. 15515, 2007 WL 2845227 (S.D.N.Y. Sept. 26, 2007) ........................................18

*American Nursing Home v. Local 144 Hotel, Hosp., Nursing Home and Allied
　　Services Union*,
　　No. 89 Civ. 1704, 1992 WL 47553 (S.D.N.Y. Mar. 4, 1992) ................................................18

*In re Arb. between Halcot Navigation Ltd. P'ship & Stolt-Nielsen Transp. Grp.*,
　　491 F. Supp. 2d 413, 419 (S.D.N.Y. 2007) ..............................................................................4

*In re Arb. between Interdigital Commun. Corp. and Samsung Elecs. Co., Ltd.*,
　　528 F. Supp. 2d 340 (S.D.N.Y. 2007) ....................................................................................16

*Matter of Arbitration No. AAA13-161-0511-85 Under Grain Arbitration Rules*,
　　867 F.2d 130 (2d Cir. 1989) ...................................................................................................26

*Aurora Distributed Solar, LLC v. AKTOR, S.A.*,
　　No. 17-CV-2009 (VEC), 2017 WL 11708413 (S.D.N.Y. June 8, 2017) ...............................12

*Banco de Seguros del Estado v. Mutual Marine Offices, Inc.*,
　　344 F.3d 255 (2d Cir. 2003) ...................................................................................................28

*Benihana, Inc. v. Benihana of Tokyo, LLC*,
　　784 F.3d 887 (2d Cir. 2015) ...................................................................................................28

*Brown v. Felsen*,
　　442 U.S. 127 (1979) ................................................................................................................13

*CBF Industria de Gusa S/A v. AMCI Holdings, Inc.*,
　　850 F.3d 58 (2d Cir. 2017) .....................................................................................................20

*CE Int'l Res. Holdings LLC v. S.A. Minerals Ltd. P'ship*,
　　No. 12 Civ. 8087, 2012 WL 6178236 (S.D.N.Y. Dec. 10, 2012) ..........................................18

*Contec Corp. v. Remote Sol., Co., Ltd.*,
　　398 F.3d 205 (2d Cir. 2005) .....................................................................................................3

*Converse, Inc. v. Norwood Venture Corp.*,
    No. 96 CIV. 3745, 1997 WL 742534 (S.D.N.Y. Dec. 1, 1997)...............................................14

*Cox v. Perfect Bldg. Maint. Corp.*,
    No. 16-CV-7474 (VEC), 2017 WL 3049547 (S.D.N.Y. July 18, 2017) ................................14

*Cullen v. Paine Webber Group. Inc.*,
    689 F. Supp. 269 (S.D.N.Y. 1988)...................................................................................13, 14

*Duferco Int'l Steel Trading v. T. Klaveness Shipping A/S*,
    333 F.3d 383 (2d Cir.2003)..............................................................................................25, 26

*Elwell v. Raymond James Fin. Servs.*,
    No. 22-cv-10125 (JGK), 2023 WL 5186275 (S.D.N.Y. Aug. 10, 2023)..............................21

*Europcar Italia, S.p.A. v. Maiellano Tours, Inc.*,
    156 F.3d 310 (2d Cir. 1998)..............................................................................................16, 17

*Fasano v. Li*,
    No. 16 CIV. 8759 (KPF), 2023 WL 6292579 (S.D.N.Y. Sept. 27, 2023).........................11, 15

*Fellus v. Sterne, Agee & Leach, Inc.*,
    783 F. Supp. 2d 612 (S.D.N.Y. 2011)...................................................................................21

*Gonsalvez v. Celebrity Cruises, Inc.*,
    750 F.3d 1195 (11th Cir. 2013) ............................................................................................12

*Hall Street Associates, LLC v. Mattel, Inc.*,
    552 U.S. 576 (2008).........................................................................................................21, 26

*Halley Optical Corp. v. Jagar Int'l Mktg. Corp.*,
    752 F. Supp. 638 (S.D.N.Y. 1990)................................................................................4, 5, 7

*Hamilton v. Sirius Satellite Radio, Inc.*,
    375 F. Supp. 2d 269 (S.D.N.Y. 2005)...................................................................................17

*InterDigital Comm. Corp. v. Nokia Corp.*,
    407 F. Supp. 2d 522 (S.D.N.Y. 2005)...................................................................................23

*iPayment, Inc. v. 1st Americard, Inc.*,
    No. 15 CIV. 1904 (AT), 2016 WL 1544736 (S.D.N.Y. Mar. 25, 2016) ................................6

*Iraq Telecom Ltd. v. IBL Bank S.A.L.*,
    597 F. Supp. 3d 657 (S.D.N.Y. 2022), *aff'd*, No. 22-832, 2023 WL 2961739
    (2d Cir. Apr. 17, 2023)..........................................................................................................16

*Jacobson v. Fireman's Fund Ins. Co.*,
    111 F.3d 261 (2d Cir. 1997)..................................................................................................12

*Kelso Enters. Ltd. v. A.P. Moller-Maersk*,
   375 F. App'x 48 (2d Cir. 2010) (unpublished) ................................................10, 11

*Landau v. Eisenberg*,
   922 F.3d 495 (2d Cir. 2019) ..........................................................................................22

*Life Receivables Tr. v. Goshawk Syndicate 102 at Lloyd's*,
   66 A.D.3d 495 (1st Dep't 2009), *aff'd*, 14 N.Y.3d 850 (2010) ................................3

*Lobban v. Cromwell Towers Apartments, LP*,
   345 F. Supp. 3d 334 (S.D.N.Y. 2018) ......................................................................12, 14

*M.I. Trading Ltd. v. Farstad Oil, Inc.*,
   No. 00 CIV 7120(RLC), 2001 WL 38282 (S.D.N.Y. Jan. 16, 2001) .....................12

*Mademoiselle Knitwear, Inc. v. Liz Claiborne*,
   Inc., No. 98 CIV. 3252 (HB), 1999 WL 377853, at *8 (S.D.N.Y. June 9, 1999) .................13

*Mastrobuono v. Shearson Lehman Hutton, Inc.*,
   514 U.S. 52 (1995) ........................................................................................................10

*Merrill Lynch & Co. v. Optibase, Ltd.*,
   No. 03 Civ. 4191, 2003 WL 21507322 (S.D.N.Y. June 30, 2003) ............................6

*Mutual Marine Office, Inc. v. Transfercom Ltd.*,
   No. 08 Civ. 10367, 2009 WL 1025965 (S.D.N.Y. Apr. 15, 2009) .........................18

*New York City District Council of Carpenters v. Nguyen Custom Woodworking LLC*,
   No. 18-cv-3970, 2018 WL 5919520 (S.D.N.Y. Nov. 13, 2018) ..............................20

*NFL Mgmt. Council v. NFL Players Ass'n*,
   820 F.3d 527 (2d Cir. 2016) ....................................................................................21, 22

*Nortek Inc. v. ITT LLC*,
   21-CV-03999, 2022 WL 656896 (S.D.N.Y. Mar. 4, 2022) ......................................3

*Polin v. Kellwood Co.*,
   103 F. Supp. 2d 238 (S.D.N.Y. 2000) ........................................................................22

*Saint Mary Home, Inc. v. Service Employees Int'l Union, Dist. 1199*,
   116 F.3d 41 (2d Cir. 1997) ..........................................................................................23

*Shasha v. Malkin*,
   14-CV-9989(AT) (RWL), 2021 WL 11960275 (S.D.N.Y. Mar. 24, 2021) ............................28

*Shenzhen Lanteng Cyber Technology Co. v. Amazon.com Services*,
   No. 1:23-cv-991-GHW, 2023 WL 6276691 (S.D.N.Y. Sept. 26, 2023) .................25

iv

*Sperry Int'l Trade, Inc. v. Gov't of Israel*,
  689 F.2d 301 (2d Cir. 1982)..................................................................................28

*T.Co Metals, LLC v. Dempsey Pipe & Supply, Inc.*,
  592 F.3d 329 (2010)..........................................................................................26

*Trustees of the New York City Dist. Council of Carpenters Pension Fund v. Harbor
  Island Contracting Inc.*,
  No. 14–cv–9507 (AJN), 2015 WL 5146093 (S.D.N.Y. Aug. 31, 2015) ...............................23

*Wallace v. Buttar*,
  378 F.3d 182 (2d Cir. 2004)..................................................................21, 22, 26

*Walter H. Jones v. Watts Inv. Co.*,
  No. 99 Civ. 10590, 2000 WL 546490 (S.D.N.Y. May 3, 2000).................................................6

*Westerbeke Corp. v. Daihatsu Motor Co., Ltd.*,
  304 F.3d 200 (2d Cir. 2002)......................................................................23, 26

*Willemijn Houdstermaatschappij, BV v. Standard Microsystems Corp.*,
  103 F.3d 9 (2d Cir. 1997) ....................................................................................22

*Yusuf Ahmed Alghanim & Sons v. Toys "R" Us, Inc.*,
  126 F.3d 15 (2d Cir. 1997)..........................................................................12, 26, 27

*Zachariou v. Manios*,
  68 A.D.3d 539 (1st Dep't 2009) .............................................................................3

**Statutes**

9 U.S.C. § 9..........................................................................................15, 20, 21

9 U.S.C. § 10(a)(1)-(4)..........................................................................................20

9 U.S.C. § 207..........................................................................................20

**INTRODUCTION**

Pursuant to the Court's order during the March 21, 2024 conference with the Court (the "March 21 Conference"), Petitioners GEM Yield Bahamas Limited and GEM Global Yield LLC SCS (collectively, "GEM" or "Petitioners") respectfully submit this brief to address the two questions upon which the Court invited further briefing: (1) what should be stayed and (2) what authority the Court has to order ███████████████████████  *See* Supplemental Declaration of Jonathan Patchen (the "Patchen Supp. Decl."), Ex. 9 (March 21 Conf. Tr.) at 50:19-23, 51:2-9.[1]

In focusing on these issues, however, GEM respectfully requests the Court keep in mind the larger context. As confirmed by the Arbitrator, GEM and Mullen entered a contract. GEM honored the contract. Mullen deliberately breached and repudiated it. It belatedly hunted for excuses for its repudiation and asserted claim after claim to avoid liability. Many of those assertions were patently frivolous; none had merit. Yet it has taken years of time and millions in attorney's fees for GEM to rebut Mullen's meritless claims. Mullen's approach with this Court is no different. Its Rescission Action—filed only *after* Mullen completely lost on liability before the Arbitrator—seeks to litigate a claim that was advanced and rejected in the Arbitration. And Mullen wasn't even candid with the Court; nowhere in the Rescission Action does Mullen mention the Arbitration or the Arbitrator's rulings. And its efforts to forestall the Arbitrator's well-

---

[1]   Because this submission is supplemental briefing, Petitioners do not repeat the factual background as set forth in their filings in Case No. 1:23-cv-11268-KPF (the "Rescission Action") and Case No. 1:24-cv-01120-KPF (the "Confirmation Action"). Relevant facts are cited as applicable in Petitioners' argument. Except as otherwise noted, capitalized terms used herein have the same meanings ascribed to them in Petitioners' Application to Confirm and Enter Judgment on Interim Measures Arbitration Award (the "Interim Award Application" or "Interim Award App."). Confirmation Action, Dkt. 1.

grounded Interim Measures Order are equally meritless.   As explained below, Mullen misunderstands the law, misstates the record, and misconstrues what the Arbitrator decided.

The Court should stay the Rescission Action, confirm the Interim Measures Order, and order Respondents to immediately comply therewith, including but not limited to ordering Mullen Automotive, Inc. ("Mullen Automotive") to immediately █████████████████████ pursuant to the Interim Measures Order and requiring proof of the deposit.

## **ARGUMENT**

## I.   THE RESCISSION ACTION SHOULD BE STAYED, NOT CONFIRMATION OF THE INTERIM MEASURES ORDER

### A.   The Rescission Action Should Be Stayed Pending Completion Of The Arbitration

Because all of the claims at issue in the Rescission Action are within the scope of the ongoing Arbitration, stay of the Rescission Action is mandatory.   Even if they were not, the Court should exercise its discretion to stay the Rescission Action to promote judicial economy.

### i.   *Stay of the Rescission Action Is Mandatory Under the FAA*

Under the Federal Arbitration Act ("FAA"), "[w]hen all claims have been referred to arbitration and a stay is requested, the Court must grant the stay."   Rescission Action, Dkt. 26 (the "Letter Motion") at p. 3.   The Rescission Action asserts one core claim: that the Warrant "is unlawful," "was made in violation of Section 15(a) of the [Securities Exchange] Act," and "should be voided[.]"   Rescission Action, Dkt. 1 at ¶¶ 5, 10.   And, to avoid arbitration—and the mandatory stay under the FAA—Mullen asserts that jurisdiction and venue to determine this Warrant Claim is exclusive in this Court.   *Id.* ¶¶ 8-10.   Mullen is wrong for several reasons.

1. The Arbitrator's Determination That The Warrant Claims Were Arbitrable Is Controlling

In September of 2022, at ███████████████████████████████ Mullen ████

████████████████████████████████████████████████████████████

█████████████████████████████████ *See* Patchen Supp. Decl. Ex. 5; Letter Motion at

p. 2. Specifically, ████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

███████████████

Dissatisfied with this result, Mullen now argues ████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████  This argument fails for two reasons.

*First*, the parties clearly and unmistakably granted the Arbitrator the power to determine arbitrability. The law is uniform: a broad arbitration clause coupled with incorporation of arbitration provider rules (such as AAA Rules) that give the arbitrator power to decide arbitrability means that issues of arbitrability "are for the arbitration tribunal to determine." *Contec Corp. v. Remote Sol., Co., Ltd.*, 398 F.3d 205, 208 (2d Cir. 2005); *Nortek Inc. v. ITT LLC*, 21-CV-03999, 2022 WL 656896, at *5 (S.D.N.Y. Mar. 4, 2022); *Life Receivables Tr. v. Goshawk Syndicate 102*

*at Lloyd's*, 66 A.D.3d 495, 496 (1st Dep't 2009), *aff'd*, 14 N.Y.3d 850 (2010); *see also Zachariou v. Manios*, 68 A.D.3d 539, 539 (1st Dep't 2009).

Here, that standard is amply met.  The relevant arbitration clause is in the SPA.  It broadly requires that "[*a*]*ll disputes*, controversies or claims between the Parties *arising out* of or *in connection* with this agreement . . . shall be finally resolved and settled *under the Rules of Arbitration of the American Arbitration Association*[.]"  Confirmation Action, Dkt. 5 (the "Cheney Decl."), Ex. 2 (SPA) at § 9.02 (emphasis added).   And those rules include AAA Commercial Arbitration Rule 7: "the arbitrator shall have the power to rule on his or her own jurisdiction," including the "scope" of an arbitration clause and the "arbitrability of any claim or counterclaim."[2] And the Arbitrator ███████████████████████████████████████████████ ███████████████████████████████████████████████████████████ ████████

In short, the parties agreed that the Arbitrator—not the Court—had the power to determine whether any particular dispute, controversy or claim arose out of, or was in connection with, the SPA.  Mullen itself acknowledged the Arbitrator's ability to decide arbitrability when it ███████ ████████████████████████████████████████████████████ ███ █████████████████████████████████████████████████████████ ██████████████; Mullen is not entitled to, and should not be given, a second bite at the apple.

*Second*, Mullen's request for this Court to decide the arbitrability of the Warrant claims now—after years of arbitration, and without ever having requested a stay of the Arbitration—is untimely and waived.  Under the FAA, "the proper procedure for a party to challenge whether it

---

[2]    The parties agreed to apply AAA's Commercial Arbitration Rules in effect as of October 1, 2013 (the "AAA Rules"), to the Arbitration.  Interim Award App. ¶ 22.

is subject to an arbitration agreement is to move the district court for a stay of arbitration." *Halley Optical Corp. v. Jagar Int'l Mktg. Corp.*, 752 F. Supp. 638, 639 (S.D.N.Y. 1990) (finding that party waived objection to arbitrability, even though it contested arbitrability in the arbitration, because it failed to seek a stay of the arbitration); *In re Arb. between Halcot Navigation Ltd. P'ship & Stolt-Nielsen Transp. Grp.*, 491 F. Supp. 2d 413, 419 (S.D.N.Y. 2007) (noting waiver of objection to arbitrability where party failed to proceed in court or move "for a stay of arbitration"). Mullen has <u>never</u> sought a stay of the Arbitration;[3] accordingly, any objection it might have had to arbitrability of the Warrant claims has long been waived. *See Halley Optical Corp.*, 752 F. Supp. at 639–40. "To find otherwise would allow a party to participate in an arbitration, with the assurance that if it loses it may later challenge whether it had ever agreed to arbitration. Such a result is contrary to the clear policy favoring arbitration." *Id.*

> 2. Even If This Court Were to Evaluate Arbitrability, It Should Conclude That The Warrant Claims Were Arbitrable

Even if the Court decides that the Arbitrator's conclusion on arbitrability is not binding, and takes up the issue of arbitrability *de novo*, it should find that the Warrant was within the scope of the Arbitration for at least two reasons, both of which were already articulated in GEM's September 27, 2022 Letter to the Arbitrator. *See* Rescission Action, Dkt. 26-6.

> a. Mullen Waived Its Right To Object To Arbitrability Of The Warrant By Fully Participating In The Arbitration, Including On Issues Related To The Warrant

Mullen has waived it procedural objection—i.e., *who* decides arbitrability—as described above. And it has also waived its substantive objection to arbitrability of the Warrant claim by its

---

[3] This is true even as of today. In opposition to GEM's Interim Award Application, Mullen sought *only* a stay of enforcement of the Interim Measures Order. Confirmation Action, Dkt. 37 at p. 24. It has never sought a stay of the Arbitration generally or a stay of arbitration of the Warrant claims specifically. Indeed, Mullen did not even disclose the *existence* of an arbitration—much less the Arbitrator's rulings as to arbitrability—in its Complaint in the Rescission Action. Rescission Action, Dkt. 1.

extensive participating in the Arbitration, including on issues relating to the Warrant.  In other words, regardless of the language of the arbitration clause, Mullen by conduct consented to arbitration of the Parties' dispute.

Waiver occurs if a party "[f]ail[s] to maintain an objection to the arbitrator's jurisdiction throughout arbitration [] and participat[es] beyond disputing arbitrability, such as engaging in discovery, testifying, and submitting papers on the merits of the underlying dispute." *iPayment, Inc. v. 1st Americard, Inc.*, No. 15 CIV. 1904 (AT), 2016 WL 1544736, at *4 (S.D.N.Y. Mar. 25, 2016); *see also Merrill Lynch & Co. v. Optibase, Ltd.*, No. 03 Civ. 4191, 2003 WL 21507322, at *3 (S.D.N.Y. June 30, 2003) (finding waiver when the party "affirmatively sought adjudication of the merits of [the] claims in the arbitral forum and pursued discovery in that forum relating to [those claims]"); *Walter H. Jones v. Watts Inv. Co.*, No. 99 Civ. 10590, 2000 WL 546490, at *4 (S.D.N.Y. May 3, 2000) (finding waiver when the party "addressed the merits of [the] fraud claim in the arbitration proceedings and waited until the arbitrator decided the pending motion . . . before seeking a stay of arbitration").

From its very beginning in 2021, ███████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████████████████████████:[4]

---

[4]    At the March 21 Conference, counsel for Mullen asserted that Petitioners conflated Mullen Technologies, Inc. ("Mullen Technologies") and Mullen Automotive.  *Id.*, Ex. 9 at 42:11-16.  Not so. █████████████████████████



And none of the aforementioned acts of participation were made under objection or reservation of right.

Having participated fully in the Arbitration, ████████████████████ ████████████████ Mullen cannot now be heard to second guess the arbitrability of the Warrant. The Court was not wrong when it intuited that Mullen's present challenge seems like

---

████████████████████████████████████████████████
████

"sour grapes" from a party unhappy with the result of another proceeding.  Patchen Supp. Decl. Ex. 9 (March 21 Conf. Tr.) at 15:10-18.  That is exactly what Mullen's conduct amounts to, and exactly the type of wait-and-see, have-it-both-ways gamesmanship that is forbidden under the FAA.  *See Halley Optical Corp.*, 752 F. Supp. at 639–40.

b.    Warrant-Related Claims Are Within The Scope Of The Parties' Broad Agreement To Arbitrate

Even if the Court does not find that Mullen's objection to arbitrability of the Warrant has been waived, the objection lacks any merit.  The arbitration clause in the SPA covers the Warrant-related claims here for multiple reasons.

*First*, the clause itself is broad.  It expressly applies to "[*a*]*ll disputes*, controversies or claims between the Parties *arising out of or in connection with* this agreement[.]"  Cheney Decl. Ex. 2 (SPA) at § 9.02 (emphasis added).   Claims regarding the Warrant—which derives its material terms from Section 4.12 of the SPA—no doubt "arise out of or in connection with" the SPA, and thus fall within the broad scope of this clause.  If the Parties had intended otherwise, they could have drafted Section 9.02 to apply to all disputes *except for* disputes regarding the Warrant.  No such limitation was included because no such limitation exists.[5]

*Second*, all relevant aspects of the parties' specific Warrant-related dispute turn on resolution of issues in the SPA—issues that are undeniably within the scope of the arbitration clause.  In particular, the core of the parties' dispute was whether the underlying reverse merger between Mullen and Net Element satisfied the defined term "Reverse Merger Transaction" in the SPA.  Rescission Action, Dkt. 26-1 (Claimants' Amended Statement of Claim).  That term is

---

[5]    Mullen places much weight on the fact that the arbitration clause uses the term "this agreement" and does not use the term "Transaction Documents."  But the use of the small 'a' agreement actually cuts in *Petitioners'* favor.  The same small 'a' "agreement" is used in the very next clause—the integration clause—to denote the Parties' overall agreement.  *See* Cheney Decl. Ex. 2 (SPA) at § 9.03 ("This Agreement and the other Transaction Documents represent the ***entire agreement*** of the Parties with respect to the subject matter hereof and thereof") (emphasis added).

defined in the SPA—not the Warrant.  *See* Cheney Decl. Ex. 2 (SPA) at § 1.01(ss).  Resolution of that question necessarily impacted the Warrant because the warrant price, the number of warrant shares, and the term of the warrant all turn on the meaning of "Public Listing Date"—a term defined in the SPA and not the Warrant—which in turn is defined by the meaning of Reverse Merger Transaction.  *See id.*, Ex. 4 (Warrant) at Introduction ("capitalized terms used but not defined in this Warrant have the meanings given them in the Purchase Agreement"); *id.*, Ex. 2 (SPA) at §§ 1.01(nn) & (oo) (defining Public Listing Date to be, *inter alia*, the date on which "consummation of a Reverse Merger Transaction occurs").  The specific Warrant-related claims brought by Petitioners here arise out of, or are in connection with, the SPA.

*Third*, the precise issue raised in the Rescission Action—whether Petitioners were obligated to register as a broker-dealer—is directly implicated within the SPA.  Specifically, Section 3.03(g) states: "Purchaser represents, warrants and agrees that it is buying the Shares for investment purposes and not for distribution.  It is not registered as a broker-dealer with the Commission and is not required to be registered as a broker-dealer by virtue of the trader exception to the definition of dealer under the Exchange Act."  *Id.*, Ex. 2 (SPA) at § 3.03(g).  The Rescission Action implicates this representation and warranty.  Rescission Action, Dkt. 1 at ¶¶ 34, 53, 64.  It is, therefore, squarely within the Arbitration clause.

*Fourth*, and more broadly, the SPA is a master agreement that sets out the material terms of the other Transaction Documents, including the Warrant (*see* Cheney Decl. Ex. 2 (SPA) at § 4.12(b)), and that attaches the required Form of Warrant.  *See id.*, Ex. 2 (SPA) at Exhibit B, Form of Warrant.  The Warrant, in turn, expressly indicates that it is "issued in accordance with, and subject to, the terms and conditions of the [SPA]."  *See id.*, Ex. 4 (Warrant) at p. 1.  In other words, the Warrant cannot be read in isolation but must be construed by reference to, and "in accordance

with," the terms of the SPA.  Among the "terms and conditions of the [SPA]" that the Warrant is subject to is Section 9.02(b), the SPA's arbitration clause.  This clause is all-encompassing. Moreover, applying the SPA's overarching arbitration clause to the Warrant is consistent with case law interpreting transaction documents that are executed as a package; in these scenarios, courts routinely find that the arbitration provision or forum selection clause in the master agreement (such as the SPA here) controls. *See* Rescission Action, Dkt. 26-6 at pp. 5-6 (citing cases).

Despite all of this, Mullen argues that the Warrant is not subject to the SPA's arbitration clause pointing solely to the Warrant's separate venue clause.  Mullen's Letter Response at pp. 1-3.  But the existence of the venue clause does not defeat arbitrability.  "[T]he existence of a broad agreement to arbitrate creates a presumption of arbitrability which is only overcome if it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the dispute." *Kelso Enters. Ltd. v. A.P. Moller-Maersk*, 375 F. App'x 48, 50 (2d Cir. 2010) (unpublished).  And if agreements contain both (i) an arbitration provision and (ii) a separate forum selection provision, the provisions should be read as complementary unless the forum selection clause "specifically precludes arbitration." *Id*.  Moreover, when agreements with separate forum selection clauses were executed together (like the SPA and the Warrant), their forum provisions should be "read and interpreted together so as to not render either superfluous[.]" *See, e.g., Adar Bays, LLC v. Aim Expl., Inc*., 251 F. Supp. 3d 704, 709 (S.D.N.Y. 2017).  And any ambiguities as to the scope of the arbitration clause should be resolved in favor of arbitration. *Mastrobuono v. Shearson Lehman Hutton, Inc*., 514 U.S. 52, 62 (1995).

Here, the arbitration provision in the SPA and the Warrant's forum selection clause are easily harmonized, and the existence of a forum selection clause in the Warrant does not negate the parties' overarching agreement to arbitrate.  Importantly, unlike the other Transaction

Documents, the Warrant (an exhibit to the SPA) is freely assignable, in whole or in part.  *See* Cheney Decl. Ex. 4 (Warrant) at § 2(e).  Thus, it makes sense that the Warrant would contain a separate venue clause, which would apply to any assignee of the Warrant (a "Holder") who was not a party to the SPA, and thus who did not agree (like Petitioners did) to arbitrate "all disputes . . . arising out of or in connection with" the SPA.  *Compare id.*, Ex. 2 (SPA) at § 9.02(a) (arbitration clause applies to dispute "between the Parties") *with id.*, Ex. 4 (Warrant) at § 11 (venue clause applies to disputes between the "Issuer and the Holder" of the Warrant).  Critically, the venue clause in the Warrant does not "specifically preclude arbitration," and so the forum selection clause and arbitration clause must be read as complimentary. *Kelso Enters. Ltd.*, 375 F. App'x at 50.  As explained, this is easily done via GEM's reading.  By contrast, Mullen's approach would render the SPA's broad arbitration clause superfluous, and ignore the strong presumption of arbitrability that it creates.  *See Kelso Enters. Ltd*. 375 F. App'x at 50.[6]

*     *     *

The Warrant-related claims fall within the broad arbitration clause in the SPA.  ███ ███████████  The Court should so find.  And Mullen has waived any objection to the contrary.  The mandatory stay of the Rescission Action required by the FAA follows.

   ii. *Alternatively, The Court Should Exercise Its Discretion To Stay The Rescission Action*

Even when not mandatory, stays in favor of arbitration are "appropriate where [they] promote[] judicial economy, avoidance of confusion and possible inconsistent results." *Fasano v. Li*, No. 16 CIV. 8759 (KPF), 2023 WL 6292579, at *14 (S.D.N.Y. Sept. 27, 2023) (quotations

---

[6] At the March 21 Conference, Mullen did not contest that its naming of Mr. Brown in the Rescission Action did not impact the stay analysis.  As set out in GEM's Letter Motion, agents of a corporate party to an arbitration agreement are protected by the agreement.  Letter Motion at p. 3 (citing cases).

omitted).  Courts grant stays pending arbitration in cases where "there are issues common to the arbitration and the court proceeding" and where "those issues will be finally determined by the arbitration."  *Aurora Distributed Solar, LLC v. AKTOR, S.A.*, No. 17-CV-2009 (VEC), 2017 WL 11708413, at *2 (S.D.N.Y. June 8, 2017) (citing cases).  The Rescission Action undeniably involves "issues common to" the Arbitration, which have been fully and finally resolved in the Arbitration, and which have preclusive effect on Mullen.  Accordingly, to conserve judicial resources and to avoid confusion, the Court should stay the Rescission Action.

As was previously outlined in the Letter Motion, the Rescission Action seeks to re-litigate issues that were within the scope of the Arbitration, and resolved by the Arbitration, ███████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

███████████████████████████████████████████  Resultantly, both claim preclusion and issue preclusion bar Mullen from re-litigating the securities law claims in the Rescission Action. *See Lobban v. Cromwell Towers Apartments, LP*, 345 F. Supp. 3d 334, 344 (S.D.N.Y. 2018) ("Res judicata and collateral estoppel apply to issues resolved by arbitration"); *Jacobson v. Fireman's Fund Ins. Co.*, 111 F.3d 261, 267–68 (2d Cir. 1997) (same).[7]

---

[7]    A stay is particularly appropriate here because of the ████████████████████████████ There is no dispute that Mullen did not move to vacate the Partial Final Award by the three-month deadline in Section 12 of the FAA.  Rather, at the March 21 Conference, counsel for Mullen claimed that the three-month deadline did not apply to the Partial Final Award because it was a New York Convention Award.  Patchen Supp. Decl. Ex. 9 at 36:8-22.  That is wrong. *See Yusuf Ahmed Alghanim & Sons v. Toys "R" Us, Inc.*, 126 F.3d 15 (2d Cir. 1997) (holding that "domestic arbitral law, in this case the FAA, [applies] to a motion to set aside or vacate an arbitral award [that was rendered under the United States]"); *Gonsalvez v. Celebrity Cruises, Inc.*, 750 F.3d 1195, 1197 (11th Cir. 2013) (holding the "three-month limitations period" in Section 12 of the FAA "applies via the residual clause to any such actions brought under the Convention" and rejecting an argument substantially the same as made by Mullen at the March 21 Conference); Restatement (Third) U.S. Law of Int'l Comm. Arb. § 4.30, cmt.(a)(ii) ("An action to vacate a U.S. Convention award

12

Mullen suggests that its securities claims in the Rescission Action are not barred by claim or issue preclusion because (1) its assertion that the ███████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████ Both arguments fail.

*First*, claim preclusion applies regardless of whether the claim was previously raised as a claim, a counterclaim, or an affirmative defense. *Mademoiselle Knitwear, Inc. v. Liz Claiborne, Inc.*, No. 98 CIV. 3252 (HB), 1999 WL 377853, at *8 (S.D.N.Y. June 9, 1999) (dismissing claim based on claim preclusion and rejecting argument that claim preclusion did not apply to "a theory that was used purely defensively in the first action") (citing similar cases); *Cullen v. Paine Webber Group. Inc*., 689 F. Supp. 269, 279 (S.D.N.Y. 1988) (barring plaintiffs' claims that were asserted as a "defense or counterclaim" in earlier action); *accord Brown v. Felsen*, 442 U.S. 127, 131 (1979) ("Res judicata prevents litigation of all grounds for, or defenses to, recovery that were previously available to the parties, regardless of whether they were asserted or determined in the prior proceeding."). ███████████████████████████████████████████████████████ ██████████████████████████████████████████████

*Second*, during the Arbitration, ████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████

---

is subject to the three-month limitations period specified in § 12 of the FAA."); *M.I. Trading Ltd. v. Farstad Oil, Inc.*, No. 00 CIV 7120(RLC), 2001 WL 38282, at *3 n. 2 (S.D.N.Y. Jan. 16, 2001) ("Under § 12 of the FAA (which applies in this respect since it is not in conflict with the Convention), a motion to vacate must be made within 'three months after the award is filed or delivered.'"); *ABNL Ltd. v. Baker Hughes Process Sys.*, No. CV H-04-4662, 2005 WL 8164068, at *10 (S.D. Tex. May 16, 2005) (same, and applying the *Florasynth* rule to bar vacatur arguments from being raised in response to a petition to confirm).



*See Lobban*

*v. Cromwell Towers Apartments, LP*, 345 F. Supp. 3d 334, 344 (S.D.N.Y. 2018) (res judicata

barred "substantially identical" claims were raised during the arbitration).

. *See id.*; *Cox v.*

*Perfect Bldg. Maint. Corp.*, No. 16-CV-7474 (VEC), 2017 WL 3049547, at *5 (S.D.N.Y. July 18,

2017) ("Because [plaintiff's] claims in this action arise from the same set of circumstances that

was adjudicated at the arbitration, and she either did or could have arbitrated them, res judicata

bars her federal suit."); *Cullen v. Paine Webber Grp. Inc.*, 689 F. Supp. 269, 279 (S.D.N.Y.1988)

("Even though in the [earlier proceedings] plaintiffs did not raise all the claims presented in this

case, res judicata is nevertheless applicable because the plaintiffs could have raised in the [earlier]

proceedings every claim underlying their [current] RICO cause of action."); *Converse, Inc. v.*

*Norwood Venture Corp.*, No. 96 CIV. 3745, 1997 WL 742534, at *4 (S.D.N.Y. Dec. 1, 1997)

---

("[O]nce a claim is brought to a final conclusion, all other claims arising out of the same transaction or series of transactions are barred, even if based upon different theories or seeking a different remedy.").

In short, even if a stay were not mandatory, this Court should stay the Rescission Action as a matter of discretion. The claim in the Rescission Action ███████████████████████ ██████████████████████████████████████ and Mullen has forgone the ability to challenge that result. *Any* resources the Court dedicates to the Rescission Action are wasted resources. The Rescission Action should be stayed.

### B.     There Is No Basis To Stay Enforcement Of The Interim Measures Order; The Interim Measures Order Should Be Enforced Immediately

In opposition to GEM's Interim Award Application, Mullen argued that "enforcement of the Interim Measures Order should be stayed." Confirmation Action, Dkt. 37 at p. 24. There is no basis whatsoever for staying enforcement of the Interim Measures Order. Instead, the Interim Measures Order should be confirmed and enforced *immediately*, or else its intended protection will be rendered meaningless.

At the outset, it is unclear whether this Court can stay confirmation of the Interim Measures Order. The FAA provides that, unless the Court vacates, modifies, or corrects an award, the Court "must grant" confirmation. 9 U.S.C. § 9. A stay of an application for confirmation of an arbitral award is not one of the options provided in the statute.

Assuming this Court even has the power to stay, Mullen's claim for stay cites only generic case law addressing the standard for discretionary stay in light of related lawsuits. *See* Confirmation Action, Dkt. 37 at pp. 24-25.[9] But the Second Circuit has a more specific test—and

---

[9]     Notably, Mullen's request for a stay of confirmation of the Interim Measures Order cuts strongly against its opposition to a stay of the Rescission Action. Mullen argues that the resolution of the Rescission Action bears on the

a much more stringent one—for staying enforcement of an arbitration award.  *See Europcar Italia, S.p.A. v. Maiellano Tours, Inc.*, 156 F.3d 310, 317 (2d Cir. 1998) ("*Europcar*").[10]  Tellingly, Mullen does not even mention this standard in its briefing.

In *Europcar*, the Second Circuit observed that "[a] stay of confirmation should not be lightly granted lest it encourage abusive tactics by the party that lost in arbitration."  *Id*. at 317. Applying the *Europcar* standard, District Courts in this Circuit have routinely rejected motions to stay confirmation proceedings pending the outcome of a separate challenge to the award— especially where (i) the losing party in the arbitration initiated the challenge, (ii) the challenge is at a preliminary stage, and (iii) the party seeking confirmation of the award does not yet have "suitable security" to protect the award during the pendency of a stay.  *Iraq Telecom Ltd. v. IBL Bank S.A.L.*, 597 F. Supp. 3d 657, 668 (S.D.N.Y. 2022), *aff'd*, No. 22-832, 2023 WL 2961739 (2d Cir. Apr. 17, 2023) (observing that party seeking stay was "simply seeking to delay the inevitable confirmation"); *In re Arb. Between Interdigital Commun. Corp. and Samsung Elecs. Co., Ltd*., 528 F. Supp. 2d 340, 360 (S.D.N.Y. 2007) (inferring that losing party intended "at least in part, to prolong the resolution" of the confirmation proceedings).

Here, because ███████████████████████████ (ii) Mullen initiated the Rescission Action (and did so only recently, █████████████████████████████████ ███████, (iii) the Rescission Action is in a preliminary stage, and (iv) GEM does not yet have "suitable security" to protect the Interim Award, there is every reason to deny Mullen's request for

Arbitration.  But when there is such interrelatedness, it is the litigation that is usually stayed.  *Fasano v. Li*, 2023 WL 6292579, at *14 & nn.8 (citing cases).

[10]    *Europcar* arose in the context of a request that the United States court (sitting in *secondary* jurisdiction) stay enforcement of an arbitration award issued outside the United States pending resolution of proceedings in Italy (where the award was issued) to vacate the award.  To the extent the Court has power to stay confirmation proceedings pending a separate, later filed lawsuit, the *Europcar* factors are the appropriate ones to apply.

a stay.  *See e.g. Iraq Telecom Ltd.,* 597 F. Supp. 3d at 668; *In re Arb.*, 528 F. Supp. 2d at 360.  In fact, even if a stay was warranted under *Europcar* (it is not), the *Europcar* test *requires* the Court to consider imposition of "suitable security" to offset the delay in enforcement.  *Europcar* at 318.  But that is exactly what the Interim Measures Order *is*: an award designed to provide suitable security for a future award.  Mullen's stay request is hopelessly circular.

If the Court entertains Mullen's delay tactic, it could render the Interim Measures Order meaningless.  That would be exactly the opposite of the FAA's objective: swift confirmation of arbitration awards to protect the purpose of arbitration (the avoidance of prolonged litigation in Court).  *See e.g.*, *Hamilton v. Sirius Satellite Radio, Inc.*, 375 F. Supp. 2d 269, 273 (S.D.N.Y. 2005) ("limited review of arbitration decisions is necessary both to effectuate the parties' agreement to submit their disputes to arbitration and to avoid costly and protracted litigation about issues the arbitrators have already decided").  The purpose for the Arbitrator's issuance of the Interim Measures Order ███████████████████████████████████████████ ███████████████████████████████  To countenance a stay of enforcement of such an award is nonsensical, and would render the Interim Measures Order a dead letter.  The Court should confirm the Interim Measures Order immediately, and specifically order Mullen to comply with it.

## II.   THE COURT SHOULD CONFIRM THE INTERIM MEASURES ORDER AND ORDER ██████████████████████████████████

### A.   The Interim Measures Order Should Be Confirmed

For the reasons explained in the Interim Award Application, the Memorandum of Law in Support of the Interim Award Application (the "Interim Award Memo"), at the March 21 Conference, and below, the Interim Measures Order should be confirmed.  The Interim Measures Order is ripe for confirmation ██████████████████████████████ which the Arbitrator had the authority to issue under AAA Rule 37.  Petitioners have a statutory

right to an order confirming the Interim Measures Order under the New York Convention, which incorporates the Federal Arbitration Act, and the Court has the authority to—and should—confirm and enter judgment on the Interim Measures Order.  *See* Interim Award App. ¶¶ 35-42; Interim Award Memo at 5-6; *see also CE Int'l Res. Holdings LLC v. S.A. Minerals Ltd. P'ship*, No. 12 Civ. 8087, 2012 WL 6178236, at *4 (S.D.N.Y. Dec. 10, 2012) ("It is not the role of the courts to undermine the comprehensive grant of authority by prohibiting an arbitral security award that ensures a meaningful final award[.]") (quoting *Banco de Seguros del Estado v. Mutual Marine Offices, Inc.*, 344 F.3d 255 (2d Cir. 2003)).  In fact, Mullen agrees that the Court has the authority to confirm the Interim Measures Order once it is fully briefed and argued, which it will be as of the date of this filing.  *See* Patchen Supp. Decl. Ex. 9 (March 21 Conf. Tr.) at 39:5-13.

**B.    The Court Can And Should Order** ████████████████████

Courts in this Circuit, upon a petition to confirm an arbitration award, may order compliance with the arbitration award, including ordering a party to pay the amount they were directed to pay in the award.  *See Allied Int'l Union v. Tristar Patrol Servs., Inc.*, No. 06 Civ. 15515, 2007 WL 2845227, at *5 (S.D.N.Y. Sept. 26, 2007) (confirming arbitration award and ordering that "Respondent shall pay the amounts in items two through six in the remedies section of the Award"); *American Nursing Home v. Local 144 Hotel, Hosp., Nursing Home and Allied Services Union*, No. 89 Civ. 1704, 1992 WL 47553, at *5 (S.D.N.Y. Mar. 4, 1992) ("The awards are confirmed and the Employers are ordered to effectuate full compliance with them, including payment of the 1985 wage increase retroactive to July 15, 1985."); *see also Mutual Marine Office, Inc. v. Transfercom Ltd.*, No. 08 Civ. 10367, 2009 WL 1025965, at *4 (S.D.N.Y. Apr. 15, 2009) (confirming arbitration award and ordering that party comply with award by posting of letter of credit).

The Court not only has the authority to confirm the Interim Measures Order and enter judgment accordingly, but it may also order full compliance with the Interim Measures Order, including ███████████████████████████████████████████████████████

Because the Interim Measures Order ████████████████████████████████████████ ████████████ and that date has passed, Respondents are not in compliance with the Interim Measures Order as issued.  Given the finding of urgency in the Interim Measures Order, *see* Cheney Decl. Ex. 1 (Interim Measures Order), at ¶¶ 23-36, and that it has been nearly three weeks since the funds were ordered to be deposited pursuant to the Interim Measures Order, any further delay is prejudicial to Petitioners.  Nor could Respondents claim some need for additional time. They were ordered to be "ready, willing and fully able" ████████████████████████ on March 21, 2024.  Confirmation Action, Dkt. 44.  They were further ordered on March 21 to maintain the funds on hand.  Patchen Supp. Decl. Ex. 9 (March 21 Conf. Tr.) at 51:10-12, 52:5-8. Presumably, Mullen has not flouted this Court's Order and stands ready, willing and fully able █ ████████████████████ immediately upon the Court's order.

The Interim Measures Order held that ████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████ Consistent with the discussion at the March 21 Conference, ████████ ████████████████████████████████████████████████████████████████ ████████████ until the application to confirm the Partial Final Award and any application to confirm or vacate the final damages arbitration award are decided.[11]

---

[11]   This restriction should not apply to ████████████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████ Petitioners should not have to wait for any

**C.      There Is No Basis To Vacate The Interim Measures Order**

Under the New York Convention, under which the Interim Award Application was brought, the country in which a nondomestic arbitration award is made is said to have primary jurisdiction over the arbitration award.  *CBF Industria de Gusa S/A v. AMCI Holdings, Inc.*, 850 F.3d 58, 71 (2d Cir. 2017) (citation omitted).  The New York Convention, which is implemented by Chapter 2 of the FAA, specifically contemplates that the state in which, or under the law of which, an award is made, will be free to set aside or modify an award in accordance with its domestic arbitral law and its full panoply of express and implied grounds for relief.  *Id.*; N.Y. Convention, art. V(1)(e).  The FAA, 9 U.S.C. §§ 1-16, is the domestic arbitral law in the United States.  Under Section 9 of the FAA, a court "must grant" confirmation of an arbitration award unless the award is vacated, modified, or corrected as prescribed by the FAA.[12]  9 U.S.C. § 9. Section 10(a) of the FAA sets forth only four grounds to vacate: (1) "corruption, fraud, or undue means" in the procurement of the award; (2) "evident partiality or corruption in the arbitrators"; (3) misconduct by the arbitrators; or (4) if "the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made."  9 U.S.C. § 10(a)(1)-(4).

---

subsequent confirmation or vacatur proceedings to receive those separately ordered funds, as to which Mullen did not raise any court challenge.

[12]    Although the New York Convention and 9 U.S.C. § 207 set forth grounds to decline enforcement of an arbitral award, it appear that those apply to the enforcement process by which a district court acts under its secondary jurisdiction to recognize and enforce a foreign arbitral award, not where a court has primary jurisdiction to confirm (or vacate) a nondomestic award like the Interim Measures Order.  *See CBF Industria de Gusa S/A*, 850 F.3d at 73-75.  Thus, we will presume for purposes of this brief that 9 U.S.C. § 9 applies to confirmation of the Interim Measures Order.  However, if 9 U.S.C. § 207 does apply, the Court must still confirm the Interim Measures Order because Mullen does not come close to establishing any of the grounds for refusal or deferral of recognition or enforcement of the award set forth in Article V(1) of the New York Convention.

"'Confirmation of an arbitration award'" pursuant to the FAA "is 'a summary proceeding that merely makes what is already a final arbitration award a judgment of the court.'" *New York City District Council of Carpenters v. Nguyen Custom Woodworking LLC*, No. 18-cv-3970, 2018 WL 5919520, at *1 (S.D.N.Y. Nov. 13, 2018) (quoting *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 110 (2d Cir. 2006)).  Thus, a "party seeking to vacate an arbitration award under the FAA faces a formidable task." *Elwell v. Raymond James Fin. Servs.*, No. 22-cv-10125 (JGK), 2023 WL 5186275, at *7 (S.D.N.Y. Aug. 10, 2023).  Arbitration awards are "'subject to very limited review in order to avoid undermining the twin goals of arbitration, namely, settling disputes efficiently and avoiding long expensive litigation.'" *Fellus v. Sterne, Agee & Leach, Inc.*, 783 F. Supp. 2d 612, 618 (S.D.N.Y. 2011) (quoting *Rich v. Spartis*, 516 F.3d 75, 81 (2d Cir. 2008)).

As such, as the Supreme Court has stated, Section 9 "carries no hint of flexibility." *Hall Street Associates, LLC v. Mattel, Inc.*, 552 U.S. 576, 587 (2008).  "There is nothing malleable about 'must grant,' which unequivocally tells courts to grant confirmation in all cases, except when one of the 'prescribed' exceptions applies." *Id.*  Indeed, the "party petitioning a federal court to vacate an arbitral award bears the heavy burden of showing that the award falls within a very narrow set of circumstances delineated by statute and case law." *Wallace v. Buttar*, 378 F.3d 182, 189 (2d Cir. 2004) (internal citation omitted).  A court's review of an arbitration award is "narrowly circumscribed and highly deferential—indeed, among the most deferential in the law." *NFL Mgmt. Council v. NFL Players Ass'n*, 820 F.3d 527, 532 (2d Cir. 2016); *see Wallace*, 378 F.3d at 189 ("It is well established that courts must grant an arbitration panel's decision great deference." (internal quotation marks omitted)).

Because the Interim Measures Order ██████████████ this Court has primary jurisdiction over the Interim Measures Order, and the FAA's provisions apply.  And because no

basis exists to vacate the Interim Measures Order, this Court must confirm it.  In Respondents'
Memorandum of Law in Opposition to Petitioners' Application to Confirm Interim Measures
Arbitration Award and in Support of Respondents' Cross-Motion to Vacate Interim Measures
Arbitration Award and to Stay Application to Confirm (the "Motion to Vacate") [Confirmation
Action, Dkt. 37], Respondents make two primary arguments as to why the Interim Measures Order
should be vacated.  Both fail.

### i.  The Arbitrator Did Not Exceed His Powers Under The AAA Rules

Of the four grounds the FAA delineates to vacate an arbitration award, Respondents only
appear to raise one: "if the arbitrators exceeded their powers, or so imperfectly executed them that
a mutual, final, and definite award upon the subject matter submitted was not made."

Confirmation of an arbitration award is required so long as the arbitrator is "even arguably
construing or applying the [matter at hand] and acting within the scope of his authority[.]"  *NFL
Mgmt. Council*, 820 F.3d at 532 (quoting *United Paperworkers Int'l Union v. Misco, Inc.*, 484
U.S. 29, 38 (1987)).  An arbitration award "should be enforced, despite a court's disagreement
with it on the merits, if there is a barely colorable justification for the outcome reached."  *Landau
v. Eisenberg*, 922 F.3d 495, 498 (2d Cir. 2019) (internal quotation omitted).  A "barely colorable
justification" for an arbitration award exists if the arbitrator presents reasoning on which the award
"could have justifiably rested," even if it is "based on an erroneous interpretation of the law."
*Willemijn Houdstermaatschappij, BV v. Standard Microsystems Corp.*, 103 F.3d 9, 13-14 (2d Cir.
1997).

The Court may not reweigh the evidence in its summary review of an arbitration award.  In
no event can a disagreement with the arbitrator's "assessment of the evidence and its conclusions
[be] sufficient to vacate an arbitration award."  *Polin v. Kellwood Co.*, 103 F. Supp. 2d 238, 262
(S.D.N.Y. 2000); *see also Wallace*, 378 F.3d at 193 ("A federal court may not conduct a

reassessment of the evidentiary record…upon the principle that an arbitral award may be vacated when it runs contrary to the strong evidence favoring the party bringing the motion to vacate the award" (internal quotations omitted)).  When it comes to the application of law to the facts, the arbitrator's conclusions cannot be revisited.  *See Trustees of the New York City Dist. Council of Carpenters Pension Fund v. Harbor Island Contracting Inc.*, No. 14–cv–9507 (AJN), 2015 WL 5146093, at *2 (S.D.N.Y. Aug. 31, 2015).  Ultimately, even if the Court finds internal inconsistencies or contrary indicators in an arbitration award, that is "not grounds for vacatur." *Westerbeke Corp. v. Daihatsu Motor Co., Ltd.*, 304 F.3d 200, 211 (2d Cir. 2002); *see also Saint Mary Home, Inc. v. Service Employees Int'l Union, Dist. 1199*, 116 F.3d 41, 44 (2d Cir. 1997) (holding that "[i]nternal inconsistencies in the opinion are not grounds to vacate the award" since "the arbitrator explained his conclusions in terms that offer a colorable justification for the outcome reached" (internal quotations omitted)); *InterDigital Comm. Corp. v. Nokia Corp.*, 407 F. Supp. 2d 522, 530 n.5 (S.D.N.Y. 2005) (denying motion to vacate award and explaining that "internal inconsistencies within an arbitral judgment are not grounds for vacatur") (internal citation omitted).

Respondents argue that the Interim Measures Order should be vacated because the Arbitrator exceeded his powers under the AAA Rules.  Specifically, Respondents contend that a finding of "urgency" is a necessary condition for granting interim measures, but based on the Arbitrator's own factual findings, the need was not urgent, and the Interim Measures Order is not supported by a finding that serious injury was likely to occur prior to the issuance of a final award. *See* Motion to Vacate at 12-16.  None of these arguments are sufficient to meet Respondents' "heavy burden" to vacate the Interim Measures Order.  The Arbitrator clearly had the power to

issue the Interim Measures Order, and had much more than a "barely colorable justification" for doing so.

Rule 37 of the AAA Rules provides that the "arbitrator may take *whatever* interim measures he or she *deems necessary*, including injunctive relief and measures for the protection or conservation of property and disposition of perishable goods," and "[s]uch interim measures may take the form of an interim award, and the arbitrator may require security for the costs of such measures." (emphasis added).  Therefore, ███████████████████████████████ ██████, the Arbitrator did not exceed his powers.  In fact, it was squarely within his powers under the AAA Rules to issue an award like the Interim Measures Order, ███████████████ ███████████████████████████████████████████████████ ███████████████████████████████████████████████████ ███████████████████████████████████████████████████ ██████████████████████████████████

Further, contrary to what Respondents claim, while the Arbitrator cited the Born Treatise and the "urgency" factor cited in that treatise, "urgency" is not a requirement under AAA Rule 37, nor is it a requirement that relief be "urgently necessary before the close of the arbitral proceedings."  Motion to Vacate at 2, 12-13.  Urgency is merely a factor the Arbitrator considered in his analysis.  And even if "urgency" was a requirement (it is not), ████████████████ ███████████████████████████████████████████████████ ███████████████████████████████████████████████████ ███████████████████████████████████████████████████ ███████████████████████████████████████████████████ ███████████████████████████████████████████████████



Respondents themselves have admitted in this litigation that they have significant cash issues, further justifying the Arbitrator's finding of necessity and urgency.  Motion to Vacate at 16; Patchen Supp. Decl. Ex. 9 (March 21 Conf. Tr.) at 8:18-22.  And despite Respondents' complaints that the Interim Measures Order will "impose an immediate and substantial hardship on [Mullen Automotive],"

The Arbitrator provided far more than a "barely colorable justification" to issue the Interim Measures Order.  Respondents' argument is nothing more than a re-litigation of the merits of the Interim Measures Order, and an attempt to reweigh the evidence, which is not a basis to vacate an arbitration award.

### ii.     The Interim Measures Order Was Not Rendered In Manifest Disregard Of The Law

In their Motion to Vacate, Respondents also rely on a "judicially-created" exception of last resort: "manifest disregard of law."  *See Shenzhen Lanteng Cyber Technology Co. v. Amazon.com Services*, No. 1:23-cv-991-GHW, 2023 WL 6276691, at *7 (S.D.N.Y. Sept. 26, 2023); *see also Duferco Int'l Steel Trading v. T. Klaveness Shipping A/S*, 333 F.3d 383, 389 (2d Cir.2003)

(referring to manifest disregard as "doctrine of last resort" that is used only in "exceedingly rare instances where some egregious impropriety on the part of the arbitrators is apparent, but where none of the provisions of the FAA apply").[13]  The manifest disregard doctrine is "severely limited" in application and requires more than a simple error or a failure to understand or apply the law. *Duferco Int'l Steel Trading v. T. Klaveness Shipping A/S,* 333 F.3d 383, 389 (2d Cir. 2003); *see also Matter of Arbitration No. AAA13-161-0511-85 Under Grain Arbitration Rules*, 867 F.2d 130, 133 (2d Cir. 1989).  The movant must show both that (1) the arbitrator knew of a governing legal principle and refused to apply it, and (2) the law ignored by the arbitrator was well defined, explicit, and clearly applicable to the case. *Wallace*, 378 F. 3d at 189.  Proof that the arbitrator was aware of the governing legal principle but failed to apply it "is not enough … there must also be a showing of intent." *Westerbeke Corp.*, 304 F.3d at 217.  To constitute "manifest disregard," the error must have been so obvious that it is "capable of being readily and instantly perceived by the average person qualified to serve as an arbitrator." *Yusuf Ahmed Alghanim & Sons*, 126 F.3d at 24 (citation omitted).

This extremely high standard is not even close to being met here.  Respondents argue that "[d]espite being aware of this well-settled and controlling New York law [on joint and several liability], ███████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

---

[13]    In *Hall Street Associates, L.L.C. v. Mattel, Inc.*, the Supreme Court called into question whether the doctrine of manifest disregard was an independent ground to vacate an award or was encompassed by the recognized grounds for vacatur in the FAA.  552 U.S. 576, 585 (2008).  The 5th, 8th, and 11th Circuits have interpreted *Hall Street* as holding that manifest disregard is not an independent ground for vacatur.  Petitioners understand that the 2nd Circuit appears to have held to the contrary.  *See, e.g., T.Co Metals, LLC v. Dempsey Pipe & Supply, Inc.*, 592 F.3d 329, 339-340 (2010).  Being bound by Second Circuit precedent, Petitioners reserve, and do not waive, the argument that "manifest disregard of the law" is not a valid ground for vacatur under the FAA.

████████████████████████ According to Respondents, the Arbitrator ████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

This argument fails.

*First*, Respondents misunderstand what the Arbitrator found in the Interim Measures

Order. █████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████



[14]

*Second*, Respondents misstate the law.  AAA Rule 47(a) provides that "[t]he arbitrator may grant any remedy or relief that the arbitrator deems just and equitable."  It is well settled that the arbitral remedy need not be one that a court could award.  *See Sperry Int'l Trade, Inc. v. Gov't of Israel,* 689 F.2d 301, 306 (2d Cir. 1982) (stating that, under New York law, arbitrators are not constrained by the strict rules of the courts and may order relief that a court would not, or could not, grant).  "It is not the role of the courts to undermine the comprehensive grant of authority to arbitrators by prohibiting an arbitral security award that ensures a meaningful final award."  *Banco de Seguros del Estado v. Mut. Marine Off., Inc.*, 344 F.3d 255, 262 (2d Cir. 2003).  Indeed, "arbitrators are generally afforded greater flexibility in fashioning remedies than are courts."  *Benihana, Inc. v. Benihana of Tokyo, LLC*, 784 F.3d 887, 902 (2d Cir. 2015); *see Shasha v. Malkin*,

---

[14]   As noted above, this finding by the Arbitrator is final, binding, and conclusive because Mullen failed to timely move to vacate the Partial Final Award.  *See supra* note 7.

14-CV-9989(AT) (RWL), 2021 WL 11960275, at *7 (S.D.N.Y. Mar. 24, 2021) ("Arbitrators 'may grant equitable relief that a Court could not.'" (quoting *Sperry Int'l Trade, Inc. v. Gov't of Israel*, 532 F. Supp. 901, 905 (S.D.N.Y. 1982), *aff'd*, 689 F.2d 301 (2d Cir. 1982))); *see also* 1 M. Domke, Domke on Commercial Arbitration § 35:1 (3d ed. 2003) ("Limited only by the broad concepts of equity and justice, an arbitrator has a plethora of remedies, both legal and equitable, to choose from in structuring a remedy.").  Thus, given the broad arbitral remedial powers, there could not possibly be a manifest disregard of the law if the Arbitrator were to find Mullen Automotive liable for some (or all) of the ultimate damage award, especially given the unique factual circumstances involved in this matter.  *See* Patchen Decl. Ex. 9 (March 21 Conf. Tr.) at 43:13-45:13 (explaining how Mullen Automotive came to be the reverse merging party).  *A fortiari*, there cannot be a manifest disregard of the law with respect to an Interim Measures Order █████████████ ███████████████████████████████████████████████████████████ ████████████████████████████████████

## CONCLUSION

Petitioners respectfully request that this Court issue an order staying the Rescission Action. Petitioners further request that the Court issue an order (1) confirming the Interim Measures Order; (2) ordering that Respondents ███████████████████████████████; (3) requiring Mullen to file proof (under seal if warranted) as to ████████████████████████████ ██████████████████████████ and (4) requiring Mullen to file further proof of the completion ███████████████

Dated: March 29, 2024

WILLKIE FARR & GALLAGHER LLP

*/s/ Jonathan A. Patchen*
Jonathan A. Patchen (admitted pro hac vice)
333 Bush Street
San Francisco, California 94104
(415) 858-7594
(415) 858-7418
jpatchen@willkie.com

Madeleine Tayer
Justin Garbacz
787 Seventh Avenue
New York, New York 10019
(212) 728-8914
(212) 728-8801
mtayer@willkie.com
jgarbacz@willkie.com

*Attorneys for Petitioners GEM Yield Bahamas*
*Limited and GEM Global Yield LLC SCS, and for*
*Defendants GEM Yield Bahamas Limited, GEM*
*Global Yield LLC SCS, and Christopher Brown in*
*Related Case No. 1:23-cv-11268-KPF*

## CERTIFICATE OF SERVICE

I hereby certify that on March 29, 2024, I caused the foregoing Petitioners' Brief in Further Support of Application to Confirm and Enter Judgment on Interim Measures Arbitration Award and Request to Stay Related Action to be served on the following counsel for Respondents via email.

David K. Momborquette
MCDERMOTT WILL & EMERY LLP
One Vanderbilt Avenue
New York, New York 10017
(212) 547-5400
dmomborquette@mwe.com

William L. Miltner
MILTNER & MENCK, APC
402 West Broadway, Suite 960
San Diego, California 92101
(619) 615-5333
Bill@miltnerlaw.com

Waleed Amer, Esq.
Mark R. Basile, Esq.
390 N. Broadway, Suite 140
Jericho, New York 11753
Tel.: (516) 455-1500
Fax: (631) 498-0478
Email: waleed@thebasilelawfirm.com
mark@thebasilelawfirm.com

*/s/ Jonathan A. Patchen*

Jonathan A. Patchen