**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| GEM YIELD BAHAMAS LIMITED and GEM GLOBAL YIELD LLC SCS,<br><br>    Petitioners,<br><br>              vs.<br><br>MULLEN TECHNOLOGIES, INC. and MULLEN AUTOMOTIVE, INC.,<br><br>    Respondents. | Case No. 1:24-cv-01120-KPF<br><br><br><br>Hon. Katherine Polk Failla |

## MEMORANDUM OF LAW IN SUPPORT OF PETITIONERS' MOTION FOR SUMMARY JUDGMENT

WILLKIE FARR & GALLAGHER LLP
Jonathan A. Patchen (admitted *pro hac vice*)
333 Bush Street
San Francisco, California  94104
(415) 858-7594
(415) 858-7418
jpatchen@willkie.com

Madeleine Tayer
Justin Garbacz
787 Seventh Avenue
New York, New York  10019
(212) 782-8914
(212) 728-8801
mtayer@willkie.com
jgarbacz@willkie.com

*Attorneys for Petitioners GEM Yield Bahamas*
*Limited and GEM Global Yield LLC SCS*

## **TABLE OF CONTENTS**

JURISDICITON AND VENUE ................................................................................................1

LEGAL STANDARD............................................................................................................1

SUMMARY OF RELEVANT BACKGROUND .........................................................................2

ARGUMENT .....................................................................................................................4

      I.      THE COURT SHOULD CONFIRM THE INTERIM MEASURES
           ORDER AND █████████████████████████████
           ██████████ ......................................................................4

           A.     The Interim Measures Order Should Be Confirmed...................................4

           B.     There Is No Basis To Vacate The Interim Measures Order........................6

                  i.     The Arbitrator Did Not Exceed His Powers
                      Under The AAA Rules......................................................7

                  ii.    The Interim Measures Order Was Not Rendered
                      In Manifest Disregard Of The Law.................................10

           C.     The Court Can And Should Order ████████████████
           ████████ ..........................................................................14

CONCLUSION....................................................................................................................15

<u>**TABLE OF AUTHORITIES**</u>

**Page(s)**

**Cases**

*Allied Int'l Union v. Tristar Patrol Servs., Inc.*,
No. 06 Civ. 15515, 2007 WL 2845227 (S.D.N.Y. Sept. 26, 2007) .........................................14

*American Nursing Home v. Local 144 Hotel, Hosp., Nursing Home and Allied
Services Union*,
No. 89 Civ. 1704, 1992 WL 47553 (S.D.N.Y. Mar. 4, 1992) ("The awards are
confirmed and the Employers are ordered to effectuate full compliance with
them, including payment of the 1985 wage increase retroactive to July 15,
1985.") ...................................................................................................................................14

*Matter of Arbitration No. AAA13-161-0511-85 Under Grain Arbitration Rules*,
867 F.2d 130 (2d Cir. 1989).....................................................................................................11

*Banco de Seguros del Estado v. Mutual Marine Offices, Inc.*,
344 F.3d 255 (2d Cir. 2003)......................................................................................................10

*Benihana, Inc. v. Benihana of Tokyo, LLC*,
784 F.3d 887 (2d Cir. 2015)......................................................................................................14

*CBF Industria de Gusa S/A v. AMCI Holdings, Inc.*,
850 F.3d 58 (2d Cir. 2017)..........................................................................................................5

*CE Intern. Resources Holdings LLC v. S.A. Minerals Ltd. P'ship*,
No. 12 Civ. 8087(CM), 2012 WL 6178236 (S.D.N.Y. Dec. 10, 2012).................................2, 4

*D.H. Blair & Co., Inc. v. Gottdiener*,
462 F.3d 95 (2d Cir. 2006)......................................................................................................1, 2

*Duferco Int'l Steel Trading v. T. Klaveness Shipping A/S*,
333 F.3d 383 (2d Cir. 2003)......................................................................................................11

*Elwell v. Raymond James Fin. Servs.*,
No. 22-cv-10125 (JGK), 2023 WL 5186275 (S.D.N.Y. Aug. 10, 2023).................................6

*Fellus v. Sterne, Agee & Leach, Inc.*,
783 F. Supp. 2d 612 (S.D.N.Y. 2011).......................................................................................6

*GEM Yield Bahamas Limited and GEM Global Yield LLC SCS v. Mullen
Technologies, Inc. and Mullen Automotive, Inc.*,
AAA Case No. 01-21-0016- 7001 ..................................................................................... *passim*

*Hall Street Associates, LLC v. Mattel, Inc.*,
  552 U.S. 576 (2008) .................................................................................5, 6, 11

*InterDigital Comm. Corp. v. Nokia Corp.*,
  407 F. Supp. 2d 522 (S.D.N.Y. 2005) ..........................................................8

*Landau v. Eisenberg*,
  922 F.3d 495 (2d Cir. 2019) .........................................................................7

*NFL Mgmt. Council v. NFL Players Ass'n*,
  820 F.3d 527 (2d Cir. 2016) .........................................................................7

*Nobilis Fragrances GmbH v. Freeze 24-7 Int'l LLC*,
  No. 10cv5438 (DAB), 2010 WL 4237850 (S.D.N.Y. Oct. 12, 2010) .........2

*Polin v. Kellwood Co.*,
  103 F. Supp. 2d 238 (S.D.N.Y. 2000) ...........................................................7

*Primex Plastics Corp. v. TriEnda LLC*,
  No. 13cv321 (PAE), 2013 WL 1335633 (S.D.N.Y. Apr. 3, 2013) ...............2

*Saint Mary Home, Inc. v. Service Employees Int'l Union, Dist. 1199*,
  116 F.3d 41 (2d Cir. 1997) ...........................................................................8

*Shasha v. Malkin*,
  14-CV-9989(AT) (RWL), 2021 WL 11960275 (S.D.N.Y. Mar. 24, 2021) ............................14

*Shenzhen Lanteng Cyber Technology Co. v. Amazon.com Services*,
  No. 1:23-cv-991-GHW, 2023 WL 6276691 (S.D.N.Y. Sept. 26, 2023) ..............10

*Sperry Int'l Trade, Inc. v. Gov't of Israel*,
  689 F.2d 301 (2d Cir. 1982) .........................................................................13

*T.Co Metals, LLC v. Dempsey Pipe & Supply, Inc.*,
  592 F.3d 329 (2010) .....................................................................................11

*Trustees of the New York City Dist. Council of Carpenters Pension Fund v. Harbor Island Contracting Inc.*,
  No. 14–cv–9507 (AJN), 2015 WL 5146093 (S.D.N.Y. Aug. 31, 2015) ..................8

*Wallace v. Buttar*,
  378 F.3d 182 (2d Cir. 2004) ..............................................................6, 7, 8, 11

*Westerbeke Corp. v. Daihatsu Motor Co., Ltd.*,
  304 F.3d 200 (2d Cir. 2002) ..............................................................8, 11, 12

*Willemijn Houdstermaatschappij, BV v. Standard Microsystems Corp.*,
  103 F.3d 9 (2d Cir. 1997) .............................................................................7

iii

*Yonir Techs v. Duration Sys.*,
    244 F. Supp. 2d 195 (S.D.N.Y. 2002)......................................................................................2

**Statutes**

9 U.S.C. § 9 ..............................................................................................................................5

9 U.S.C. § 10(a)(1)-(4)..............................................................................................................6

9 U.S.C. § 203 ..........................................................................................................................1

9 U.S.C. § 204 ..........................................................................................................................1

9 U.S.C. § 207 ..........................................................................................................................5

Petitioners GEM Yield Bahamas Limited and GEM Global Yield LLC SCS (collectively, "GEM" or "Petitioners") respectfully submit this Memorandum of Law in support of their Motion for Summary Judgment on their Application to Confirm and Enter Judgment on the interim measures nondomestic arbitration award issued on January 24, 2024 (the "Interim Measures Order") by Arbitrator Mark C. Morril in an arbitration proceeding between Petitioners and Respondents Mullen Technologies, Inc. ("MTI") and Mullen Automotive, Inc. ("MAI" and together with MTI, "Mullen" or "Respondents"), entitled *GEM Yield Bahamas Limited and GEM Global Yield LLC SCS v. Mullen Technologies, Inc. and Mullen Automotive, Inc.*, AAA Case No. 01-21-0016- 7001 (the "Arbitration").   Petitioners respectfully request that this Court grant Petitioners' Motion for Summary Judgment, confirm the Interim Measures Order, and expressly order Respondents to ███████████████████████████████████████ ███████████████████████████████████████████████████████ ████████████

## JURISDICITON AND VENUE

This Court has original jurisdiction over this action pursuant to 9 U.S.C. § 203, in that this is a civil action seeking confirmation of an award rendered in an arbitration falling under the New York Convention on Recognition and Enforcement of Foreign Arbitral Awards.

Venue is proper in this judicial district pursuant to 9 U.S.C. § 204, because the parties agreed to arbitration in New York City.

## LEGAL STANDARD

In the Second Circuit, a petition to confirm an arbitration award is "treated as akin to a motion for summary judgment." *D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95, 109 (2d Cir. 2006). Confirmation of an arbitration award is generally "a summary proceeding" that merely converts the arbitral into a court judgment and "the court must grant the award unless the award is vacated,

modified, or corrected." *D.H. Blair & Co.,* 462 F.3d at 110 (internal quotation marks omitted, quoting 9 U.S.C. § 9). A party moving for confirmation easily satisfies its summary judgment burden by providing proof of agreement to arbitrate and the resultant arbitral award. *See, e.g., Primex Plastics Corp. v. TriEnda LLC*, No. 13cv321 (PAE), 2013 WL 1335633, at *3 (S.D.N.Y. Apr. 3, 2013) (confirming award based on submission of agreement containing arbitration clause, arbitration demand, and final award); *Nobilis Fragrances GmbH v. Freeze 24-7 Int'l LLC*, No. 10cv5438 (DAB), 2010 WL 4237850, at *1 (S.D.N.Y. Oct. 12, 2010) (finding that petition to confirm arbitration award was adequately supported by copies of arbitration agreement and final award). Such evidence "resolve[s] many of the merits or at least command judicial deference." *D.H. Blair & Co.*, 462 F.3d at 109.

Although confirmation proceedings typically arise in the context of final arbitration awards, courts have the power to confirm certain interlocutory arbitral awards. Such confirmable interlocutory awards include awards of interim relief, such as security awards. *See CE Intern. Resources Holdings LLC v. S.A. Minerals Ltd. P'ship*, No. 12 Civ. 8087(CM), 2012 WL 6178236, at *2 (S.D.N.Y. Dec. 10, 2012) (granting petitioner's application for confirmation of interim arbitral award requiring respondents to post security in the amount of $10 million); *Yonir Techs v. Duration Sys.,* 244 F. Supp. 2d 195, 205 (S.D.N.Y. 2002) ("[T]emporary equitable awards to preserve assets are considered final arbitral awards subject to judicial review.").

## SUMMARY OF RELEVANT BACKGROUND

The material facts necessary for this Court to grant Petitioners' Motion for Summary Judgment and to confirm the Interim Measures Order are undisputed, and are outlined in the Parties' Joint Rule 56.1 Statement of Undisputed Material Fact (the "JSMF"), and Joint Appendix of Exhibits (the "App.") which are being filed simultaneously herewith. To summarize:

On January 4, 2021, GEM and MTI executed a Share Purchase Agreement, a Registration Rights Agreement, and a Warrant.  JSMF ¶ 7.  The Share Purchase Agreement contained a broad arbitration clause, applying to "[a]ll disputes, controversies, or claims between the Parties arising out of or in connection with this agreement[.]"  *Id*. ¶ 8

In September of 2021, Petitioners filed an Arbitration Demand and Statement of Claim, naming MTI as Respondent, initiating the Arbitration.  JSMF ¶ 12.  In January of 2022, with the Arbitrator's consent, Petitioners filed an Amended Statement of Claim, adding MAI as a Respondent.  *Id*. ¶ 18.  On February 1, 2022, Respondents MTI and MAI collectively filed an Answer to Petitioners' Amended Statement of Claim.  *Id*. ¶ 19.  On February 6, 2022, the Arbitrator issued Procedural Order No. 3, amending the caption of the Arbitration to reflect the addition of MAI as a Respondent.  *Id*. ¶ 20.

On November 17, 2023, the Arbitrator issued a Partial Final Award on Liability.  App. Ex. 11 (the "PFA").  The PFA ████████████████████████████████████████
████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████

In December 15, 2023, after requesting and being granted leave, Petitioners submitted a second application for interim measures.  JSMF ¶¶ 28-30.  On December 29, 2023, Respondents submitted a written opposition.  *Id*. ¶ 31.  On January 24, 2024, the Arbitrator issued the Interim

---

[1]   This Court's Order staying Respondents' belated federal court action, Dkt. 56, so confirms arbitrability.

Measures Order.  *Id.* ¶ 32; App. Ex. 19 (the "IMO").  Among other things, the Arbitrator found that "███████████████████████████████████████████████████████████

████████████████████████████████████████████████████"  IMO ¶ 64

(emphasis added).  As to apportionment between Respondents MAI and MTI, the Arbitrator found:

"████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████

## **ARGUMENT**

## I.  **THE COURT SHOULD CONFIRM THE INTERIM MEASURES ORDER AND**
███████████████████████████████████████████████[2]

### A.  **The Interim Measures Order Should Be Confirmed**

The Interim Measures Order is ripe for confirmation as a security award of temporary

equitable relief to preserve assets, which the Arbitrator had the authority to issue under AAA Rule

37.  Petitioners have a statutory right to an order confirming the Interim Measures Order under the

New York Convention, which incorporates the Federal Arbitration Act, and the Court has the

authority to—and should—confirm and enter judgment on the Interim Measures Order.  *See*

Interim Award Application ¶¶ 35-42; Interim Award Memo at 5-6; *see also CE Int'l Res. Holdings*

---

[2]    In addition to the arguments outline herein, Petitioners also refer the Court to the Interim Award Application (Dkt. 1), the Memorandum of Law in Support of the Interim Award Application (Dkt. 6, the "Interim Award Memo"), the transcript of the March 21 Conference (App. Ex. 20), and Petitioners' Supplemental Brief submitted on March 29 (Dkt. 50).

*LLC v. S.A. Minerals Ltd. P'ship*, No. 12 Civ. 8087, 2012 WL 6178236, at *4 (S.D.N.Y. Dec. 10, 2012) ("It is not the role of the courts to undermine the comprehensive grant of authority by prohibiting an arbitral security award that ensures a meaningful final award[.]") (quoting *Banco de Seguros del Estado v. Mutual Marine Offices, Inc.*, 344 F.3d 255 (2d Cir. 2003)).  In fact, Mullen agrees that the Court has the authority to confirm the Interim Measures Order once it is fully briefed and argued, which it will be as of May 6th.  *See* App. Ex. 20 (March 21 Conf. Tr.) at 39:5-13.

Under the New York Convention, under which the Interim Award Application was brought, the country in which a nondomestic arbitration award is made is said to have primary jurisdiction over the arbitration award.  *CBF Industria de Gusa S/A v. AMCI Holdings, Inc.*, 850 F.3d 58, 71 (2d Cir. 2017) (citation omitted).  The New York Convention, which is implemented by Chapter 2 of the FAA, specifically contemplates that the state in which, or under the law of which, an award is made, will apply its domestic arbitral law to such awards.  *Id.*; N.Y. Convention, art. V(1)(e).  The FAA, 9 U.S.C. §§ 1-16, is the domestic arbitral law in the United States.  Under the FAA, a court "must grant" confirmation of an arbitration award unless the award is vacated, modified, or corrected as prescribed by the FAA.[3]  9 U.S.C. § 9.  As the Supreme Court has stated, Section 9 "carries no hint of flexibility." *Hall Street Associates, LLC v. Mattel, Inc.*, 552 U.S. 576, 587 (2008).  "There is nothing malleable about 'must grant,' which unequivocally tells courts to

---

[3]    Although the New York Convention and 9 U.S.C. § 207 set forth grounds to decline enforcement of an arbitral award, it appear that those apply to the enforcement process by which a district court acts under its secondary jurisdiction to recognize and enforce a foreign arbitral award, not where a court has primary jurisdiction to confirm (or vacate) a nondomestic award like the Interim Measures Order.  *See CBF Industria de Gusa S/A*, 850 F.3d at 73-75.  Thus, we will presume for purposes of this brief that 9 U.S.C. § 9 applies to confirmation of the Interim Measures Order.  However, if 9 U.S.C. § 207 does apply, the Court must still confirm the Interim Measures Order because Respondents do not come close to establishing any of the grounds for refusal or deferral of recognition or enforcement of the award set forth in Article V(1) of the New York Convention.

grant confirmation in all cases, except when one of the 'prescribed' exceptions applies." *Id.*

Section 10(a) of the FAA sets forth only four grounds to vacate: (1) "corruption, fraud, or undue means" in the procurement of the award; (2) "evident partiality or corruption in the arbitrators"; (3) misconduct by the arbitrators; or (4) if "the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made."  9 U.S.C. § 10(a)(1)-(4).

Because the Interim Measures Order was issued in New York, this Court has primary jurisdiction over the Interim Measures Order, and the FAA's provisions apply.  And because no basis exists to vacate the Interim Measures Order, this Court must confirm it.

### B.     There Is No Basis To Vacate The Interim Measures Order

Respondents seeks to avoid confirmation by asking the Court to vacate the IMO.[4]  Thus, a "party seeking to vacate an arbitration award under the FAA faces a formidable task." *Elwell v. Raymond James Fin. Servs.*, No. 22-cv-10125 (JGK), 2023 WL 5186275, at *7 (S.D.N.Y. Aug. 10, 2023).  Arbitration awards are "'subject to very limited review in order to avoid undermining the twin goals of arbitration, namely, settling disputes efficiently and avoiding long expensive litigation.'" *Fellus v. Sterne, Agee & Leach, Inc.*, 783 F. Supp. 2d 612, 618 (S.D.N.Y. 2011) (quoting *Rich v. Spartis*, 516 F.3d 75, 81 (2d Cir. 2008)).  Indeed, the "party petitioning a federal court to vacate an arbitral award bears the heavy burden of showing that the award falls within a very narrow set of circumstances delineated by statute and case law." *Wallace v. Buttar*, 378 F.3d 182, 189 (2d Cir. 2004) (internal citation omitted).  A court's review of an arbitration award is "narrowly circumscribed and highly deferential—indeed, among the most deferential in the law."

---

[4]     Respondents also asked the Court to refrain from confirming the IMO pending resolution of the belated Federal Court action.  Given this Court's order staying that action in favor of the Arbitration (Dkt. 56), there is obviously now no merit to Respondents' request.

*NFL Mgmt. Council v. NFL Players Ass'n*, 820 F.3d 527, 532 (2d Cir. 2016); *see Wallace*, 378 F.3d at 189 ("It is well established that courts must grant an arbitration panel's decision great deference." (internal quotation marks omitted)).

In Respondents' Memorandum of Law in Opposition to Petitioners' Application to Confirm Interim Measures Arbitration Award and in Support of Respondents' Cross-Motion to Vacate Interim Measures Arbitration Award and to Stay Application to Confirm (the "Motion to Vacate") (Dkt. 37), Respondents make two arguments as to why the Interim Measures Order should be vacated.  Both fall well short of the standard to avoid confirmation.

### i.    The Arbitrator Did Not Exceed His Powers Under The AAA Rules

Of the four grounds the FAA delineates to vacate an arbitration award, Respondents only appear to raise one: that the Arbitrator "exceeded" his powers.  Motion to Vacate p. 11-17.

A claim that the arbitrator exceeded his or her power must be rejected so long as the arbitrator was "even arguably construing or applying the [matter at hand] and acting within the scope of his authority[.]"  *NFL Mgmt. Council*, 820 F.3d at 532 (quoting *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 38 (1987)).  An arbitration award "should be enforced, despite a court's disagreement with it on the merits, if there is a barely colorable justification for the outcome reached."  *Landau v. Eisenberg*, 922 F.3d 495, 498 (2d Cir. 2019) (internal quotation omitted).  A "barely colorable justification" for an arbitration award exists if the arbitrator presents reasoning on which the award "could have justifiably rested," even if it is "based on an erroneous interpretation of the law."  *Willemijn Houdstermaatschappij, BV v. Standard Microsystems Corp.*, 103 F.3d 9, 13-14 (2d Cir. 1997).

The Court may not reweigh the evidence in its summary review of an arbitration award.  In no event can a disagreement with the arbitrator's "assessment of the evidence and its conclusions [be] sufficient to vacate an arbitration award."  *Polin v. Kellwood Co.*, 103 F. Supp. 2d 238, 262

(S.D.N.Y. 2000); *see also Wallace*, 378 F.3d at 193 ("A federal court may not conduct a reassessment of the evidentiary record…upon the principle that an arbitral award may be vacated when it runs contrary to the strong evidence favoring the party bringing the motion to vacate the award" (internal quotations omitted)).  When it comes to the application of law to the facts, the arbitrator's conclusions cannot be revisited.  *See Trustees of the New York City Dist. Council of Carpenters Pension Fund v. Harbor Island Contracting Inc.*, No. 14–cv–9507 (AJN), 2015 WL 5146093, at *2 (S.D.N.Y. Aug. 31, 2015).  Ultimately, even if the Court finds internal inconsistencies or contrary indicators in an arbitration award, that is "not grounds for vacatur." *Westerbeke Corp. v. Daihatsu Motor Co., Ltd.*, 304 F.3d 200, 211 (2d Cir. 2002); *see also Saint Mary Home, Inc. v. Service Employees Int'l Union, Dist. 1199*, 116 F.3d 41, 44 (2d Cir. 1997); *InterDigital Comm. Corp. v. Nokia Corp.*, 407 F. Supp. 2d 522, 530 n.5 (S.D.N.Y. 2005) (denying motion to vacate award and explaining that "internal inconsistencies within an arbitral judgment are not grounds for vacatur").

Respondents contend that the Arbitrator exceeded his powers because they say a finding of "urgency" is a necessary condition for granting interim measures, and that based on the Arbitrator's own factual findings, the need was not urgent, and the Interim Measures Order is not supported by a finding that serious injury was likely to occur prior to the issuance of a final award. *See* Motion to Vacate at 12-16.  None of these arguments are sufficient to meet Respondents' "heavy burden" to vacate the Interim Measures Order.  The Arbitrator had the power to issue the Interim Measures Order, and had much more than a "barely colorable justification" for doing so.

Start with the Arbitrator's power.  There is no dispute that the Parties were arbitrating under the AAA Commercial Arbitration Rules.  And Rule 37 thereof provides that the "arbitrator may take *whatever* interim measures he or she *deems necessary*, including injunctive relief and

measures for the protection or conservation of property and disposition of perishable goods," and "[s]uch interim measures may take the form of an interim award" (emphasis added). "Whatever interim measures" is an extremely broad grant of authority; by definition, ████████████ ████████████████████████, the Arbitrator did not exceed his powers. The only limitation on the Arbitrator's authority is that the Arbitrator deem it "necessary." And there can be no doubt that the Arbitrator *expressly made* such a finding of necessity. ██████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████

Faced with the undeniable reality that the Arbitrator was operating within the broad grant of authority in AAA Rule 37, Respondents attempt to inject a further limitation: urgency. But while the Arbitrator cited the Born Treatise and the "urgency" factor cited in that treatise, "urgency" is not a requirement under AAA Rule 37, nor is it a requirement that relief be "urgently necessary before the close of the arbitral proceedings." Motion to Vacate at 2, 12-13. Urgency is merely a factor the Arbitrator considered in his analysis of what measures, if any, he deemed necessary. And even if "urgency" was a requirement (it is not), ██████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████   Respondents themselves have admitted in this litigation that they have significant cash issues, further justifying the Arbitrator's finding of necessity and urgency.  Motion to Vacate at 16; App. Ex. 20 (March 21 Conf. Tr.) at 8:18-22.  There can be no dispute that the Arbitrator provided far more than a "barely colorable justification" for the Interim Measures Order.  The "exceeded authority" argument fails.

Respondents' further complaint that the Interim Measures Order will "impose an immediate and substantial hardship on MAI" (Motion to Vacate at 16) cannot change that outcome. Respondents' made the same argument to the Arbitrator, the Arbitrator spent pages ███████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████   Respondents' argument is nothing more than an invitation to this Court to do what it cannot: reassess the evidentiary record and reach a determination different from the Arbitrator reached.  "It is not the role of the courts to undermine the comprehensive grant of authority to arbitrators by prohibiting an arbitral security award that ensures a meaningful final award." *Banco de Seguros del Estado v. Mut. Marine Off., Inc.*, 344 F.3d 255, 262 (2d Cir. 2003).

   *ii.* *The Interim Measures Order Was Not Rendered In Manifest Disregard Of The Law*

In their Motion to Vacate, Respondents also rely on a "judicially-created" exception of last resort: "manifest disregard of law."  *See Shenzhen Lanteng Cyber Technology Co. v. Amazon.com Services*, No. 1:23-cv-991-GHW, 2023 WL 6276691, at *7 (S.D.N.Y. Sept. 26, 2023); *see also*

10

*Duferco Int'l Steel Trading v. T. Klaveness Shipping A/S*, 333 F.3d 383, 389 (2d Cir. 2003) (referring to manifest disregard as "doctrine of last resort" that is used only in "exceedingly rare instances where some egregious impropriety on the part of the arbitrators is apparent, but where none of the provisions of the FAA apply").[5]  The manifest disregard doctrine is "severely limited" in application and requires more than a simple error or a failure to understand or apply the law. *Duferco Int'l Steel Trading v. T. Klaveness Shipping A/S,* 333 F.3d 383, 389 (2d Cir. 2003); *see also Matter of Arbitration No. AAA13-161-0511-85 Under Grain Arbitration Rules*, 867 F.2d 130, 133 (2d Cir. 1989).  The movant must show both that (1) the arbitrator knew of a governing legal principle and refused to apply it, and (2) the law ignored by the arbitrator was well defined, explicit, and clearly applicable to the case.  *Wallace*, 378 F. 3d at 189.  Proof that the arbitrator was aware of the governing legal principle but failed to apply it "is not enough … there must also be a showing of intent."  *Westerbeke Corp.*, 304 F.3d at 217.  The error must have been so obvious that it is "capable of being readily and instantly perceived by the average person qualified to serve as an arbitrator."  *Yusuf Ahmed Alghanim & Sons*, 126 F.3d at 24 (citation omitted).

This extremely high standard is not even close to being met here.  Respondents argue that "[d]espite being aware of this well-settled and controlling New York law [on joint and several liability], the arbitrator concluded that interim relief against [MAI] was appropriate" because there is a substantial likelihood that MAI would be responsible for all or substantially all of a final

---

[5]    In *Hall Street Associates, L.L.C. v. Mattel, Inc.*, the Supreme Court called into question whether the doctrine of manifest disregard was an independent ground to vacate an award or was encompassed by the recognized grounds for vacatur in the FAA.  552 U.S. 576, 585 (2008).  The 5th, 8th, and 11th Circuits have interpreted *Hall Street* as holding that manifest disregard is not an independent ground for vacatur. Petitioners understand that the 2nd Circuit appears to have held to the contrary.  *See, e.g., T.Co Metals, LLC v. Dempsey Pipe & Supply, Inc.*, 592 F.3d 329, 339-340 (2010).  Being bound by Second Circuit precedent, Petitioners reserve, and do not waive, the argument that "manifest disregard of the law" is not a valid ground for vacatur under the FAA.

damages award, or that it will be jointly liable for such an award.  Motion to Vacate at 19. According to Respondents, the Arbitrator failed to make any finding that MTI and MAI were co-promisors to the GEM Agreements, did not determine that corporate veil piercing or some other circumstance warranting a finding of joint liability was appropriate, and failed to cite to an authority supporting the fact that ███████████████████████████████████████████ *See id.*  Respondents then make a gigantic leap to claim that all of this amounts to the arbitrator "impos[ing] his own brand of economic justice, in complete and utter disregard of controlling New York law."  *See id.*  This conclusory assertion utterly fails.

 *First*, Respondents misunderstand what the Arbitrator found in the Interim Measures Order.  The Arbitrator ███████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

█████████████████████████████████████

███████████████████████████████████

███████████████████████████████████

███████████████████████████████████

███████████████████████████████████

███████████████████████████████████



Respondents further claim that the Arbitrator was aware of the law on joint and several liability but disregarded it, but they make no argument—and provide no evidence—regarding the Arbitrator's intent (which is required to meet this extremely high standard), and act as if the Arbitrator pulled ███████████████████████████████ out of thin air.  Not so.  The Arbitrator ████████████████████████████████████████████████ ████████████████████████████████████████████[6]  Indeed, Respondent' entire argument is predicated on the fiction that MTI and MAI are two wholly unrelated corporations and the Arbitrator ███████████████████████████████████████████ ████████████████████████████████████████████████████ ███████████████████████████████████ demonstrates why that premise is wrong.

*Second*, even if Respondents were correct (and they are not) that the Arbitrator is providing a remedy that could not be granted in Court, their argument still fails.  That is because the Parties agreed that the Arbitrator had broad remedial powers, limited only by the Arbitrator's consideration of justice and equity.  In particular, AAA Rule 47(a) provides that "[t]he arbitrator may grant any remedy or relief that the arbitrator deems just and equitable."  It is well settled that the arbitral remedy need not be one that a court could award.  *See Sperry Int'l Trade, Inc. v. Gov't*

---

[6]   This finding by the Arbitrator is final, binding, and conclusive because Mullen failed to timely move to vacate the Partial Final Award.  *See* Dkt. 50 at note 7.

*of Israel,* 689 F.2d 301, 306 (2d Cir. 1982) (stating that, under New York law, arbitrators are not constrained by the strict rules of the courts and may order relief that a court would not, or could not, grant).  Indeed, "arbitrators are generally afforded greater flexibility in fashioning remedies than are courts." *Benihana, Inc. v. Benihana of Tokyo, LLC*, 784 F.3d 887, 902 (2d Cir. 2015); *see Shasha v. Malkin*, 14-CV-9989(AT) (RWL), 2021 WL 11960275, at *7 (S.D.N.Y. Mar. 24, 2021) ("Arbitrators 'may grant equitable relief that a Court could not.'" (quoting *Sperry Int'l Trade, Inc. v. Gov't of Israel*, 532 F. Supp. 901, 905 (S.D.N.Y. 1982), *aff'd*, 689 F.2d 301 (2d Cir. 1982))).*see also* 1 M. Domke, Domke on Commercial Arbitration § 35:1 (3d ed. 2003) ("Limited only by the broad concepts of equity and justice, an arbitrator has a plethora of remedies, both legal and equitable, to choose from in structuring a remedy.").  Thus, given the broad arbitral remedial powers, there could not possibly be a manifest disregard of the law if the Arbitrator were to find MAI liable for some (or all) of the ultimate damage award, especially given the unique factual circumstances involved in this matter.  *See* PFA; *see also* App. Ex. 20 (March 21 Conf. Tr.) at 43:13-45:13 (explaining how MAI came to be the reverse merging party).  *A fortiari*, there cannot be a manifest disregard of the law with respect to an Interim Measures Order that █████████████ ████████████████████████████████████████████████████████████████ ██████████████████████████████████████.

   **C.    The Court Can And Should Order** ████████████████████████████████

   Courts in this Circuit, upon a petition to confirm an arbitration award, may order compliance with the arbitration award, including ordering a party to pay the amount they were directed to pay in the award.  *See Allied Int'l Union v. Tristar Patrol Servs., Inc*., No. 06 Civ. 15515, 2007 WL 2845227, at *5 (S.D.N.Y. Sept. 26, 2007) (confirming arbitration award and ordering that "Respondent shall pay the amounts in items two through six in the remedies section of the Award"); *American Nursing Home v. Local 144 Hotel, Hosp., Nursing Home and Allied*

*Services Union*, No. 89 Civ. 1704, 1992 WL 47553, at \*5 (S.D.N.Y. Mar. 4, 1992) ("The awards are confirmed and the Employers are ordered to effectuate full compliance with them, including payment of the 1985 wage increase retroactive to July 15, 1985.").

The Court not only has the authority to confirm the Interim Measures Order and enter judgment accordingly, but it may also order full compliance with the Interim Measures Order, including ███████████████████████████████████████████████████████████ Because the Interim Measures Order required ███████████████████████████████████████ ████████████████████████████, Respondents are not in compliance with the Interim Measures Order as issued.  Given ████████████████ in the Interim Measures Order, *see* IMO ¶¶ 23-36, and that ███████████████████████████████████████████████, any further delay is prejudicial to Petitioners.  Nor could Respondents claim some need for additional time.  They were ordered to be "ready, willing and fully able" ████████████████████████ ████████ on March 21, 2024.  Dkt. 44.  They were further ordered on March 21 and April 8 to maintain the funds on hand.  App. Ex. 20 (March 21 Conf. Tr.) at 51:10-12, 52:5-8; Dkt. 56.

## CONCLUSION

For the reasons outlined herein, Petitioners respectfully request that this Court grant Petitioner's Motion for Summary Judgment, confirm the Interim Measures Order, and expressly order Respondents ████████████████████████████████████████████████ █████████████████████████████████████████████████████████████████████ █████████████

Dated: April 22, 2024

WILLKIE FARR & GALLAGHER LLP

*/s/ Jonathan A. Patchen*
Jonathan A. Patchen (admitted pro hac vice)
333 Bush Street
San Francisco, California 94104
(415) 858-7594
(415) 858-7418
jpatchen@willkie.com

Madeleine Tayer
Justin Garbacz
787 Seventh Avenue
New York, New York 10019
(212) 728-8914
(212) 728-8801
mtayer@willkie.com
jgarbacz@willkie.com

*Attorneys for Petitioners GEM Yield Bahamas*
*Limited and GEM Global Yield LLC SCS*