UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| GEM YIELD BAHAMAS LIMITED and GEM GLOBAL YIELD LLC SCS,<br><br>Petitioners,<br><br>vs.<br><br>MULLEN TECHNOLOGIES, INC. and MULLEN AUTOMOTIVE, INC.,<br><br>Respondents. | Case No. 1:24-cv-01120-KPF<br><br>Related Case No. 1:23-cv-11268-KPF<br><br>Hon. Katherine Polk Failla |

### RESPONDENTS' MEMORANDUM OF LAW IN OPPOSITION TO PETITIONERS' MOTION FOR SUMMARY JUDGMENT AND IN SUPPORT OF RESPONDENTS' CROSS-MOTION FOR SUMMARY JUDGMENT

McDermott Will & Emery LLP
David K. Momborquette
Antonios G. Koulotouros
One Vanderbilt Avenue
New York, New York 10017
(212) 547-5400
dmomborquette@mwe.com
akoulotouros@mwe.com

*Attorneys for Respondents Mullen Automotive, Inc. and Mullen Technologies, Inc.*

**TABLE OF CONTENTS**

| | | |
|---|---|---|
| I. | PRELIMINARY STATEMENT ................................................................................... | 1 |
| II. | RELEVANT BACKGROUND ..................................................................................... | 3 |
| III. | THE ORDER SHOULD BE VACATED BECAUSE THE ARBITRATOR EXCEEDED HIS POWERS UNDER THE AAA RULES ................................................. | 5 |
| | A.    The Order Is Not Supported By A Finding That Serious Injury Was Likely To Occur Prior To The Issuance Of A Final Award ........................... | 5 |
| | B.    None Of Petitioners' Arguments Compel A Different Conclusion ...................... | 10 |
| IV. | THE ORDER WAS RENDERED IN MANIFEST DISREGARD OF THE LAW ......... | 11 |
| V. | CONCLUSION ............................................................................................................ | 15 |

# **TABLE OF AUTHORITIES**

**Cases**                                                          **Page(s)**

*187 Concourse Assocs. v. Fishman*,
    399 F.3d 524 (2d Cir. 2005).................................................................................................6

*Benihana, Inc. v. Benihana of Tokyo, LLC*,
    784 F.3d 887 (2d Cir. 2015)...............................................................................................13

*British Ins. Co. of Cayman v. Water St. Ins. Co.*,
    93 F. Supp. 2d 506 (S.D.N.Y. 2000).....................................................................................9

*CBF Indústria de Gusa S/A v. AMCI Holdings, Inc.*,
    850 F.3d 58 (2d Cir. 2017)...................................................................................................6

*Cooper v. TWA Airlines, LLC*,
    274 F. Supp. 2d 231 (E.D.N.Y. 2003) ...............................................................................10

*Copragri S.A. v. Agribusiness United DMCC*,
    2021 WL 961751 (S.D.N.Y. Mar. 15, 2021) ..........................................................6, 11, 12, 13

*Great E. Sec., Inc. v. Goldendale Invs., Ltd.*,
    2006 WL 3851159 (S.D.N.Y. Dec. 20, 2006) ..................................................................7, 8

*Halligan v. Piper Jaffray, Inc.*,
    148 F.3d 197 (2d Cir. 1998).........................................................................................12, 14

*Jamaica Commodity Trading Co. v. Connell Rice & Sugar Co.*,
    1991 WL 123962 (S.D.N.Y. July 3, 1991) ....................................................................6, 15

*Kuczynski v. Viad Corp.*,
    2019 WL 6216689 (D. Conn. Nov. 21, 2019) ...................................................................12

*Marblegate Asset Mgmt. v. Educ. Mgmt. Corp.*,
    75 F. Supp. 3d 592 (S.D.N.Y. 2014)..................................................................................10

*Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Source One Staffing LLC*,
    2017 WL 2198160 (S.D.N.Y. May 17, 2017) .................................................................8, 9

*Oxford Health Plans LLC v. Sutter*,
    569 U.S. 564 (2013)..............................................................................................................6

*Petersen-Dean, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA.*,
    2020 WL 635665 (S.D.N.Y. Feb. 11, 2020).......................................................................10

*Weiss v. Sallie Mae, Inc.*,
   939 F.3d 105 (2d Cir. 2019)..................................................................................................13

*Westerbeke Corp. v. Daihatsu Motor Co.*,
   304 F.3d 200 (2d Cir. 2002)..................................................................................................14

*Yusuf Ahmed Alghanim & Sons v. Toys "R" US, Inc.*,
   126 F.3d 15 (2d Cir. 1997)......................................................................................................6

**Statutes and Other Authorities**

9 U.S.C. § 10...............................................................................................................................1, 6

9 U.S.C. § 201..................................................................................................................................1

9 U.S.C. § 207............................................................................................................................6, 15

AAA Rule Rule R-37.............................................................................................................6, 10, 11

Fed. R. Civ. P. 56.............................................................................................................................1

Gary B. Born, *Provisional Relief in International Arbitration, International
   Commercial Arbitration* § 17 (3d ed. 2021) ...............................................................4, 6, 7, 11

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, 9 U.S.C. § 201 *et seq.* (the "Convention"), and the Federal Arbitration Act, 9 U.S.C. § 10 *et seq.* ("FAA"), Respondents Mullen Automotive, Inc. ("MAI") and Mullen Technologies, Inc. ("MTI," and together with MAI, "Respondents") respectfully submit this Memorandum of Law in Opposition to Petitioners' Motion for Summary Judgment (ECF No. 58, the "Motion") and in Support of Respondents' Cross-Motion for Summary Judgment.[1]

## I. PRELIMINARY STATEMENT

By this Cross-Motion, Respondents seek to vacate an interim measures order (App. Ex. 19, the "Order") entered by an arbitrator in an AAA arbitration between Petitioners and Respondents (the "Arbitration") that requires MAI to escrow over $24 million ███████████████████████ ███████████████████████████████████████████████████████████████████████████████ Instead, the arbitrator concluded that ████████████████████████████████████████ ███████████████████████████████████████████████████████████████████████████████ ████████████████████████ There is, however, no authority under the applicable AAA rules for this type of relief. Those rules grant an arbitrator the authority to take "whatever interim measures he or she deems necessary . . . for the protection or conservation of property and disposition of perishable goods" prior to the issuance of a final award. Indeed, arbitrators have typically only

---

[1] As an initial matter, Petitioners' Motion papers, including their Memorandum of Law (ECF No. 60, the "Memo"), clearly run afoul of the Court's April 8, 2024 Order. In that order, the Court instructed the parties only to "re-format and re-file their [confirmation and vacatur] submissions . . . in accordance with Federal Rule of Civil Procedure 56." (ECF No. 56 at 2.) The Court did not invite the parties to advance new arguments, as Petitioners have in their papers. (*Compare* Memo, *with* ECF No. 6.) In addition, there is no basis to consider, let alone grant, Petitioners' Motion with respect to MTI. Although MTI has been named in the Motion, ███████████████████████████████████████ a fact that was not only ████████████████████ but brought to Petitioners' attention before they filed their papers. (Joint Appendix of Exhibits (ECF No. 64, "App.") Ex. 19 ¶ 60; Joint Rule 56.1 Statement of Undisputed Material Facts (ECF No. 62, "JS") ¶ 45; ECF No. 37 at 1 n.2.) Petitioners' inclusion of MTI in their Motion is, thus, nothing more than Petitioners' latest ploy (in a long series of misguided attempts) to improperly lump MAI and MTI together when there is no basis to do so.

ordered that money be escrowed where such measures were deemed necessary given an urgent risk of serious injury to the moving party prior to the issuance of a final award. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Rather, the arbitrator ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ and concluded that the relevant monies did not need to be escrowed until over six weeks from the date of the Order, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓.

In their Motion papers, Petitioners do not dispute that an arbitrator lacks the authority to impose interim relief ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Instead, Petitioners accuse Respondents of asking this Court to "reassess the evidentiary record and reach a determination different from the [one the] [a]rbitrator reached." Petitioners also insist that the arbitrator could not have exceeded his authority in entering his Order because the AAA Rules confer broad powers upon arbitrators and the arbitrator expressly made ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Petitioners' arguments, however, are nothing more than a smokescreen, and they are wrong. Among other things, even if the arbitrator possessed broad discretion to fashion an interim remedy, he was nevertheless required—under the AAA Rules—to analyze MAI's financial condition *before the close of the Arbitration* and conclude that interim measures *were necessary before the issuance of a final award*. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓.

Adding insult to injury, the arbitrator also ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Under well-settled New York law, joint and several liability may only be imposed for breach of contract in certain limited circumstances ▓▓▓▓▓▓▓▓, namely where parties to a contract are co-promisors on that agreement or where the evidence justifies piercing the corporate veil and ignoring a

2

corporation's independent existence. Despite that governing law, which the arbitrator ███████████████ the arbitrator concluded that ███████████████ ████████████████████████████████████████████████████ That conclusion is completely at odds with governing New York law and must be rejected. Indeed, nothing in Petitioners' papers compels a different result.

In short, the Order cannot stand, Petitioners' Motion should be denied, and Respondents' Cross-Motion should be granted.

## II.  RELEVANT BACKGROUND[2]

On January 4, 2021, Petitioners GEM Yield Bahamas Limited and GEM Global Yield LLC SCS (together, "GEM") executed three integrated equity financing agreements with MTI: a Share Purchase Agreement ("SPA"), a Registration Rights Agreement ("RRA"), and a Warrant (collectively, the "GEM Agreements"). (JS ¶ 7; App. Exs. 2-4.) Under the SPA and RRA, the parties agreed to resolve any disputes arising out of those agreements through arbitration in New York under the Rules of the AAA, and further, that the agreements would be construed in accordance with New York law. (JS ¶¶ 8-10.)

GEM commenced its Arbitration against MTI in September 2021. (*Id.* ¶ 12.) On December 21, 2021, the arbitrator issued Procedural Order No. 1 and ███████████████████ ████████████████████████████████████████████████████ Several weeks later, GEM filed an Amended Statement of Claim, adding MAI as a Respondent to the Arbitration. (*Id.* ¶ 18.) On August 3, 2023, the arbitrator granted GEM's first application for interim relief and ███████████████████████████████████ (the "August 3rd

---

[2] The factual recitation below is taken from the parties' Joint Rule 56.1 Statement of Undisputed Material Facts and Joint Appendix of Exhibits, both of which were filed with GEM's Motion pursuant to the Court's April 8, 2024 Order.

Order"). (*Id.* ¶ 21.)³ On November 17, 2023, the arbitrator issued a Partial Final Award on Liability (the "Liability Award"). (JS ¶ 23.) As of this date, the second phase of the Arbitration (pertaining to damages and other remaining issues) has been fully briefed, and the arbitrator has indicated that a final award will be delivered on April 30, 2024. (*Id.* ¶¶ 26-27.)

On December 15, 2023, GEM filed its second application for interim measures. (*Id.* ¶ 30.) On January 24, 2024, the arbitrator issued the Order and directed MAI to deposit an additional $24,114,921 into escrow within 45 days. (*Id.* ¶¶ 32-33.) In the Order, the arbitrator ███████ ███████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████ The arbitrator found that ███████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████ ████████████████████████████████ April 30, 2024, the date by which the arbitrator has stated he will issue a final award. (*Id.* ¶ 27.) Rather, the arbitrator ███████ ███████████████████████████████████████████████████████████████

---

³ The August 3rd Order (App. Ex. 9) is not the subject of Petitioners' Motion or Respondents' Cross-Motion.

██████████████████████████████████████████████████████████

██████████████████████████████████████████

  The arbitrator also noted—████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████ In addition, the

arbitrator ███████████████████████████████████████████████████

████████████████████████████████████████████████████████████

███████ that joint and several liability may only be imposed for breach of contract in certain limited circumstances ██████████████████, such as where two parties to a contract are co-promisors on that agreement or where the evidence justifies piercing the corporate veil and ignoring a corporation's independent existence. (RB at 17-19.) Rather, the arbitrator ████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████

### III. THE ORDER SHOULD BE VACATED BECAUSE THE ARBITRATOR EXCEEDED HIS POWERS UNDER THE AAA RULES[4]

#### A. The Order Is Not Supported By A Finding That Serious Injury Was Likely To Occur Prior To The Issuance Of A Final Award

Under the FAA, an arbitration award must be vacated where an arbitrator "exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject

---

[4] The arbitrator previously signaled that a final award would be delivered to the parties on April 30, 2024. (JS ¶ 27.)

matter was not made." 9 U.S.C. § 10(a)(4).[5] In deciding whether an arbitrator exceeded or imperfectly executed their powers, the question is whether the arbitrator had the power to reach the issue in question, not whether they correctly decided the issue. *Copragri S.A. v. Agribusiness United DMCC*, 2021 WL 961751, at *4 (S.D.N.Y. Mar. 15, 2021). A court may vacate an arbitration award "if the arbitrator acts outside the scope of his contractually delegated authority [and] issu[es] an award that simply reflects his own notions of economic justice rather than drawing its essence from the [parties'] contract . . . ." *Id.* at *5 (quoting *Oxford Health Plans LLC v. Sutter*, 569 U.S. 564, 569 (2013)); *187 Concourse Assocs. v. Fishman*, 399 F.3d 524, 527 (2d Cir. 2005).

Rule R-37(a) of the AAA Rules provides that an arbitrator "may take whatever interim measures he or she deems necessary, including injunctive relief and measures for the protection or conservation of property and disposition of perishable goods." In assessing GEM's request for interim relief and analyzing the appropriate standard for interim measures under AAA Rule R-37, the arbitrator ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ The Born Treatise states that a party requesting interim measures to protect a potential final award must typically

---

As of the date of the instant filing, the arbitrator has yet to issue a final award. However, once a final award is issued, GEM's request to confirm the Order would be moot. *See* Born Treatise at 2606 (recognizing that interim decisions are usually "designed to protect a party during the pendency of the [arbitration] proceedings" and "are potentially subject to alteration or elimination in the final award").

[5] GEM asserts that, because the Order was rendered in New York, this Court sits in primary jurisdiction and can *only* deny confirmation under the vacatur grounds prescribed in the FAA. (Memo at 5 n.3.) The lone authority cited by GEM, however, fails to support that sweeping assertion. Indeed, in *CBF Indústria de Gusa S/A v. AMCI Holdings, Inc.*, 850 F.3d 58 (2d Cir. 2017), the Second Circuit merely reiterated its prior holding in *Yusuf Ahmed Alghanim & Sons v. Toys "R" US, Inc.*, 126 F.3d 15, 23 (2d Cir. 1997) and observed that a district court possesses the authority to set aside or vacate a nondomestic arbitration award rendered in the United States under the grounds set forth in the FAA. *CBF Indústria*, 850 F.3d at 73. The court never concluded—as GEM would have it—that *only* the FAA's vacatur grounds are available to deny enforcement of a nondomestic arbitration award rendered in the United States. Furthermore, this Court has previously held that "a party may raise one of the grounds [articulated in the Convention] for vacating a[] [nondomestic AAA] award . . . in opposition to a motion to confirm" "at any time during the three-year period" set forth in 9 U.S.C. § 207. *See Jamaica Commodity Trading Co. v. Connell Rice & Sugar Co.*, 1991 WL 123962, at *3 (S.D.N.Y. July 3, 1991).

show "(a) a risk of serious or irreparable harm to the [applicant]; (b) *urgency*; and (c) no prejudgment of the merits . . . ." Born Treatise at 2650 (emphasis added). To establish urgency, in particular, a movant must demonstrate that "serious injury" is "'likely' to occur *before the issuance of a final award* . . . ." *Id.* (emphasis added). Thus, while an arbitrator need not wait "until dire consequences are only days away" to issue interim relief, he or she must "take a realistic commercial view of the likelihood that serious damage will occur *prior to the end of the arbitral proceedings*." *Id.* at 2658 (emphasis added). Indeed, pre-award relief will generally not be deemed urgent or ordered "until such time as it is necessary to prevent . . . serious damage from taking place." *Id.*; *see id.* at 2678 ("[W]here there is evidence that a party has begun to, or appears likely to, engage in conduct that goes beyond the ordinary course of business, by attempting to dissipate assets, encumber property, or grant preferential security to insiders, then provisional measures will ordinarily be appropriate . . . .").

Put differently, a finding of "urgency" is a necessary condition for granting interim measures under the AAA powers provided to the arbitrator in the SPA and RRA and the arbitrator's ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬. (JS ¶¶ 8-9, 34.) ▬▬▬▬▬▬▬▬▬▬

▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

▬▬▬  Accordingly, as detailed below, the Order should be vacated as being outside the scope of the arbitrator's authority.

Specifically, the arbitrator exceeded his authority because ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ To determine whether interim relief is urgently required, "[m]ost authorities consider whether there is a risk that serious injury will occur *prior* to the issuance of the [arbitrator's] final award." Born Treatise at 2658; *see Great E. Sec., Inc. v. Goldendale Invs., Ltd.*, 2006 WL 3851159, at *2 (S.D.N.Y. Dec. 20, 2006) ("[I]t was

7

reasonable . . . to order Great Eastern to escrow funds, pending completion of the arbitration proceedings, given the concern over the company's solvency."). Indeed, Respondents have not identified a single interim award which was entered and confirmed based on an estimation of the non-movant's financial condition following the issuance of the relevant final award.

In the Order, however, the arbitrator ███████████████████████████████ ████████████████████ April 30, 2024, the date by which the arbitrator has stated he will deliver a final award. (JS ¶ 27.) Instead, the arbitrator ████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ██████████████████████████████████████ Because the arbitrator ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ██████████████████████████████ As such, the arbitrator exceeded his authority.

Even if the arbitrator ████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████ The very authorities ███████████████████████████ confirm that interim measures are warranted only in limited circumstances, *i.e.*, to protect a future award in the face of urgent financial difficulties or because a company is dissipating assets or engaging in other financial maneuvering that will likely render a final award meaningless. In fact, courts have generally only confirmed interim awards where the evidence shows that a party has begun to dissipate assets or finds itself in a precarious financial position such that a final award likely would be rendered meaningless in the absence of provisional relief. *See Nat'l Union Fire Ins. Co. of*

8

*Pittsburgh, PA v. Source One Staffing LLC*, 2017 WL 2198160, at *2 (S.D.N.Y. May 17, 2017) (confirming interim award given respondent's "undisputed financial difficulties," including respondent's potential need to seek bankruptcy protection before the entry of a final award); *British Ins. Co. of Cayman v. Water St. Ins. Co.*, 93 F. Supp. 2d 506, 516 (S.D.N.Y. 2000) ("colorable justification" existed for interim order where defendant's "history of financial and geographical maneuvers clearly raise[d] the specter that any final award could be rendered meaningless"). Here, however, the arbitrator made ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ And while the arbitrator ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ For instance, the arbitrator noted that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ the arbitrator gave MAI over six weeks to escrow the requisite amounts pursuant to the Order. (*Id.* ¶ 33.)[6]

---

[6] Further, although the Order ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Put differently, MAI has continued to operate its business despite the opinion. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

9

Additionally, while the arbitrator ███████████████████████████████████████████████████████████████████████████ "stake[] out a middle ground" or craft a measure ██████████████████████ *See Petersen-Dean, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA.*, 2020 WL 635665, at *5 (S.D.N.Y. Feb. 11, 2020) (confirming award that was $25 million smaller than the relief sought to minimize the risk of the company's collapse). ████████████████████████████████████████████████████ Indeed, outside the arbitration context, courts routinely deny requests for preliminary injunctions where the proposed injunction stands to impose substantial economic costs on the non-moving party or worse, accelerate the non-moving party's insolvency. *See Marblegate Asset Mgmt. v. Educ. Mgmt. Corp.*, 75 F. Supp. 3d 592, 609 (S.D.N.Y. 2014) (reasoning that the non-moving party's "serious risk of insolvency" resulting from the injunction outweighed the movant's risk of losing the nominal value of their notes); *Cooper v. TWA Airlines, LLC*, 274 F. Supp. 2d 231, 250-51 (E.D.N.Y. 2003) (concluding that the balance of the hardship did not tip in plaintiffs' favor where the "highly probable result" of the injunction would be to force the non-movant to declare bankruptcy). Unlike those courts, however, the arbitrator ████████████████████████████████████████████████████████████████████, doled out an award not warranted by the authority upon which he relied.

B. **None Of Petitioners' Arguments Compel A Different Conclusion**

In its Memo, GEM does not dispute that an arbitrator lacks the authority to impose interim relief ████████████████████████████████████ Instead, GEM maintains that the arbitrator did not exceed his powers under the AAA Rules. (Memo at 7-10.) None of GEM's arguments hold water. *First*, GEM asserts that the arbitrator did not exceed his powers because AAA Rule R-37 constitutes "an extremely broad

10

grant of authority," "[t]he only limitation on the [a]rbitrator's authority is that [he] deem it 'necessary,'" and "the [a]rbitrator *expressly made* ███████████████" (*Id.* at 8-9.) That assertion, however, completely misses the point. Even if AAA Rule R-37 confers broad powers upon an arbitrator (GEM has proffered no authority to suggest that it does), the arbitrator was nevertheless required to analyze MAI's financial condition *before the close of the Arbitration* and find—under Rule R-37 and the legal framework ███████████████—that interim measures were necessary *before the issuance of a final award*. Born Treatise at 2650, 2658; (JS ¶ 34; App. Ex. 9 at 5-6; App. Ex. 17 at 1-2, 12-13.) ███████████████
███████████████

*Next*, GEM argues that (i) "'urgency' is not a requirement under AAA Rule 37," and (ii) even if it is, ███████████████
███████████████ (Memo at 9-10.) Again, GEM's arguments are nothing more than a red herring. Whether urgency is a requirement under the AAA Rules or "merely a factor" that the arbitrator considered, the fact remains that the arbitrator was obligated under Rule R-37 to conclude that interim measures were necessary *before the issuance of a final award* in order to enter such relief. ███████████████ Nor has GEM cited to any authority to suggest that an arbitrator has the power (under Rule R-37 or otherwise) to issue an interim award ███████████████
███████████████ In the absence of any such authority, GEM's Motion should be denied, and the Order should be vacated.

### IV. THE ORDER WAS RENDERED IN MANIFEST DISREGARD OF THE LAW

"An award is rendered in manifest disregard of the law, when 'the arbitrator knew of the relevant [legal] principle, appreciated that this principle controlled the outcome of the disputed issue, and nonetheless willfully flouted the governing law by refusing to apply it.'" *Copragri*, 2021

11

WL 961751, at *5 (quoting *Kuczynski v. Viad Corp.*, 2019 WL 6216689, at *5 (D. Conn. Nov. 21, 2019)); *see Halligan v. Piper Jaffray, Inc.*, 148 F.3d 197, 202 (2d Cir. 1998).[7]

████████████████████████████████ In the Order, the arbitrator expressly ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████ Despite being aware of this well-settled and controlling New York law, the arbitrator concluded that ████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████ In short, the arbitrator imposed his own brand of justice, in complete and utter disregard of controlling New York law.

In its Motion papers, GEM makes two arguments as to why the Order was not rendered in manifest disregard of the law. Both fail. *First*, GEM contends that the arbitrator could not have acted in manifest disregard of the law because, under the AAA Rules, an arbitrator "ha[s] broad remedial powers, limited only by the [a]rbitrator's consideration of justice and equity." (Memo at

---

[7] Despite GEM's pejorative characterizations of the doctrine of manifest disregard of the law, even GEM itself admits that the doctrine remains a viable ground for vacatur within the Second Circuit. (Memo at 10, 11 n.5.)

13-14.) That contention, however, completely misunderstands the doctrine of manifest disregard of the law. Even if, as GEM suggests, "arbitrators are . . . afforded greater flexibility in fashioning remedies than . . . courts" (*id.* at 14), an arbitrator must nevertheless abide by the terms of the parties' arbitration agreement, including the governing law set forth in that agreement. *Copragri*, 2021 WL 961751, at *5 (quoting *Weiss v. Sallie Mae, Inc.*, 939 F.3d 105, 109 (2d Cir. 2019)) (observing that manifest disregard encompasses situations "'where the arbitrator's award is in manifest disregard of the terms of the [parties' relevant] agreement.'").[8] In other words, the arbitrator cannot ignore controlling law and "dispense[] his own brand of industrial justice." *Copragri*, 2021 WL 961751, at *5 (quoting *Weiss*, 939 F.3d at 109)). ▮

▮

▮

▮

▮ Indeed, GEM has come forward with no authority to suggest that ▮ In the absence of any such authority, the Order should be vacated.

*Second*, GEM asserts that the Order should be confirmed because the arbitrator ▮ ▮ Respondents "provide no evidence" "regarding the [a]rbitrator's intent," and the Liability Award ▮ ▮ (Memo at 12-13.) None of these assertions save the Order from vacatur. As a preliminary matter, whether the Order

---

[8] GEM's own authorities confirm this point. *Benihana, Inc. v. Benihana of Tokyo, LLC*, 784 F.3d 887, 902 (2d Cir. 2015) ("'[A]rbitrators have the discretion to order remedies they determine appropriate, so long as they do not exceed the power granted to them by the contract itself.'").

is characterized as ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇, the arbitrator indisputably concluded that ▇▇▇

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ As

a result, the arbitrator clearly rendered his Order in manifest disregard of the law.

There is similarly no merit to GEM's assertion that Respondents have provided no evidence regarding the arbitrator's intent. (Memo at 13.) While a party arguing manifest disregard must make a "showing of intent," "[t]he manifest disregard doctrine is not confined to that rare case in which the arbitrator provides us with explicit acknowledgment of wrongful conduct." *Westerbeke Corp. v. Daihatsu Motor Co.*, 304 F.3d 200, 217-18 (2d Cir. 2002); *Halligan*, 148 F.3d at 204 ("[W]e doubt whether even under a strict construction of the meaning of manifest disregard, it is necessary for arbitrators to state that they are deliberately ignoring the law."). Accordingly, a court may find intent "if the reasoning supporting the arbitrator's judgment 'strain[s] credulity'" "or does not rise to the standard of 'barely colorable.'" *Westerbeke*, 304 F.3d at 218 (citations omitted). Here, Respondents have shown that the arbitrator's conclusions ▇▇▇▇▇▇▇▇▇▇▇▇▇▇ strain credulity. (*Supra* at 16-17.) A finding of manifest disregard is, therefore, entirely warranted.

Additionally, though the arbitrator may have ▇▇▇▇▇▇▇▇▇▇▇▇▇▇ the Liability Award[9] to enter interim relief against MAI, ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

---

[9] The Liability Award is not, as GEM insists, a "final" award. (Memo at 13 n.6.) Among other things, ▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ Unlike a final award, therefore, ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

14

▌███████████████████████████▐ Nor has GEM cited to any support for the notion that the separate corporate identities of MAI and MTI should be disregarded. Indeed, in his Liability Award, the arbitrator explicitly ▐███████████████████████████████▌ ▐███████████████████▌ Further, even if MAI and MTI are affiliated entities, GEM has provided no authority ▐█████████████████████████████▌ Consequently, the arbitrator's finding ▐█████████████▌ is both factually and legally baseless, and Respondents' Cross-Motion seeking vacatur of the Order should be granted.

## V.  CONCLUSION

For the foregoing reasons, Respondents respectfully request that GEM's Motion be denied, and further, that Respondents' Cross-Motion to vacate the Order be granted.

Dated:  New York, New York
       May 6, 2024

Respectfully Submitted,

**MCDERMOTT WILL & EMERY LLP**

By: */s/ David K. Momborquette*
    David K. Momborquette
    Antonios G. Koulotouros
    One Vanderbilt Avenue
    New York, New York 10017
    (212) 547-5400
    dmomborquette@mwe.com
    akoulotouros@mwe.com

    *Attorneys for Respondents Mullen Automotive, Inc. and Mullen Technologies, Inc.*

---

▐████████████▌ Further, even if the findings of the Liability Award are "final," Respondents have not waived the ability to contest the award. Indeed, Respondents are still permitted to oppose confirmation under the grounds articulated in the Convention. 9 U.S.C. § 207; *Jamaica Commodity Trading Co.*, 1991 WL 123962, at *3.

15

**CERTIFICATE OF SERVICE**

I hereby certify that, on May 6, 2024, I caused the foregoing Memorandum of Law in Opposition to Petitioners' Motion for Summary Judgment and in Support of Respondents' Cross-Motion for Summary Judgment to be served on the following counsel for Petitioners via email. The following counsel have confirmed that they represent Petitioners in this action and provided written consent to electronic service via email.

Jonathan A. Patchen
WILLKIE FARR & GALLAGHER LLP
333 Bush Street
San Francisco, CA 94104
(415) 858-7594
jpatchen@willkie.com

Madeleine Tayer
Justin Garbacz
WILLKIE FARR & GALLAGHER LLP
787 Seventh Avenue
New York, New York 10019
(212) 728-8914
mtayer@willkie.com
jgarbacz@willkie.com

                                                    */s/ David K. Momborquette*
                                                      David K. Momborquette