# WILLKIE FARR & GALLAGHER LLP

333 Bush St
San Francisco, CA 94104
Tel: 415 858 7400
Fax: 415 858 7599

May 20, 2024

**VIA ECF**

Hon. Katherine Polk Failla
United States District Court
Southern District of New York
Thurgood Marshall
United States Courthouse
40 Foley Square
New York, NY 10007

Re:   *GEM Yield Bahamas Limited, et al. v. Mullen Technologies, Inc., et al.*, 1:24-cv-01120-KPF
      Request For Pre-Motion Conference

To the Honorable Katherine Polk Failla:

Petitioners GEM Yield Bahamas Limited and GEM Global Yield LLC SCS (collectively, "GEM" or "Petitioners"), pursuant to Rule 4(a) of Your Honor's Individual Rules Of Practice in Civil Cases and Local Rule 83.6, submit this request for a pre-motion conference seeking permission to file a motion for sanctions and contempt, or for the Court to issue an order to show cause why Respondents, and their officers and directors, should not be held in contempt for violation of this Court's orders.

### I.   The Court's Repeated Orders That Respondents Maintain Funds Sufficient To Comply With The Interim Measures Order

As this Court is aware, over three months ago Petitioners filed an application with this Court to confirm the Interim Measures Order issued by Arbitrator Mark C. Morril on January 24, 2024 in the underlying arbitration proceeding between Petitioners and Respondents (the "Arbitration"). ECF No. 1. The Interim Measures Order, which was filed under seal as Exhibit 1 to Petitioner's application, ordered Respondents to deposit [REDACTED] in escrow within "45 days" of January 24, 2024. ECF No. 1-9. Petitioners were awarded that relief in light of what the Arbitrator found was an urgent risk that Respondents would not be able to satisfy a final award in the Arbitration. *Id*. Petitioners filed their application to confirm in advance of the

deadline for Mullen to comply with the Interim Measures Order—March 9, 2024—anticipating that Mullen would ignore the order until this Court expressly required it to comply. As Claimants expected, Respondents ignored the March 9 deadline, and have refused to comply to this day.

On March 5, 2024, after receiving several competing filings from Petitioners and Respondents, this Court stayed all briefing regarding confirmation of the Interim Measures Order pending a conference that the Court scheduled for March 21, 2024. ECF No. 43. This Court, however, expressly provided continuing protection to Petitioners by ordering that Respondents "should be ready, willing, and able to comply with the [Interim Measures Order] as of March 21, 2024, pending the outcome of the conference." ECF No. 44.

At the March 21 conference, Petitioners' counsel expressed ███████████████████████████████████████████████████████████████████████████████ ECF 64-16 (Conf. Tr. at 31:19-32:10). Respondents' counsel represented that ████████████████ ████████████ as of that Monday. ECF 64-16 (Conference Tr.) at 8:18-20. The Court ultimately requested supplemental briefing from the parties, and in so doing, directed Respondents: ████ ████████████████████████████████████████████████████████████████████ *Id*. at 51-52.

On April 8, 2024, after considering the parties' supplemental briefs, the Court issued an order, noting that "the Court is not yet in a position to confirm or vacate the [Interim Measures Order]," and directing the parties to resubmit their prior filings regarding the Interim Measures Order in accordance with Federal Rule of Civil Procedure 56. ECF No. 56. The Court further ordered: "Respondents are hereby ORDERED to maintain the Interim Measures Arbitration Award pending the resolution of this motion." *Id.*

As of May 6, the resubmitted briefing ordered in ECF 56 was completed. And the final award in the Arbitration was issued on May 10, 2024, awarding Petitioners substantially more than Respondents were supposed to deposit in escrow on March 9, 2024. *See* ECF No. 72-1 (the "Final Award").

**II.      Respondents' Defiance Of The Court's Orders**

Respondent Mullen Automotive, Inc. ("MAI") recently filed its form 10-Q for the quarterly period ending March 31, 2024, which is attached hereto as Exhibit A (the "10-Q"). MAI's 10-Q underscores the urgency that justified the Interim Measures Order and Petitioners' efforts to have it confirmed as quickly as possible, disclosing that that there is "substantial doubt" that MAI can continue to operate as a going concern, and stating that MAI is considering an imminent bankruptcy filing. *See* 10-Q at p. 10, Note 2. Even more troubling, the 10-Q also makes clear that Mullen has not complied with the Court's orders, has no intention of complying with this Court's orders, and in fact has actively concealed the restrictions imposed by this Court from its investors.

MAI's 10-Q shows that it had less than $22.4 million in cash and cash equivalents on hand as of March 31, 2024 – substantially less than would be required to comply with the Interim Measures Order. 10-Q at p. 3, Item 1. This alone confirms that MAI had done *exactly* what this

Court had ordered it not to do: dissipate the previously sufficient cash it had on hand. This shortfall is not inadvertent, MAI dispensed with millions of dollars to settle lawsuits with other parties. *See id.* p. 38 ($1.95 million settlement with Drawbridge paid on March 31, 2024), p. 35 Note 16 (over $6.7 million of settlements and penalties paid in 2024).

Indeed, it is clear that Mullen had and has no intention to comply with the Court's orders. MAI's 10-Q contains an express line item for "Restricted Cash." And as to the category, MAI claimed only $7.4 million in restricted cash (a number largely comprised of the $7 million already transferred to the AAA escrow in October 2023). *See id.*, at p. 3, Item 1. Had Mullen intended to comply with the Court's orders, it would have set aside another ▮▮▮▮▮ in restricted cash. That it did not do so is, again, no oversight. In describing the confirmation proceedings of the Interim Measures Order, MAI says nothing of the Court's orders—orders which unambiguously restrict Mullen's ability to freely dispense with ▮▮▮▮▮ of its remaining cash. Notably, MAI referenced the April 8 order in disclosing the stay on its lawsuit in the very next paragraph. *Id.* p. 37. MAI is also silent as to the issuance of the Final Award, despite its representation that "Company management has evaluated subsequent events *through May 14, 2024*, which is the date these financial statements were available to be issued[.]" *Id.* p. 42, Note 21 (emphasis added). The Final Award was issued on May 10.[1]

The Arbitrator found Petitioners were entitled to have ▮▮▮▮▮ deposited on March 9 in escrow so as to ensure a meaningful Final Award. This Court protected Petitioners' rights by issuing a series of orders that all required Respondents to ensure that sum be available. Respondents violated those orders. Neither Petitioners nor this Court can have any confidence that MAI is "ready, willing, and fully able" to deposit the required sum. Civil contempt and sanctions should follow to ensure compliance. Accordingly, Petitioners respectfully request an expedited pre-motion conference regarding the appropriate means of ensuring Respondents' compliance with the Court's orders, including but not limited to daily penalties as to Respondents and coercive measures as to the officers and directors of Respondents. *See, e.g., Absolute Nevada, LLC v. Baer*, No. 21-50-cv, 2022 WL 350255 (2d. Cir. Feb. 7, 2022) (summary order) (holding District Court did not abuse discretion in finding non-party corporate officer in contempt for violating Court order, citing Fed. R. Civ. Proc. 65(d)).

---

[1] On May 13th, Petitioners filed a notice of supplemental authority, apprising the Court of the issuance of the Final Award. ECF No. 72. Respondents filed a response, arguing that (1) the Final Award rendered the Interim Measures Order moot and (2) Mullen's recently announced financing rendered the order unnecessary. ECF No. 75. Both of these arguments lack merit. *First*, mootness is not a basis for avoiding confirmation of an arbitration award. 9 U.S.C §§ 9-10. Rather, the Final Award *heightens* the need for immediate confirmation of the Interim Measures Award since the Arbitrator rejected all Respondents' arguments as to why Petitioners should awarded, at most, $7 million. *Second*, the fact that Mullen has secured financing does not undermine the necessity for interim measures, which in any case is not this Court's role to evaluate. *Banco de Seguros del Estado v. Mutual Marine Offices, Inc.*, 344 F.3d 255 (2d Cir 2003). This assertion is contradicted by MAI's stark warnings. *See* 10-Q at p. 10, Note 2. Even if credited, the recent financing undermines Respondents' prior argument that compliance with the Interim Measures Order might prompt the need to file for bankruptcy and that this Court should (improperly) consider that in deciding whether to confirm the Interim Measures Award. Respondents also argue that they are not time barred from challenging the Partial Final Award. *See id*. Petitioners reserve the right to fully address the time-bar issue (which is unnecessary for confirming the Interim Measures Order) when the parties brief confirmation of the Partial Final Award and the Final Award.

- 4 -

Dated: May 20, 2024            **WILLKIE FARR & GALLAGHER LLP**

<u>/s/ Jonathan A. Patchen</u>
Jonathan A. Patchen
333 Bush Street
San Francisco, California 94104
(415) 858-7594
jpatchen@willkie.com

Madeleine Tayer
Justin Garbacz
787 Seventh Avenue
New York, New York 10019
(212) 728-8914
mtayer@willkie.com
jgarbacz@willkie.com

*Attorneys for Petitioners*

cc: All counsel of record (via ECF)