UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| GEM YIELD BAHAMAS LIMITED and GEM GLOBAL YIELD LLC SCS,<br><br>                           Petitioners,<br><br>                          -v.-<br><br>MULLEN TECHNOLOGIES, INC. and MULLEN AUTOMOTIVE, INC.,<br><br>                           Respondents. | 24 Civ. 1120 (KPF)<br><br>**REDACTED OPINION AND ORDER** |

KATHERINE POLK FAILLA, District Judge:[1]

      This action arises out of an underlying arbitration (the "Arbitration") between Petitioners GEM Yield Bahamas Limited and GEM Global Yield LLC SCS (collectively, "GEM" or "Petitioners") and Respondents Mullen Technologies, Inc. ("MTI") and Mullen Automotive, Inc. ("MAI") (collectively, "Respondents"). The Arbitration, captioned *GEM Yield Bahamas Limited and GEM Global Yield LLC SCS* v. *Mullen Technologies, Inc. and Mullen Automotive, Inc.*, No. 01-21-0016-7001, was conducted between September 2021 and May 2024, and concerned competing allegations of breach of contract. The Arbitration was managed by the American Arbitration Association ("AAA") and its affiliate, the International Centre for Dispute Resolution ("ICDR"), and is sited in New York, New York.

      The parties bifurcated the arbitration proceedings into two phases, the first of which to determine liability and the second to award damages and

---

[1]     Sunny Drescher, a rising second-year student at Harvard Law School and an intern in my Chambers, provided substantial assistance in researching and drafting this Opinion.

resolve any remaining issues. On November 17, 2023, Arbitrator Mark C. Morill (the "Arbitrator"), issued a Partial Final Award (the "PFA"), . Subsequently, on January 24, 2024, the Arbitrator issued an interim measures award (the "Interim Measures Award" or "IMA") ordering Respondents to ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. Following the issuance of the Interim Measures Award, on May 10, 2024, the Arbitrator issued a Final Award, awarding damages.

Petitioners filed this motion for summary judgment in support of their petition to confirm the Interim Measures Award.[2] Respondents filed a competing cross-motion to vacate the Award. For the reasons set forth in the remainder of this Opinion, the Court grants Petitioners' motion and confirms the Interim Measures Award.

## BACKGROUND[3]

### A. Factual Background

#### 1. The Parties and the GEM Agreements

Petitioner GEM Yield Bahamas Limited is a limited company formed under the laws of the Commonwealth of the Bahamas (Joint 56.1 ¶ 1), and

---

[2]  While relevant for context, the Partial Final Award and the Final Award are not the subjects of the motions resolved in this Opinion.

[3]  The facts set forth in this Opinion are drawn from the parties' submissions in connection with their cross-motions for summary judgment. The Court primarily sources facts from the parties' Joint Local Rule 56.1 Statement (Dkt. #62 ("Joint 56.1")); the parties' Joint Appendix of Exhibits (Dkt. #64 ("Joint App'x, Ex. [ ]")), including the Arbitrator's Partial Final Award on Liability (Dkt. #64-7 (the "Partial Final Award" or "PFA")) and the Arbitrator's Decision and Order on Claimants' Second Application for Interim Measures (Dkt. #64-15 (the "Interim Measures Award" or "IMA")); Petitioners' Notice of Supplemental Authority (Dkt. #72) and the exhibit attached thereto (Dkt. #72-1 (the "Final Award")); and Respondents' Response Letter to Notice of Supplemental Authority (Dkt. #75).

Petitioner GEM Global Yield LLC SCS is a limited partnership formed under the laws of Luxembourg (*see id.* ¶ 2). Petitioners are part of the GEM Group,[4] an investment group that manages a diverse set of investments focused on global emerging markets. (*See* PFA ¶ 6).

Respondent MTI is an automobile company that was previously engaged in the business of "developing, manufacturing, and selling electric vehicles." (PFA ¶ 8). Respondent MAI is an electric vehicle manufacturer and publicly traded company; MAI was created from a "spin-off of MTI's former [electric vehicle] assets" via a merger with another company, Net Element, Inc. (*Id.* ¶ 10).

On January 4, 2021, GEM and MTI executed three financing agreements to facilitate GEM's investment in MTI's electric vehicle business. (Joint 56.1 ¶ 7; *see also* PFA ¶¶ 16-17). The agreements included: (i) a Share Purchase Agreement (the "SPA"); (ii) a Registration Rights Agreement (the "RRA"), and (iii) a Warrant to Purchase Common Shares of MTI (the "Warrant") (collectively, the "GEM Agreements"). (Joint 56.1 ¶ 7).

The SPA and the RRA respectively provide that they are governed by New York law. (Joint 56.1 ¶ 10). Both agreements also contain an arbitration clause, specifying that:

---

As noted, the parties to this action submitted a joint Rule 56.1 Statement. Citations in this Opinion to the parties' Rule 56.1 Statement incorporate by reference the documents and testimony cited therein.

For ease of reference, the Court refers to Petitioners' memorandum of law in support of their motion for summary judgment as "Pet. Br." (Dkt. #60), and to Respondents' memorandum of law in opposition to Petitioners' motion and in support of their cross-motion for summary judgment as "Resp. Opp." (Dkt. #69).

[4] "GEM" is an acronym that stands for "Global Emerging Markets." (PFA ¶ 6 n.3).

3

> All disputes, controversies or claims between the Parties arising out of or in connection with this agreement (including its existence, validity or termination) which cannot be amicably resolved shall be finally resolved and settled under the Rules of Arbitration of the American Arbitration Association and its affiliate, the International Cent[re] for Dispute Resolution, in New York City.  The arbitration tribunal shall be composed of one arbitrator.  The arbitration will take place in New York City, New York, and shall be conducted in the English language.  The arbitration award shall be final and binding on the Parties.

(*Id.* ¶ 8 (quoting SPA § 9.02(b)); *see also* RRA § 11(e) (containing a nearly identical arbitration clause)).  Separately, the Warrant provides that, for any dispute arising under the Warrant, venue lies exclusively in the state or federal courts located in New York.  (Joint 56.1 ¶ 11).

2.   **The Arbitration and the Interim Measures Award**

In September 2021, Petitioners initiated the Arbitration by filing an Arbitration Demand and Statement of Claim naming MTI as Respondent.  (Joint 56.1 ¶ 12).  Petitioners alleged that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.  (▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮).

In November 2021, Mullen Automotive, Inc. completed the merger transaction with Net Element, Inc.  (Joint 56.1 ¶ 5).  The combined company maintained the name Mullen Automotive, Inc. and began trading on the Nasdaq Stock Market under the ticker symbol "MULN."  (*Id.* ¶ 6; *see also* PFA ¶ 10).

4

On December 21, 2021, the Arbitrator issued Procedural Order No. 1. (Joint 56.1 ¶ 14; *see generally* Joint App'x, Ex. 5). Procedural Order No. 1 stated that ████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████ (*Id.* ¶ 15 (quoting ████████████████)). The Arbitrator found that ████████████████████████████████████████

████████████████████████████████████████████████ (*Id.* ¶ 16). The Arbitrator also provided ████████████████████████████████████████

████████████████████████████████████████████████████. (*Id.* ¶ 17).

████████████████████████████████████████, in January 2022, Petitioners filed an Amended Statement of Claim, which added the newly formed MAI as a party to the Arbitration. (Joint 56.1 ¶ 18). On February 1, 2022, Respondents MTI and MAI jointly filed an Answer to Petitioners' Amended Statement of Claim. (*Id.* ¶ 19; *see generally* Joint App'x, Ex. 7).

On August 3, 2023, the Arbitrator granted Petitioners' first application for interim relief and ████████████████████████████████████████████████

████████████████████████████████████. (Joint 56.1 ¶ 21 (citing ████████

████)). On October 5, 2023, the ICDR confirmed ████████████████████

████. (*Id.* ¶ 22).

On November 17, 2023, the Arbitrator issued a Partial Final Award ████████████████████████████████████████████████████████████

████████, which concluded the liability phase of the Arbitration. (Joint 56.1

5

¶ 23; *see generally* PFA).  In the Partial Final Award, the Arbitrator found that

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

█████████████████████████ (Joint 56.1 ¶ 24 (quoting ████████████)).[5]

In other words, ████████████████████████████████████████████.

On December 15, 2023, Petitioners submitted a second application for interim relief requesting Respondents ████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

████████████████████ (Joint App'x, Ex. 17 at 1).  Respondents submitted their opposition to Petitioners' application on December 29, 2023.  (Joint 56.1 ¶ 31; *see generally* Joint App'x, Ex. 18).

On January 24, 2024, the Arbitrator granted Petitioners' application and issued the Interim Measures Award, which ordered in relevant part that:



---

[5]  Petitioners contend that the Arbitrator's liability findings in the PFA are "final, binding, and conclusive because [Respondents] failed to timely move to vacate the [PFA]."  (Pet. Br. 13 n.6).  Respondents counter that the PFA was not a "final" award because ████ ████████████████████████████████████████████████████. (Resp. Opp. 14 n.9).  Whether the Partial Final Award is a "final" award is not relevant to the confirmation or vacatur of the Interim Measures Award, and the Court understands that the parties will address the finality *vel non* of the Partial Final Award in subsequent briefing.

(Joint 56.1 ¶¶ 32-33 (███████████)).  The Arbitrator also clarified that GEM ████████████████████████████████████████████ ███████████████████████████████████ (*Id.* ¶ 45 (██████ ██████)).

The Arbitrator further noted that, ███████████████████████ ████████████████████ he would consider ████████████████ ████████████████████████████████████████████ ████████████████████████████████████ (Joint 56.1 ¶ 35). Relying on ██████████████████████████, the Arbitrator in the Interim Measures Award found that █████████████████████████████ ████. (*Id.* ¶ 44).  Specifically, the Arbitrator observed that, ███████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ███████████████████████████████████ (*Id.* (████████████)). For these reasons, the Arbitrator found that ████████████████ ████████████████████████████████████ ████████████████████████████████████████████ ███████████████████████ (*Id.* (████████████)).

The second, damages phase of the Arbitration was fully briefed as of January 29, 2024.  (Joint 56.1 ¶ 26).  The Arbitrator indicated that a Final Award would be delivered to the parties on April 30, 2024.  (*Id.* ¶ 27).  The

7

Final Award assessing damages and remaining issues was ultimately issued on May 10, 2024. (Dkt. #72, 72-1).

**B.    Procedural Background**

On February 15, 2024, Petitioners filed an application with the Court to confirm the Arbitrator's January 24, 2024 Interim Measures Award. (Dkt. #1). On March 1, 2024, Respondents field a cross-motion to vacate and stay the Interim Measures Award. (Dkt. #34). The Court ordered a stay of all briefing before holding a conference with both parties in this action and a related case, captioned *Mullen Technologies, Inc. and Mullen Automotive, Inc.* v. *GEM Yield Bahamas Limited and GEM Global Yield LLC SCS*, No. 23 Civ. 11268 (the "Rescission Action"). (Dkt. #43). The Court held a conference with the parties on March 21, 2024. (*See* March 21, 2024 Minute Entry; Joint App'x, Ex. 20 (transcript)).

Following the March 21, 2024 conference, and after receiving additional submissions from the parties (*see* Dkt. #47-55), the Court ordered the parties to "re-format and re-file" their submissions as motions for summary judgment to conform with the Court's practice of treating applications to confirm or vacate an arbitral award as akin to motions for summary judgment. (Dkt. #56).

In accordance with the Court's order, on April 22, 2024, Petitioners filed a motion for summary judgment to confirm the Interim Measures Award. (Pet. Br.). The parties jointly filed an accompanying Local Rule 56.1 Statement of Material Facts the same day, as well as a joint set of appendixes. (*See generally* Joint 56.1, Dkt. #64). On May 6, 2024, Respondents filed an

8

opposition to Petitioners' motion and cross-moved for summary judgment vacating the Interim Measures Award. (Resp. Opp.).

On May 13, 2024, Petitioners filed a letter notice of supplemental authority to inform the Court that the Arbitrator had issued the Final Award on May 10, 2024, thus concluding the damages phase of the Arbitration. (Dkt. #72). Petitioners' letter included a copy of the Final Award as an exhibit. (Dkt. #72-1). On May 16, 2024, Respondents filed a letter in response, arguing that Petitioners' summary judgment motion was now moot given the issuance of the Final Award. (Dkt. #75 at 1). After considering the parties' letter submissions, the Court disagreed with Respondents' arguments concerning mootness, finding that because the purpose of the Interim Measures Award had been to ensure that Respondents were able to satisfy the Final Award in the Arbitration — and because Respondents disputed the validity of the Interim Measures Award — its confirmation or vacatur remained a live issue. (Dkt. #83).

## DISCUSSION

### A.  Applicable Law

#### 1.  Judicial Review of Arbitration Awards

Federal law provides for vacatur of arbitration awards "only in very unusual circumstances." *First Options of Chicago, Inc.* v. *Kaplan,* 514 U.S. 938, 942 (1995). "Because the parties 'bargained for the arbitrator's construction of their agreement,' an arbitral decision 'even arguably construing or applying the contract' must stand, regardless of a court's view of its (de)merits." *Oxford Health Plans LLC* v. *Sutter,* 569 U.S. 564, 569 (2013) (quoting *Eastern Assoc.*

9

*Coal Corp.* v. *Mine Workers,* 531 U.S. 57, 62 (2000)).  The Second Circuit has underscored this point, holding that courts should exercise an "extremely deferential standard" when reviewing arbitration awards.  *Porzig* v. *Dresdner, Kleinwort, Benson, N. Am. LLC,* 497 F.3d 133, 139 (2d Cir. 2007).  Significantly, "[a]rbitration awards are subject to very limited review in order to avoid undermining the twin goals of arbitration, namely, settling disputes efficiently and avoiding long and expensive litigation."  *Rich* v. *Spartis*, 516 F.3d 75, 81 (2d Cir. 2008) (quoting *Willemijn Houdstermaatschappij, BV* v. *Standard Microsystems Corp.,* 103 F.3d 9, 12 (2d Cir. 1997)).

Because the Interim Measures Award was entered in the United States, the standard, domestic provisions of the FAA, which are codified in Chapter One of the FAA, apply to the extent they do not conflict with the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (also known as the "New York Convention") or its enabling legislation, both of which are codified in Chapter Two.  *Phoenix Aktiengesellschaft* v. *Ecoplas, Inc.*, 391 F.3d 433, 435 (2d Cir. 2004); *see generally Parsons & Whittemore Overseas Co., Inc.* v. *Societe Generale De L'Industrie Du Papier (RAKTA),* 508 F.2d 969, 973 (2d Cir. 1974); 9 U.S.C. §§ 1-16, 201-208.[6]  The FAA creates "mechanisms for enforcing arbitration awards: a judicial decree confirming an award, an order vacating it, or an order modifying or correcting it."  *Hall St. Assocs., L.L.C.* v. *Mattel, Inc.,* 552 U.S. 576, 582 (2008) (citing 9 U.S.C. §§ 9-11).  A court must grant a motion to confirm an arbitration award unless the award "is vacated, modified,

---

[6]     The parties appear to agree that the FAA governs the Arbitration and does not conflict with the New York Convention.  (*See* Pet. Br. 5 n.3; Resp. Opp. 6 n.5).

or corrected" under § 10 or § 11. *Id.* There are four statutory grounds for vacatur:

> (1) where the award was procured by corruption, fraud, or undue means;
>
> (2) where there was evident partiality or corruption in the arbitrators, or either of them;
>
> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
>
> (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a).

Recognizing that mischief can inhere in an overly broad interpretation of the FAA's vacatur provision, the Supreme Court has made clear that the only question under § 10(a)(4) "is whether the arbitrator (even arguably) interpreted the parties' contract, not whether he got its meaning right or wrong." *Oxford Health Plans*, 569 U.S. at 569. The Second Circuit has likewise "'consistently accorded the narrowest of readings' to section 10(a)(4)." *Jock* v. *Sterling Jewelers Inc.*, 646 F.3d 113, 122 (2d Cir. 2011) (quoting *ReliaStar Life Ins. Co. of N.Y.* v. *EMC Nat'l Life Co.,* 564 F.3d 81, 85 (2d Cir. 2009)), *cert. denied*, 565 U.S. 1259 (2012).

In addition, the Second Circuit has held that a court may vacate an award if the arbitrator "has acted in manifest disregard of the law," *Porzig*, 497 F.3d at 139, or "where the arbitrator's award is in manifest disregard of the

11

terms of the parties' relevant agreement," *Schwartz* v. *Merrill Lynch & Co., Inc.*, 665 F.3d 444, 452 (2d Cir. 2011) (internal quotation marks and alterations omitted).  However, a court may vacate on those bases only in "those exceedingly rare instances where some egregious impropriety on the part of the arbitrator is apparent." *T.Co Metals, LLC* v. *Dempsey Pipe & Supply, Inc.*, 592 F.3d 329, 339 (2d Cir. 2010) (quoting *Stolt-Nielsen SA* v. *AnimalFeeds Int'l Corp.*, 548 F.3d 85, 91-92 (2d Cir. 2008)).  Thus, in order "[t]o succeed in challenging an award under the manifest disregard standard, a party must make a showing that the arbitrators knew of the relevant legal principle, appreciated that this principle controlled the outcome of the disputed issue, and nonetheless willfully flouted the governing law by refusing to apply it." *Seneca Nation of Indians* v. *New York*, 988 F.3d 618, 626 (2d Cir. 2021) (internal quotation marks omitted); *accord Westerbeke Corp.* v. *Daihatsu Motor Co., Ltd.*, 304 F.3d 200, 208-09 (2d Cir. 2002).  That is, "to intentionally disregard the law, the arbitrator must have known of its existence, and its applicability to the problem before him." *T.Co Metals, LLC*, 592 F.3d at 339 (quoting *Stolt-Nielsen SA*, 548 F.3d at 93).

      An award should be enforced, "despite a court's disagreement with it on the merits, if there is a *barely colorable justification* for the outcome reached." *T.Co Metals LLC*, 592 F.3d at 339 (quoting *Stolt-Nielsen SA*, 548 F.3d at 92).  A "barely colorable justification" exists so long as the arbitrators had reasoning on which they "could have justifiably rested their decision." *Willemijn Houdstermaatschappij, BV*, 103 F.3d at 13-14 (finding that a proffered justification satisfied the "barely colorable" standard because it presented no

error "that an average person qualified to serve as an arbitrator should have instantaneously perceived and corrected"), *cited in Smarter Tools Inc.* v. *Chongqing SENCI Imp. & Exp. Trade Co.*, 57 F.4th 372, 383 (2d Cir. 2023); *accord Weiss* v. *Sallie Mae, Inc.*, 939 F.3d 105, 109 (2d Cir. 2019); *Landau* v. *Eisenberg*, 922 F.3d 495, 498 (2d Cir. 2019).

While confirmation proceedings are typically conducted following a final arbitral award, courts have the power to confirm certain interlocutory arbitral awards.  *See CE Int'l Resources Holdings LLC* v. *SA Minerals Ltd. P'ship*, No. 12 Civ. 8087 (CM), 2012 WL 6178236, at *2-3 (S.D.N.Y. Dec. 10, 2012) (granting petitioner's application for confirmation of interim arbitral award that required respondents to post $10 million as security, and finding that the "award of temporary equitable relief, such as a security award, was separable from the merits of the arbitration, and thus subject to federal review" (citing *British Ins. Co. of Cayman* v. *Water Street Ins. Co.*, 93 F. Supp. 2d 506, 514 (S.D.N.Y. 2000))); *Yonir Techs* v. *Duration Sys.*, 244 F. Supp. 2d 195, 205 (S.D.N.Y. 2002) ("[T]emporary equitable awards to preserve assets are considered final arbitral awards subject to judicial review.").

### B. Summary Judgment Under Federal Rule of Civil Procedure 56

As noted above, courts treat an application to confirm or vacate an arbitral award as akin to a motion for summary judgment.  *City of New York* v. *Mickalis Pawn Shop, LLC*, 645 F.3d 114, 136 (2d Cir. 2011) (citing *D.H. Blair & Co. Inc.,* v. *Gottdiener*, 462 F.3d 95, 109 (2d Cir. 2006)).  A "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

law." Fed. R. Civ. P. 56(a).  Thus, "[a] motion for summary judgment may properly be granted ... only where there is no genuine issue of material fact to be tried, and the facts as to which there is no such issue warrant the entry of judgment for the moving party as a matter of law." *Rogoz* v. *City of Hartford*, 796 F.3d 236, 245 (2d Cir. 2015) (quoting *Kaytor* v. *Elec. Boat Corp.,* 609 F.3d 537, 545 (2d Cir. 2010)).

"[A] fact is material if it 'might affect the outcome of the suit under the governing law.'" *Royal Crown Day Care LLC* v. *Dep't of Health & Mental Hygiene of City of New York*, 746 F.3d 538, 544 (2d Cir. 2014) (quoting *Anderson* v. *Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  "A dispute is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"  *Negrete* v. *Citibank, N.A.*, 237 F. Supp. 3d 112, 122 (S.D.N.Y. 2017) (quoting *Liberty Lobby*, 477 U.S. at 248).  And where, as here, "parties file cross-motions for summary judgment, ... each party's motion must be examined on its own merits, and in each case all reasonable inferences must be drawn against the party whose motion is under consideration." *Fireman's Fund Ins. Co.* v. *Great Am. Ins. Co. of N.Y.*, 822 F.3d 620, 631 n.12 (2d Cir. 2016) (internal quotation marks omitted and alteration adopted) (quoting *Morales* v. *Quintel Entm't, Inc.*, 249 F.3d 115, 121 (2d Cir. 2001)).

**B.     Analysis**

Respondents advance two arguments for vacating the Interim Measures Award.  *First*, Respondents argue that the Arbitrator exceeded his authority in finding that ███████████████████████████████████████████ ████████████████████████████████████████████████. (Resp. Opp. 7).

*Second*, Respondents argue that the Arbitrator manifestly disregarded the law when he found that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. (*Id.* at 12). For the reasons that follow, neither of these arguments prevails.

### 1. The Arbitrator Did Not Exceed His Authority When He Rendered the Interim Measures Award

To begin, Respondents argue that the Arbitrator exceeded his authority by finding ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. (Resp. Opp. 7). Specifically, Respondents assert that the Arbitrator failed to find that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. (*Id.*). The Court disagrees.

In assessing whether an arbitrator exceeded his authority, the Court focuses on whether the arbitrator considered issues beyond those submitted for his consideration or reached issues clearly prohibited by law or the terms of the arbitral agreement — not whether the Arbitrator correctly decided the issue. *See Jock*, 646 F.3d at 122. An arbitrator "may take whatever interim measures he or she deems necessary, including injunctive relief and measures for the protection or conservation of property and disposition of perishable goods." AAA Rule 37(a) (2013). Accordingly, Respondents must "clear a high hurdle" to obtain relief through vacatur; "[i]t is not enough for [a party] to show that the [arbitrator] committed an error — or even a serious error." *Stolt-Nielsen SA* v. *AnimalFeeds Int'l Corp.*, 559 U.S. 662, 671 (2010). The Court must confirm the Arbitrator's decision unless he failed to offer "a barely

colorable justification for the outcome reached." *Jock*, 646 F.3d at 122 (quoting *ReliaStar*, 564 F.3d at 86).

The Court easily concludes that the Arbitrator did not exceed his authority in issuing the Interim Measures Award. As an initial matter, it is undeniable that the Arbitrator had the authority to issue the Interim Measures Award. *See* AAA Rule 37(a)-(b) (providing that the "arbitrator may take whatever interim measures he or she *deems necessary*, including injunctive relief and measures for the protection or conservation of property and disposition of perishable goods," and "[s]uch interim measures may take the form of an interim award" (emphasis added)).

Further, the Arbitrator had more than a "barely colorable justification" for doing so. In the Interim Measures Award, the Arbitrator considered  . ( ). As to , the Arbitrator determined (Joint 56.1 ¶ 40 ( )).[7] Several of the factors emerged , including:

---

[7] The Arbitrator determined, through briefing and conferences with the parties, that Petitioners ▮ in their second application for interim relief. (IMA ¶ 60).

(*Id.* (            ))).  Based on his analysis of                     , the Arbitrator determined that                                                                                                                                                                                             and thus an interim award was necessary.  (*Id.* ¶ 39 (                        )).

Contrary to Respondents' assertion, the Arbitrator also appropriately                                                                                                                                                                                                                   .  (Resp. Opp. 10).  Indeed, in their opposition brief to Petitioners' application for interim relief, Respondents                                                                      .  (*See*                                                                                                                                                                                                                                                                                     )).  After considering the parties' submissions, the Arbitrator found that                                                                                                                                                                                                                                                                                                   (Joint 56.1 ¶ 41 (                        )).  The Arbitrator further noted that                                                                                                                                                                                                                                       (*Id.* ¶ 41 (                        )).

The Arbitrator's findings thus well exceed the standard of colorable reasoning required for the Court to confirm an arbitration award.  *See D.H.*

17

*Blair & Co.*, 462 F.3d at 110 ("The arbitrator's rationale for an award need not be explained, and the award should be confirmed if a ground for the arbitrator's decision can be inferred from the facts of the case." (internal quotation marks omitted)); *see also Banco de Seguros del Estado* v. *Mut. Marine Off., Inc.*, 344 F.3d 255, 262 (2d Cir. 2003) ("It is not the role of the courts to undermine the comprehensive grant of authority to arbitrators by prohibiting an arbitral security award that ensures a meaningful final award.").

### 2. The Interim Measures Award Was Not Rendered in Manifest Disregard of the Law

Respondents next argue that the Arbitrator issued the Interim Measures Award in "manifest disregard" of the law by ordering ███████████ ███████████████████████████████████████████████████. (Resp. Opp. 11-12). Again, the Court disagrees.

To find a manifest disregard of the law, courts require "something beyond and different from a mere error in the law or failure on the part of the arbitrators to understand or apply the law." *Westerbeke*, 304 F.3d at 208 (quoting *Saxis S.S. Co.* v. *Multifacs Int'l Traders, Inc.*, 375 F.2d 108, 111 (2d Cir. 1967). An arbitrator must intend to disregard a governing legal principle for a court to find manifest disregard of the law. *Id.* at 217.

Contrary to Respondents' assertion, the Arbitrator considered ███████████████████████████████████████████ ███████████ (*see* ███████████████████████ ██████████████████████████████████ ████████████████████████████), but still found it prudent, ████ ███████████████████████████████████████████ to

18

issue the interim award requiring ▇▇▇ (see ▇▇▇ ▇▇▇ ▇▇▇ ▇▇▇).[8] Specifically, the Arbitrator — ▇▇▇ ▇▇▇ ▇▇▇ ▇▇▇ ▇▇▇ ▇▇▇. (▇▇▇).[9] Accordingly, the Arbitrator held that, ▇▇▇ ▇▇▇ ▇▇▇ ▇▇▇ ▇▇▇ made such an interim award appropriate. (*Id.* (emphasis added)).

Because the Arbitrator reviewed, considered, and applied the relevant arguments and case law raised by the parties to the facts and evidence before him, the Court concludes that the Arbitrator did not manifestly disregard the law. *See Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Bobker*, 808 F.2d 930, 936-37 (2d Cir. 1986) (finding that arbitrators did not act in manifest disregard of the law after undertaking "careful and conscientious analysis" of arguments

---

[8]   Indeed, Respondents seemingly take issue with the Arbitrator's findings regarding liability in the Partial Final Award, an award that is not implicated by the instant cross-motions.

[9]   In the Final Award issued May 10, 2024, the Arbitrator ▇▇▇ ▇▇▇ (Dkt. #72-1 at 41).

from party seeking vacatur); *W.K. Webster & Co.,* v. *Am. President Lines, Ltd.*, 32 F.3d 665, 669 (2d Cir. 1994) ("A court must not disturb an award simply because of an arguable difference of opinion regarding the meaning or applicability of the laws."); *see also T.Co Metals*, 592 F.3d at 341 (finding that the arbitrator demonstrated a "reasonable interpretation" of existing doctrine in assessing damages and therefore did not act in manifest disregard of the law).

## CONCLUSION

For the reasons set forth above, the Court GRANTS Petitioners' motion for summary judgment and confirms the Arbitrator's January 24, 2024 Interim Measures Award. Conversely, the Court DENIES Respondents' cross-motion for summary judgment.

The Court also GRANTS the parties' respective sealing motions. (*See* Dkt. #57, 66). The Court will issue this Opinion in two versions. The Clerk of Court is directed to file the sealed version of this Opinion under seal, viewable to the Court and the parties only, and to file the redacted version of this Opinion on the public docket. The Clerk of Court is also directed to terminate the motions pending at docket entries 32, 57, 58, 66, and 67.

SO ORDERED.

Dated:   June 11, 2024
         New York, New York

　　　　　　　　　　　　　　　　　　　　　　　　　KATHERINE POLK FAILLA
　　　　　　　　　　　　　　　　　　　　　　　　　United States District Judge