UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| GEM YIELD BAHAMAS LIMITED and GEM GLOBAL YIELD LLC SCS,<br><br>    Petitioners,<br><br>vs.<br><br>MULLEN TECHNOLOGIES, INC. and MULLEN AUTOMOTIVE, INC.,<br><br>    Respondents. | Case No. 1:24-cv-001120-KPF<br><br>Related Case No. 1:23-cv-11268-KPF<br><br>Hon. Katherine Polk Failla |

## RESPONDENTS' MEMORANDUM OF LAW IN
## RESPONSE TO THE COURT'S ORDER TO SHOW CAUSE

**MCDERMOTT WILL & EMERY LLP**
David K. Momborquette
Antonios G. Koulotouros
One Vanderbilt Avenue
New York, New York 10017
(212) 547-5400
dmomborquette@mwe.com
akoulotouros@mwe.com

*Attorneys for Respondents Mullen Technologies, Inc. and Mullen Automotive, Inc.*

# TABLE OF CONTENTS

| | | |
|---|---|---:|
| I. | PRELIMINARY STATEMENT | 1 |
| II. | BACKGROUND | 2 |
| | A. The Arbitration | 2 |
| | B. The Court's Orders | 2 |
| III. | MULLEN AUTO HAS BEEN UNABLE TO COMPLY WITH THE COURT'S ORDERS | 5 |
| IV. | SATISFYING ITS OBLIGATIONS UNDER THE COURT'S ORDERS | 7 |
| V. | CONCLUSION | 9 |

# TABLE OF AUTHORITIES

**Cases**                                                                                                                        **Page(s)**

*Abraham v. Leigh*,
  2021 WL 268639 (S.D.N.Y. Jan. 27, 2021) ........................................................................6

*Miss Jones LLC v. Stiles*,
  2020 WL 7043508 (S.D.N.Y. Dec. 1, 2020) ........................................................................6

*Olivia B. ex rel. Bijon B. v. Sankofa Acad. Charter Sch.*,
  2014 WL 4816407 (E.D. Pa. Sept. 29, 2014) ......................................................................6

**Statutes and Other Authorities**

Fed. R. Civ. P. 56............................................................................................................................3

Pursuant to the Court's Order to Show Cause, dated July 2, 2024 (ECF No. 91, the "OSC"), Respondents Mullen Technologies, Inc. ("MTI") and Mullen Automotive, Inc. ("Mullen Auto" or the "Company") respectfully submit this Memorandum of Law to (i) explain why Mullen Auto has failed to comply with this Court's orders (ECF Nos. 44, 56, 64-16, 83 and 85, the "Orders") concerning the Company's maintenance of approximately $24 million in satisfaction of an interim measures order (ECF No. 64-15, the "Second Interim Measures Order") issued by the presiding arbitrator in an arbitration between the parties hereto (the "Arbitration") and (ii) show cause as to Respondents' intention to rectify their lack of compliance.[1]

## I. PRELIMINARY STATEMENT

For the second time in less than two months, Petitioners have sought to have Mullen Auto and others sanctioned and held in contempt for failing to comply with this Court's Orders regarding the Company's preservation of approximately $24 million in satisfaction of the arbitrator's Second Interim Measures Order. The reality is, however, that Mullen Auto's conduct in the instant proceedings has fallen well short of anything that would warrant a finding of civil contempt. Although Mullen Auto has admittedly failed to set aside $24 million in connection with the Second Interim Measures Order, that failure is not a by-product of some refusal on the part of the Company to satisfy its obligations under the Orders or to otherwise flout this Court's authority. Rather, Mullen Auto has been unable to satisfy the Court's Orders for one reason (and one reason only): it does not have the cash to do so.

As detailed in the accompanying Declaration of David Michery (the "Michery Decl."), ▉

---

[1] The Second Interim Measures Order was entered against Mullen Auto, but not MTI. (*See* ECF No. 85 at 7; ECF No. 90 at 1.)

█████████████████████████████████████████████████████
█████████████████████████████████████████████████████
█████████████ However, as discussed in greater detail below, the Company recently has managed to secure certain commitments for new financing. Although this new financing is subject to a variety of conditions, ████████████████████████████████████
█████████████████████████████████████████████████████
█████████████

## II. BACKGROUND

### A. The Arbitration

Petitioners initiated the Arbitration in September 2021, and filed their Amended Statement of Claim in January 2022. (*See* ECF No. 85 at 4-5.) On August 3, 2023, the arbitrator granted Petitioners' first application for interim relief and directed Mullen Auto to deposit $7 million into an escrow account pending the entry of a final arbitral award. (*See id.* at 5.) Mullen Auto subsequently placed those funds in escrow. (*See id.*) On December 15, 2023, Petitioners filed their second application for interim measures in the Arbitration and requested that Mullen Auto preserve an additional $29,114,921 in escrow pending the arbitrator's entry of a final award. (*See id.* at 6.) On January 24, 2024, the arbitrator issued his Second Interim Measures Order and directed Mullen Auto to deposit an additional $24,114,921 into escrow within 45 days from the date of that order. (*See id.*)

### B. The Court's Orders

Shortly after the arbitrator issued the Second Interim Measures Order, but before the deadline to comply with that order had passed, Petitioners moved this Court to confirm the Second Interim Measures Order. (ECF No. 1.) Respondents opposed Petitioners' application and cross-

moved to vacate the Second Interim Measures Order or, in the alternative, to stay its enforcement. (ECF No. 32.) Before the parties could complete their briefing on the Second Interim Measures Order, however, the Court entered an order staying all briefing pending a conference that the Court scheduled for March 21, 2024. (*See* ECF No. 43 at 1; ECF No. 44 at 2.) In that order, the Court also "remind[ed] [Respondents] that they should be ready, willing, and fully able to comply with the [Second Interim Measures Order] as of March 21, 2024, pending the outcome of the conference." (*See* ECF No. 44 at 2.)

At the March 21, 2024, conference, the Court did not issue any decisions concerning the parties' respective applications to confirm or vacate the Second Interim Measures Order. Instead, the Court requested supplemental briefing on two issues: (i) whether the parties' Arbitration or litigation, including related Case No. 1:23-cv-11268, should be stayed and (ii) the scope of the Court's authority with respect to the Second Interim Measures Order. (*See* ECF No. 64-16 at 50:19 – 52:01.) Further, when Respondents' counsel asked for guidance with respect to the $24 million that had been ordered to be placed in escrow, the Court instructed Respondents: "[y]ou told me today you have $24 million. You better still have $24 million when I decide [the parties' respective confirmation or vacatur applications]. I don't care where it comes from, but you better have it." (*See id.* at 52:03-08; *see also id.* at 51:10-12 ("I'll tell my friends at the front table don't be dissipating that 24 million in the next week or so, just in case.").)

On April 8, 2024, after considering the parties' supplemental submissions (*see* ECF Nos. 47-54), the Court observed that it was "not yet in a position to confirm or vacate the [Second Interim Measures Order]" and directed the parties "to re-format and re-file their [respective confirmation or vacatur] submissions . . . in accordance with Federal Rule of Civil Procedure 56."

3

(*See* ECF No. 56 at 2.) In addition, the Court ordered Respondents "to maintain the [Second Interim Measures Order] pending the resolution of" the parties' respective "motion[s]." (*See id.*) On May 6, 2024, the parties completed their respective briefing concerning confirmation or vacatur of the Second Interim Measures Order. (*See, e.g.*, ECF Nos. 67, 69.)

Two weeks later, before the Court could decide the parties' pending applications concerning the Second Interim Measures Order, Petitioners requested a pre-motion conference to file a motion for sanctions and contempt against Respondents and others, asserting that Mullen Auto had failed to comply with the Court's previous orders and maintain sufficient funds to abide by the Second Interim Measures Order. (*See* ECF No. 80 at 1-3.) On May 31, 2024, the Court denied Petitioners' request, observing that it did "not believe a conference [wa]s merited" at that time. (*See* ECF No. 83 at 3.) Nonetheless, the Court "reiterate[d]" its April 8, 2024, Order and "remind[ed] Respondents of its [sic] compliance obligations." (*See id.*)

On June 11, 2024, the Court granted Petitioners' motion for summary judgment and confirmed the Second Interim Measures Order. (*See* ECF No. 84 at 20; ECF No. 85 at 20.) Just a few weeks later, after the Court had (i) denied Petitioners' request to enter judgment in connection with its June 11th confirmation order and (ii) made clear that "only one judgment w[ould] be issued in this case" (*see* ECF No. 89 at 4 ("[T]he Court contemplates that such judgment will be entered after resolving the parties' cross-motions concerning the final arbitral award.")), Petitioners made yet another request for contempt and sanctions (*see* ECF No. 90 (the "Application") at 1.) This time, Petitioners requested "an expedited pre-motion conference to be held on or before July 8, 2024" and sought permission to "move the Court for, *inter alia*, (1) an immediate order to show cause why Respondent Mullen Automotive, Inc., and its Chief Executive Officer,

4

David Michery, and Chief Financial Officer, Jonathan New, should not be sanctioned and held in contempt for violation of this Court's [O]rders and (2) imposition of immediate coercive measures." (*See id.*)

On July 2, 2024, the Court entered the OSC and granted Petitioners' Application *in part*. (*See* ECF No. 91 at 5.) Specifically, the Court ordered Respondents to show cause as to (i) "why [Respondents] have failed to comply with the Court's [O]rders" and (ii) "[Respondents'] intentions to rectify their lack of compliance." (*See id.*) The Court otherwise rejected Petitioners' request for "sanction[s]," "contempt," and "immediate coercive measures" and "directed [the Court's Clerk] to terminate" the Application. (*See id.*)

### III. MULLEN AUTO HAS BEEN UNABLE TO COMPLY WITH THE COURT'S ORDERS

Mullen Auto has been unable to satisfy the Orders because it has not had the financial wherewithal to do so. (Michery Decl. at ¶ 4.) Mullen Auto is a NASDAQ-listed, development-stage electric vehicle manufacturer that only recently commenced operations and started generating revenue. (*See id.* at ¶ 6.) Mullen Auto's market capitalization as of July 2, 2024, totaled just a little over $38 million. (*Id.*)

Mullen Auto has not hidden from the public the financial challenges facing it this year. For instance, in Mullen Auto's latest Form 10-Q (ECF No. 80-1, the "10-Q"), the Company disclosed that there was "substantial doubt about [the Company's] ability to continue as a going concern," and that "its cash on hand will be insufficient to meet its working capital and capital expenditure requirements for a period of at least twelve months from the date" of the 10-Q. (*See* ECF No. 80-1 at p. 10.) It further disclosed that if it "[could] not secure adequate funding to fulfill its current

5

liabilities," it might need to "seek[] bankruptcy protection in various jurisdictions within 30 days of publishing" the 10-Q. (*See id.*)

During the time period covered by the Orders, 

An inability to comply with a court order does not constitute contemptuous conduct. *See, e.g.*, *Abraham v. Leigh*, 2021 WL 268639, at *1 (S.D.N.Y. Jan. 27, 2021) (denying motion for a finding of civil contempt where plaintiff had submitted proof of her indigence and inability to pay the relevant order); *Miss Jones LLC v. Stiles*, 2020 WL 7043508, at *5-6 (S.D.N.Y. Dec. 1, 2020) (declining to hold defendant in contempt where, among other things, defendant had demonstrated that he was unable to pay and comply with the relevant order); *Olivia B. ex rel. Bijon B. v. Sankofa Acad. Charter Sch.*, 2014 WL 4816407, at *3-4 (E.D. Pa. Sept. 29, 2014) ("Here, Sankofa has adequately presented an inability to pay the required sum. In light of this showing, the underlying function of civil contempt will not be served by its invocation.").

---

[2] ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ the cash and cash equivalents previously disclosed by Mullen Auto in its statements to the Court and its public filings. For instance, at the March 21, 2024, conference, Respondents' counsel stated that Respondents had "$29 million [in] cash" as of March 18, 2024. (*See* ECF No. 64-16 at 8:18-20.) Additionally, in Mullen Auto's latest 10-Q, which was filed on May 14, 2024, the Company reported that it had approximately $22.4 million in cash and cash equivalents as of March 31, 2024. (*See* ECF No. 80-1 at p. 3.) However, the reported cash figures were prepared "in conformity with U.S. GAAP" and "include[d] the accounts of the Company and its wholly owned subsidiaries . . . , as well as a 60%-owned . . . subsidiary . . . ." (*See id.* at pp. 8, 10.) Mullen Auto does not have a right to access cash held by its subsidiaries.

6

## IV. SATISFYING ITS OBLIGATIONS UNDER THE COURT'S ORDERS

It is only recently that Mullen Auto has been able to secure commitments for new financing in an effort to keep the Company solvent. (*See* Michery Decl. at ¶ 5.) Assuming certain conditions are satisfied and subject to the limitations governing those financing transactions, this new financing may provide the Company with sufficient liquidity to satisfy its obligations to the Court under the Orders. (*See id.*)

For example, on May 14, 2024, the Company entered into a securities purchase agreement ("SPA") with certain investors pursuant to which the investors agreed to purchase an aggregate principal amount of $52.6 million of senior secured convertible notes and warrants ("Note Transaction"). (*See id.* at ¶ 12.) The obligation of the investors to purchase these securities, however, is subject to a variety of conditions, including (i) the Company obtaining stockholder approval for the issuance of the notes and warrants, (ii) the Company having sufficient authorized shares of common stock to cover the conversion of the notes and exercise of the warrants, (iii) a registration statement covering those securities being declared effective by the SEC, and (iv) Mullen Auto's common stock experiencing an average trading volume of $3 million in the previous 10 trading days. (*See id.* at ¶ 13.) Furthermore, while "the investors purchased an initial aggregate principal amount of $12.5 million" upon executing the SPA, there is no guarantee that the investors will be obligated to purchase the remaining amount under the Note Transaction. (*See id.* at ¶ 13.) Indeed, most of the aforementioned conditions are not within Mullen Auto's control and may or may not be satisfied. (*See id.* at ¶ 14.)

In addition, on May 21, 2024, the Company entered into a common stock purchase agreement with an equity line investor pursuant to which the investor agreed to purchase from the

Company, at the Company's sole discretion and direction, shares of Mullen Auto common stock having a total maximum aggregate purchase price of $150 million (the "ELOC Transaction"). (*See id.* at ¶ 16.) Like the Note Transaction, the ELOC Transaction is subject to a number of limitations, including "a limit on the number of shares that the Company can direct the investor to purchase on any given business day . . . ." (*See id.* at ¶¶ 13, 17.) This limitation, in turn, "will impact the amount of proceeds that Mullen Auto will receive on any given day that it directs the investor to purchase shares of its common stock." (*See id.* at ¶ 17.)[3]

However, assuming the Company has access to the ELOC Transaction and has sufficient liquidity to keep its operations open, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

---

[3] The stockholder votes on the Note Transaction and ELOC Transaction are each scheduled to occur on July 9, 2024. (*See id.* at ¶¶ 15, 18.) ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, the Company continues to seek additional financing. (*See id.* at ¶ 19.)

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮

In short, at this time, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮

## V. CONCLUSION

Given the above, there simply is no basis to find Mullen Auto in contempt of the Court's Orders. Rather, given Mullen Auto's stated desire to "rectify its lack of compliance" (*see* Michery Decl. at ¶ 20), and its record of preserving money in escrow when equipped to do so (*see* ECF No. 85 at 5), Mullen Auto should be afforded an opportunity to secure additional financing, ▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Dated: New York, New York  
July 8, 2024

Respectfully Submitted,

**MCDERMOTT WILL & EMERY LLP**

By: */s/ David K. Momborquette*  
David K. Momborquette  
Antonios G. Koulotouros  
One Vanderbilt Avenue  
New York, New York 10017  
(212) 547-5400  
dmomborquette@mwe.com  
akoulotouros@mwe.com

*Attorneys for Respondents Mullen Technologies, Inc. and Mullen Automotive, Inc.*

# CERTIFICATE OF SERVICE

I hereby certify that, on July 8, 2024, I caused the foregoing Memorandum of Law to be served on the following counsel for Petitioners via email. The following counsel have confirmed that they represent Petitioners in this action and provided written consent to electronic service via email.

Jonathan A. Patchen
WILLKIE FARR & GALLAGHER LLP
333 Bush Street
San Francisco, CA 94104
(415) 858-7594
jpatchen@willkie.com

Madeleine Tayer
Justin Garbacz
WILLKIE FARR & GALLAGHER LLP
787 Seventh Avenue
New York, New York 10019
(212) 728-8914
mtayer@willkie.com
jgarbacz@willkie.com

                                          */s/ David K. Momborquette*
                                             David K. Momborquette