**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

GEM YIELD BAHAMAS LIMITED and GEM
GLOBAL YIELD LLC SCS,

                          Petitioners,

      vs.

MULLEN TECHNOLOGIES, INC. and MULLEN
AUTOMOTIVE, INC.,

                        Respondents.

Case No. 1:24-cv-001120-KPF

Related Case No. 1:23-cv-11268-KPF

Hon. Katherine Polk Failla

---

**RESPONDENTS' MEMORANDUM OF LAW IN**
**SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**

**MCDERMOTT WILL & EMERY LLP**
David K. Momborquette
Antonios G. Koulotouros
One Vanderbilt Avenue
New York, New York 10017
(212) 547-5400
dmomborquette@mwe.com
akoulotouros@mwe.com

*Attorneys for Respondents Mullen Technologies,*
*Inc. and Mullen Automotive, Inc.*

## <u>TABLE OF CONTENTS</u>

I.      PRELIMINARY STATEMENT ................................................................................ 1

II.     STATEMENT OF FACTS ...................................................................................... 5

        A.      The Parties ......................................................................................... 5

        B.      The GEM Agreements ......................................................................... 7

        C.      The Arbitration ................................................................................... 9

        D.      The PFA .............................................................................................. 9

        E.      Joint And Several Liability ................................................................ 11

        F.      The Final Award ................................................................................ 11

III.    JURISDICTION AND VENUE ........................................................................... 13

IV.     RESPONDENTS HAVE TIMELY MOVED TO VACATE THE PFA ......................... 14

V.      THE AWARDS SHOULD BE VACATED BECAUSE THE ARBITRATOR
        EXCEEDED HIS AUTHORITY ........................................................................... 16

VI.     THE COURT SHOULD REFUSE TO ENFORCE THE AWARDS BECAUSE
        THEY CONTAIN CONTRADICTORY FINDINGS OF FACT AND CONCLUSIONS
        OF LAW ......................................................................................................... 19

VII.    THE FINAL AWARD WAS RENDERED IN MANIFEST DISREGARD
        OF THE LAW .................................................................................................. 22

VIII.   CONCLUSION ................................................................................................. 26

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                                    **Page(s)**

*187 Concourse Assocs. v. Fishman*,
    399 F.3d 524 (2d Cir. 2005)..................................................................................17

*AGCO Corp. v. Anglin*,
    216 F.3d 589 (7th Cir. 2000) ..........................................................................17, 18

*Andrea Doreen, Ltd. v. Bldg. Material Local Union 282*,
    250 F. Supp. 2d 107 (E.D.N.Y. 2003) ................................................................15

*Bell Aerospace Co. Div. of Textron, Inc. v. Local 516, Int'l Union, (UAW)*,
    500 F.2d 921 (2d Cir. 1974)................................................................................19

*Copragri S.A. v. Agribusiness United DMCC*,
    2021 WL 961751 (S.D.N.Y. Mar. 15, 2021) ........................................16, 17, 18, 22

*Duferco Int'l Steel Trading v. T. Klaveness Shipping A/S*,
    333 F.3d 383 (2d Cir. 2003)................................................................................22

*Eljer Mfg., Inc. v. Kowin Dev. Corp.*,
    14 F.3d 1250 (7th Cir. 1994) ..............................................................................18

*Glob. Gold Mining LLC v. Caldera Res., Inc.*,
    941 F. Supp. 2d 374 (S.D.N.Y. 2013)............................................................14, 15

*Halligan v. Piper Jaffray, Inc.*,
    148 F.3d 197 (2d Cir. 1998)...........................................................................22, 23

*Hall St. Assocs., L.L.C. v. Mattel, Inc.*,
    552 U.S. 576 (2008)............................................................................................19

*Jamaica Commodity Trading Co. v. Connell Rice & Sugar Co.*,
    1991 WL 123962 (S.D.N.Y. July 3, 1991) .........................................................16

*Kuczynski v. Viad Corp.*,
    2019 WL 6216689 (D. Conn. Nov. 21, 2019) ....................................................22

*Local 814, Int'l Bhd. of Teamsters v. Sotheby's, Inc.*,
    665 F. Supp. 1089 (S.D.N.Y. July 30, 1987)................................................19, 20

*MetLife Sec., Inc. v. Bedford*,
    456 F. Supp. 2d 468 (S.D.N.Y. 2006)................................................................22

*Mgmt. & Tech. Consultants S.A. v. Parsons-Jurden Int'l Corp.*,
    820 F.2d 1531 (9th Cir. 1987) ............................................................................17

*Michaels v. Mariforum Shipping, S.A.*,
    624 F.2d 411 (2d Cir. 1980)..........................................................................14

*Mitsubishi Heavy Indus., Ltd. v. Stone & Webster, Inc.*,
    2009 WL 3169973 (S.D.N.Y. Sept. 29, 2009)..........................................14

*Oxford Health Plans LLC v. Sutter*,
    569 U.S. 564 (2013)........................................................................................17

*Parsons & Whittemore Overseas Co. v. Societe Generale De L'Industrie Du*
    *Papier (RAKTA)*, 508 F.2d 969 (2d Cir. 1974)..........................................17

*Roadway Package Sys., Inc. v. Kayser*,
    257 F.3d 287 (3d Cir. 2001)..........................................................................19

*Rocket Jewelry Box, Inc. v. Noble Gift Packaging, Inc.*,
    157 F.3d 174 (2d Cir. 1998)..........................................................................14

*Scandinavian Reinsurance Co. v. Saint Paul Fire & Marine Ins. Co.*,
    668 F.3d 60 (2d Cir. 2012)............................................................................13

*Seneca Nation of Indians v. New York*,
    420 F. Supp. 3d 89 (W.D.N.Y. 2019)............................................................14

*Three Bros. Trading, LLC v. Generex Biotechnology Corp.*,
    2019 WL 3456631 (S.D.N.Y. July 31, 2019)................................................19

*Trade & Transp., Inc. v. Nat. Petroleum Charterers Inc.*,
    931 F.2d 191 (2d Cir. 1991)....................................................................14, 15

*Vidaplan S.A., Inc. v. Cipriani Int'l, S.A.*,
    2006 WL 8461283 (S.D.N.Y. Aug. 7, 2006)................................................13

**Statutes and Other Authorities**

9 U.S.C. § 10............................................................................................1, 16, 17, 19

9 U.S.C. § 12..............................................................................................................14

9 U.S.C. § 201.................................................................................................... *passim*

9 U.S.C. § 203............................................................................................................13

9 U.S.C. § 204............................................................................................................13

9 U.S.C. § 207....................................................................................................15, 16

AAA Rules, R-6(b)....................................................................................................19

Fed. R. Civ. P. 56.........................................................................................................................1

Pursuant to the Court's May 31, 2024 Order (ECF No. 83, the "May 31st Order"), Rule 56 of the Federal Rules of Civil Procedure, the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, 9 U.S.C. § 201 *et seq.* (the "New York Convention"), and the Federal Arbitration Act, 9 U.S.C. § 10 *et seq.* (the "FAA"), Respondents Mullen Technologies, Inc. ("MTI") and Mullen Automotive, Inc. ("MAI," and together with MTI, "Respondents") respectfully submit this Memorandum of Law in Support of their Motion for Summary Judgment (the "Motion") seeking to vacate both the Partial Final Award on Liability (the "PFA") and the Final Award (the "Final Award," and together with the PFA, the "Awards") entered by Arbitrator Mark C. Morril in the arbitration proceeding captioned *GEM Yield Bahamas Limited and GEM Global Yield LLC SCS v. Mullen Technologies, Inc. and Mullen Automotive, Inc.*, AAA Case No. 01-21-0016-7001 (the "Arbitration").[1]

## I.    <u>PRELIMINARY STATEMENT</u>

The law is clear: when an arbitrator exceeds his or her authority, the resulting award should not be confirmed, and instead, should be vacated. Likewise, courts have refused to confirm awards containing contradictory findings of fact and irreconcilable conclusions of law, or where the arbitrator has ignored applicable law substituting his or her judgment for those of the courts. There are no exceptions to these rules, and courts do not give the deference typically given an arbitration award if an award runs afoul of one or more of these grounds.

Applying the above principles to the awards at issue here, neither of them can be confirmed, and instead, both should be vacated. Petitioners' claims all arise from three financing agreements entered between Petitioners and MTI: (i) a Share Purchase Agreement (the "SPA"), (ii) a

---

[1] In accordance with the Court's May 31st Order, Respondents' Motion and its accompanying Memorandum of Law shall also be deemed an opposition to Petitioners' summary judgment motion to confirm the Awards, which Petitioners will file on or before August 7, 2024. (*See* ECF No. 83 at 2.)

Registration Rights Agreement (the "RRA"), and (iii) a Warrant (the "Warrant," and together with

the SPA and RRA, the "GEM Agreements"). MAI was not a party to any of those agreements.

Respondents never utilized the financing agreements, and Petitioners never invested a dime in

either MTI or MAI. Nor did Petitioners ever place any capital at risk with respect to either of those

entities. Despite these facts, the arbitrator concluded that ████████████████████████████

████████████████████████████████████████████████████████████████████████

██████████████████████████████████

   ████████████████████████████████████████████████████████████

██████████████ the arbitrator made at least two fatal errors. One error relates to ███████████

█████████████████████████████████████████ MAI was not a signatory to any of

those agreements, and therefore, was not a co-promisor with MTI with respect to those contracts.

Nor did the arbitrator find that ████████████████████████████████████████████████

█████████████████████████████████████████████ Rather, the arbitrator

concluded that ████████████████████████████████████████████████

████████████████████████████████████ the Contribution and Spin-Off

Agreement (the "Contribution Agreement") entered between MTI and another entity, and which

made absolutely no mention of any of the GEM Agreements. The Contribution Agreement did not

contain an arbitration provision, and ████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

██████████████████ As such, the arbitrator impermissibly went beyond the scope of the authority

conferred upon him by the parties ████████████████████████████████

████████████████████████████████ (*See* Section V.)

    In  addition,  the  arbitrator  concluded  that ███████████████████████

████████████████████████████████████████████████████████████

██████████████████████████████████████████████████ As

a  result,  the  arbitrator  exceeded  the  authority  granted  to  him  by  the  parties ██████████████

██████████████████ (*See id.*)

    The second error relates to the arbitrator's finding that ███████████████████

██████████████████████████ That finding is contradictory on its face; ████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████

    Conversely, ████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

█████████████████████████████████████ However, the arbitrator

concluded  that ██████████████████████████████████████████

████████████████████████████████████████████████████████████

███████████████████████████████████████ In addition, the arbitrator

found that ███████████████████████████████████████

███████████████████████████████████████ Nor did the

arbitrator ███████████████████████████████████████

███████████████████████████████ Courts have refused to confirm

awards that contain such contradictory findings. (*See* Section VI.)

In addition to the above errors, the arbitrator ███████████████████

███████████████████████████████████████

███████████████████ In the Final Award, the arbitrator clearly ignored and

refused to apply controlling law on at least three separate occasions. For instance, he found ███

███████████████████████████████████████

███████████████████████████████████████

███ The arbitrator went as far as to conclude in the Final Award that ███████████████

███████████████████████████████████████

███████████████████████████████ (*See* Section VII.)

Further, ███████████████████████████████████

███████████████████████████████████████

███████████████████████ (*See id.*)

The arbitrator also ████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

4

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████ That error is

especially egregious given that Petitioners have never advanced any money under the relevant

financing agreements or otherwise put any money at risk with respect to either MTI or MAI, ██

████████████████████████████████

## II.   STATEMENT OF FACTS[2]

### A.   The Parties

Petitioners GEM Yield Bahamas Limited ("GEM Bahamas") and GEM Global Yield LLC

SCS ("GEM Global Yield," and together with GEM Bahamas, "GEM" or "Petitioners") are

offshore entities that are part of an alternative investment group known as the GEM Group. (JS at

¶¶ 1-3.)

Respondent MTI is a privately held company incorporated and headquartered in Brea,

California. (*Id.* at ¶ 4.) Respondent MAI is a publicly traded automotive and electric vehicle

("EV") manufacturer. (*Id.* at ¶ 5.) MAI has its origins in MTI's attempt to take its EV business

---

[2] The factual recitation below is taken from the parties' Joint Rule 56.1 Statement of Undisputed Material Facts (the "JS") and Joint Appendix of Exhibits (the "App."), both of which are being filed simultaneously herewith pursuant to the Court's May 31st Order. (*See* ECF No. 83 at 3.)

public. Specifically, in May 2021, MTI divested itself of its EV business division by transferring that business division to a subsidiary entity known as "Mullen Auto." (*Id.* at ¶ 6; App. Ex. 2 at § 1.1.) "Mullen Auto" is a different corporate entity than Mullen Automotive, Inc., the entity referred to herein as "MAI." (*See* App. Ex. 3 at Introductory Note, Items 2.01 and 5.03.) That divestiture was effectuated, in part, by the agreement between MTI and Mullen Auto referred to herein as the Contribution Agreement. (JS at ¶ 6; App. Ex. 2 at § 1.1.) Pursuant to that agreement, MTI transferred its EV business division to Mullen Auto, and Mullen Auto assumed certain debt and other liabilities of MTI. (*See* App. Ex. 2 at §§ 1.1, 1.2, 1.3.) There is no arbitration clause in the Contribution Agreement. (JS at ¶ 7.) Rather, the Contribution Agreement designated the venue for any disputes arising under or in connection with the agreement as the federal and state courts located in Montogomery County, Maryland. (*Id.* at ¶ 8.) The Contribution Agreement expressly stated that it was an agreement "solely between the [p]arties" to the agreement and "no person not a party to th[e] [a]greement [would] have any rights or privileges [t]hereunder." (*See* App. Ex. 2 at § 4.14.) MAI was not a party to the Contribution Agreement. (*See id.* Ex. 2; *id.* Ex. 3 at Introductory Note, Items 2.01 and 5.03.)

Mullen Auto was subsequently spun off to the shareholders of MTI. (*See id.* Ex. 2 at § 2.1; *id.* Ex. 4 at 1.) Following that spin-off, Mullen Auto was merged into "Merger Sub," a subsidiary of Net Element, Inc. ("NETE"), a NASDAQ traded company unaffiliated with MTI (the "NETE Transaction"). (*Id.* Ex. 3 at Introductory Note, Item 8.01; *see* JS at ¶ 9.) NETE subsequently changed its name to "Mullen Automotive, Inc.," the entity referred to herein as MAI. (*See* JS at ¶ 10; *see also* App. Ex. 1 at ¶ 10.)

### B.   __The GEM Agreements__

On January 4, 2021, GEM and MTI executed the GEM Agreements. (*See* JS at ¶ 11; App. Exs. 5-7.) Under the GEM Agreements, if MTI became a publicly traded company, MTI could draw down on an equity facility provided by GEM Global Yield in an amount up to $500 million and GEM Bahamas would have the option to exercise the Warrant to purchase up to 6.6% of the publicly traded securities of MTI. (*See* App. Ex. 5 at §§ 2.01, 4.12(b); *id.* Ex. 7.) If GEM Bahamas exercised the Warrant, GEM Bahamas was required to, among other things, tender to MTI the payment of the amount of consideration equal to the price of the shares issued under the Warrant in effect at the time of exercise before MTI was obligated to issue any shares pursuant to the Warrant. (*Id.* Ex. 7 at § 2(b).)

Under the SPA, MTI was obligated to pay GEM Bahamas a commitment fee (the "Commitment Fee") worth approximately $7 million no later than the one-year anniversary that shares of MTI first began trading publicly on a "Principal Market," as that term was defined in the SPA. (*See id.* Ex. 5 at § 4.12(a); *see also id.* at §§ 1.01(x), (jj), (vv).) In addition, under Section 2(d) of the RRA, MTI was required to provide GEM written notice of MTI's filing of a registration statement with the SEC so that GEM could take advantage of so-called "piggyback" registration rights and request that MTI register any securities issued by MTI to GEM pursuant to the Warrant. (*See id.* Ex. 6 at § 2(d).)

The SPA prohibited MTI from "enter[ing] into any agreement in which the terms of such agreement would restrict or impair" MTI's right to perform under the GEM Agreements. (*See id.* Ex. 5 at § 4.08.) The SPA also required MTI to "execute and deliver such instrument, documents and other writings as may be reasonably necessary or desirable to confirm and carry out and to effectuate fully the intent and purposes of [the GEM Agreements]." (*See id.* at § 9.13.)

Under the SPA and RRA, the parties agreed to resolve any disputes arising out of those agreements through arbitration in New York under the Rules of the AAA, and further, that the agreements would be construed in accordance with New York law. (*See* JS at ¶¶ 12-14.) The Warrant, on the other hand, did not contain an arbitration provision, and instead, provided that the proper venue for any dispute arising under the Warrant would be the state and federal courts in New York. (*See id.* at ¶ 15; *see also* App. Ex. 7.)

MTI has never issued any publicly traded securities, and thus, has had no opportunity to draw down any amount of the equity facility. (*See* JS at ¶ 4.) Nor has GEM Bahamas ever tendered any amount to MTI pursuant to the Warrant. The GEM Agreements were executed by GEM and MTI only. (*See* App. Exs. 5-7.) MAI was not a signatory to any of the GEM Agreements; in fact, it did not even exist when MTI and GEM executed the GEM Agreements. (*See id.* Exs. 5-7; *see also id.* Ex. 3 at Introductory Note, Items 2.01, 5.03 and 8.01.) In addition, none of the GEM Agreements were referenced in the list found in the Contribution Agreement of those assets transferred to Mullen Auto from MTI pursuant to that agreement. (*See* App. Ex. 2 at § 1.1, Exhibit B.)

Although the SPA provided that a "Successor Company" to MTI could be deemed to step in the shoes of MTI for purposes of the GEM Agreements, the entity must have first merged with MTI to be a considered a "Successor Company." (*See id.* Ex. 5 at §§ 1.01(xx), 9.07.) No such transaction has ever occurred between MTI and MAI. Indeed, MAI and MTI have always been, and remain to this day, two different companies that operate two different, ongoing businesses. (JS at ¶¶ 4-5; App. Ex. 3 at Introductory Note, Items 2.01 and 5.03.)

**C.**   **The Arbitration**

In September of 2021, GEM commenced the Arbitration, naming only MTI as a Respondent. (*See* JS at ¶ 16.) In early January 2022, GEM filed an Amended Statement of Claim and added MAI as a party to the Arbitration. (*See id.* at ¶ 20.) GEM's Amended Statement of Claim asserted five separate contract-based claims against Respondents. (*See* App. Ex. 10.) Specifically, GEM asserted a claim for ████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████

On December 1, 2022, the parties entered into a stipulation to bifurcate the Arbitration proceedings, with the parties agreeing to brief certain liability issues first (the "Phase One" proceeding) and reserving for a later date the resolution of damages and other remaining issues, including liability on Petitioners' affirmative claim for indemnification (the "Phase Two" proceeding). (*See* JS at ¶¶ 24-25; App. Ex. 13 at ¶¶ 3, 11-12.)

**D.**   **The PFA**

On November 17, 2023, the arbitrator issued the PFA. (JS at ¶ 31.) In it, the arbitrator found that ████████████████████████████████████████ Specifically, the arbitrator found that ██████████████████████████████████████████

████████████████████████████████████████████████

████████████████████   The arbitrator also found that ███████████████████

9

█████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████

████████████████████████

In reaching the conclusion that █████████████████████████████████

█████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████

████████   Specifically, ██████████████████   the arbitrator concluded that ████████

█████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████

████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████████████████   the arbitrator went on to conclude that ████

█████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████

████████████   According to the arbitrator, ████████████████████████████

█████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████

10

████████████████████████████████████████████████████

████████████████████████████████████████

### E.      <u>Joint And Several Liability</u>

The arbitrator did not determine in the PFA ████████████████████

████████████████████████ Rather, in December 2023, the

arbitrator  ordered ██████████████████████████████

████████████████████████████████████████████

████████████████████████████████ A month later, the

arbitrator reiterated that ███████████████████████████

████████████████████████████████████████████

██████████████████████████

### F.      <u>The Final Award</u>

On May 10, 2024, the arbitrator issued the Final Award. (*Id.* at ¶ 49.) In the Final Award,

the arbitrator found ████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████

In the Final Award, the arbitrator reiterated ███████████████████

████████████████████ Specifically, the arbitrator concluded that ████████████

████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████ Again, despite concluding

11

that ███████████████████████████████████████████████████

███████████████████████████████████ the arbitrator found that ████████████

████████████████████████████████████████████████████████████

███████████████████████████████████████

Although the arbitrator made no finding in the Final Award (or in the PFA) that ██████

████████████████████████████████████████████████████████████

████████████████████████ he nevertheless concluded that ███████████████

████████████████████████████████████████████████████████████

████ In reaching this conclusion, the arbitrator made only ███████████████

████████████████████████████████████████████████████████████

██████████████████████████████████████████████████

With respect to ████████████████████████████████████████████

████████████████████████████████████████████████████████████

██████████████████████████████████████ Despite that recognition,

and notwithstanding his previous findings that █████████████████████████

████████████████████████████████████████████████████████████

██████████████████████████████ the arbitrator concluded that ██████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

███████████████████████ The arbitrator reasoned ████████████████████

████████████████████████████████████████████████████████████

█████████████████████████████████████████

The arbitrator also concluded that ████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
██ He concluded that ████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████ However, the arbitrator made ██
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████

## III.   <u>JURISDICTION AND VENUE</u>

This Court has jurisdiction over this action pursuant to 9 U.S.C. § 203 because it falls under the New York Convention. *See Scandinavian Reinsurance Co. v. Saint Paul Fire & Marine Ins. Co.*, 668 F.3d 60, 71 (2d Cir. 2012) (recognizing that the lower court had subject-matter jurisdiction over the relevant petition to vacate under 9 U.S.C. § 203 because the action involved a foreign corporation and thus, fell under the New York Convention); *Vidaplan S.A., Inc. v. Cipriani Int'l, S.A.*, 2006 WL 8461283, at *5 (S.D.N.Y. Aug. 7, 2006) (noting that the parties had "consented to personal jurisdiction in New York" because they had signed an agreement which provided for arbitration in New York and stated that New York law would govern). Venue is also proper in this judicial district pursuant to 9 U.S.C. § 204 because the parties agreed to arbitration in New York. (*See* ECF No. 60 at 1; JS at ¶¶ 12-13.)

13

IV.    **RESPONDENTS HAVE TIMELY MOVED TO VACATE THE PFA**

Although a motion to vacate an arbitration award "must be served . . . within three months after the award is filed or delivered," the award must be final for the three-month clock to begin to run. *See* 9 U.S.C. § 12; *Mitsubishi Heavy Indus., Ltd. v. Stone & Webster, Inc.*, 2009 WL 3169973, at *4 (S.D.N.Y. Sept. 29, 2009) ("Under the FAA, a district court only has the power to confirm or vacate a final arbitration award."); *Seneca Nation of Indians v. New York*, 420 F. Supp. 3d 89, 99 (W.D.N.Y. 2019) ("Federal courts may only review arbitration awards that are final."). "Generally, 'in order to be 'final,' an arbitration award must be intended by the arbitrators to be their complete determination of all claims submitted to them,' resolving both liability and damages." *Mitsubishi*, 2009 WL 3169973, at *4 (quoting *Michaels v. Mariforum Shipping, S.A.*, 624 F.2d 411, 413-14 (2d Cir. 1980)). In other words, an arbitration award "'must resolve all the issues submitted to arbitration, and . . . must resolve them definitively enough so that the rights and obligations of the two parties, *with respect to the issues submitted*, do not stand in need of further adjudication.'" *Seneca Nation*, 420 F. Supp. 3d at 99 (emphasis in original) (quoting *Rocket Jewelry Box, Inc. v. Noble Gift Packaging, Inc.*, 157 F.3d 174, 176 (2d Cir. 1998)).

Courts in the Second Circuit have held that a partial award as to liability can be deemed final and confirmable where the parties expressly agreed to bifurcate liability and damages. *See, e.g.*, *Glob. Gold Mining LLC v. Caldera Res., Inc.*, 941 F. Supp. 2d 374, 382 (S.D.N.Y. 2013) ("Thus, courts have repeatedly held that a definitive partial award as to liability is final and confirmable 'where the parties expressly agree to bifurcate liability and damages.'") However, those authorities involved situations in which the parties bifurcated the relevant arbitration proceedings to resolve all their liability issues first. *See, e.g.*, *Trade & Transp., Inc. v. Nat.*

*Petroleum Charterers Inc.*, 931 F.2d 191, 192 (2d Cir. 1991) ("[T]he parties asked the arbitrators to make an immediate determination as to liability . . . , leaving for a later time the calculation of damages, if any . . . ."); *Glob. Gold Mining LLC*, 941 F. Supp. 2d at 383 (bifurcating the issue of liability and reserving "'the issue of damages . . . for a later date'"); *Andrea Doreen, Ltd. v. Bldg. Material Local Union 282*, 250 F. Supp. 2d 107, 112 (E.D.N.Y. 2003) (determining that the arbitrator's decision as to liability was final because "the parties agreed during an arbitration hearing to bifurcate liability from remedy").

No such bifurcation took place here because the parties never agreed to bifurcate all liability issues and all damages issues into separate phases, and expressly reserved for the second phase of the Arbitration the resolution of at least one of one Petitioners' affirmative claims—their claim for indemnification. (*See* JS at ¶¶ 24-25; App. Ex. 13 at ¶¶ 3, 11-12; App. Ex. 1 at ¶¶ 3, 24, 182.) In addition, the issue of whether the parties could be held jointly and severally liable on any of Petitioners' affirmative claims was left open until the second phase of the Arbitration. (*See* JS at ¶¶ 40-41, 43; *see also* ECF No. 60 at 12-13.) As such, since there was no bifurcation of all liability issues and all damage issues into separate, distinct phases, Respondents' Motion to vacate the PFA is timely, and indeed, could not have been made until the Final Award was delivered.[3]

Further, Respondents are still permitted to oppose confirmation under the New York Convention.[4] 9 U.S.C. § 207 unequivocally provides that, "[w]ithin three years after an arbitral award falling under the [New York] Convention is made, any party to the arbitration may

---

[3] In addition, there can be no dispute that a motion to vacate the Final Award is timely given that Respondents' Motion is made within three months of the issuance of the Final Award.

[4] Neither side disputes that the New York Convention applies to GEM's anticipated motion to confirm the PFA. (*See, e.g.*, ECF No. 17 at ¶ 8.)

apply . . . for an order confirming the award," and "[t]he court shall confirm the award *unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the said Convention*." 9 U.S.C. § 207 (emphasis added). This Court has held that "a party may raise one of the grounds [articulated in the New York Convention] for vacating a[] [nondomestic AAA] arbitration award . . . in opposition to a motion to confirm" "at any time during the three-year period" set forth in 9 U.S.C. § 207. *See Jamaica Commodity Trading Co. v. Connell Rice & Sugar Co.*, 1991 WL 123962, at *3 (S.D.N.Y. July 3, 1991) ("Since [the] motion to vacate is made within three years of the award in opposition to [the] motion to confirm, it is permissible under the [New York] Convention."). In other words, "[t]he untimeliness of [a party's] opposition under the [FAA] does not preclude it from proceeding under the [New York] Convention." *See id.* ("Where the [FAA and New York Convention] overlap, a party 'has more than one remedy available and may choose the most advantageous.'"). Accordingly, Respondents should be permitted to oppose Petitioners' motion to confirm the PFA under the grounds articulated in the New York Convention.

## V. THE AWARDS SHOULD BE VACATED BECAUSE THE ARBITRATOR EXCEEDED HIS AUTHORITY

Under the FAA, an arbitration award must be vacated where an arbitrator "exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter was not made." 9 U.S.C. § 10(a)(4). In determining whether an arbitrator exceeded their authority, the question is whether the arbitrator had the power to reach the issue in question, not whether they correctly decided the issue. *Copragri S.A. v. Agribusiness United DMCC*, 2021 WL 961751, at *4 (S.D.N.Y. Mar. 15, 2021). Thus, a court may vacate an arbitration award "if the arbitrator acts outside the scope of his contractually delegated authority [and] issu[es] an award

16

that simply reflects his own notions of economic justice rather than drawing its essence from the [parties'] contract . . .." *Id.* at *5 (quoting *Oxford Health Plans LLC v. Sutter*, 569 U.S. 564, 569 (2013)).[5]

Courts have vacated arbitration awards where an award decides issues or claims that were never submitted to arbitration or otherwise ventures beyond the scope of the parties' arbitration submission. *See, e.g.*, *187 Concourse Assocs. v. Fishman*, 399 F.3d 524, 527 (2d Cir. 2005) ("Here, the arbitrator's authority was limited by both the CBA and the questions submitted by the parties for arbitration"; "[t]he arbitrator had no authority, under either the CBA or the submission, to fashion an alternative remedy" and order the employee reinstated); *AGCO Corp. v. Anglin*, 216 F.3d 589, 593 (7th Cir. 2000) ("Arbitrators have the authority to decide only those issues actually submitted by the parties.").

That is precisely what has transpired here. In both the PFA and the Final Award, the arbitrator determined that ███████████████████████████████████████████
███████████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████████

---

[5] Article V(1)(c) of the New York Convention has a similar prohibition. *See, e.g.*, *Parsons & Whittemore Overseas Co. v. Societe Generale De L'Industrie Du Papier (RAKTA)*, 508 F.2d 969, 976 (2d Cir. 1974) ("Under Article V(1)(c) [of the New York Convention], one defending against enforcement of an arbitral award may prevail by proving that . . . [t]he award deals with a difference not contemplated by or not falling within the terms of the submission to arbitration, or it contains decisions on matters beyond the scope of the submission to arbitration"; observing that Article V(1)(c) of the New York Convention "tracks" Section 10(a)(4) of the FAA and that "[b]oth provisions basically allow a party to attack an award predicated upon arbitration of a subject matter not within the agreement to submit to arbitration."); *Mgmt. & Tech. Consultants S.A. v. Parsons-Jurden Int'l Corp.*, 820 F.2d 1531, 1534-35 (9th Cir. 1987) ("In interpreting the grounds specified [in the New York Convention], it is generally recognized that the Convention tracks the Federal Arbitration Act"; analyzing Article V(1)(c) of the New York Convention by considering whether the arbiters had the authority to decide particular issues).

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

████████████████████████████████████████████████████

Furthermore, the Contribution Agreement has no arbitration clause and the parties ████

███████████████████████████████████████████████████████████

████████████████████████████ Accordingly, █████████████████████████████

█████████████████████████████████, the arbitrator exceeded his authority ████

█████████████████████████████████████████████████ *See, e.g., AGCO Corp.*, 216 F.3d at 593-94 (holding that the arbitrators exceeded their authority when they considered issues arising out of an agreement that lacked an arbitration clause and went beyond the scope of the disputes covered by the relevant arbitration clause); *Eljer Mfg., Inc. v. Kowin Dev. Corp.*, 14 F.3d 1250, 1256-57 (7th Cir. 1994) (concluding that the arbitrator exceeded the scope of his powers by awarding damages for a transaction which was "completely separate" from and not caught by the agreement which contained the arbitration clause); *see also Copragri*, 2021 WL 961751, at *5 (concluding that the arbitrators exceeded their authority by issuing their award because the award decided a dispute under an agreement to which the petitioner was not a party).

The arbitrator also exceeded his powers with respect to his findings that █████████████ ███████████████████████████████████ In both Awards, the arbitrator concluded that, ████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

██████████████████████████████ However, GEM never ████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

██████████████████████████████████ *See* AAA Rules, R-6(b) ("After the arbitrator is appointed, however, no new or different claim may be submitted except with the arbitrator's consent.") As a result, it was patently improper and beyond the scope of the arbitrator's authority for him to ████████████████████████████ *See Roadway Package Sys., Inc. v. Kayser*, 257 F.3d 287, 301 (3d Cir. 2001) (concluding that the arbitrator exceeded his authority in determining that the plaintiff shipper's procedures for notifying the defendant contractor of its dissatisfaction with his performance were unfair where the arbitrator was empowered to decide only whether the contractor's termination was within the terms of the parties' agreement), *abrogated on other grounds by Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576 (2008).

## VI. THE COURT SHOULD REFUSE TO ENFORCE THE AWARDS BECAUSE THEY CONTAIN CONTRADICTORY FINDINGS OF FACT AND CONCLUSIONS OF LAW

This Court also should refuse to enforce the Awards given the Awards' contradictory findings of fact and irreconcilable conclusions of law. Under 9 U.S.C. § 10(a)(4), a court may refuse to an enforce an arbitration award that is incomplete, ambiguous, or contradictory. *See Bell Aerospace Co. Div. of Textron, Inc. v. Local 516, Int'l Union, (UAW)*, 500 F.2d 921, 923-24 (2d Cir. 1974) (refusing to confirm arbitration award where award was "contradictory on its face."); *see also Three Bros. Trading, LLC v. Generex Biotechnology Corp.*, 2019 WL 3456631, at *4-5 (S.D.N.Y. July 31, 2019) (Failla, J.) (refusing to enforce award that was susceptible to "several possible interpretations" which "yield[ed] very different outcomes for the parties"); *cf. Local 814, Int'l Bhd. of Teamsters v. Sotheby's, Inc.*, 665 F. Supp. 1089, 1093-96 (S.D.N.Y. July 30, 1987)

19

(vacating arbitration award because, among other things, the award "explicitly contradict[ed]" the arbitrator's "own findings of fact[]").

The Awards are contradictory on their face. In both the PFA and Final Award, the arbitrator found that ████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████
███████████████████████████████ But the arbitrator concluded that ████████████████
████████████████████████████████████████████████████████████████████████
████████████████ To compound the problem, he also found that ████████████████████
████████████████████████████████████████████████████████████████████████
███████████████████████████████[6]████████████████████████████████████████
████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████
██████████████████████

---

[6] The Contribution Agreement was effective as of May 12, 2021. (*See* App. Ex. 2.) However, the arbitrator determined that ████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████
████████████████████████████████████

20

The arbitrator's finding that ███████████████████████████████

███████████████████████████████████████████████████████████

███████████████████ In both Awards, the arbitrator concluded that, █████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

████████████████████████████████████████████ However, the arbitrator

concluded that ██████████████████████████████████████████████

███████████████████████████████████████████████████████████

██████

In addition, the arbitrator determined that ███████████████████████

███████████████████████████████████████████████████████████

█████████████████████████ However, MAI did not come into existence until November 2021.

(*See* App. Ex. 3 at Introductory Note, Items 5.03 and 8.01.) The arbitrator never ████████████

███████████████████████████████████████████████████████████

21

██████████████████████████████████████████████████████████████

██████████████████████████████████████████

There simply is no way to reconcile these contradictory findings under New York law (or any other law for that matter). Nor can they be ignored; these findings are the basis for the arbitrator's conclusion that ████████████████████████████████████████████ ██████████████████████████ As such, the Awards cannot stand.

## VII. THE FINAL AWARD WAS RENDERED IN MANIFEST DISREGARD OF THE LAW

The Final Award also should be vacated because it was rendered in manifest disregard of the law. "An award is rendered in manifest disregard of the law, when 'the arbitrator knew of the relevant [legal] principle, appreciated that this principle controlled the outcome of the disputed issue, and nonetheless willfully flouted the governing law by refusing to apply it.'" *Copragri*, 2021 WL 961751, at *5 (quoting *Kuczynski v. Viad Corp.*, 2019 WL 6216689, at *5 (D. Conn. Nov. 21, 2019)). "[T]o . . . vacate an award on this ground, a court must find both that (1) the arbitrators knew of a governing legal principle yet refused to apply it or ignored it altogether, and (2) the law ignored by the arbitrators was well defined, explicit, and clearly applicable to the case." *Halligan v. Piper Jaffray, Inc.*, 148 F.3d 197, 202 (2d Cir. 1998).

While the reach of the manifest disregard doctrine is "limited," an arbitrator need not "state that [he] is deliberately ignoring the law" for a court to find that the arbitrator engaged in manifest disregard of the law. *See id.* at 202-04. Rather, a court may "impute to the arbitrator[]" "'knowledge of [the] governing law identified by the parties to the arbitration.'" *MetLife Sec., Inc. v. Bedford*, 456 F. Supp. 2d 468, 473 (S.D.N.Y. 2006) (quoting *Duferco Int'l Steel Trading v. T. Klaveness Shipping A/S*, 333 F.3d 383, 390 (2d Cir. 2003)); *Halligan*, 148 F.3d at 203-04

(concluding that the arbitrators ignored the law where, among other things, "[t]he record indicate[d]" that both parties explained the applicable law to the arbitrators).

In his Final Award, the arbitrator clearly ignored and refused to apply controlling New York law on at least three separate occasions. *One*, ████████████████████████ joint and several liability may be imposed for a breach of contract claim under New York law only in very limited circumstances, such as where two parties to a contract are co-promisors on that same agreement or where the evidence justifies piercing the corporate veil and ignoring a corporation's independent existence. (App. Ex. 26 at 17-19.) However, ████████████ ████████████████████████████████, the arbitrator nonetheless concluded ████████████████████████████████████ ████████████████████████ This was so, even though the arbitrator ██████████████ ████████████████████████████████████████ ████████████████████████████████████

Instead, the arbitrator concluded that ████████████████████████████████ ████████████████████████████████████████ ████████████████████████ That conclusion, however, is ██████████ ████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████████

23

███████████████████████████████████████████████████████

████████████████████████████████████

Indeed, in their briefing to confirm the Second Interim Measures Order, Petitioners

themselves conceded that ███████████████████████████████████████

██████████████████████████████████████████████ In short, the

arbitrator never ██████████████████████████████████████

███████████████████████ Instead, he ██████████████████████████████████

████████████████████████████████████ There is only one

explanation for the arbitrator's conclusion that ████████████████████████████████

███████████████████████████ : the arbitrator chose to ████████████████████

███████████████████████████████████████████████████████

████████

*Two*, ███████████████████████████████████████████████ "[u]nder

well-settled New York law, damages in a breach of contract case are calculated at the time of the

breach." (*See* App. Ex. 26 at 10-11; *see also id.* Ex. 28 at 8.) The arbitrator ████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

24

████████████████████████████████████████████████

████████████████████████ Put differently, the arbitrator disregarded his own evidentiary findings and controlling New York law, opting instead to dole out an award based on a standard nowhere found in New York law, but one that comported with his own notions of justice.

*Three*, the arbitrator ██████████████████████████████████ ███████████████████████████ To properly calculate damages under New York law and put GEM in the same economic position it would have been in had Respondents fulfilled their obligations under the GEM Agreements, the arbitrator was required to consider any benefits GEM may have received as a direct consequence of Respondents' purported breaches and reduce GEM's final damages award by those amounts. (*See id.* Ex. 26 at 9; *see id.* Ex. 28 at 8.) █████

████████████████████████████████████████████████

████████████████████████████████████████████████

██

Despite █████████████████████████████████████████

██████ the arbitrator concluded that █████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

25

████████████████████████████████████████████████████████████████

████████████████████████████████████  As such,  ████████████████

████████████████  was issued in manifest disregard of the law, and the Final Award should be

vacated on this ground as well.

## VIII.  <u>CONCLUSION</u>

For the foregoing reasons, Respondents respectfully request that the Court grant their

Motion, vacate the Awards, and deny Petitioners' anticipated motion to confirm the Awards.

Dated:  New York, New York
       July 10, 2024

Respectfully Submitted,

**McDermott Will & Emery LLP**

By: <u>*/s/ David K. Momborquette*</u>
    David K. Momborquette
    Antonios G. Koulotouros
    One Vanderbilt Avenue
    New York, New York 10017
    (212) 547-5400
    dmomborquette@mwe.com
    akoulotouros@mwe.com

    *Attorneys for Respondents Mullen*
    *Technologies, Inc. and Mullen Automotive, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on July 10, 2024, I caused the foregoing Memorandum of Law in Support of Respondents' Motion for Summary Judgment to be served on the following counsel for Petitioners via email. The following counsel have confirmed that they represent Petitioners in this action and provided written consent to electronic service via email.

Jonathan A. Patchen
WILLKIE FARR & GALLAGHER LLP
333 Bush Street
San Francisco, CA 94104
(415) 858-7594
jpatchen@willkie.com

Madeleine Tayer
Justin Garbacz
WILLKIE FARR & GALLAGHER LLP
787 Seventh Avenue
New York, New York 10019
(212) 728-8914
mtayer@willkie.com
jgarbacz@willkie.com

*/s/ David K. Momborquette*
David K. Momborquette

27