

**mwe.com**

David K. Momborquette
Attorney at Law
dmomborquette@mwe.com
+1 212 547 5490

August 1, 2024

**VIA ECF**

Honorable Katherine Polk Failla
United States District Court
Southern District of New York
Thurgood Marshall
United States Courthouse
40 Foley Square, Room 2103
New York, NY 10007

Re:   *GEM Yield Bahamas Limited, et al. v. Mullen Technologies, Inc. et al.*, No. 1:24-cv-01120-KPF
       Response to Petitioners' July 30, 2024 Letter Submission

To the Honorable Katherine Polk Failla:

    We represent Respondents Mullen Technologies, Inc. and Mullen Automotive, Inc. ("MAI") in the above-referenced action and write in response to the July 30, 2024, letter submission made by Petitioners GEM Global Yield LLC SCS and GEM Yield Bahamas Limited (collectively, "GEM"). Although the letter submission purportedly was filed to provide the Court with an "update[]," GEM's submission is, in reality, just another piece of advocacy aimed at (i) convincing the Court that MAI is intentionally evading its obligations under the Orders[1] and (ii) requesting that the Court impose additional obligations on MAI. For the reasons delineated below, the Court should reject GEM's latest demands.

    As detailed in its OSC Memorandum, MAI has been unable to satisfy its obligations under the Orders because it has not had the financial wherewithal to do so. (ECF No. 93 at 5-6.) In an effort to remain solvent, MAI took affirmative steps to secure two financing commitments—the Note Transaction and the ELOC Transaction. (*Id.* at 7-9.) MAI's stockholders have now approved both of those financing transactions. However, to date, MAI has only been able to access funds pursuant to the Note Transaction and is utilizing those funds to keep the Company's business viable, a fact that should not be surprising considering MAI's cash and accounts payable balances. (*See id.* at 6.) And although the OSC Memorandum discussed how the ELOC Transaction might be utilized to satisfy, at least in part, MAI's obligations under the Orders, to date, all of the conditions governing the ELOC Transaction have not been satisfied, and therefore, the Company has not yet been able to draw down on that facility. Contrary to what

---

[1] All capitalized terms that are not defined herein have the meanings set forth in Respondents' Memorandum Of Law In Response To The Court's Order To Show Cause (ECF No. 93, the "OSC Memorandum").



One Vanderbilt Avenue   New York NY 10017-3852   Tel +1 212 547 5400   Fax +1 212 547 5444

*US practice conducted through McDermott Will & Emery LLP.*

Honorable Katherine Polk Failla
August 1, 2024
Page 2

GEM would have the Court conclude, there is <u>nothing</u> about these facts that is inconsistent with any representation made in the OSC Memorandum or that otherwise supports a conclusion that MAI is purposefully evading its obligations under the Orders. To the contrary, the affirmative steps that MAI has taken to secure funding also are steps that maximize MAI's ability to generate funds that could be escrowed pursuant to the Orders.

   GEM steadfastly refuses to grapple with the consequences of MAI's current financial condition and the impact that that condition has had on MAI's current ability to satisfy the Orders. For instance, even after obtaining the shareholder approval of the Note Transaction and ELOC Transaction, MAI was warning the market as recently as last week that an inability to sell securities going forward may result in MAI not being "able to obtain any funding" and "not hav[ing] sufficient resources to conduct [its] business as projected, both of which could mean that [MAI] would be forced to curtail or discontinue [its] operations." (*See* Exhibit A, attached hereto, at 7.) Nevertheless, GEM is proceeding as though there is some pile of cash that MAI is accessing but refuses to escrow or otherwise segregate pursuant to the Orders. That simply is not the case. Indeed, GEM goes so far as to mislead the Court about MAI's financial condition by noting that MAI recently filed a Form S-1 for the sale of up to 85,000,000 shares, but failing also to note that these shares relate solely to shares issued to third-party investors and that MAI will not receive any of the proceeds from the sale or other disposition of those shares. (*Id.* at 4.)

   There is no need to place any additional disclosure requirements on MAI as Petitioners request. MAI has been, and continues to be, transparent in its public filings both regarding its precarious financial condition, as well as the status and use of the two financing facilities that it recently secured. (*See, e.g.*, Exhibit A.) And although GEM requests that the Court require MAI to make periodic partial deposits into escrow, it simply is impossible to estimate with any accuracy the amount of proceeds that MAI will be able to draw down for any given period. As MAI noted in its OSC Memorandum, there are limitations on the number of shares that the Company can direct the investor to purchase on any given day. (ECF No. 93 at 8.) In addition, the amount of proceeds that MAI will receive on any given day is dependent on several factors, including the share price of MAI. (*See id.*; *see also* ECF No. 94-2 at 11; ECF No. 96-2 at 11.) MAI's future share price is not readily predictable.

   If GEM truly believed that it has obtained a confirmable arbitration award, one would expect that it would be in GEM's best interest to have a solvent MAI. Instead, GEM appears intent on seeking the imposition of financial conditions on MAI that likely would financially cripple it. The Court should reject those efforts.

Respectfully submitted,

*/s/ David K. Momborquette*
David K. Momborquette

