**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

GEM YIELD BAHAMAS LIMITED and GEM
GLOBAL YIELD LLC SCS,

        Petitioners,

          vs.

MULLEN TECHNOLOGIES, INC. and MULLEN
AUTOMOTIVE, INC.,

        Respondents.

Case No. 1:24-cv-01120-KPF

Hon. Katherine Polk Failla

---

## MEMORANDUM OF LAW IN SUPPORT OF PETITIONERS' MOTION FOR SUMMARY JUDGMENT

WILLKIE FARR & GALLAGHER LLP
Jonathan A. Patchen (admitted *pro hac vice*)
333 Bush Street
San Francisco, California  94104
(415) 858-7594
(415) 858-7418
jpatchen@willkie.com

Madeleine Tayer
Justin Garbacz
787 Seventh Avenue
New York, New York  10019
(212) 782-8914
(212) 728-8801
mtayer@willkie.com
jgarbacz@willkie.com

*Attorneys for Petitioners GEM Yield Bahamas*
*Limited and GEM Global Yield LLC SCS*

**TABLE OF CONTENTS**

I.    PRELIMINARY STATEMENT ................................................................1

II.    SUMMARY OF RELEVANT BACKGROUND ...................................6

    A.    The GEM Agreements and Mullen's Plan to Take Its EV Business Public ................................................................................6

    B.    The Spin-Off and Reverse Merger ...............................................7

    C.    The Arbitration...............................................................................9

        1.    Phase One: Liability and the PFA...................................10

        2.    Phase Two: Remaining Issues and the Final Award......................11

III.    RESPONDENTS' CHALLENGES TO THE PFA ARE TIME BARRED ..........13

IV.    RESPONDENTS' MERITS CHALLENGES ARE FRIVOLOUS......................17

    A.    The Arbitrator Did Not Exceed His Authority ..........................17

    B.    Purported Inconsistencies in the Awards Do Not Support Vacatur..........22

    C.    The Awards Were Not Rendered in Manifest Disregard of the Law ........25

CONCLUSION.....................................................................................................30

**TABLE OF AUTHORITIES**

Page(s)

**Cases**

*187 Concourse Assocs. v. Fishman,*
    399 F.3d 524 (2d Cir. 2005)..............................................................................18

*ABNL Ltd. v. Baker Hughes Process Sys.,*
    No. CV H-04-4662, 2005 WL 8164068 (S.D. Tex. May 16, 2005).......................16

*AGCO Corp. v. Anglin,*
    216 F.3d 589 (7th Cir. 2000) ..............................................................................20

*In Matter of Arb. Between P.M.I. Trading Ltd. v. Farstad Oil, Inc.,*
    No. 00 CIV. 7120 (RLC), 2001 WL 38282 (S.D.N.Y. Jan. 16, 2001) ..................15

*Bell Aerospace Co. Div. of Textron, Inc. v. Local 516, Int'l Union (UAW),*
    500 F.2d 921 (2d Cir. 1974)...............................................................................23

*Bergesen v. Joseph Muller Corp.,*
    710 F.2d 928 (2d Cir. 1983)...............................................................................16

*Capgemini U.S. LLC v. Sorensen,*
    No. 04 CIV. 7584 (JGK), 2005 WL 1560482 (S.D.N.Y. July 1, 2005) ................29

*Copragri S.A. v. Agribusiness United DMCC,*
    No. 20 CIV. 5486 (LGS), 2021 WL 961751 (S.D.N.Y. Mar. 15, 2021) ...............20

*Florasynth, Inc. v. Pickholz,*
    750 F.2d 171 (2d Cir. 1984).................................................................13, 16, 17

*Frankel v. Sardis,*
    904 N.Y.S.2d 18 (N.Y. App. Div. 1st Dept. 2010)..............................................22

*Golden Krust Franchising, Inc. v. Actus Rest. Grp., Inc.,*
    No. 20-CV-7321, 2021 WL 4974808 (S.D.N.Y. Oct. 26, 2021)...........................22

*Gonsalvez v. Celebrity Cruises Inc.,*
    750 F.3d 1195 (11th Cir. 2013) ..........................................................................15

*Grupo Unidos Por El Canal, S.A. v. Autoridad del Canal de Panama,*
    No. CV 17-23996-CIV, 2018 WL 3059649 (S.D. Fla. June 20, 2018) ............16, 17

*Hall St. Assocs., L.L.C. v. Mattel, Inc.,*
    552 U.S. 576 (2008).............................................................................................6

*Hall St. Assocs, LLC v. Mattel, Inc.*,
    522 U.S. 576 (2008)..................................................................................22

*Halligan v. Piper Jaffray, Inc.*,
    148 F.3d 197 (2d Cir. 1998)......................................................................25

*InterDigital Commc'ns Corp. v. Nokia Corp.*,
    407 F. Supp. 2d 522 (S.D.N.Y. 2007).......................................................23

*Jamaica Commodity Trading Co. Ltd. v. Connell Rice & Sugar Co., Inc.*,
    No. 87 CIV. 6369 (JMC), 1991 WL 123962 (S.D.N.Y. July 3, 1991)............15, 16

*Jock v. Sterling Jewelers Inc.*,
    646 F.3d 113 (2d Cir. 2011)...........................................................17, 19, 20, 21

*Kallen v. Dist. 1199, Nat. Union of Hosp. & Health Care Emps.*,
    574 F.2d 723 (2d Cir. 1978)......................................................................23

*Kurt Orban Co. v Angeles Metal Sys.*,
    573 F.2d 739 (2d Cir. 1978)......................................................................22

*Local 802, Assoc. Musicians of Greater NY v. Parker Meridien Hotel*,
    145 F.3d 85 (2d Cir. 1998)........................................................................16

*NYKCool A.B. v. P. Fruit Inc.*,
    No. 10 CIV. 3867 LAKAJP, 2011 WL 3666579 (S.D.N.Y. Aug. 9, 2011) ......26, 27

*Oldroyd v. Elmira Sav. Bank, FSB*,
    134 F.3d 72 (2d Cir. 1998)........................................................................18

*Oxford Health Plans LLC v. Sutter*,
    569 U.S. 564 (2013)....................................................................................1

*Plant Performance Servs. Int'l, Ltd. v. Gen. Electric Int'l, Inc.*,
    No. 09 CIV. 0678 (SCR), 2009 WL 10741320 (S.D.N.Y. Dec. 2, 2009) ........17, 24, 27

*Matter of Roffler v. Spear, Leeds & Kellogg*,
    13 A.D.3d 308 (N.Y. App. Div. 1st Dep't 2004)......................................22

*Saint Mary Home, Inc. v. Serv. Emp.*
    *'s Int'l Union, Dist. 1199*, 116 F.3d 41, 44-45 (2d Cir. 1997)..................22

*Scandinavian Reinsurance Co. Ltd. v. St. Paul Fire and Marine Ins. Co.*,
    668 F.3d 60 (2d Cir. 2012).................................................................15, 17

*Seneca Nation of Indians v. New York*,
    988 F.3d 618 (2d Cir. 2021)......................................................................25

*Sperry Intern. Trade, Inc. v. Gov't of Israel*,
  689 F.2d 301 (2d Cir. 1982)..........................................................................27

*STMicroelectronics, N.V. v. Credit Suisse Secs. (USA) LLC*,
  648 F.3d 68 (2d Cir. 2011)............................................................................25

*Stolt–Nielson SA v. Animalfeeds Int'l Corp.*,
  130 S. Ct. 1758 (2010)..................................................................................25

*T. Co Metals, LLC v. Dempsey Pipe & Supply, Inc.*,
  592 F.3d 329 (2d Cir. 2010).....................................................................17, 18

*Telecom Bus. Sol., LLC v. Terra Towers Corp.*,
  No. 23-144, 2024 WL 446016 (2d Cir. Feb. 6, 2024) .........................25, 26, 27, 28

*Three Brothers Trading, LLC v. Generex Biotechnology Corp.*,
  No. 18 CIV. 11585 (KPF), 2019 WL 3456631 (S.D.N.Y. July 31, 2019) .............23

*Trade & Transp., Inc. v. Nat. Petroleum Charterers, Inc.*,
  931 F.2d 191 (2d Cir. 1991)................................................................13, 14, 28

*Wells Fargo Advisors, LLC v. Sappington*,
  328 F. Supp. 3d 317 (S.D.N.Y. 2018)............................................................20

*Westerbeke Corp. v. Daihatsu Motor Co., Ltd.*,
  304 F.3d 200 (2d Cir. 2002).......................................................................6, 22

*WorldCrisa Corp. v. Armstrong*,
  129 F.3d 71 (2d Cir. 1997)............................................................................22

*Yusuf Ahmed Alghanim & Sons v. Toys "R" Us, Inc.*,
  126 F.3d 15 (2d Cir. 1997).....................................................................15, 16, 17

*Zeiler v. Deitsch*,
  500 F.3d 157 (2d Cir. 2007)..........................................................................15

**Statutes**

9 U.S.C. § 10........................................................................................22, 25

9 U.S.C. § 207...........................................................................................15

Petitioners GEM Yield Bahamas Limited and GEM Global Yield LLC SCS (collectively, "GEM" or "Petitioners") respectfully submit this Memorandum of Law in support of their Motion for Summary Judgment seeking confirmation and entry of judgment on both the Partial Final Award on Liability (the "PFA") and the Final Award (the Final Award, together with the PFA, the "Awards") issued by Arbitrator Mark C. Morril in the arbitration proceeding between Petitioners and Respondents Mullen Technologies, Inc. ("MTI") and Mullen Automotive, Inc. ("MAI" and together with MTI, "Mullen" or "Respondents"), entitled *GEM Yield Bahamas Limited and GEM Global Yield LLC SCS v. Mullen Technologies, Inc. and Mullen Automotive, Inc.*, AAA Case No. 01-21-0016- 7001 (the "Arbitration"), and in opposition to Respondents' Motion for Summary Judgment seeking to vacate the Awards (the "Vacatur Motion"), and the Memorandum of Law submitted in support thereof (ECF No. 100, "Respondents' Memorandum" or "Memo").

## I.    PRELIMINARY STATEMENT

Respondents' Vacatur Motion is sour grapes from a party that is unhappy with the result of an Arbitration that Respondents voluntarily agreed to and fully participated in.  If parties could make "full-bore legal and evidentiary appeals," arbitration would become "merely a prelude to a more cumbersome and time-consuming judicial review process."  *Oxford Health Plans LLC v. Sutter*, 569 U.S. 564, 568-69 (2013).  That is why federal law requires that district courts employ an "extremely deferential standard" when reviewing arbitration awards, and allows for vacatur "only in very unusual circumstances[.]"  ECF No. 85 at 9-10.  Where parties broadly agree to arbitrate, as they have done here, an arbitral award "even arguably construing or applying the contract must stand, regardless of a court's view of its [de]merits."  *Id*;  *Sutter*, 569 U.S. at 569.

Respondents' Memorandum does not come close to meeting the standard for vacatur. Respondents' arguments are based on a disregard for the law, for the facts of this case, and for the consequences of their conduct. In order to fully appreciate the absurdity of Respondents' arguments, it is necessary to understand how the Awards came to be.

The parties' dispute arises out of a financing agreement that was entered between GEM and Mullen, as set out in: (i) a Share Purchase Agreement (the "SPA"), (ii) a Registration Rights Agreement (the "RRA"), and (iii) a Warrant (the Warrant, and together with the SPA and RRA, the "GEM Agreements"). Under the GEM Agreements, GEM committed to make certain equity financing available to Mullen in the event that it went public. Mullen, in exchange, committed to providing GEM with two forms of consideration—a Committee Fee and a Warrant—which would be triggered in the event of a going-public transaction, including a "Reverse Merger Transaction." GEM and Mullen understood that the purpose of the GEM Agreements, and the rationale for Mullen going public, was to grow Mullen's primary asset—the only asset that GEM had any interest in—Mullen's electric vehicle ("EV") business. At the time the GEM Agreements were executed, Mullen had already entered into an agreement with Net Element, Inc. ("NETE"), a publicly traded company, pursuant to which Mullen would "go public" by merging with NETE.

Shortly after executing the financing documents, Mullen changed tact. It entered agreements with third parties that expressly precluded Mullen from utilizing the GEM financing. Mullen and NETE proceeded with the reverse merger without providing the contractually required notice to GEM. When GEM learned of this, and demanded Mullen comply with its contractual obligations, Mullen cast about for pretext, asking its lawyer to come up with an argument for why the GEM agreements did not apply to the Mullen/NETE reverse merger. The argument Mullen

decided to make?  That the term "Reverse Merger Transaction" did not apply to the Mullen/NETE reverse merger transaction.

In light of Mullen's clear repudiation of its obligations, GEM initiated arbitration in September 2021.  And Mullen forged ahead with the reverse merger, which closed in November 2021.  As part of the merger, rather than having MTI merge with NETE, MTI (i) created a new entity, MAI, (ii) contributed its entire EV business to MAI and had MAI spun-off to MTI's investors, and then (iii) had MAI, rather than MTI, reverse merge with NETE.  The transfer of MTI's EV assets was accomplished through a Contribution and Spin-Off Agreement between MTI and MAI. ███████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████████

█████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

██████████████████████████████████ And Respondents

let the three-month period to challenge the PFA lapse.

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

With this background in mind, Respondents' arguments for vacatur are understood for what they are—more frivolous delay tactics—and are easily dispensed with. *First*, Respondents argue that the Arbitrator exceeded his authority by (1) considering the Contribution Agreement as evidence that Respondents had breached the GEM Agreements and (2) finding that Respondents had breached Sections 4.08 and 9.13 of the SPA, [REDACTED]

[REDACTED]

[REDACTED]

[REDACTED] More importantly, both of these issues were squarely within the Arbitrator's authority to decide "[a]ll disputes controversies or claims between the [p]arties arising out of or in connection with" the SPA. *Second*, Respondents argue that the Arbitration awards should be vacated because they purportedly contain inconsistencies. This argument fails as a matter of law

---

[1]    Respondents also launched the Recission Litigation before Your Honor, asserting a securities law claim that Respondents had already raised, and had been rejected by, the Arbitrator.

because inconsistency is not a basis for vacatur.  In any event, what Respondents describe as contradictions are actually just alternative bases for holding both MTI and MAI liable.

*Finally*, Respondents argue that the Arbitrator manifestly disregarded the law by (1) finding MTI and MAI jointly liable, without expressly finding that they were co-promisors; (2) measuring damages as of the Public Listing Date; and (3) not accounting for a purported "benefit" that GEM received on account of Respondents' breach.  None of these arguments identify a governing rule of law that was misapplied, much less one the that the Arbitrator intentionally defied.  *First*, whether MTI and MAI were jointly and severally liable as co-promisors does not matter because the Arbitrator was vested with broad equitable powers to fashion any remedy or relief he deemed just and equitable.  The Arbitrator had every reason to hold MTI and MAI jointly and severally liable; ███████████████████████████████████████████████████ ██████████████████████████████████████████  Whether MTI and MAI are both separately liable for GEM's damages, or "jointly and severally" liable, is simply a matter of semantics.

*Second*, the Arbitrator's measurement of damages as of the Public Listing Date is entirely consistent with the governing principle of contract damages under New York law, i.e., that damages should restore the non-breaching party to the position it would have been in absent breach.  ███████████████████████████████████████████████████ ███████████████████████████████████████████████████ ███████████████████████████████████████████████████ ████████████████████████████████  *Third*, the law does not require that a damages award be adjusted downward to account for uncertain, undefined "benefits" that the non-breaching party received on account of their counterparty's breach.  To the contrary, the law squarely places the burden of uncertainty as to damages on the party in breach.  Respondents did

not just fail to meet that burden; they never put forward any evidence whatsoever of the supposed "benefit" GEM received from Mullen's breach—not here, ███████████████████ And in light of the fact that ████████████████████████████████████, it defies credulity to suggest that the Arbitrator intentionally disregarded the law ███████████████ ███████████████.

Because Respondents have not established any basis for vacating the Awards, the Awards must be confirmed. *Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 582 (2008) (citing 9 U.S.C. §§ 9-11); ECF 85 at 10.

## II.    SUMMARY OF RELEVANT BACKGROUND

### A.    The GEM Agreements and Mullen's Plan to Take Its EV Business Public

On January 4, 2021, GEM and MTI executed a Share Purchase Agreement ("SPA"), a Registration Rights Agreement ("RRA"), and a Warrant (collectively, the "GEM Agreements"). Joint 56.1 Statement, ECF No. 102 (the "JSMF") ¶ 11. The SPA contained a broad arbitration clause, applying to "[a]ll disputes, controversies, or claims between the Parties arising out of or in connection with this agreement[.]" *Id.* ¶ 12. The RRA contains a similar provision. *Id.* ¶ 13.

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

---

[2]    To the extent this Background section cites to the PFA, it cites to the Arbitrator's findings of fact, which are not subject to judicial challenge. *See* PFA ¶ 59 ("To the extent there is any disagreement as to the facts recited here that are not identified as disputed, the recitation of facts here constitutes findings of fact by the Arbitrator."); *Westerbeke Corp. v. Daihatsu Motor Co., Ltd.*, 304 F.3d 200, 214 (2d Cir. 2002) ("The arbitrator's factual findings and contractual interpretation are not subject to judicial challenge[.]")

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

██████████████████████████████████

    ████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

██████████████████████████████████████████

**B.      The Spin-Off and Reverse Merger**

    ████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████████████████████████████

█████████████████████████████████████████████

█████████████████████████████████████████████

█████████████████████████████████████████████

█████████████████████████████████████████████

█████████████████████████████████████████████

█████████████████████████████████████████████

█████████████████████████████████████████████

█████████████████████████████████████████████

█████████████████████████████████████████████

█████████████████████████████████████████████

█████████████████████████████████████████████

█████████████████████████████████████████████

█████████████████████████████████████████████

████████████████████████████████████    When Mullen declined, GEM

initiated the Arbitration on September 27, 2021, naming MTI as the Respondent.  JSMF ¶ 16.

███████████████████████████████████████

█████████████████████████████████████████████

█████████████████████████████████████████████

█████████████████████████████████████████████

█████████████████████████████████████████████

██████████████████████████████████████

███████████████████████████████████████

████████████████████████████████

## C.    The Arbitration

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

██████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

██████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

█████████████████████████████

1.     <u>Phase One: Liability and the PFA</u>



███████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

██████████████████████████████████

█████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

████████████████████████████████████

2.    Phase Two: Remaining Issues and the Final Award

On January 9, 2023, and January 23, 2023, the parties submitted their opening and responsive Phase Two briefing on damages and other Remaining Issues. JSMF ¶ 26. Prior to the bifurcation of proceeding, both parties had each submitted expert reports that calculated GEM's damages and those reports were part of the Phase Two record. *See* Supplemental 56.1 ¶¶ 55-58.

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

## III.     RESPONDENTS' CHALLENGES TO THE PFA ARE TIME BARRED

Section 12 of the FAA requires that any motion to vacate an arbitration award be filed within three months of the award's issuance.  If no such motion is filed, a party is barred from both affirmatively seeking vacatur and defensively opposing confirmation.  *Florasynth, Inc. v. Pickholz*, 750 F.2d 171, 175 (2d Cir. 1984)  ("[A] party may not raise a motion to vacate, modify, or correct an arbitration award after the three month period has run, *even when raised as a defense to a motion to confirm*.") (emphasis added).  This rule applies to any arbitral award that finally resolves an issue submitted to the arbitrator, including interim measures awards and partial final awards. Application of these rules here is straightforward: the PFA was issued on November 17, 2023 and Respondents did not move to vacate the PFA within three months thereof.  All of Respondents' challenges to the PFA are time barred.[3]

Respondents make two arguments to avoid this outcome.  Both are meritless.  *First*, Respondents claim that the issues expressly bifurcated by the parties (Ex. 13) and resolved in the PFA are not subject to the three-month rule.  Respondents make the argument based on a flat misrepresentation of the law; in particular, they claim the Second Circuit requires the parties to "agree[] to bifurcate *all* liability issues and *all* damages issues into separate phases[.]"  Memo at 15 (emphasis added).  But this is not the law.  The very Second Circuit case cited by Respondents *directly rebuts* this assertion.  *See Trade & Transp., Inc. v. Nat. Petroleum Charterers, Inc.*, 931 F.2d 191 (2d Cir. 1991).  The Court makes clear that parties can obtain a partial final award on

---

[3]     The vast majority of Respondents' arguments are directed at the PFA, including the entirety of the "Exceeded Authority" and "Contradictory Findings" arguments.  Memo. 16-22.  Only the last two sub-arguments that Respondents make in their "Manifest Disregard" section (i.e., their arguments that the Arbitrator manifestly disregarded (i) the appropriate date for damages calculation and (ii) a purported "benefit" that Petitioners' received from Respondents' breach) have anything to do with the issues resolved in the Final Award.

*any* subset of issues: "if the parties have asked the arbitrators to make a final partial award *as to a particular issue*," the arbitrator can issue a final award as to that issue. *Id*. at 195 (emphases added). And that is what actually happened therein: "the parties asked the arbitrators to make an immediate determination as to liability for cancellation of the fourth voyage, leaving for a later time the calculation of damages, if any, for that voyage *and* demurrage for the first three voyages." *Id*. at 192. Respondents' strawman argument—that partial final awards are subject to the three-month rule *only if* there is a complete bifurcation of liability and damages—is patently false. The PFA was final as to all of the issues addressed therein—exactly as the Parties agreed.[4]

And even if Respondents' assertion were the law, it is clear that the parties, the Arbitrator, and this Court all understand that the agreed-upon bifurcation was as to all liability claims. *See* Ex. 13; PFA. ¶ 190 ███████████████████████████████████████████████ ████████████ ; *id* ¶ 185 ██████████████████████ ; ECF No. 85 at 2 ("[T]he parties bifurcated the arbitration proceeding into two phases, the first of which to determine liability and the second to award damages and resolve any remaining issues."). Respondents' final, *ipse dixit* assertion that they could not have moved to vacate the PFA until the Final Award (Memo at 15) is belied by Petitioners' seeking

---

[4]    Respondents argue that the issue of joint and several liability was reserved for the Final Award. Not so. The issue was raised, argued, and finally resolved by the PFA, as this Court knows. ECF 85 at 5 ("On November 17, 2023, the Arbitrator issued a Partial Final Award regarding . . . MAI and MTI's joint and several liability.") The Arbitrator made this clear in his Final Award, ███████████████████████ ████████████████████████████████████ That Respondents sought to reargue liability conclusions from the PFA, and the Arbitrator allowed them to brief that argument, does not mean the PFA liability determinations were not final. Notably, Respondents' *exact* approach was employed in *Trade & Transport* and it was rejected by the Arbitration panel and the Second Circuit. *See Trade & Transport*, 931 F.2d at 193-94 (arbitration panel permitted argument and held two hearings regarding reconsideration of its partial award before concluding it was *functus officio* as to that partial award); *id*. at 195 (party's effort to reargue liability did not make the award non-final).

confirmation of the PFA—without objection from Respondents—well before the Final Award was issued.  At bottom, Respondents have no excuse why they could not have taken the modest step of serving a "notice of a motion to vacate" by February 17, 2024, especially since they were aware of GEM's position on the finality of the PFA.  *See* Ex. 27 at 16-17 (Jan. 29, 2024).

*Second*, Respondents argue that under the New York Convention and 9 U.S.C. § 207, they are permitted to "oppose confirmation" at any time on the same grounds they are time barred from seeking vacatur of the PFA.  For this extraordinary proposition, they cite a single case: *Jamaica Commodity Trading Co. Ltd. v. Connell Rice & Sugar Co., Inc.*, No. 87 CIV. 6369 (JMC), 1991 WL 123962, at *3 (S.D.N.Y. July 3, 1991) ("*JCT*").

Respondents are wrong.  *JCT* has not been favorably cited in over three decades, and for good reason.[5]  *JCT* essentially held that Section 12 of the FAA does not apply to New York Convention Awards.  But the Second Circuit has repeatedly held that the FAA applies to nondomestic arbitration awards such as the PFA.  *See, e.g., Yusuf Ahmed Alghanim & Sons v. Toys "R" Us, Inc.*, 126 F.3d 15, 23 (2d Cir. 1997); *Scandinavian Reinsurance Co. Ltd. v. St. Paul Fire and Marine Ins. Co.*, 668 F.3d 60, 71 (2d Cir. 2012).  Unsurprisingly then, courts have repeatedly held that the three-month vacatur rule in Section 12 applies, even in the "opposing confirmation" context.  *See In Matter of Arb. Between P.M.I. Trading Ltd. v. Farstad Oil, Inc.*, No. 00 CIV. 7120 (RLC), 2001 WL 38282, at *2 n.2 (S.D.N.Y. Jan. 16, 2001) ("Under § 12 of the FAA (which applies in this respect since it is not in conflict with the Convention, *see Yusuf Ahmed*, 126 F.3d at

---

[5]    *JCT* has a number of facial errors and omissions that alone deprive it of much persuasive value. For example, the court does not explain whether the arbitral award was a non-domestic award or a foreign arbitral award, even though "very different regimes for the review of arbitrational awards" exist between the two types of award.  The court also appeared to assume that 9 U.S.C. § 207 permits vacatur of an award. It does no such thing.  *Gonsalvez v. Celebrity Cruises Inc.*, 750 F.3d 1195, 1197 (11th Cir. 2013); *Zeiler v. Deitsch*, 500 F.3d 157, 166 n.6 (2d Cir. 2007).

20), a motion to vacate must be made within 'three months after the award is filed or delivered.'"); *ABNL Ltd. v. Baker Hughes Process Sys.*, No. CV H-04-4662, 2005 WL 8164068, at *10 (S.D. Tex. May 16, 2005) (same, applying the *Forsyth* rule to bar vacatur arguments from being raised in response to a petition to confirm); *Grupo Unidos Por El Canal, S.A. v. Autoridad del Canal de Panama*, No. CV 17-23996-CIV, 2018 WL 3059649, at *6 (S.D. Fla. June 20, 2018) (same).

Even as a matter of first principles, *JCT* is wrong. It violates Article VII of the Convention because it applies a less favorable confirmation standard to a Convention award than to a domestic award. *See* N.Y. Conv. Art. VII ("[t]he provisions of the present Convention shall not [] deprive any interested party of any right he may have to avail himself of an arbitral award in the manner and to the extent allowed by the law [] of the country where such award is sought to be relied upon."). The law of this country is clear from *Florasynth*: three months after an award is issued, the winning party can be assured of its confirmation. Moreover, the Court in *JCT* inverted the pro-enforcement decision in *Bergesen v. Joseph Muller Corp.*, 710 F.2d 928 (2d Cir. 1983) (allowing party to use either one-year or three-year statute of limitations for non-domestic award confirmation actions) into an *anti*-enforcement decision that permitted parties to sit on objections to the arbitral award. This result is directly contrary to the *pro-enforcement* bias of the New York Convention. *See Yusuf*, 126 F.3d 20 (noting "the Convention's pro-enforcement bias."). In addition, the Second Circuit later rejected the judicial gloss *JCT* adopted in other contexts. *See Local 802, Assoc. Musicians of Greater NY v. Parker Meridien Hotel*, 145 F.3d 85, 89 (2d Cir. 1998); *see also Florasynth*, 750 F.2d at 177 ("The role of arbitration as a mechanism for speedy dispute resolution disfavors delayed challenges to the validity of an award."). Finally, the holding of *JCT* is "illogical, as it would allow a party barred from seeking vacatur to back-door the very

16

same barred arguments in opposition to a motion to confirm, essentially providing the party two bites at the apple." *Grupo Unidos*, 2018 WL 3059649, at *6.

Under Section 12 of the FAA, and under controlling Second Circuit precedent including *Florasynth*, *Yusuf*, and *Scandinavian*, this Court should reject as time barred Respondents' arguments seeking to vacate—or oppose confirmation of—the PFA.

## IV.    RESPONDENTS' MERITS CHALLENGES ARE FRIVOLOUS

Respondents offer three arguments for why the Awards should be vacated. Each of them fails. Because there is no basis for vacatur, the Awards must be confirmed.

### A.    The Arbitrator Did Not Exceed His Authority

Section 10(a)(4) of the FAA permits vacatur if the award exceeded the arbitrator's power. The Second Circuit has "consistently accorded the narrowest of readings" to section 10(a)(4). *Jock v. Sterling Jewelers Inc.*, 646 F.3d 113, 122 (2d Cir. 2011) (cleaned up). The question is "whether the arbitrators had the power, based on the parties' submissions or the arbitration agreement, to reach a certain issue, not whether the arbitrators correctly decided that issue." *Id.* "Accordingly, an arbitrator may exceed her authority by, first, considering issues beyond those the parties have submitted for her consideration, or, second, reaching issues clearly prohibited by law or by the terms of the parties' agreement." *Id.* And the link between the award and the arbitrator's power need not be strong; all that is required is that "the arbitrator's award draws its essence from the agreement to arbitrate." *Id.*; *Plant Performance Servs. Int'l, Ltd. v. Gen. Electric Int'l, Inc.*, No. 09 CIV. 0678 (SCR), 2009 WL 10741320, at *3 (S.D.N.Y. Dec. 2, 2009).

The arbitrator's authority is not limited to the plain text of the arbitration agreement. The parties' submissions to the arbitrator can give the arbitrator power to decide an issue. *Jock*, 566 F.3d at 122; *T. Co Metals, LLC v. Dempsey Pipe & Supply, Inc.*, 592 F.3d 329, 344 (2d Cir. 2010) (parties gave arbitrator power to reconsider award because both sides submitted issue to arbitrator

to resolve without objection).  So too can the arbitral rules selected by the parties.  *See T. Co*, 592 F.3d at 343 (noting the arbitrator had power to address issue "by virtue of the fact that the parties had agreed the arbitration would be conducted pursuant to the ICDR Articles" and the ICDR Articles gave the Arbitrator certain powers).

The Arbitrator's authority here is extraordinarily broad.  The arbitration clause in the SPA—the master agreement which provides the essential terms of the other GEM Agreements— gives the Arbitrator authority to decide "[a]ll disputes, controversies or claims between the Parties *arising out* of or *in connection with* this agreement[.]"  SPA § 9.02(b) (emphasis added).[6]  This is a "prototypical broad arbitration provision."  *Oldroyd v. Elmira Sav. Bank, FSB*, 134 F.3d 72, 76 (2d Cir. 1998).  The RRA contains essentially the same provision.  RRA § 11(e).  And the Warrant is "issued in accordance with, and subject to, the terms and conditions of the [SPA]," including the SPA's board arbitration provision.  Ex. 7 at p. 1; *see also* Dkt. No 48 at p. 9-10 (explaining that the Warrant is subject to the SPA's arbitration provision).

Even a cursory review makes clear that the Awards draw their "essence" from the scope of the parties' agreement to arbitrate.  In the PFA, ████████████████████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████

---

[6]    In some cases, an arbitration clause might contain language that narrowly confines the arbitrator's authority to decide only certain issues—for example, whether or not there was "just cause" for an employee's termination.  *See e.g. 187 Concourse Assocs. v. Fishman*, 399 F.3d 524, 527 (2d Cir. 2005) (arbitration clause in collective bargaining agreement expressly limited arbitrator's authority to issues of just cause).  That is not the case here.  The arbitration clause in the SPA is expansive.

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮    ▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮    And both awards are rife with citations to where and how the parties had argued their positions—i.e., submitted the issue to the Arbitrator for resolution.

Respondents put forward three meritless arguments to the contrary. *First,* Respondents argue that the Arbitrator exceeded his authority by "determining that GEM could enforce its right . . . against MAI" because (in Respondents' view) the Arbitrator was required to make some specific findings of fact. Memo at 17. Respondents' argument is confused and unfounded. To the extent that they are arguing the Arbitrator "got it wrong," Section 10(a)(4) provides no relief. *See Jock*, 646 F.3d at 122 ("The focus of our inquiry in challenges to an arbitration award under section 10(a)(4) is whether the arbitrators had the power, based on the parties' submissions or the arbitration agreement, to reach a certain issue, *not whether the arbitrators correctly decided that issue.*") (cleaned up; emphasis in original). To the extent that Respondents are arguing that the Arbitrator had no power over MAI, any question there is settled by MAI's extensive participation—without objection—in the Arbitration. ▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮    The Arbitrator had the power to resolve that question against MAI.

*Second*, Respondents claim that the Arbitrator exceeded his authority by considering the Contribution Agreement, because the Contribution Agreement does not contain an arbitration clause. Memo at 17. This sleight-of-hand has no merit. The Arbitrator did not determine that

Respondents had breached the Contribution Agreement; █████████████████████

███████████████████████████████

Respondents cite inapposite cases where an arbitrator exceeded his or her authority by determining parties' rights under third-party agreements that were not subject to arbitration clauses. *See AGCO Corp. v. Anglin*, 216 F.3d 589, 595 (7th Cir. 2000) (arbitrator improperly decided rights under third-party contract that did not delegate authority to arbitrator); *Copragri S.A. v. Agribusiness United DMCC*, No. 20 CIV. 5486 (LGS), 2021 WL 961751, at *5 (S.D.N.Y. Mar. 15, 2021) (same). What those cases do not say—and could not say—is that an arbitrator is precluded from considering other agreements as *evidence* of breach. Arbitrators are allowed to look to evidence outside of the parties' contract to determine whether a breach has occurred. *See, e.g.*, *Wells Fargo Advisors, LLC v. Sappington*, 328 F. Supp. 3d 317, 323 (S.D.N.Y. 2018).

A simple illustration shows the absurdity of Respondents' suggestion that the Contribution Agreement could not even be considered by the Arbitrator because it does not contain an arbitration clause. Party A and Party B contract for Party B to sell her car to Party A. The contract has a broad arbitration clause. Party B then contracts to sell the same car to Party C. That second contract has no arbitration clause. Respondents' argument—if accepted—would mean that the Arbitrator exceeded her authority in considering the B-C contract in a B v. A arbitration.

And even if it were generally true that an arbitrator cannot look to other agreements as evidence of breach (it is not), Respondents' argument still fails. That is because the ████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████    *Jock*, 646 F.3d at 124 (reversing district court's vacatur of arbitration award where arbitrator decided issues that were "squarely presented" to her by both parties' briefing).



Having put these issues squarely before the Arbitrator, Respondents cannot now say that he exceeded his authority by deciding them. *Jock*, 646 F.3d at 124.

*Third*, Respondents argue that the Arbitrator exceeded his authority by finding that Respondents had breached Sections 4.08 and 9.13 of the SPA, because those provisions of the SPA were not specifically mentioned in Petitioners' Amended Statement of Claim. Memo at 18-19. But again, an arbitrator cannot exceed his authority by deciding issues that are squarely placed before him by the parties' briefing. *Jock*, 646 F.3d at 124.

More fundamentally, whether Sections 4.08 and 9.13 of the SPA were specifically mentioned in Petitioners' Amended Statement of Claim is not the relevant question. The relevant question is whether the Awards draw their "essence" from the parties' broad agreement to arbitrate. There is no question that whether Respondents breached Sections 4.08 and 9.13 of the SPA is a "dispute, controversy or claim" that "aris[es] out of or in connection with" the SPA. The parties could have but did not carve out disputes related to Sections 4.08 and 9.13.

At bottom, Respondents' argument is essentially that the Arbitrator only has the power to decide those issues expressly identified in the initial pleading documents. They cite no authority for their contention that an arbitration award must perfectly align with the relief requested at the

outset of the arbitration. To the contrary, "[t]he language of arbitration demands should not be subject to the strict standards of construction" applicable to formal court pleadings. *Kurt Orban Co. v Angeles Metal Sys.*, 573 F.2d 739, 740 (2d Cir. 1978); *Matter of Roffler v. Spear, Leeds & Kellogg,*, 13 A.D.3d 308, 310 (N.Y. App. Div. 1st Dep't 2004); *Frankel v. Sardis*, 904 N.Y.S.2d 18 (N.Y. App. Div. 1st Dept. 2010). And "[i]f the allegations underlying the claims 'touch matters' covered by the parties' . . . agreements, then those claims must be arbitrated, whatever the legal labels attached to them." *WorldCrisa Corp. v. Armstrong*, 129 F.3d 71, 75 (2d Cir. 1997).[7]

### B.    Purported Inconsistencies in the Awards Do Not Support Vacatur

Respondents seek to vacate the Awards based on alleged inconsistencies and contradictions in the Arbitrator's findings. Memo at 19. This claim fails because contradiction is not a basis for vacatur. And even if it were, the Awards are not contradictory or inconsistent.

The grounds for vacatur listed in the FAA are exclusive. *See Hall St. Assocs, LLC v. Mattel, Inc.*, 522 U.S. 576 (2008). And internal inconsistencies is not one of the listed grounds. *See* 9 U.S.C. § 10. Hence, in this Circuit, it has long been the rule that "internal inconsistencies within an arbitral judgment are not grounds for vacatur." *Westerbeke Corp. v. Daihatsu Motor Co.*, 304 F.3d 200, 211-12 (2d Cir. 2002); *see also Saint Mary Home, Inc. v. Serv. Emp.'s Int'l Union*, *Dist. 1199*, 116 F.3d 41, 44-45 (2d Cir. 1997). Courts have routinely declined to entertain inconsistency as a basis for vacatur, and have confirmed awards even when it is determined that the underlying award does contain inconsistencies and contradictions. *See Golden Krust Franchising, Inc. v.*

---

[7]    Although GEM more than adequately disclosed Sections 4.08 and 9.13, the Arbitrator had the authority to permit either party to "proceed to the hearing with an undisclosed or undetermined claim or counterclaim." AAA R-6. If Respondents were truly surprised by the arguments, they could have requested more time from the Arbitrator to address them. AAA R-31. They did not.

*Actus Rest. Grp., Inc.*, No. 20-CV-7321, 2021 WL 4974808 (S.D.N.Y. Oct. 26, 2021); *InterDigital Commc'ns Corp. v. Nokia Corp.*, 407 F. Supp. 2d 522 (S.D.N.Y. 2007).

The cases cited by Respondents represent instances where courts have grappled with arbitration awards that cannot be enforced as written because they are subject to multiple interpretations. *See Three Brothers Trading, LLC v. Generex Biotechnology Corp.*, No. 18 CIV. 11585 (KPF), 2019 WL 3456631, at *4 (S.D.N.Y. July 31, 2019) (terms of arbitrator's award were ambiguous and subject to at least three different interpretations that resulted in different value for prevailing party; remanding to the Arbitrator to clarify "the dollar amount the Arbitrator intended to award"); *Bell Aerospace Co. Div. of Textron, Inc. v. Local 516, Int'l Union, (UAW)*, 500 F.2d 921, 923-24 (2d Cir. 1974) (relief granted to the parties under award was ambiguous and subject to multiple interpretations). Here, the operative terms of the Award, and what they require Respondents to do, are perfectly clear. *See Kallen v. Dist. 1199, Nat. Union of Hosp. & Health Care Emps.*, 574 F.2d 723, 726 (2d Cir. 1978) (award does not meet the "ambiguous" and "contradictory on its face" standard when it specified "a definite sum to be paid" by one party). And even if there were ambiguity, the appropriate action would be remand for clarification, not vacatur. *See Three Brothers Trading, LLC,* 2019 WL 3456631, at *4 (remanding for clarification); *Bell Aerospace Co.*, 500 F.2d at 923-24 (same).

In any event, Respondents are wrong that the Awards are contradictory. Based on the entirety of the factual record, ███████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

████████████████████████████████████████████████ Respondents

complain that "[b]oth [of these] cannot be true." Memo at 20. This both misreads the Awards,

and insists on an academic standard of theoretical symmetry that the Arbitrator was not required to provide.

For one, requiring both of the cited factual conclusions to be true at the same time misses the point; ███████████████████████████████████████████████████████ ███████████████████████████████████ Even if there was an inconsistency, an arbitration award cannot be vacated based on purported error in the arbitrator's logic. *Plant Performance*, 2009 WL 10741320, at \*6. Indeed, "[a]rbitrators are not required to provide the rationale for their award[,]" and "the party challenging the awards must show that no proper basis for the award can be inferred from the facts of the case." *Wall St. Associates*, 27 F.3d at 849; *Plant Performance*., 2009 WL 10741320, at \*6 ("Even where an arbitrator's explanation for an award is deficient, we must confirm it if a justifiable ground for the decision can be inferred from the record.") (citation omitted). Because the dense factual record in this case provides numerous alternative grounds for holding both MTI and MAI liable, the Awards must be confirmed.

In a similarly academic vein, Respondents say that MAI could not have breached the RRA on May 14, 2021 because "MAI did not come into existence until November 2021." Memo at 21. But MAI did not appear on the scene from thin air; ████████████████████████████████████ ██████████████████████████████████ Putting substance over form, there was ample justification for the Arbitrator to see past Respondents' shell game and to hold MAI liable for its pre-merger conduct. And even if there weren't, ██████████████████████████ ██████████████████████████████████ and the factual record is replete with evidence that justifies holding both MTI and MAI liable.

24

### C.    The Awards Were Not Rendered in Manifest Disregard of the Law

To the extent that manifest disregard of the law is a basis for vacatur,[8] it applies only to "those exceedingly rare instances" of "egregious impropriety on the part of the arbitrators." *Seneca Nation of Indians v. New York*, 988 F.3d 618, 625-26 (2d Cir. 2021). "[T]o . . . vacate an award on this ground, a court must find both that (1) the arbitrators knew of a governing legal principle yet refused to apply it or ignored it altogether, and (2) the law ignored by the arbitrators was well defined, explicit, and clearly applicable to the case." *Halligan v. Piper Jaffray, Inc.*, 148 F.3d 197, 202 (2d Cir. 1998). "It is not enough for petitioners to show that the [arbitrator] committed an error-or even a serious error." *Stolt–Nielson SA v. Animalfeeds Int'l Corp.*, 130 S. Ct. 1758, 1767 (2010). And if "any valid ground" supporting the arbitrators' decision can be discerned from the facts of the case, the award should be confirmed. *STMicroelectronics, N.V. v. Credit Suisse Secs. (USA) LLC*, 648 F.3d 68, 78 (2d Cir. 2011).

Importantly, though, the doctrine is not free-standing but operates—at most—as a "judicial gloss" on the specific grounds for vacatur in Section 10. *Seneca Nation*, 988 F.3d at 626. One consequence of this rule is that the scope of the parties' arbitration agreement can change what "manifest disregard" means. When the parties opted for arbitration procedures or rules that grant the arbitrator power beyond what a court may have, the manifest disregard of the law standard requires the party to prove that the law "clearly and explicitly prohibits the parties" from opting into that alternative standard. *Telecom Bus. Sol., LLC v. Terra Towers Corp.*, No. 23-144, 2024 WL 446016, at *4 (2d Cir. Feb. 6, 2024).

---

[8]    GEM contends that it is not, because *Hall Street Associates* held that the statutory bases for vacatur in the FAA are exclusive, and manifest disregard is not such a listed basis. GEM acknowledges, however, that the Second Circuit has reached a different conclusion. Therefore, while GEM argues based on current Second Circuit law, it does not waive—and expressly preserves—its arguments.

The Second Circuit's summary order in *Telecom Business Solution* makes this point.  In that case, like here, the parties agreed that the AAA Commercial Rules applied to the arbitration. In evaluating whether to grant specific performance, the arbitration panel applied Rule 47(a), which provides that "[t]he arbitrator may grant any remedy or relief that the arbitrator deems just and equitable and within the scope of the agreement of the parties, including, but not limited to, specific performance of a contract."  The appellant argued that the arbitration panel manifestly disregarded the law by applying Rule 47(a) rather than New York contract law regarding specific performance.  The Second Circuit rejected that claim, holding that appellants had failed to show that "New York law clearly and explicitly prohibits parties from opting out of New York's specific performance law in favor of another standard."  2024 WL 446016, at *4.  This was so even though the parties had "briefed the specific performance issue on the assumption that New York law applied."  *Id.* at *3.  The Court noted that both New York and Second Circuit law permit arbitrators to fashion procedures and craft remedies that "a court might not properly grant."  *Id.* at *4.

In any event, Respondents do not identify any "clearly applicable" principle of New York law that was misemployed, much less one that the Arbitrator intentionally defied.

*First*, Respondents argue that the Arbitrator intentionally disregarded law regarding joint and several liability by finding both MTI and MAI liable for breach of the GEM Agreements, without finding that they are co-promisors or alter egos.  Memo at 23-24.  This argument fails on multiple levels.  At the most fundamental level, "[w]hether [MTI and [MAI] could properly be found jointly and severally liable in a court of law is 'totally irrelevant'" because the SPA's broad arbitration clause and the AAA rules invested the Arbitrator with broad equitable powers to fashion any remedy or relief he deemed just and equitable.  *See NYKCool A.B. v. P. Fruit Inc.*, No. 10 CIV. 3867 LAKAJP, 2011 WL 3666579, at *2 (S.D.N.Y. Aug. 9, 2011) (citing *Banco de Seguros del*

*Estado v. Mut. Marine Office, Inc.*, 344 F.3d 255, 262 (2d Cir. 2003)).   The SPA vested the Arbitrator with broad power to resolve any dispute arising out of the parties' agreement, and he was "not limited by the remedies available in contract."   *See id*; *Sperry Intern. Trade, Inc. v. Gov't of Israel*, 689 F.2d 301, 306 (2d Cir. 1982) ("Under New York law arbitrators have power to fashion relief that a court might not properly grant.").   And, as held in *Telecom*, there is nothing "clear" and "explicit" in New York law that precludes parties from opting into a regime that allows for joint and several contract liability to be imposed if the Arbitrator deems it "just and equitable."

Even if the Court were to follow Respondents into the irrelevant question of New York law regarding joint and several contract liability, Respondents fail to establish that the rules regarding co-promisors or alter egos are "clearly applicable" to the facts of this case, much less that the Arbitrator intentionally defied them.   In the PFA, ███████████████████████████████ ███████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████s. And even if the co-promisor rule was necessarily controlling as to the outcome of the parties' complex dispute (it was not), there is more than sufficient evidence in the record from which the Arbitrator could have concluded that MTI and MAI are in fact co-promisors.   *Plant Performance*, 2009 WL 10741320, at *6  (award must be confirmed "if a justifiable ground for the decision can be inferred from the record.").   For example, the Arbitrator could have determined that MTI and MAI were co-promisors because ███████████████████████████████████████████ █████████████████████████████████████████████

In the Final Award as to damages, ██████████████████████████████ ████████████████████████████████████████████████████████████

███████████████████████████████ Contrary to Respondents' suggestion, this determination was not "belied be the arbitrator's own previous rulings[.]" Memo at 29. Respondents do not identify any prior "rulings" that are inconsistent with the Final Award. They point only to procedural instructions issued by the Arbitrator which allowed the parties—at Respondents' request—to address the question of apportionment of damages between MAI and MTI in their Phase Two briefing. *Id.* But an arbitrator permitting a party to reargue a liability point does not mean the liability point had not already been fully and finally resolved. *Trade & Transport*, 931 F.2d at 195; *see* fn. 4, *supra*.

*Second*, Respondents argue that, in measuring Warrant damages as of the Public Listing Date, the Arbitrator disregarded the rule that contract damages are measured on the date of breach. Memo at 24. Again, this addresses the wrong question. *Telecom* makes clear that New York law permits parties to opt for a remedies regime that is not constrained by the strict niceties of New York contract damages law. But, even in terms of New York law, Respondents' argument misstates the law, glosses over the complex facts of this case, and mischaracterizes the Final Award, which—far from intentionally disregarding the law on this issue—devotes an entire subsection to analyzing the proper date for measuring damages. Final Award ¶¶ 58-61.

As the Arbitrator explained at length in the Final Awards, ███████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

█████████████████████████████████████████

Even if using the Public Listing Date as the date for measuring Petitioners' damages was erroneous (it was not), the Arbitrator could not have manifestly disregarded the law by using the date ███████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

██████████████████████████████ An arbitrator cannot manifestly disregard the law by calculating damages using the "best evidence submitted" by the parties. *See Capgemini U.S. LLC v. Sorensen*, No. 04 CIV. 7584 (JGK), 2005 WL 1560482, at *10 (S.D.N.Y. July 1, 2005) (rejecting argument that arbitrator should have measured damages on date of breach, because "the parties did not provide the Panel with the price of the stock on the date of the breach.").

*Third*, Respondents say that the Arbitrator manifestly disregarded the law by failing to discount GEM's damages by a purported "benefit" GEM received by not being able to exercise its Warrant rights. Memo at 25. Of course, the Arbitrator *could* do that—if he were to conclude it to be just and equitable—under the powers that the parties can, and did, grant the Arbitrator. More broadly, though, Respondents do not provide any estimate of value, or any factual or record support whatsoever, for the supposed "benefit" that GEM received by not being able to exercise the Warrant. *See id*. More importantly, ████████████████████████████████████

█████████ Respondents' cited authorities do not support their contention that damages must account for uncertain and undefined benefits that the non-breaching party allegedly received

thanks to their counterparty's breach.    To the contrary, ██████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████

Respondents cannot contest that the Arbitrator's damages award was based on a stable

foundation.    ██████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████

████    To the extent that marginal uncertainty regarding an alleged "benefit" Petitioners received

from Respondents' breach is even something that ought to have been considered (it is not), it was

Respondents' burden to account for.  They did not even attempt to meet that burden.  The notion

that the Arbitrator manifestly disregarded the law by failing to account for a purported benefit-of-

breach that not even Respondents can articulate or quantify is, at best, frivolous.

## CONCLUSION

For the reasons outlined herein, Petitioners respectfully request that this Court (i) deny

Respondents' Motion for Summary Judgment, (ii) grant Petitioner's Motion for Summary

Judgment, (iii) confirm the Awards, and (iv) enter a final judgment in Petitioners' favor.

Dated: August 7, 2024

WILLKIE FARR & GALLAGHER LLP

*/s/ Jonathan A. Patchen*
Jonathan A. Patchen (admitted pro hac vice)
333 Bush Street
San Francisco, California 94104
(415) 858-7594
(415) 858-7418
jpatchen@willkie.com

Madeleine Tayer
Justin Garbacz
787 Seventh Avenue
New York, New York 10019
(212) 728-8914
(212) 728-8801
mtayer@willkie.com
jgarbacz@willkie.com

*Attorneys for Petitioners GEM Yield Bahamas*
*Limited and GEM Global Yield LLC SCS*