**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

GEM YIELD BAHAMAS LIMITED and GEM GLOBAL YIELD LLC SCS,

Petitioners,

vs.

MULLEN TECHNOLOGIES, INC. and MULLEN AUTOMOTIVE, INC.,

Respondents.

Case No. 1:24-cv-001120-KPF

Related Case No. 1:23-cv-11268-KPF

Hon. Katherine Polk Failla

# RESPONDENTS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT

**McDERMOTT WILL & EMERY LLP**
David K. Momborquette
Antonios G. Koulotouros
One Vanderbilt Avenue
New York, New York 10017
(212) 547-5400
dmomborquette@mwe.com
akoulotouros@mwe.com

*Attorneys for Respondents Mullen Technologies, Inc. and Mullen Automotive, Inc.*

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ........ 1

II. RESPONDENTS HAVE TIMELY MOVED TO VACATE THE PFA ........ 2

III. THE ARBITRATOR EXCEEDED HIS AUTHORITY ........ 7

IV. THE AWARDS CONTAIN CONTRADICTORY FINDINGS OF FACT AND CONCLUSIONS OF LAW ........ 10

V. THE FINAL AWARD WAS RENDERED IN MANIFEST DISREGARD OF THE LAW ........ 11

VI. CONCLUSION ........ 15

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*ABNL Ltd. v. Baker Hughes Process Sys.*,
2005 WL 8164068 (S.D. Tex. May 16, 2005) ....................6

*Bell Aerospace Co. Div. of Textron, Inc. v. Local 516, Int'l Union (UAW)*,
500 F.2d 921 (2d Cir. 1974) ....................11

*Bergesen v. Joseph Muller Corp.*,
710 F.2d 928 (2d Cir. 1983) ....................7

*Capgemini U.S. LLC v. Sorensen*,
2005 WL 1560482 (S.D.N.Y. July 1, 2005) ....................13, 14

*Copragri S.A. v. Agribusiness United DMCC*,
2021 WL 961751 (S.D.N.Y. Mar. 15, 2021) ....................12

*Dworkin-Cosell Interair Courier Servs., Inc. v. Avraham*,
728 F. Supp. 156 (S.D.N.Y. 1989) ....................5

*EB Safe LLC v. Hurley*,
2019 WL 5537918 (S.D.N.Y. Oct. 18, 2019) ....................14

*Florasynth, Inc. v. Pickholz*,
750 F.2d 171 (2d Cir. 1984) ....................6

*Golden Krust Franchising, Inc. v. Actus Rest. Grp., Inc.*,
2021 WL 4974808 (S.D.N.Y. Oct. 26, 2021) ....................10

*Gonsalvez v. Celebrity Cruises Inc.*,
750 F.3d 1195 (11th Cir. 2013) ....................6

*Grupo Unidos Por El Canal, S.A. v. Autoridad del Canal de Panama*,
2018 WL 3059649 (S.D. Fla. June 20, 2018) ....................6

*Jamaica Commodity Trading Co. v. Connell Rice & Sugar Co.*,
1991 WL 123962 (S.D.N.Y. July 3, 1991) ....................5, 6

*Local 802, Assoc. Musicians of Greater NY v. Parker Meridien Hotel*,
145 F.3d 85 (2d Cir. 1998) ....................6

*Luzar Trading, S.A. v. Tradiverse Corp.*,
2021 WL 1164041 (S.D.N.Y. Mar. 25, 2021) ....................4

*Mitsubishi Heavy Indus., Ltd. v. Stone & Webster, Inc.*,
2009 WL 3169973 (S.D.N.Y. Sept. 29, 2009) ....................3

*Montgomery Ward & Co. v. Duncan*,
311 U.S. 243 (1940)....................10

*NYKCool A.B. v. Pacific Fruit Inc.*,
2011 WL 3666579 (S.D.N.Y. Aug. 9, 2011)....................12

*Opals on Ice Lingerie v. Bodylines Inc.*,
320 F.3d 362 (2d Cir. 2003)....................8

*Oscar Gruss & Son, Inc. v. Hollander*,
337 F.3d 186 (2d Cir. 2003)....................13

*P.M.I. Trading Ltd. v. Farstad Oil, Inc.*,
2001 WL 38282 (S.D.N.Y. Jan. 16, 2001) ....................6

*Rocket Jewelry Box, Inc. v. Noble Gift Packaging, Inc.*,
157 F.3d 174 (2d Cir. 1998)....................4

*Scandinavian Reinsurance Co. v. Saint Paul Fire & Marine Ins. Co.*,
668 F.3d 60 (2d Cir. 2012)....................6

*Telecom Bus. Sol., LLC v. Terra Towers Corp.*,
2024 WL 446016 (2d Cir. Feb. 6, 2024)....................12

*Trade & Transport, Inc. v. Natural Petroleum Charterers, Inc.*,
931 F.2d 191 (2d Cir. 1991)....................3, 4

*WJ Holding Ltd. v. Transdniestrian Moldovian Republic*,
2021 WL 217102 (S.D.N.Y. Jan. 21, 2021) ....................14

*Yusuf Ahmed Alghanim & Sons v. Toys "R" US, Inc.*,
126 F.3d 15 (2d Cir. 1997)....................6

*Zeiler v. Deitsch*,
500 F.3d 157 (2d Cir. 2007)....................6

**Statutes Other Authorities**

9 U.S.C. § 12....................2, 3, 5, 6

9 U.S.C. § 207....................6, 7

AAA Rules, R-6....................9

AAA Rules, R-31 ..................................................................................................... 9, 10

AAA Rules, R-47 ..................................................................................................... 12

Mullen Technologies, Inc. ("MTI") and Mullen Automotive, Inc. ("MAI," and together with MTI, "Respondents") respectfully submit this Reply Memorandum of Law in Further Support of their Motion for Summary Judgment (ECF No. 99, the "Motion").[1]

## I. INTRODUCTION

Respondents' Motion seeks to overturn two inter-related arbitration awards that [redacted] Far from being the "full-bore legal and evidentiary appeal[]" that Petitioners would like the Court to believe the Motion is, Respondents' Opening Memorandum demonstrated that the Awards fell squarely within the narrow set of circumstances in which a court will vacate, or otherwise refuse to confirm, an arbitration award.

Petitioners' opposition brief (ECF No. 114, the "Opp.") goes to great lengths to avoid responding to the arguments made by Respondents in support of the Motion. For instance, Petitioners frequently mischaracterize Respondents' arguments, responding to those mischaracterizations rather than addressing the real issues raised by Respondents. In addition, Petitioners frequently overlook unfavorable language in the Awards if that language does not align with their arguments. Further, they often misstate the law or simply fail altogether to provide any legal authority for their contentions. One of the more egregious strategies employed by Petitioners is their false and misleading characterization of the factual findings made by the arbitrator in the Awards, often in an attempt to mislead the Court into believing that MTI and MAI were co-

[1] All capitalized terms that are not defined herein have the meanings set forth in Respondents' opening memorandum of law (ECF No. 100, the "Br." or "Opening Memorandum"). Pursuant to the Court's May 31st Order (*see* ECF No. 83 at 3), and in addition to the parties' previously filed Joint Rule 56.1 Statements (*see* ECF Nos. 102, 111), the parties are submitting a Second Supplemental Joint Rule 56.1 Statement of Undisputed Material Facts (the "Second Supplemental JS") and Second Supplemental Joint Appendix of Additional Exhibits (the "Second Supplemental App."), both of which are being filed simultaneously herewith.

promisors on the GEM Agreements when they clearly were not. For example, Petitioners continue to refer to MTI and MAI collectively as "Mullen" even though they are two distinct legal entities, and the arbitrator [redacted] Petitioners go so far as to assert that MTI and MAI were at one time a single entity (*see* Opp. at 24) even though the arbitrator [redacted] Moreover, Petitioners would have this Court believe that the Contribution Agreement (the agreement that the arbitrator found [redacted] was part of some nefarious "shell game" undertaken by Respondents to frustrate Petitioners' rights under the GEM Agreements (*see* Opp. at 3, 24), when the arbitrator expressly found that [redacted] Nonetheless, as demonstrated in the Opening Memorandum and detailed further herein, when the findings of fact and conclusions of law made in the Awards are analyzed in their proper context, it is clear that the Awards cannot stand.

## II. RESPONDENTS HAVE TIMELY MOVED TO VACATE THE PFA

In the Opening Memorandum, Respondents demonstrated that their challenges to the PFA were timely because (i) the PFA was not a final award subject to the three-month rule set forth in Section 12 of the FAA, and in any event, (ii) Respondents were permitted to oppose confirmation under the New York Convention. (Br. at 14-15.) Nothing in Petitioners' opposition papers compels a different conclusion.[2]

[2] Contrary to Petitioners' assertions (Opp. at 13 n.3), with one exception, all of Respondents' arguments were directed at *both* the PFA *and* the Final Award. Not only did Respondents make clear that their so-called "Exceeding Authority" and "Contradictory Findings" arguments were aimed at both Awards, but they explained in painstaking detail (and with extensive citations to both Awards) how certain findings within those awards either exceeded the scope of the

*First*, Petitioners argue that Respondents' challenges to the PFA are time-barred because Section 12's three-month "rule applies to any arbitral award that finally resolves an issue submitted to the arbitrator," "[t]he PFA was final as to all of the issues addressed therein," and "Respondents did not move to vacate the PFA within three months" from the date of issuance. (*See* Opp. at 13-14.) That argument, however, completely misses the mark. As Respondents explained in their Opening Memorandum, for an arbitration award to be final and trigger Section 12's three-month clock, the award generally must be intended by the arbitrators to be their complete determination of all claims submitted to them, "'*resolving both liability and damages*.'" (*See* Br. at 14 (quoting *Mitsubishi Heavy Indus., Ltd. v. Stone & Webster, Inc.*, 2009 WL 3169973, at *4 (S.D.N.Y. Sept. 29, 2009)) (emphasis added).)

Further, while the Second Circuit has recognized an exception to this general rule in cases where the parties agreed to bifurcate the arbitration proceedings, courts have deemed partial awards rendered in such bifurcated situations as final *only* where (i) the parties agreed to bifurcate *all* liability issues and *all* damages issues into separate phases and (ii) the resulting partial award resolved *all of the parties' liability issues first*. (*See* Br. at 14-15.) *Trade & Transport, Inc. v. Natural Petroleum Charterers, Inc.*, 931 F.2d 191 (2d Cir. 1991) does not "rebut[]" this proposition, as GEM maintains. (*See* Opp. at 13.) It *supports* it. In *Trade & Transport, Inc.*, "the parties asked the arbitrators to make an immediate determination as to liability for [the] cancellation of [a] voyage, leaving for a later time the calculation of damages, if any, for that

---

arbitrator's authority or were hopelessly contradictory. (*See* Br. at 17-22.) In fact, only Respondents' "Manifest Disregard" arguments were directed solely at the Final Award. (*See id.* at 23-26 ("The Final Award also should be vacated because it was rendered in manifest disregard of the law.").)

voyage and demurrage [i.e., liquidated damages] for [three other] voyages." 931 F.2d at 192.[3] Put differently, the parties "asked the [arbitration] panel to decide the issue of liability immediately," reserving the resolution of any and all damages issues for a later phase. *See id.* at 195. Accordingly, the Court determined that the panel's decision as to liability was final for purposes of judicial review. *See id.*

No such bifurcation took place here. Indeed, unlike the bifurcated arrangement in *Trade & Transport, Inc.*, the parties expressly reserved for the second phase of the Arbitration the resolution of liability on Petitioners' affirmative claim for indemnification—a fact that Petitioners conveniently ignore in their Opposition papers. (*See* JS at ¶¶ 24-25; App. Ex. 13 at ¶¶ 3, 11-12; App. Ex. 1 at ¶¶ 3, 24, 182.) Consequently, Respondents' motion to vacate the PFA was timely since it could not have been made until the Final Award was delivered.

Even if Petitioners' reading of *Trade & Transport, Inc.* was correct (a dubious proposition at best), since its decision in *Trade & Transport, Inc.*, the Second Circuit has made clear that, in order for an arbitration award addressing some narrow subset of issues to be deemed final and reviewable, the award "must resolve [those issues] definitively enough so that the rights and obligations of the two parties, *with respect to the issues submitted*, do not stand in need of further adjudication." *Rocket Jewelry Box, Inc. v. Noble Gift Packaging, Inc.*, 157 F.3d 174, 176 (2d Cir. 1998) (emphasis in original). The PFA comes nowhere close to satisfying this standard.

Among other things, the PFA [redacted]

[3] "Demurrage" is a form of liquidated damages. *Luzar Trading, S.A. v. Tradiverse Corp.*, 2021 WL 1164041, at *3 n.3 (S.D.N.Y. Mar. 25, 2021).

[redacted] Indeed, after the PFA was issued, both Petitioners *and* the arbitrator repeatedly [redacted] Not only did the arbitrator [redacted] but in his Second Interim Measures Order, the arbitrator expressly found that [redacted] Similarly, in their motion seeking this Court's confirmation of the Second Interim Measures Order, Petitioners represented that, as of the date of the Second Interim Measures Order (which came after the PFA was issued), the arbitrator had [redacted]

*Second*, Petitioners also insist that Respondents are time-barred from challenging the PFA and opposing confirmation under the New York Convention because, "even in the 'opposing confirmation' context," "the three-month vacatur rule in Section 12 applies . . . ." (*See* Opp. at 15.) Again, however, Petitioners fail to cite to even a single binding authority that actually supports such a sweeping assertion. While Petitioners are critical of *Jamaica Commodity Trading Co. v. Connell Rice & Sugar Co.*, 1991 WL 123962 (S.D.N.Y. July 3, 1991) ("*JCT*") (*see* Opp. at 15 n.5), *JCT* remains good law in the Second Circuit and is instructive. In *JCT*, much like here, the petitioner, a Jamaican corporation, moved to confirm a AAA award[4] against the respondent, a New

[4] GEM's conclusory assertion that the *JCT* decision "does not explain whether the arbitral award was a non-domestic award or a foreign arbitral award" and, therefore, lacks "persuasive value" is unconvincing. (*See* Opp. at 15 n.5.) There is ample evidence to suggest that the award at issue in *JCT* was, much like the PFA, a AAA non-domestic award entered in the United States. Among other things, the *JCT* Court concluded that the relevant award was caught by the New York Convention because it "involve[d] a Jamaican corporation . . . ." *See id.* at *2. To support that conclusion, the Court also cited to *Dworkin-Cosell Interair Courier Servs., Inc. v. Avraham*, 728 F. Supp. 156, 157-59 (S.D.N.Y. 1989), a decision which treated a AAA award entered in New York as non-domestic *only because the award involved a foreign party*. *See Jamaica Commodity Trading Co.*, 1991 WL 123962, at *2. Likewise, there is nothing in the language of the AAA rules (including the rules in place at the time of the *JCT* award) to suggest that the *JCT* award

Jersey corporation. *See id.* at *1. The respondent, in turn, sought vacatur and objected to the petitioner's application to confirm the award approximately five months after the award was issued. *Id.* at *1-2. The Court held that, "[s]ince [the respondent's] motion to vacate [was] made within three years of the award in opposition to [the petitioner's] motion to confirm, it [was] permissible [and timely] under the [New York] Convention." *See id.* at *3 ("[U]nder the Convention a party may raise one of the grounds for vacating an award at any time during the three-year period in opposition to a motion to confirm"; "The untimeliness of [respondent's] opposition under the [FAA] does not preclude it from proceeding under the Convention.").

None of the authorities invoked by Petitioners mandate a different result here.[5] Nor is there anything inherently "wrong" or "illogical" about the Court's holding in *JCT*. The New York Convention may or may not express a "*pro-enforcement* bias" (*see* Opp. at 16), but there is nothing

---

was rendered outside of the United States.

[5] Indeed, the courts in those cases failed to conclude—as GEM would have it—that Section 12's three-month vacatur rule applies to an opposition under the New York Convention, or put differently, that only the FAA's vacatur grounds are available to deny enforcement of a nondomestic arbitration award such as the PFA. Nor did they expressly rule out the possibility that a party might simply oppose confirmation of a nondomestic arbitration award under 9 U.S.C. § 207 and the grounds articulated in the New York Convention. *See Florasynth, Inc. v. Pickholz*, 750 F.2d 171, 172-73, 175 (2d Cir. 1984) (analyzing award that did not fall under the New York Convention); *Local 802, Assoc. Musicians of Greater NY v. Parker Meridien Hotel*, 145 F.3d 85, 89 (2d Cir. 1998) (same as *Florasynth*); *Yusuf Ahmed Alghanim & Sons v. Toys "R" US, Inc.*, 126 F.3d 15, 20-23 (2d Cir. 1997) (observing that a district court could set aside or vacate a nondomestic New York Convention award rendered in the United States under the grounds set forth in the FAA—not that the FAA's vacatur grounds are the only grounds available to deny enforcement of such an award); *Scandinavian Reinsurance Co. v. Saint Paul Fire & Marine Ins. Co.*, 668 F.3d 60, 71 (2d Cir. 2012) (same as *Yusuf*); *Zeiler v. Deitsch*, 500 F.3d 157, 164-65, 166 n.6 (2d Cir. 2007) (recognizing that, in addition to the FAA's grounds for vacatur, the New York Convention's grounds are also available to deny enforcement of a nondomestic arbitration award); *see also Gonsalvez v. Celebrity Cruises Inc.*, 750 F.3d 1195, 1197 (11th Cir. 2013) (concluding that a motion to vacate an award caught by the New York Convention—not an opposition—would be subject to Section 12's three-month statute of limitations ); *P.M.I. Trading Ltd. v. Farstad Oil, Inc.*, 2001 WL 38282, at *2 n.2 (S.D.N.Y. Jan. 16, 2001) (same as *Gonsalvez*); *ABNL Ltd. v. Baker Hughes Process Sys.*, 2005 WL 8164068, at *10 (S.D. Tex. May 16, 2005) (same as *Gonsalvez*). To be sure, in *Grupo Unidos Por El Canal, S.A. v. Autoridad del Canal de Panama*, 2018 WL 3059649, at *6 (S.D. Fla. June 20, 2018), the court concluded that, because the petitioners had failed to move to vacate a New York Convention award within the time allotted under Section 12 of the FAA, petitioners' "arguments in opposition to [respondent's] motion to confirm [we]re improper." GEM fails, however, to explain why this Court should be persuaded or bound by the ruling of a district court in another Federal Circuit.

about that bias that compels the result advocated by Petitioners here, especially in the absence of any limiting language in the New York Convention itself supporting their contention. In any event, the law of this Circuit is clear: where the FAA and New York Convention overlap, a party "has more than one remedy available and may choose the most advantageous." *Bergesen v. Joseph Muller Corp.*, 710 F.2d 928, 934 (2d Cir. 1983).[6] As a result, and consistent with the plain language of 9 U.S.C. § 207, Respondents may oppose Petitioners' motion to confirm the PFA under the grounds articulated in the New York Convention.

## III. <u>THE ARBITRATOR EXCEEDED HIS AUTHORITY</u>

In their Opening Memorandum, Respondents demonstrated that the arbitrator exceeded his authority under both the FAA and the New York Convention by concluding that [redacted] The Contribution Agreement was a contract between MTI and another entity (not, as Petitioners suggest, MAI) that was entered into in connection with the restructuring of the NETE Transaction. By the express terms of the Contribution Agreement, any dispute arising thereunder must be resolved in a court of law; there is no arbitration provision in that agreement. Despite that, [redacted] the arbitrator concluded that [redacted].[7]

---

[6] GEM maintains that "the Court in *JCT* inverted the pro-enforcement decision in *Bergesen* . . . into an *anti*-enforcement decision that permitted parties to sit on objections to the arbitral award," (*see* Opp. at 16), but fails to cite to any authority that would indicate that the rationale of *Bergesen only* applies to situations where a party is seeking confirmation of an arbitration award falling under the New York Convention.

[7] Contrary to Petitioners' assertions, [redacted]

Petitioners do not reference anywhere in their opposition papers the arbitrator's [redacted] finding and do not grapple with its ramifications. Instead, they contend that the arbitrator's findings [redacted] were well within the scope of the applicable arbitration provisions found in the GEM Agreements since the arbitrator [redacted] Petitioners maintain that Respondents' arguments are nothing more than an untimely challenge to the assertion of jurisdiction over MAI, as well as an improper attempt to relitigate the issue of [redacted] Those contentions have no merit.

The arbitrator found that [redacted] Therefore, any dispute regarding [redacted] is not one "arising out of or in connection with" the GEM Agreements and is not even caught in the first instance by the arbitration provisions found in those agreements.

In any event, Petitioners' contention mischaracterizes Respondents' arguments and ignores [redacted] Whether the arbitrator exceeded his authority by [redacted]

---

[redacted] Accordingly, Respondents may challenge that authority at this stage. *See Opals on Ice Lingerie v. Bodylines Inc.*, 320 F.3d 362, 368-69 (2d Cir. 2003).

[redacted] is an issue separate and distinct from the issue of whether the arbitrator's interpretation of [redacted] is correct or whether the arbitrator has jurisdiction over MAI. Further, whether the arbitrator concluded that [redacted] The relevant fact is that the arbitrator also concluded that [redacted] In other words, the arbitrator's determination of [redacted] Petitioners' opposition papers fail to take into consideration the essential role that the arbitrator's findings [redacted] Thus, contrary to Petitioner's assertions (Opp. at 19-20), the arbitrator's determination that [redacted] is analogous to those cases where an arbitrator has exceeded his or her authority by [redacted] (*See* Br. at 18.)

Petitioners also mischaracterize Respondents' arguments regarding [redacted] Respondents' objections are not grounded on whether an award under those provisions would be consistent with the applicable arbitration provisions, but rather are based on the undisputed fact that Petitioners [redacted].[8]

[8] Petitioners' reference to AAA R-6 and R-31 is incorrect. Those rules do not state what Petitioners assert they do. R-6 governs changes to existing claims and sets forth the very procedure for asserting new claims [redacted]

## IV. THE AWARDS CONTAIN CONTRADICTORY FINDINGS OF FACT AND CONCLUSIONS OF LAW

Even an authority relied upon by Petitioners (*see* Opp. at 22-23) recognizes that courts in the Second Circuit will vacate arbitration awards where internal inconsistencies render the award contradictory on its face, incomprehensible or incoherent. *See Golden Krust Franchising, Inc. v. Actus Rest. Grp., Inc.*, 2021 WL 4974808, *4 (S.D.N.Y. Oct. 26, 2021). As Respondents explained in their Opening Memorandum, the Awards are contradictory on their face and contain findings [redacted] The defects in the challenged findings of fact and conclusions of law are not, as Petitioners' contend, merely "academic" in nature or immaterial ambiguities that at most could be clarified on remand. (Opp. at 23-24.) Rather, they are so inherently contradictory that they render the conclusion that [redacted] incomprehensible and nonsensical. (Br. at 22.)

Petitioners seek to avoid this conclusion by arguing that the challenged findings [redacted] However, the arbitrator [redacted] "[T]he phrase 'in the alternative' means that the things to which it refers are to be taken not together but one in the place of the other." *Montgomery Ward & Co. v. Duncan*, 311 U.S. 243, 251 (1940). However, the arbitrator did not conclude that [redacted]; he concluded that [redacted]

---

[redacted], while R-31 governs how an arbitration is to proceed in the absence of a party or representative, not requests for additional time to respond to newly asserted claims, as Petitioners assert.

Equally unavailing is Petitioners' contention that MAI could be held liable for a breach occurring prior to its formation since MTI and MAI were a single company at one point in time. (Opp. at 24.) Petitioners provide absolutely no legal authority in support of that contention and Respondents are not aware of any such support. In fact, Petitioners' assertion is at odds with the arbitrator's finding that [redacted] The arbitrator [redacted] To the contrary, the arbitrator found that [redacted] There simply is no factual support in the record for Petitioners' contention.

In short, Petitioners have failed to provide a clear and compelling interpretation of the Awards that resolves the serious internal contradictions contained therein. As the Second Circuit has emphasized, "[t]he purpose of arbitration is to resolve disputes, not to create new ones. An award which does not fulfill this purpose is unacceptable." *Bell Aerospace Co. Div. of Textron, Inc. v. Local 516, Int'l Union (UAW)*, 500 F.2d 921, 924 (2d Cir. 1974).

## V. THE FINAL AWARD WAS RENDERED IN MANIFEST DISREGARD OF THE LAW

Petitioners also fail to convincingly explain why the Final Award was not rendered in manifest disregard of the law. Petitioners' core argument is that the Final Award, [redacted], could not have been rendered in manifest disregard of the law because "the SPA's broad arbitration clause and the AAA rules invested the Arbitrator with broad equitable powers to fashion any remedy or relief he deemed just and equitable" and there was nothing in New York law that prohibited the parties from "opting into a regime that allows

for joint and several contract liability" or a regime that is not "constrained by the strict niceties of New York contract damages law." (*See* Opp. at 26-28.) This argument, however, is nothing more than a smokescreen, and it is wrong. Although an arbitrator may fashion a remedy that a court might not properly grant, under well-settled Second Circuit law *and the authorities cited in GEM's opposition*, an arbitrator must nevertheless abide by the terms of the parties' arbitration agreement, including the governing law set forth in that agreement. *See, e.g.*, *Telecom Bus. Sol., LLC v. Terra Towers Corp.*, 2024 WL 446016, at *4 (2d Cir. Feb. 6, 2024); *Copragri S.A. v. Agribusiness United DMCC*, 2021 WL 961751, at *5 (S.D.N.Y. Mar. 15, 2021).

Here, the parties' agreements are governed by New York law and state that any arbitrable dispute would be resolved under the rules of the AAA. (*See* JS at ¶¶ 12-14.) AAA Rule R-47(a), in turn, authorized the arbitrator to grant equitable remedies such as specific performance, so long as those remedies were "*within the scope of the agreement of the parties* . . . ." (emphasis added). There is simply nothing in the parties' agreements or the language of Rule R-47(a) to suggest that the arbitrator was permitted to issue, [redacted] The authorities cited by GEM do not dictate otherwise. Both *Telecom Business Solution, LLC* and *NYKCool A.B.* involved circumstances where the application of New York law would not yield a different result than the application of the relevant arbitration rule applied by the arbitrator. *See Telecom*, 2024 WL 446016, at *4; *NYKCool A.B. v. Pacific Fruit Inc.*, 2011 WL 3666579, at *2-4 (S.D.N.Y. Aug. 9, 2011). That is not the case here. The Final Award [redacted] Indeed, he expressly found that

[redacted] a conclusion at odds with [redacted] and more consistent with the notion that the arbitrator imposed his own brand of justice rather than the law that the parties agreed would govern the dispute.[9]

GEM's remaining arguments fail to hold water. *First*, Petitioners maintain that the arbitrator did not manifestly disregard the law [redacted] But that is precisely the problem. Although, as a general matter, damages for breach of contract should attempt to place the non-breaching party in the same economic position it would have been in had the breaching party fulfilled the contract, New York law unequivocally provides that damages for breach of contract nonetheless must be calculated at the time of the breach. *See, e.g.*, *Oscar Gruss & Son, Inc. v. Hollander*, 337 F.3d 186, 196 (2d Cir. 2003) ("Under New York law, damages for breach of contract should put the plaintiff in the same economic position he would have occupied had the breaching party performed the contract. New York courts are clear that breach of contract damages are measured from the date of the breach.") (internal citation omitted)).[10]

---

[9] As Respondents explained in their Opening Memorandum and above, the arbitrator [redacted] Therefore, the arbitrator's statement that [redacted]

[10] The fact that "both parties" submitted expert reports [redacted] is not dispositive of the legal issue of [redacted] and did not, as GEM suggests, authorize the arbitrator to [redacted] Indeed, *Capgemini U.S. LLC v. Sorensen*, 2005 WL 1560482, at *10 (S.D.N.Y. July 1, 2005), the lone authority cited by Petitioners for the proposition that an arbitrator "cannot manifestly disregard the law by calculating damages using the 'best evidence submitted' by the parties" is easily distinguished. Specifically, while the parties in *Capgemini* "did not provide the Panel with the price of the stock on the date of the breach," the party seeking vacatur "did not

*Second*, GEM contends that the arbitrator could not have manifestly disregarded the law when he [redacted] But even if it were Respondents' burden to prove facts in mitigation of GEM's alleged damages (GEM cites to no case that definitively holds it was), Respondents could not have met that burden since [redacted] Consequently, it would be inappropriate to hold Respondents' responsible for any uncertainties in GEM's claimed damages, [redacted] As discussed in the Opening Memorandum, any failure to [redacted] that New York law prohibits. (Br. at 25-26).[11]

argue for a measure of damages based on the value of the shares at the time of breach" and could not "point to any clear law that was brought to the arbitrators' attention that they disregarded." *See id.* at *10. In the instant arbitration, on the other hand, Respondents [redacted]

[11] In addition to their opposition brief, Petitioners have filed a memorandum of law in support of their proposed judgment. (*See* ECF No. 116, "the Memo.") As an initial matter, Petitioners' Memo should be rejected because it—together with Petitioners' opposition brief—exceeds the page limitation (30 pages) set forth in the Court's May 31st Order. (*See* ECF No. 83 at 2.) In any event, the Court should deny Petitioners' request for post-award, prejudgment interest between June 24, 2024 and the date this Court enters a final judgment in the instant action (including any related request for post-judgment interest on that amount). Courts have routinely refused to award post-award, pre-judgment interest in the context of confirming an arbitration award where the relevant arbitrator did not award such interest. *See, e.g.*, *WJ Holding Ltd. v. Transdniestrian Moldovian Republic*, 2021 WL 217102, at *2 (S.D.N.Y. Jan. 21, 2021); *EB Safe LLC v. Hurley*, 2019 WL 5537918, at *6 (S.D.N.Y. Oct. 18, 2019). Here, while the arbitrator awarded Petitioners post-award, pre-judgment interest running from November 5, 2021 to June 24, 2024 (what Petitioners define in their Memo as the "Award Payment Date"), he expressly refrained from awarding Petitioners any interest past that Award Payment Date. There is no reason for this Court to deviate from the arbitrator's determinations concerning the appropriate amount of post-award, pre-judgment interest. Nor do Petitioners provide any. As a result, Petitioners' request for post-award, prejudgment interesting running from the Award Payment Date to the date of the final judgment in this matter (including any request for post-judgment interest on such amounts) should be rejected.

## VI. CONCLUSION

For the foregoing reasons and the reasons discussed in the Opening Memorandum, Respondents respectfully request that the Court grant their Motion, vacate the Awards, and deny Petitioners' motion to confirm the Awards.

Dated: New York, New York
August 21, 2024

Respectfully Submitted,

**McDERMOTT WILL & EMERY LLP**

By: */s/ David K. Momborquette*
David K. Momborquette
Antonios G. Koulotouros
One Vanderbilt Avenue
New York, New York 10017
(212) 547-5400
dmomborquette@mwe.com
akoulotouros@mwe.com

*Attorneys for Respondents Mullen Technologies, Inc. and Mullen Automotive, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that, on August 21, 2024, I caused the foregoing Reply Memorandum of Law in Further Support of Respondents' Motion for Summary Judgment to be served on the following counsel for Petitioners via email. The following counsel have confirmed that they represent Petitioners in this action and provided written consent to electronic service via email.

Jonathan A. Patchen
WILLKIE FARR & GALLAGHER LLP
333 Bush Street
San Francisco, CA 94104
(415) 858-7594
jpatchen@willkie.com

Madeleine Tayer
Justin Garbacz
WILLKIE FARR & GALLAGHER LLP
787 Seventh Avenue
New York, New York 10019
(212) 728-8914
mtayer@willkie.com
jgarbacz@willkie.com

*<u>/s/ David K. Momborquette</u>*
David K. Momborquette