

mwe.com

David K. Momborquette
Attorney at Law
dmomborquette@mwe.com
+1 212 547 5490

August 29, 2024

**VIA ECF**

Honorable Katherine Polk Failla
United States District Court
Southern District of New York
Thurgood Marshall
United States Courthouse
40 Foley Square, Room 2103
New York, NY 10007

Re:   *GEM Yield Bahamas Limited, et al. v. Mullen Technologies, Inc. et al.*, No. 1:24-cv-01120-KPF
       Response to Petitioners' August 26, 2024 Letter Submission

To the Honorable Katherine Polk Failla:

  We represent Respondents Mullen Technologies, Inc. and Mullen Automotive, Inc. ("MAI" or the "Company") in the above-referenced action and write in response to Petitioners' August 26, 2024 letter (ECF No. 126, the "Letter"). Although Petitioners' Letter was purportedly filed in opposition to Respondents' recent request for oral argument (*see* ECF No. 125), Petitioners' Letter has almost nothing to do with that request. Rather, for the second time in a month and the fifth time this year (*see* ECF Nos. 86, 90, 97, 108), Petitioners demand that the Court take concrete steps to secure MAI's compliance with the Second Interim Measures Order and the Court's related Orders.[1] Like their previous submissions, however, Petitioners' Letter misrepresents the financial condition of MAI and attempts to mislead the Court into believing that MAI is in much better financial condition than it is and simply is refusing to escrow or otherwise segregate funds. In reality, MAI continues to remain unable to satisfy its obligations under the Court's Orders for one simple reason: it lacks the financial capacity to do so. As such, and for the reasons set forth below, Petitioners' Letter should be denied.

  As a preliminary matter, Petitioners (and not Respondents) have defied this Court's directives. In its July 12, 2024 Memo Endorsement, the Court made clear to Petitioners that "no reply submission [in connection with the Court's OSC] was requested." (*See* ECF No. 107 at 2.) However, Petitioners have

---

[1] All capitalized terms that are not defined herein have the meanings set forth in Respondents' Memorandum of Law in Response to the Court's Order to Show Cause (ECF No. 93, the "OSC Memorandum").



One Vanderbilt Avenue   New York NY 10017-3852   Tel +1 212 547 5400   Fax +1 212 547 5444

*US practice conducted through McDermott Will & Emery LLP.*

Honorable Katherine Polk Failla
August 29, 2024
Page 2

ignored that directive and filed such a reply under the guise of opposing Respondents' request for oral argument. The request made in the Letter should be rejected on this ground alone.

In any event, as Respondents previously explained, MAI has been unable to fulfill its obligations under the Court's Orders "because it has not had the financial wherewithal to do so." (*See* ECF No. 109 at 1 (citing OSC Memorandum at 5-6).) Nothing in Petitioners' Letter rebuts this reality. In fact, as they have done in the past, Petitioners go to great lengths to mislead the Court regarding the financial condition of MAI. For instance, Petitioners insist that MAI has raised $50 million without putting any of those funds into escrow. (*See* Letter at 1.) That assertion, however, completely mischaracterizes the $50 million Note Transaction. As Respondents previously explained, although MAI has been able to access certain funds pursuant to the $50 million Note Transaction, MAI has had to utilize those funds to keep the Company's business afloat and fund working capital needs. (*See* ECF No. 109 at 1; *see also* Exhibit A, attached hereto, at 57 ("To date, our current working capital and development needs have been primarily funded through the issuance of convertible notes with warrants, convertible preferred stock with warrants, and common stock.").) And while Respondents previously communicated to the Court how the ELOC Transaction might be utilized to satisfy at least some of MAI's obligations under the Orders, the Company has not yet been able to draw down on that facility because, among other things, various conditions governing the ELOC Transaction remain unsatisfied. (*See, e.g.*, ECF No. 109 at 1; OSC Memorandum at 7-9.) There simply is nothing about these facts that is incongruous with Respondents' previous representations to the Court, nor do they otherwise suggest that MAI is purposefully flouting the Court's Orders. On the contrary, they demonstrate that MAI is continuing to take steps to maintain the Company's viability and generate funds that could be escrowed in accordance with the Orders.

Moreover, Petitioners continue to ignore the language in MAI's public filings that does not suit their narrative. For instance, MAI's latest Form 10-Q states that "[t]here is substantial doubt about the Company's ability to continue as a going concern because the cash on hand is insufficient to meet [the Company's] working capital and capital expenditure requirements" over the next twelve months. (*See* Exhibit A at 10.) The Company also warned the market that it would need to "seek[] bankruptcy protection" if it could not "secure adequate funding to fulfill its current liabilities . . . ." (*See id.*; *see also id.* at 56 ("[T]here is significant uncertainty regarding the Company's ability to continue operating. The Company is actively pursuing additional funds . . . . However, there is no guarantee that the Company will be able to restructure its debts and/or secure the necessary financing on favorable terms.").)

Petitioners wholly fail to grapple with these disclosures or the underlying reality of MAI's financial condition. Instead, Petitioners would have this Court believe that MAI is "raising millions" and "spending millions . . . ." (*See* Letter at 2.) For example, Petitioners contend that MAI "[p]aid $2.6 million, and committed to paying another $36.1 million, to purchase stock of Bollinger Motors, Inc." (*See id.*) That contention is wrong. MAI never committed to "paying another $36.1 million" to purchase stock in Bollinger Motors, Inc. ("Bollinger"). Rather, it agreed to purchase an additional *$33.6 million* of Bollinger stock, "*only to the extent*" that it has received sufficient proceeds from its various financings and "*designated such proceeds for such purpose* . . . ." (*See* Exhibit B, attached hereto (emphasis added); *see also* Exhibit A at 49 ("The remaining investment [in Bollinger] is subject to a financing condition that



Honorable Katherine Polk Failla
August 29, 2024
Page 3

permits the Company to decide whether to allocate proceeds raised from various sources to complete any such installment payment.").) In other words, the timing and extent of any additional investments in Bollinger remain uncertain.

In addition, MAI's recent $2.6 million purchase of Bollinger stock was not, as Petitioners would have the Court believe, some new investment in some unrelated third-party. Rather, MAI's stock purchase was designed to inject cash into a subsidiary of MAI that operates a "major . . . segment" of the Company's business. (*See* Exhibit A at 17 ("[MAI] acquired [a] controlling interest of Bollinger . . . on September 7, 2022. This acquisition positions [MAI] into the medium duty truck classes 4-6 EV segments."); *see also id.* at 8 ("[MAI] is building and delivering the newest generation of commercial trucks through the Bollinger Motors and Electric Last Mile Solutions . . . acquisitions.").) That cash infusion is entirely consistent with Respondents' previous representations to the Court concerning the purpose of the Note Transaction.

Petitioners' opposition to Respondents' oral argument request is equally meritless. While Petitioners state that "oral argument on [Respondents'] motion will cause delay in [the] confirmation of the [Awards]" and "may result in further delay of enforcement of the confirmed [Second] Interim Measures [Order]" (*see* Letter at 1), they wholly fail to explain why oral argument would, in fact, result in any appreciable delay. Petitioners' argument appears grounded on their belief that Respondents' papers "come nowhere near the standard for vacatur." (*See id.*) But that is plain wrong. Indeed, Respondents' motion papers not only explained why the Awards fall squarely within the narrow set of circumstances justifying vacatur, but they demonstrated how Petitioners' motion papers—which rely on a series of false and misleading characterizations of the arbitrator's factual findings—fail to support confirmation. (*See* ECF Nos. 100, 120.) Put differently, Petitioners' self-serving assertions regarding the merits of Respondents' motion should not serve as a basis for denying Respondents' oral argument request.

In short, the Court should reject Petitioners' improper attempt to submit a reply in connection with the Court's OSC and grant Respondents' request for oral argument.

Respectfully submitted,

*/s/ David K. Momborquette*
David K. Momborquette

