

mwe.com

David K. Momborquette
Attorney at Law
dmomborquette@mwe.com
+1 212 547 5490

January 8, 2025

**VIA ECF**

Honorable Katherine Polk Failla
United States District Court
Southern District of New York
Thurgood Marshall
United States Courthouse
40 Foley Square, Room 2103
New York, NY 10007

Re:   *GEM Yield Bahamas Limited, et al. v. Mullen Technologies, Inc. et al.*, No. 1:24-cv-01120-KPF
      Response to Petitioners' January 3, 2025 Letter Submission

To the Honorable Katherine Polk Failla:

    We represent Respondents Mullen Technologies, Inc. and Mullen Automotive, Inc. ("MAI" or the "Company") in the above-referenced action and write in response to Petitioners' January 3, 2025, letter (ECF No. 139, the "Letter"), the seventh such submission made by Petitioners to date regarding the Second Interim Measures Order.[1] Although the Letter asserts that the Company has taken "further alarming actions" since Petitioners' last submission (*see* Letter at 1), much of the Letter simply rehashes ground already covered (quite extensively and repeatedly) by the parties in previous submissions to the Court. (*See* ECF Nos. 86, 90, 93, 97, 108, 109, 126, 127, 133, 134.) These submissions detail, among other things, MAI's inability to satisfy the Court's Orders regarding the Second Interim Measures Order given its financial difficulties, and how the Company needed to utilize the one financing facility that it had access to at the time just to keep MAI's business viable. (*See, e.g.*, ECF Nos. 93, 109, 127, 134.)

    Moreover, as with many of Petitioners' past submissions to this Court, the Letter gives the Court a misleading picture of the Company's financial condition. For instance, Petitioners insist that the Company "has successfully raised at least $71 million from noteholders and the ELOC between May 14, 2024 and December 12, 2024" and is intentionally "neglecting" to place funds into escrow. (*See* Letter at 4.) But that assertion is wildly misleading and mischaracterizes the facts. Although the Company has been able to access funds (approximately $69.9 million) through convertible notes issued as a part of the Note Transaction, MAI has had to utilize those funds—as Respondents have previously explained to the

---

[1] All capitalized terms that are not defined herein have the meanings set forth in Respondents' Memorandum of Law in Response to the Court's Order to Show Cause (ECF No. 93).



**One Vanderbilt Avenue   New York NY 10017-3852   Tel +1 212 547 5400   Fax +1 212 547 5444**

*US practice conducted through McDermott Will & Emery LLP.*

Court—to keep the Company afloat and fund working capital needs. (*See* ECF No. 127 at 2; ECF No. 109 at 1; *see also* Mullen Automotive, Inc., Amendment No. 1 to Form S-1, dated November 7, 2024, at 8 ("Our current working capital and development needs have been primarily funded through the issuance of convertible indebtedness, convertible preferred stock and common stock.").)[2]

And while MAI has been able recently to raise a small amount of funds (approximately $1.1 million) from the ELOC Transaction, a transaction which Respondents previously described as a potential source of funding to satisfy at least some of MAI's obligations under the Court's Orders, MAI has had to utilize those funds as well to satisfy its working capital requirements. (*See* Exhibit A at 46 ("We have funded our capital expenditure and working capital requirements by selling equity securities . . . .").) Petitioners also fail to note in the Letter the limitations that are placed on access to that facility that impact the Company's ability to simply draw down on that facility and escrow $24 million, as Petitioners would (wrongly) have this Court believe the Company can do. (*See* ECF No. 93 at 7-9; Exhibit A at 4, 13, 46, F-38.)

There simply is nothing about these facts that is inconsistent with MAI's previous representations to the Court. Nor do they otherwise suggest that MAI is intentionally disregarding the Court's Orders or "diverting" readily available funds "for their own benefit" in furtherance of some "scheme" of "self-enrichment." (*See* Letter at 4.) Instead, they confirm that MAI is continuing to take steps to ensure the Company's solvency and generate sufficient cash flow that could be escrowed in accordance with the Orders.

Those steps are critical to the Company's survival. The latest amendment to Form S-1 filed by MAI—a document cited throughout Petitioners' missive—is replete with going concern disclosures, making clear that management maintains considerable doubt about MAI's ability to continue as a going concern. (*See, e.g.*, Exhibit A at 47 ("If the Company does not secure adequate funding to fulfill its current liabilities, it anticipates seeking bankruptcy protection in various jurisdictions within 30 days of publishing these financial statements.").) It simply is not in Petitioners' best interest to have an insolvent MAI.

In their Letter, Petitioners also misrepresent to the Court the facts underlying a possible reverse stock split by the Company. For instance, despite Petitioners' suggestions to the contrary, MAI has not decided to effectuate a reverse stock split. Rather, MAI's latest proxy statement makes clear that the Company is only seeking "approval of a reverse stock split *as a precaution only if, in the future,* the Board of Directors determines [it] need[s] to implement a reverse stock split in order to maintain [the Company's] compliance with [NASDAQ's] Bid Price Rule . . . ." (*See* Mullen Automotive, Inc., Schedule 14A, filed on December 30, 2024 (emphasis added).)[3] In any event, Petitioners' apparent objection to any such stock split is puzzling considering the clear, negative consequences to the Company's future viability of any delisting of its stock. (*See* Exhibit A at 14 ("Our ability to issue additional securities for financing or other

---

[2] Relevant excerpts from this S-1 are attached hereto as Exhibit A.
[3] Relevant excerpts from this proxy statement are attached hereto as Exhibit B.



Honorable Katherine Polk Failla
January 8, 2025
Page 3

purposes, or otherwise to arrange for any financing we may need in the future, may also be materially and adversely affected if our common stock or warrants are not listed on a national securities exchange.").)

In short, the Court should reject Petitioners' latest demands regarding the Second Interim Measures Order.

Respectfully submitted,

*/s/ David K. Momborquette*
David K. Momborquette

