UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

GEM YIELD BAHAMAS LIMITED and
GEM GLOBAL YIELD LLC SCS,

                            Petitioners,

                -v.-

MULLEN TECHNOLOGIES, INC. and
MULLEN AUTOMOTIVE, INC.,

                            Respondents.

24 Civ. 1120 (KPF)

**REDACTED OPINION AND ORDER**

KATHERINE POLK FAILLA, District Judge:

This action arises out of an underlying arbitration (the "Arbitration")

between Petitioners GEM Yield Bahamas Limited and GEM Global Yield LLC

SCS (collectively, "GEM" or "Petitioners") and Respondents Mullen

Technologies, Inc. ("MTI") and Mullen Automotive, Inc. ("MAI") (collectively,

"Respondents").  The Arbitration, captioned *GEM Yield Bahamas Limited and*

*GEM Global Yield LLC SCS* v. *Mullen Technologies, Inc. and Mullen Automotive,*

*Inc.*, No. 01-21-0016-7001, was conducted between September 2021 and

May 2024, and concerned competing allegations of breach of contract.  The

Arbitration was managed by the American Arbitration Association ("AAA") and

its affiliate, the International Centre for Dispute Resolution ("ICDR"), and was

sited in New York, New York.

The parties bifurcated the arbitration proceedings into two phases, to

determine liability and then to award damages and resolve any remaining

issues.  On November 17, 2023, Arbitrator Mark C. Moril (the "Arbitrator"),

issued a Partial Final Award (the "PFA"), assigning liability to Respondents for

the breach of contract.  Subsequently, on January 24, 2024, the Arbitrator issued an interim measures award (the "Interim Measures Award" or "IMA") ordering Respondents to deposit $24,114,921 in an escrow account.  Following the issuance of the Interim Measures Award, on May 10, 2024, the Arbitrator issued a Final Award, awarding damages, fees, and costs.

Respondents filed this motion for summary judgment to vacate the PFA and the Final Award (collectively, "the Awards").  Petitioners filed a competing cross-motion in support of their petition to confirm the Awards.  For the reasons set forth in the remainder of this Opinion, the Court denies Respondents' motion to vacate the Awards, grants Petitioners' motion to confirm the Awards, and grants post-award prejudgment interest and post-judgment interest in favor of Petitioners.

## BACKGROUND[1]

### A.    Factual Background

Much of the factual background of this action is described in detail in the Court's June 11, 2024 Opinion and Order regarding the IMA.  (*See* Dkt. #85

---

[1]    The facts set forth in this Opinion are drawn from the parties' submissions in connection with their cross-motions for summary judgment.  The Court primarily sources facts from the parties' Joint Local Rule 56.1 Statement (Dkt. #102 ("Joint 56.1")); the parties' Joint Appendix of Exhibits (Dkt. #105 ("Joint App'x, Ex. [ ]")), including the Arbitrator's Partial Final Award on Liability (Dkt. #105-1 (the "Partial Final Award" or "PFA")), the Arbitrator's Decision and Order on Claimants' Second Application for Interim Measures (Dkt. #105-18 (the "Interim Measures Award" or "IMA")); and the Arbitrator's Final Award (Dkt. #105-23 (the "Final Award")); the First Supplemental Joint Local Rule 56.1 Statement (Dkt. #111 ("First Supp. Joint 56.1")); the First Supplemental Joint Appendix of Exhibits (Dkt. #113 ("First Supp. Joint App'x, Ex. [ ]")); the Second Supplemental Joint Local Rule 56.1 Statement (Dkt. #122 ("Second Supp. Joint 56.1")); and the Second Supplemental Joint Appendix of Exhibits (Dkt. #123 ("Second Supp. Joint App'x, Ex. [ ]")).

As noted, the parties to this action submitted a joint Rule 56.1 Statement, as well as two supplemental Rule 56.1 Statements.  Citations in this Opinion to the parties'

("June 11, 2024 Opinion") at 2-8.  The Court incorporates by reference the background information contained therein, but nevertheless summarizes the factual background relevant to the instant motion.

### 1.    The Parties and the GEM Agreements

Petitioner GEM Yield Bahamas Limited is a limited company formed under the laws of the Commonwealth of the Bahamas (Joint 56.1 ¶ 1), and Petitioner GEM Global Yield LLC SCS is a limited partnership formed under the laws of Luxembourg (*see id.* ¶ 2).  Petitioners are part of the GEM Group, an investment group that manages a diverse set of investments focused on global emerging markets.  (*See* PFA ¶ 6).  Respondent MTI is an automobile company that was previously engaged in the business of "developing, manufacturing, and selling electric vehicles."  (*Id.* ¶ 8).  Respondent MAI is an electric vehicle manufacturer and publicly traded company; MAI was created from a "spin-off of MTI's former [electric vehicle] assets" via a merger with another company, Net Element, Inc.  (*Id.* ¶ 10).

On January 4, 2021, GEM and MTI executed three financing agreements to facilitate GEM's investment in MTI's electric vehicle business.  (Joint 56.1 ¶ 11; *see also* PFA ¶¶ 15-17).  The agreements included: (i) a Share Purchase

---

various Rule 56.1 Statements incorporate by reference the documents and testimony cited therein.

For ease of reference, the Court refers to Respondents' memorandum of law in support of their motion for summary judgment as "Resp. Br." (Dkt. #100); to Petitioners' memorandum of law in opposition to Respondents' motion and in support of their cross-motion for summary judgment as "Pet. Opp." (Dkt. #114); and to Respondents' reply memorandum of law in support of their motion for summary judgment as "Resp. Reply" (Dkt. #120).

Agreement (the "SPA"); (ii) a Registration Rights Agreement (the "RRA"), and (iii) a Warrant to Purchase Common Shares of MTI (the "Warrant") (collectively, the "GEM Agreements").  (Joint 56.1 ¶ 11; *see also* Joint App'x, Ex. 5 (the "SPA"), Ex. 6 (the "RRA"), Ex. 7 (the "Warrant")).

The SPA and the RRA both recite that they are governed by New York law.  (Joint 56.1 ¶ 14).  Both agreements also contain an arbitration clause, specifying that:

> All disputes, controversies or claims between the Parties arising out of or in connection with this agreement (including its existence, validity or termination) which cannot be amicably resolved shall be finally resolved and settled under the Rules of Arbitration of the American Arbitration Association and its affiliate, the International Cent[re] for Dispute Resolution, in New York City.  The arbitration tribunal shall be composed of one arbitrator.  The arbitration will take place in New York City, New York, and shall be conducted in the English language.  The arbitration award shall be final and binding on the Parties.

(*Id.* ¶ 12 (quoting SPA § 9.02(b)); *see also* RRA § 11(e) (containing a nearly identical arbitration clause)).  Separately, the Warrant provides that, for any dispute arising under the Warrant, venue lies exclusively in the state or federal courts located in New York.  (Joint 56.1 ¶ 15).

### 2.     Commencement of the Arbitration

In September 2021, Petitioners initiated the Arbitration by filing an Arbitration Demand and Statement of Claim naming MTI as Respondent.  (Joint 56.1 ¶ 16).  Petitioners alleged that MTI breached its contractual obligations to GEM when it failed to notify Petitioners of a proposed reverse merger between Mullen Automotive, Inc. — MTI's successor to its electric

vehicle business and, at the time of the merger, a separate corporate entity from current Respondent MAI — and Net Element, Inc., a company specializing in mobile payments and transactional services. (Joint App'x, Ex. 8 ¶¶ 3-7).

In November 2021, Mullen Automotive, Inc. completed the merger transaction with Net Element, Inc. (Joint 56.1 ¶ 9). The combined company maintained the name Mullen Automotive, Inc. and began trading on the Nasdaq Stock Market under the ticker symbol "MULN." (*Id.* ¶ 10; *see also* PFA ¶ 10).

On December 21, 2021, the Arbitrator issued Procedural Order No. 1. (Joint 56.1 ¶ 17 (citing Joint App'x, Ex. 9)). Procedural Order No. 1 stated that

███████████████████████████████████████████████

███████████████████████████████████████████████

█████████████████████████████████████████

██████████████████████████████████████

█████████████████████████████████████████████

The Arbitrator found that █████████████████████████

███████████████████████████████████████████

██ █████████████████████████████████████████

In January 2022, Petitioners filed an Amended Statement of Claim, which added the newly formed MAI as a party to the Arbitration. (*Id.* ¶ 20 (citing Joint App'x, Ex. 10)). On February 1, 2022, Respondents MTI and MAI jointly filed an Answer to Petitioners' Amended Statement of Claim. (*Id.* ¶ 21 (citing Joint App'x, Ex. 11)).

On December 1, 2022, the parties agreed to bifurcate the proceedings into two phases: liability issues would be dealt with in Phase One, and damages, attorneys' fees, and indemnification issues would be reserved for Phase Two.  (Joint 56.1 ¶¶ 24-25 (citing Joint App'x, Ex. 13)).  The parties submitted their Phase One briefing in January 2023.  (*Id.* ¶ 26 (citing Joint App'x, Ex. 14-17)).  Closing argument was held in June 2023.  (*Id.* ¶ 30 (citing Joint App'x, Ex. 23)).

### 3.    The Partial Final Award

On November 17, 2023, the Arbitrator issued a Partial Final Award

██████████████████████████████████████████████████████

████████████████████████████████████████████████

████████████    In the PFA, the Arbitrator found that ████████████████

████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████████████████

████████    The Arbitrator also found that ██████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████    Furthermore, the Arbitrator found that ████████████████████████████████████



Of potential note, "Respondents did not move to vacate, or serve notice of a motion to vacate, the PFA within three months of November 17, 2023." (*Id.* ¶ 37).

### 4.    The Interim Measures Award

On January 24, 2024, the Arbitrator granted Petitioners' second application for interim measures and issued the Interim Measures Award (*see* Joint 56.1 ¶ 42), which ordered in relevant part that:



The IMA stated that

Petitioners moved to confirm the IMA on April 22, 2024.  (*Id.* ¶ 44 (citing Dkt. #58, 60)).  Respondents opposed Petitioners' motion and cross-moved to vacate the IMA on May 6,

2024.  (*Id.* ¶ 45 (citing Dkt. #67, 69)).  The Court confirmed the IMA on

June 11, 2024.  (*Id.* ¶ 46 (citing Dkt. #84-85)).

### 5.    The Final Award

The second, damages phase of the Arbitration was fully briefed as of

January 29, 2024.  (Joint 56.1 ¶ 48).  The Arbitrator issued the Final Award

assessing damages and remaining issues on May 10, 2024.  (*Id.* ¶ 49 (citing

Final Award)).  In the Final Award, which spanned 42 pages, the Arbitrator



In addition, the Arbitrator

Ultimately, the Arbitrator awarded

Petitioners $6,369,326 in Commitment Fee Breach Damages, $20,383,301 in

Warrant Breach Damages, legal fees in the amount of $3,522,954.45, and legal

costs of $272,550.86.  (*Id.* at 41-42).  The parties were further ordered to split

the administration fees and expenses of the Arbitration.  (*Id.* at 42).

As relevant to the instant cross-motions, the Final Award stated that

The Arbitrator

found that ███████████████████████████████████████████

███████████████████████████████████████ And the

Arbitrator found that ███████████████████████████████

███████████████████████████████████████████

███████

## B.    Procedural Background

Some of the procedural background in this action was also set forth in the Court's June 11, 2024 Opinion.  (*See* Dkt. #85 at 8-9).  Again, the Court incorporates by reference the background information contained therein, but summarizes the procedural history relevant to the instant motion.

On February 15, 2024, Petitioners filed an application with the Court to confirm the IMA.  (Dkt. #1).  On March 1, 2024, Respondents filed a cross-motion to vacate and stay the IMA.  (Dkt. #32).  The Court ordered a stay of all briefing before holding a conference with both parties in this action and a related case, captioned *Mullen Technologies, Inc. and Mullen Automotive, Inc.* v. *GEM Yield Bahamas Limited and GEM Global Yield LLC SCS,* No. 23 Civ. 11268 (the "Rescission Action").  (Dkt. #43).  The Court held a conference with the parties on March 21, 2024.  (*See* March 21, 2024 Minute Entry).  Following the March 21, 2024 conference, and after receiving additional submissions from the parties (*see* Dkt. #47-55), the Court ordered the parties to "re-format and re-file" their submissions as motions for summary judgment to conform with the Second Circuit's practice of treating applications to confirm or vacate an

arbitral award as akin to motions for summary judgment. (Dkt. #56). *See D.H. Blair & Co., Inc.* v. *Gottdiener*, 462 F.3d 95, 109-10 (2d Cir. 2006).

Ultimately, in its June 11, 2024 Opinion, the Court granted Petitioners' motion for summary judgment and confirmed the IMA. (Dkt. #85). The Court also granted the parties' respective sealing motions. (*See id.*). Soon thereafter, Petitioners requested that the Court enter a judgment or partial judgment (Dkt. #86-87), which request Respondents opposed (Dkt. #88). The Court declined to enter judgment until after resolving the parties' cross-motions concerning the Final Award. (Dkt. #89). Additionally, it reminded the parties that its "June 11, 2024 Opinion and Order is binding on [them] and can be, if necessary, enforced through contempt proceedings." (*Id.*).

Subsequently, on July 2, 2024, Petitioners indicated their intent to move for an order to show cause why Respondents should not be sanctioned and held in contempt for violation of the Court's orders regarding compliance with the IMA. ((Dkt. #. #90). On the same day, the Court ordered Respondents to show cause, in writing, as to why they had failed to comply with the Court's orders and as to their intentions to rectify their lack of compliance. (Dkt. #91). On July 8, 2024, Respondents filed their response to the Court's order (Dkt. #95-96), as well as unredacted versions of the same documents under seal (Dkt. #93-94).[2] On July 12, 2024, the Court confirmed Petitioners' understanding that no reply submission from Petitioners was requested. (Dkt.

---

[2]    On July 8, 2024, Respondents filed a letter motion requesting leave to file redacted versions of these documents on the docket, and unredacted versions under seal. (Dkt. #92).

#107).  Despite this, Petitioners filed another letter on July 30, 2024, alleging further non-compliance by Respondents, and suggesting that the Court take steps to assure compliance by, for example, setting a date certain for creation of a joint escrow account, or requiring partial deposits into the escrow account. (Dkt. #108).  In their August 1, 2024 letter in reply, Respondents insisted that they were not evading the Court's orders, that they had taken affirmative steps to generate funds to put in escrow, and that Respondents' then-current financial condition prevented them from depositing the funds.  (Dkt. #109).

Meanwhile, on July 10, 2024, Respondents filed the instant motion for summary judgment to vacate the PFA and the Final Award (Dkt. #99), a memorandum of law in support thereof (Dkt. #101), a joint Rule 56.1 Statement (Dkt. #103), and a joint appendix of exhibits (Dkt. #104).  The same supporting documents were also filed under seal without redactions.  (*See* Dkt. #100, 102, 105).[3]  On August 7, 2024, the parties submitted a supplemental joint Rule 56.1 Statement (Dkt. #111), as well as a supplemental joint appendix of exhibits (Dkt. #112).  That same day, Petitioners filed their memorandum of law in opposition to Respondents' motion for summary judgment, and in support of their cross-motion for summary judgment to confirm the Awards. (Dkt. #115).  Petitioners also filed a proposed judgment (Dkt. #118), and a memorandum of law in support thereof (Dkt. #117).  Unredacted versions of the supplemental joint appendix (Dkt. #113), Petitioners' memorandum of law

---

[3]      On July 10, 2024, Respondents filed a letter motion requesting leave to file redacted versions of these documents on the docket, and unredacted versions under seal.  (Dkt. #98).

(Dkt. #114), and Petitioners' memorandum of law in support of their proposed judgment (Dkt. #116) were also filed under seal.[4]  In turn, on August 21, 2024, Respondents filed a memorandum of law in reply (Dkt. #121), another supplemental joint Rule 56.1 Statement (Dkt. #122), and another supplemental joint appendix (Dkt. #124).  They filed unredacted versions of the memorandum of law in reply (Dkt. #120) and second supplemental joint appendix (Dkt. #123) under seal.[5]

On the same day, Petitioners filed a request for oral argument on the cross-motions for summary judgment (Dkt. #125), which request Respondents opposed (Dkt. #126).  In their letter in opposition to oral argument, Petitioners once again raised the prospect of further Court action to enforce the confirmed IMA.  (Dkt. #126).  In response, in an August 29, 2024 letter, Respondents reiterated that they lacked the financial capacity to fully comply with the IMA and the Court's related orders but were "continuing to take steps to maintain the Company's viability and generate funds that could be escrowed in accordance with the [Court's] Orders."  (Dkt. #127 at 2).  A month later, after new counsel for Petitioners filed a notice of appearance (Dkt. #128), Petitioners' counsel moved to withdraw (*see* Dkt. #129-31), which motion the Court granted in connection with the imposition of retaining and charging liens on

---

[4]     On August 7, 2024, Petitioners filed a letter motion requesting leave to file unredacted versions of these documents under seal.  (Dkt. #110).

[5]     On August 21, 2024, Respondents filed a letter motion requesting leave to file redacted versions of these documents on the docket, and unredacted versions under seal.  (Dkt. #119).

October 11, 2024 (Dkt. #132).[6]  On November 1, 2024, Petitioners' former counsel submitted an affirmation in support of the amount of its proposed charging and retaining lien (Dkt. #135), to which Petitioners' current counsel filed an opposition on November 15, 2024 (Dkt. #136), and in support of which Petitioners' former counsel filed a reply on November 22, 2024 (Dkt. #137-38). The documents relating to the amount of the charging and retaining lien were all filed under seal.[7]

The parties' back-and-forth regarding Respondents' compliance with the IMA and related Court orders has continued apace.  On October 22, 2024, Petitioners (by their new counsel) urged further action to enforce the confirmed IMA and for the Court to decide the instant motion "swift[ly]."  (Dkt. #133).[8] For their part, Respondents repeated their refrain that they were dealing with financial difficulties, and that Petitioners were misrepresenting their financial condition despite some improvements.  (Dkt. #134).  Respondents also noted that "Petitioners already have taken possession of $7 million of MAI funds in connection with" the IMA.  (*Id.* at 2).  Finally, on January 3, 2025, Petitioners filed another letter in which they accused Respondents of "deliberately undermining the authority of this Court concerning the [IMA]" and argued that Respondents' "pattern of behavior reveals that the ongoing judicial delays are

---

[6]     The same new counsel filed a notice of appearance, and the same application was made, and granted, in the related Rescission Action before this Court.  (*See* No. 23 Civ. 11268, Dkt. #56-60).

[7]     They were filed under seal in the related action, too.  (*See* No. 23 Civ. 11268, Dkt. #62-65).

[8]     The same letter was filed in the related action.  (*See* No. 23 Civ. 11268, Dkt. #61).

allowing [Respondents] to evade [their] legal responsibilities" (Dkt. #139 at 4), to which letter Respondents replied on January 8, 2025, again asserting that Plaintiffs were mischaracterizing the facts at hand (Dkt. #140).

On February 6, 2025, the Court filed and provided to the parties an unredacted copy of this Opinion under seal and allowed the parties to propose redactions in accordance with *Lugosch* v. *Pyramid Co. of Onondaga*, 435 F.3d 110 (2d Cir. 2006). On or before **March 6, 2025**, the parties shall file a joint letter suggesting redactions to the Opinion. Taking the parties' suggestions into consideration, the Court will then file a redacted version of the Opinion on the public docket.

## DISCUSSION

### A.    Applicable Law

#### 1.    Judicial Review of Arbitration Awards

Federal law provides for vacatur of arbitration awards "only in very unusual circumstances." *First Options of Chi., Inc.* v. *Kaplan,* 514 U.S. 938, 942 (1995). "Because the parties 'bargained for the arbitrator's construction of their agreement,' an arbitral decision 'even arguably construing or applying the contract' must stand, regardless of a court's view of its (de)merits." *Oxford Health Plans LLC* v. *Sutter,* 569 U.S. 564, 569 (2013) (quoting *E. Assoc. Coal Corp.* v. *Mine Workers,* 531 U.S. 57, 62 (2000)). The Second Circuit has underscored this point, holding that courts should exercise an "extremely deferential standard" when reviewing arbitration awards. *Porzig* v. *Dresdner, Kleinwort, Benson, N. Am. LLC,* 497 F.3d 133, 139 (2d Cir. 2007). The "general

rule [is] that '[a]rbitration awards are subject to very limited review in order to avoid undermining the twin goals of arbitration, namely, settling disputes efficiently and avoiding long and expensive litigation.'" *Rich* v. *Spartis*, 516 F.3d 75, 81 (2d Cir. 2008) (second alteration in original) (quoting *Willemijn Houdstermaatschappij, BV* v. *Standard Microsystems Corp.*, 103 F.3d 9, 12 (2d Cir. 1997)).

Because the Awards were entered in the United States, the standard, domestic provisions of the FAA, which are codified in Chapter One of the FAA, apply to the extent they do not conflict with the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (also known as the "New York Convention") or its enabling legislation, both of which are codified in Chapter Two of the FAA. *See Phoenix Aktiengesellschaft* v. *Ecoplas, Inc.*, 391 F.3d 433, 435 (2d Cir. 2004); *see generally Parsons & Whittemore Overseas Co., Inc.* v. *Societe Generale de L'Industrie Du Papier (RAKTA)*, 508 F.2d 969, 973 (2d Cir. 1974); 9 U.S.C. §§ 1-16, 201-208. The FAA creates "mechanisms for enforcing arbitration awards: a judicial decree confirming an award, an order vacating it, or an order modifying or correcting it." *Hall St. Assocs., L.L.C.* v. *Mattel, Inc.,* 552 U.S. 576, 582 (2008) (citing 9 U.S.C. §§ 9-11). A court must grant a motion to confirm an arbitration award unless the award "is vacated, modified, or corrected" under § 10 or § 11 of the FAA. *Id.* There are four statutory grounds for vacatur:

> (1)    where the award was procured by corruption, fraud, or undue means;

(2) where there was evident partiality or corruption in the arbitrators, or either of them;

(3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or

(4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a).

Recognizing that mischief can inhere in an overly broad interpretation of the FAA's vacatur provision, the Supreme Court has made clear that the only question under § 10(a)(4) "is whether the arbitrator (even arguably) interpreted the parties' contract, not whether he got its meaning right or wrong." *Oxford Health Plans*, 569 U.S. at 569. The Second Circuit has likewise "'consistently accorded the narrowest of readings' to section 10(a)(4)." *Jock* v. *Sterling Jewelers Inc.*, 646 F.3d 113, 122 (2d Cir. 2011) (quoting *ReliaStar Life Ins. Co. of N.Y.* v. *EMC Nat'l Life Co.,* 564 F.3d 81, 85 (2d Cir. 2009), *cert. denied*, 565 U.S. 1259 (2012)).

The Second Circuit has held that a court may vacate an award if the arbitrator "has acted in manifest disregard of the law," *Porzig*, 497 F.3d at 139, or "where the arbitrator's award is in manifest disregard of the terms of the parties' relevant agreement," *Schwartz* v. *Merrill Lynch & Co., Inc.*, 665 F.3d 444, 452 (2d Cir. 2011) (internal quotation marks omitted and alteration adopted). However, a court may vacate on those bases only in "those

16

exceedingly rare instances where some egregious impropriety on the part of the arbitrator[ ] is apparent." *T.Co Metals, LLC* v. *Dempsey Pipe & Supply, Inc.*, 592 F.3d 329, 339 (2d Cir. 2010) (alteration in original) (internal quotation marks omitted); *accord Kellner* v. *Amazon*, No. 22-734, 2023 WL 2230288, at *2 (2d Cir. Feb. 27, 2023) (summary order).  Thus, in order "[t]o succeed in challenging an award under the manifest disregard standard, a party must make a showing that the arbitrators knew of the relevant legal principle, appreciated that this principle controlled the outcome of the disputed issue, and nonetheless willfully flouted the governing law by refusing to apply it." *Seneca Nation of Indians* v. *New York*, 988 F.3d 618, 626 (2d Cir. 2021) (internal quotation marks omitted); *accord Westerbeke Corp.* v. *Daihatsu Motor Co., Ltd.*, 304 F.3d 200, 208-09 (2d Cir. 2002).

"[An] award should be enforced, despite a court's disagreement with it on the merits, if there is a *barely colorable justification* for the outcome reached." *T.Co Metals, LLC*, 592 F.3d at 339 (internal quotation marks omitted) *accord Kellner*, 2023 WL 2230288, at *2.  A "barely colorable justification" exists so long as the arbitrators had reasoning on which they "could have justifiably rested their decision."  *Willemijn Houdstermaatschappij, BV*, 103 F.3d at 13-14 (finding that a proffered justification satisfied the "barely colorable" standard because it presented no "error that an average person qualified to serve as an arbitrator should have instantaneously perceived and corrected"); *accord Smarter Tools Inc.* v. *Chongqing SENCI Imp. & Exp. Trade Co.*, 57 F.4th 372, 383 (2d Cir. 2023); *Weiss* v. *Sallie Mae, Inc.*, 939 F.3d 105, 109 (2d Cir. 2019).

17

### 2.    Summary Judgment Under Federal Rule of Civil Procedure 56

As noted above, courts treat an application to confirm or vacate an arbitral award as akin to a motion for summary judgment. *City of N.Y.* v. *Mickalis Pawn Shop, LLC*, 645 F.3d 114, 136 (2d Cir. 2011) (citing *D.H. Blair & Co.*, 462 F.3d at 109). A "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Thus, "'[a] motion for summary judgment may properly be granted ... only where there is no genuine issue of material fact to be tried, and the facts as to which there is no such issue warrant the entry of judgment for the moving party as a matter of law.'" *Rogoz* v. *City of Hartford*, 796 F.3d 236, 245 (2d Cir. 2015) (quoting *Kaytor* v. *Elec. Boat Corp.,* 609 F.3d 537, 545 (2d Cir. 2010)).

"[A] fact is material if it 'might affect the outcome of the suit under the governing law.'" *Royal Crown Day Care LLC* v. *Dep't of Health & Mental Hygiene of City of N.Y.*, 746 F.3d 538, 544 (2d Cir. 2014) (quoting *Anderson* v. *Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "A dispute is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Negrete* v. *Citibank, N.A.*, 237 F. Supp. 3d 112, 122 (S.D.N.Y. 2017) (quoting *Liberty Lobby*, 477 U.S. at 248), *aff'd*, 759 F. App'x 42 (2d Cir. 2019) (summary order). And where, as here, "parties file cross-motions for summary judgment, ... each party's motion must be examined on its own merits, and in each case all reasonable inferences must be drawn against the party whose motion is under consideration." *Fireman's Fund Ins. Co.* v. *Great*

*Am. Ins. Co. of N.Y.*, 822 F.3d 620, 631 n.12 (2d Cir. 2016) (internal quotation marks omitted and alteration adopted) (quoting *Morales* v. *Quintel Ent., Inc.*, 249 F.3d 115, 121 (2d Cir. 2001)).

## B.     Analysis

Respondents advance three arguments for vacating the Awards.  *First*, Respondents argue that the Arbitrator exceeded his authority.  (Resp. Br. 16). *Second*, Respondents argue that the Court should refuse to enforce the Awards because they contain contradictory findings of fact and conclusions of law.  (*Id.* at 19).  And *third*, Respondents argue that the Arbitrator issued the Awards in manifest disregard of the law.  (*Id.* at 22).  Conversely, Petitioners contend that Respondents' motion to vacate the PFA is time-barred.  (Pet. Opp. 13).  For the reasons that follow, the Court finds that Respondents' motion to vacate the PFA is untimely, but nevertheless rejects their arguments on the merits.

### 1.     Respondents Have Not Timely Moved to Vacate the Partial Final Award

Before the Court addresses the merits of Respondents' arguments, it begins by addressing whether their motion is timely with respect to the PFA. Respondents argue that their motion is timely because the PFA did not resolve *all* liability issues, and therefore was not a final arbitration award for purposes of starting the clock to move for a motion to vacate.  (Resp. Br. 14-15).  As such, Respondents argue, they could not have moved to vacate the PFA until the Arbitrator issued the Final Award, which they timely moved to vacate.  (*Id.* at 15).  Additionally, Respondents argue that the New York Convention allows

them to oppose confirmation within three years of the issuance of an arbitral award. (*Id.* at 15-16). The Court rejects both arguments.

*First*, Respondents argue that their motion to vacate the PFA is timely under the FAA. The FAA requires that any motion to vacate an arbitral award "must be served … within three months after the award is filed or delivered." 9 U.S.C. § 12. "[A] party may not raise a motion to vacate, modify, or correct an arbitration award after the three[-]month period has run, even when raised as a defense to a motion to confirm." *Florasynth, Inc.* v. *Pickholz*, 750 F.2d 171, 175 (2d Cir. 1984). "[C]ourts will typically confirm only final [arbitral] awards, and the 'general rule' is 'that an arbitral determination is not final unless it conclusively decides every point required by and included in the submission of the parties.'" *Glob. Gold Mining LLC* v. *Caldera Res., Inc.*, 941 F. Supp. 2d 374, 382 (S.D.N.Y. 2013) (quoting *Trade & Transp., Inc.* v. *Nat. Petroleum Charterers Inc.*, 931 F.2d 191, 195 (2d Cir. 1991)). However, "courts have repeatedly held that a definitive partial award as to liability is final and confirmable 'where the parties expressly agree to bifurcate liability and damages.'" *Id.* at 382-83 (quoting *Mitsubishi Heavy Indus., Ltd.* v. *Stone & Webster, Inc.*, No. 08 Civ. 509 (JGK), 2009 WL 3169973, at *5 (S.D.N.Y. Sept. 29, 2009)); *see also Zeiler* v. *Deitsch*, 500 F.3d 157, 169 (2d Cir. 2007) (finding that certain arbitral decisions, which did not dispose of all claims submitted to arbitration, could be confirmed because they had "finally and conclusively disposed of a separate and independent claim" (internal quotation marks omitted)); *Madryn Asset*

*Mgmt. LP* v. *Trailmark, Inc.*, No. 23 Civ. 3704 (JPC), 2024 WL 1348869, at *5 (S.D.N.Y. Mar. 30, 2024).

Here, the Arbitrator issued the PFA on liability on November 17, 2023 (Joint 56.1 ¶ 31), in line with the parties' earlier agreement to bifurcate the arbitration proceedings into a first liability phase and a second damages phase (the latter of which was also to include attorneys' fees and indemnification) (*id.* ¶¶ 24-25). But Respondents did not move to vacate the PFA within three months of November 17, 2023. (*Id.* ¶ 37). Thus, Respondents' motion to vacate the PFA, which is a final award for vacatur purposes, is untimely. *See Florasynth*, 750 F.2d at 175.

Respondents are wrong to claim that their motion to vacate "could not have been made until the Final Award was delivered." (Resp. Br. 15). Essentially, Respondents argue that the parties' agreed-upon bifurcation was *not* a true bifurcation because Petitioners' claim for indemnification, and the issue of joint and several liability, were left for the second phase of arbitration, which was resolved in the subsequent Final Award. (*Id.*).[9] But arbitration proceedings do not need to be so neatly divided for a partial final award to be confirmable. It is sufficient that "the parties have asked the arbitrator[ ] to make a final partial award as to a particular issue, and the arbitrator[ ] [has] done so." *Trade & Transp.*, 931 F.2d at 195. The PFA was a final, confirmable

---

[9]    The timeliness of Respondents' motion to vacate the Final Award, which issued on May 10, 2024, is not in dispute. (*See* Resp. Br. 15 n.3).

award on a particular issue (liability),[10] and therefore Respondents' motion to vacate it after the three-month FAA window is untimely.

*Second*, Respondents argue that the New York Convention allows them to oppose confirmation of the PFA within three years of its being issued. By way of background, the United States ratified the New York Convention in 1970. *See Molecular Dynamics, Ltd.* v. *Spectrum Dynamics Med. Ltd.*, No. 22 Civ. 5167 (KPF), 2024 WL 3523414, at *3 (S.D.N.Y. July 23, 2024) (citing *Yusuf Ahmed Alghanim & Sons* v. *Toys "R" Us, Inc.*, 126 F.3d 15, 18 n.1 (2d Cir. 1997), *cert. denied*, 522 U.S. 1111 (1998)). It applies to "arbitral awards made in a foreign country that a party seeks to enforce in the United States … and to nondomestic arbitral awards that a party seeks to enforce in the United States." *CBF Indústria de Gusa S/A* v. *AMCI Holdings, Inc.*, 850 F.3d 58, 70 (2d Cir. 2017) (internal quotation marks omitted). In particular, the New York Convention applies where one or more parties to an arbitration agreement is a foreign corporation, as here. *See Scandinavian Reinsurance Co.* v. *Saint Paul Fire & Marine Ins. Co.*, 668 F.3d 60, 71 (2d Cir. 2012) ("*Scan Re*") (citing 9 U.S.C. § 202 ("An agreement or award arising out of [a commercial] relationship which is entirely between citizens of the United States shall be deemed not to

---

[10]    Although Respondents claim that the inclusion of indemnification (and, arguably, joint and several liability) taints the bifurcation of the arbitration proceedings into liability and damages phases (*see* Resp. Br. 15), the Court agrees with Petitioners that it was "clear that the parties, the Arbitrator, and this Court all understand that the agreed-upon bifurcation was to all liability claims" (Pet. Opp. 14 (citing PFA ¶¶ 185, 190; Dkt. #85 at 2)). The inclusion of indemnification and/or joint and several liability in the Final Award did not frustrate the parties' expectations, to the extent those expectations are relevant at all.

fall under the Convention unless that relationship ... has some other reasonable relation with one or more foreign states.")).

When an arbitration takes place in the United States, the award entered pursuant to that arbitration is "at the same time subject to the FAA provisions governing domestic arbitration awards." *Zeiler*, 500 F.3d at 164. "'[T]he FAA and the New York Convention work in tandem, and they have overlapping coverage to the extent that they do not conflict.'" *Scan Re*, 668 F.3d at 71 (alteration in original) (quoting *Sole Resort, S.A. de C.V.* v. *Allure Resorts Mgmt., LLC*, 450 F.3d 100, 102 n.1 (2d Cir. 2006) (internal quotation marks omitted)). Here, the relevant provision of the New York Convention, which must be reconciled with the FAA's three-month limitation, is as follows:

> Within three years after an arbitral award falling under the Convention is made, any party to the arbitration may apply ... for an order confirming the award as against any party to the arbitration. The Court shall confirm the award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the said Convention.

9 U.S.C. § 207. The parties here agree that the New York Convention applies to GEM's motion to confirm the PFA. (*See* Dkt. #17 at ¶ 8; Resp. Br. 15 n.4; Pet. Opp. 15-17). The question is whether the New York Convention offers a way around the FAA's three-month bar. The Court finds that it does not.

The threshold question is whether the FAA and the New York Convention are in conflict. Neither the New York Convention nor its enabling statute grants vacatur power with respect to awards governed by the Convention. *See Molecular Dynamics*, 2024 WL 352341, at *6 (citing *Zeiler*, 500 F.3d at 165 n.6).

23

That explains why Respondents argue they "are still permitted to *oppose confirmation* under the New York Convention" rather than move to vacate the award under it. (Resp. Br. 15 (emphasis added)). Regardless of whether there is a meaningful difference between the two, the FAA's three-month limit, and not the Convention's three-year period, applies to the Respondents' motion. Although the Second Circuit has not squarely addressed this issue, it has held that the FAA applies to nondomestic arbitration awards entered in the United States (like the PFA). *See Yusuf*, 126 F.3d at 23; *Scan Re*, 668 F.3d at 71. Where the Convention and the FAA do not conflict, they work in tandem. *See Scan Re*, 668 F.3d at 71. Since the Convention does not supply a statute of limitations for vacatur, the Convention and the FAA do not conflict, and therefore the FAA's three-month limitations period governs. Here the Court finds illuminative the reasoning of the Eleventh Circuit, which considered this issue and concluded that, given that the Convention does not supply a statute of limitations for vacatur actions, the Convention's three-year period applies only to suits to "confirm" an arbitration award, and not to suits to vacate one. *Gonsalvez* v. *Celebrity Cruises Inc.*, 750 F.3d 1195, 1197 (11th Cir. 2013) (per curiam) (citing 9 U.S.C. §§ 207-208).

Further, the Court does not find persuasive the reasoning of *Jamaica Commodity Trading Company, Limited* v. *Connell Rice & Sugar Company, Inc.*, No. 87 Civ. 6369 (JMC), 1991 WL 123962 (S.D.N.Y. July 3, 1991) ("*JCT*"), on which Respondents rely. (*See* Resp. Br. 16; Resp. Reply 5-7). In *JCT*, a Jamaican corporation moved to confirm a AAA award, and about five months

after the award was issued, the respondent sought vacatur and objected to the petitioner's application to confirm the award.  *Id.* at *1-2.  Despite falling outside the three-month FAA period, the court in *JCT* concluded that "[t]he untimeliness of [the respondent's] opposition under the [FAA] does not preclude it from proceeding under the Convention."  *Id.* at *3.

The *JCT* court reasoned that because the respondent's "motion to vacate [was] made within three years of the award in opposition to [the petitioner's] motion to confirm, it is permissible under the Convention."  1991 WL 123962, at *3.  The *JCT* court's analysis followed from its conclusion that the FAA and the New York Convention overlap, and "[w]here the two statutes overlap, a party 'has more than one remedy available and may choose the most advantageous.'"  *Id.* (quoting *Bergesen* v. *Joseph Muller Corp.*, 710 F.2d 928, 934 (2d Cir. 1983)).  The Court disagrees with this premise.  The FAA and Convention do not overlap on this issue.  They *do* overlap on the issue of confirmation, for which the FAA provides a one-year limitations period, *see* 9 U.S.C. § 9, and the Convention provides a three-year limitations period, *see* 9 U.S.C. § 207, allowing those seeking to *confirm* an arbitration award covered by both statutes to use the Convention's three-year period, *see Bergesen*, 710 F.2d at 934.  But they *do not* overlap on the issue of vacatur, and therefore FAA's three-month limitations period governs.  *See Gonsalvez*, 750 F.3d at 1197.  Moreover, the Court agrees with Petitioners' argument that Respondents' (and the *JCT* court's) reading of the Convention to circumvent the FAA's three-month limitations period contradicts the very purpose of the

limitations period. (*See* Pet. Opp. 16). This Court's holding regarding the applicability of the three-month limitations period instead adheres to the general principle that "delayed challenges to the validity of an [arbitral] award" are disfavored. *Florasynth*, 750 F.2d at 177; *accord Kumaran* v. *ADM Inv. Servs., Inc.*, No. 20 Civ. 3873 (GHW) (SDA), 2024 WL 5119145, at *7 (S.D.N.Y. Oct. 24, 2024), *report and recommendation adopted*, No. 20 Civ. 3873 (GHW), 2025 WL 227802 (S.D.N.Y. Jan. 17, 2025).

Thus, the Court finds that Respondents' motion to vacate the PFA is untimely. Petitioners contend that "[t]he vast majority of Respondents' arguments are directed at the PFA" (Pet. Opp. 13 n.3), though Respondents counter that "all of [their] arguments were directed to *both* the PFA *and* the Final Award" (Resp. Reply 2 n.2). In the interest of completeness, and given the timeliness of Respondents' challenges to the Final Award, the Court will proceed to address the merits of all of Respondents' arguments for vacatur.

### 2. The Court Will Confirm the Awards

#### a. The Arbitrator Did Not Exceed His Authority When He Rendered the Awards

Respondents first argue that the Arbitrator exceeded his authority by considering issues outside the scope of the parties' arbitration submission. (Resp. Br. 16-19). Specifically, Respondents claim that the Arbitrator exceeded his authority in three ways: ██████████████████████████

████████████████████████████████████

███████████████████████████████████

████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████████

█████████████████████████████████████████████████████

███████████████████████████████████████████████ The

Court finds no merit to any of these claims.

To review, a court can vacate an arbitral award if the arbitrator has exceeded his or her authority. *See* 9 U.S.C. § 10(a)(4).  In assessing whether an arbitrator has exceeded his or her authority, the court focuses on whether the arbitrator considered issues beyond those submitted for consideration or reached issues clearly prohibited by law or the terms of the arbitral agreement, and *not* whether the arbitrator correctly decided the issue.  *See Jock*, 646 F.3d at 122.  Accordingly, Respondents must "clear a high hurdle" to obtain relief through vacatur; "[i]t is not enough for [a party] to show that the [arbitrator] committed an error — or even a serious error."  *Stolt-Nielsen S.A.* v. *AnimalFeeds Int'l Corp.*, 559 U.S. 662, 671 (2010).  This high degree of deference applies so long as the arbitrator's decision "draws its essence from the agreement to arbitrate," *Jock*, 646 F.3d at 122 (internal quotation marks omitted), or so long as the arbitrator is "even arguably … acting within the scope of his authority," *187 Concourse Assocs.* v. *Fishman*, 399 F.3d 524, 526 (2d Cir. 2005) (internal quotation marks omitted).  The Court must confirm an arbitrator's decision unless the arbitrator failed to offer "a barely colorable justification for the outcome reached."  *Jock*, 646 F.3d at 122 (quoting *ReliaStar*, 564 F.3d at 86).

Here, as Petitioners note, the Arbitrator's authority is broad. (*See* Pet. Opp. 18). The SPA gives him the authority to decide "[a]ll disputes, controversies or claims between the Parties arising out of or in connection with this agreement." (SPA § 9.02(b)). The RRA contains a nearly identical clause. (*See* RRA § 11(e)). In the PFA, the Arbitrator concluded that ██████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████ Furthermore, the Arbitrator found that ████████████████

████████████████████████████████████████████████

██████ Indeed, the Arbitrator found that, ██████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████ The Court next addresses, in turn, whether the three issues raised by Respondents fall within the scope of the Arbitrator's broad authority.

Respondents first argue that the Arbitrator effectively ██████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████████████ In point of fact, the Arbitrator found that ████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████ Respondents appear to be arguing that
the Arbitrator exceeded his authority by ████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████

Consequently, the Court considers this objection in conjunction with
Respondents' second argument, which is that ███ ████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████ The
parties do not dispute that the Contribution Agreement contains no arbitration
clause.  (*See* Joint 56.1 ¶ 7).  Respondents take issue with ████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████ But this falls short of *adjudicating* the parties' rights and
obligations under an agreement not subject to arbitration, which would,
indeed, exceed the Arbitrator's authority.  *Cf. Copragri S.A.* v. *Agribusiness
United DMCC*, No. 20 Civ. 5486 (LGS), 2021 WL 961751, at *5 (S.D.N.Y.
Mar. 15, 2021) (vacating an arbitral award because the arbitrators exceeded
their authority by issuing it when there was "no contractual basis for
subjecting Copragri to SMA arbitration").  Rather, the Arbitrator ████████████

████████████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████ Specifically, the Arbitrator ████████

█████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████

An arbitrator can consider evidence outside of the contract at issue to determine whether a breach has occurred, so long as it has been submitted for the arbitrator's consideration. *See, e.g.*, *Wells Fargo Advisors LLC* v. *Tucker*, 373 F. Supp. 3d 418, 428-29 (S.D.N.Y. 2019). The issue of ██████████ ███████████████████████████████████████████████ was certainly "submitted for [the Arbitrator's] consideration." *Jock*, 646 F.3d at 122. After all, █████████████████████████████████████████ ████████████████████████████████████████ █████████████████████████████████ Moreover, the Arbitrator also ███████████████████████████████████ ████████████████████████████████████████████ ███████████████ So, even if the Arbitrator were not permitted to ████████████████████████████████████████ ████████████████████████████████, the Arbitrator arrived at the same conclusion ███████████████████████ ██████████. Therefore, the Arbitrator did not exceed the scope of his authority ████████████████████████████████████████

████████████████████████████████████████████████████████████

██████████████████████████████████████████

Respondents' third and final basis for arguing that the Arbitrator

exceeded his authority is that ████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████████████████    In

Respondents' view, "it was patently improper and beyond the scope of the

arbitrator's authority for him to ███████████████████████████████

███ █████    But the Court agrees with Petitioners that "Respondents' argument

is essentially that the Arbitrator only has the power to decide those issues

expressly identified in the initial pleading documents."  (Pet. Opp. 21).  The

Arbitrator's decision must "draw[ ] its essence from the agreement to arbitrate"

and the "issues … the parties have submitted for [the arbitrator's]

consideration."  *Jock*, 646 F.3d at 122 (internal quotation marks omitted).

████████████████████████████████████████████████    is an issue

that surely arises from the SPA's arbitration provision, which authorized the

Arbitrator to decide "[a]ll disputes, controversies or claims between the Parties

arising out of or in connection with this agreement."  (SPA § 9.02(b)).[11]  *See*

*WorldCrisa Corp.* v. *Armstrong*, 129 F.3d 71, 75 (2d Cir. 1997) ("[I]f the

allegations underlying the claims touch matters covered by the parties' …

---

[11]    Moreover, Petitioners point out that Respondents argued to the Arbitrator ██████
████████████████████████████████████████████████████████████

agreements, then those claims must be arbitrated[.]" (internal quotation marks omitted) (omission in original)).  Therefore, the Arbitrator did not exceed his authority ████████████████████████████████████████████████.

### b.    The Awards Are Not Ambiguous Due to Internal Contradictions

Next, Respondents argue that the Awards contain "contradictory findings of fact and irreconcilable conclusions of law," permitting vacatur under 9 U.S.C. § 10(a)(4).  (Resp. Br. 19).  Respondents appear to argue that the Arbitrator reached three contradictory conclusions requiring vacatur: █████

████████████████████████████████████████████████

█████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████  And Respondents broadly argue that the Arbitrator

████████████████████████████████████████████████

██████████████████████████████████  The Court rejects these arguments.

"[I]nternal inconsistencies within an arbitral judgment are not grounds for vacatur."  *Westerbeke*, 304 F.3d at 211-12 (citing *Saint Mary Home, Inc.* v. *Serv. Emps. Int'l Union, Dist. 1199*, 116 F.3d 41, 44-45 (2d Cir. 1997)).  But courts can vacate arbitral awards that are "so ambiguous and contradictory that they [are] incomprehensible."  *Golden Krust Franchising, Inc.* v. *Actus Rest.*

*Grp., Inc.*, No. 20 Civ. 7321 (KMK), 2021 WL 4974808, at *4 (S.D.N.Y. Oct. 26, 2021) (citing *Bell Aerospace Co. Div. of Textron* v. *Loc. 516, Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am.*, 500 F.2d 921, 924 (2d Cir. 1974); *Weiss*, 939 F.3d at 110-11). Alternatively, courts can remand to the arbitrator for clarification awards that are ambiguous and subject to multiple interpretations. *See Three Bros. Trading, LLC* v. *Generex Biotechnology Corp.*, No. 18 Civ. 11585 (KPF), 2019 WL 3456631, at *3 (S.D.N.Y. July 31, 2019); *see also Bell Aerospace*, 500 F.2d at 924-25 (remanding an ambiguous award for clarification).

The real question here, then, is whether the Awards are so ambiguous (*i.e.*, subject to multiple interpretations), as to be incomprehensible. The Court finds that they are not. Petitioners argue that "requiring both of the cited factual conclusions ███████████████████████████████████████ ██████████████████████████████████████████████████ ████ to be true at the same time misses the point; ████████████████ ███████████████████████████████████ ███████████████████████████████████████ The Court agrees with Petitioners that the Arbitrator ███████████████████████████████ ████████████████████████████████████████████████ ████████████ The Arbitrator found that ████████████████████ ████████████████████████████████████████ ████████████████████████████████ Moreover, the Arbitrator found that both ██████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████  To the extent that

Respondents believe these findings to be errors (even serious ones), that is

insufficient to support vacatur.  *See Stolt-Nielsen*, 559 U.S. at 671.

More importantly, the Court finds that none of the findings raised by

Respondents creates ambiguity sufficient to warrant vacatur or remand.  *Cf.,*

*e.g.*, *Three Bros. Trading*, 2019 WL 3456631, at *4-5 (finding that the terms of

an award were ambiguous where they could be interpreted to mean the award

had no value, or a value greater than $3 million).  "Here, the operative terms of

the Award[s], and what they require Respondents to do, are perfectly clear."

(Pet. Opp. 23).  It is the Arbitrator's reasoning to which Respondents object.

Where, as in *Bell Aerospace* and *Weiss*, "the award ... is unambiguous,"

Respondents' disagreement with it is simply "not a ground on which this Court

is entitled to vacate an arbitration award."  *Golden Krust*, 2021 WL 4974808, at

*4.  Accordingly, the Court concludes that the Arbitrator's findings meet the

standard of colorable reasoning required for the Court to confirm an arbitration

award.  *See D.H. Blair & Co.*, 462 F.3d at 110 ("The arbitrator's rationale for an

award need not be explained, and the award should be confirmed if a ground

for the arbitrator's decision can be inferred from the facts of the case." (internal

quotation marks omitted)); *see also Banco de Seguros del Estado* v. *Mut. Marine*

*Off., Inc.*, 344 F.3d 255, 262 (2d Cir. 2003) ("It is not the role of the courts to

undermine the comprehensive grant of authority to arbitrators by prohibiting an arbitral security award that ensures a meaningful final award.").

### c. The Awards Were Not Rendered in Manifest Disregard of the Law

Respondents' final ground for seeking vacatur is that the Awards were rendered in manifest disregard of the law. (Resp. Br. 22). Specifically, Respondents argue that the Arbitrator manifestly disregarded the law by

████████████████████████████████████████████

████████████████████████████████████████████

██ ███████████████████████████████████████

███████████████████████

In order "[t]o succeed in challenging an award under the manifest disregard standard, a party must make a showing that the arbitrator[ ] knew of the relevant legal principle, appreciated that this principle controlled the outcome of the disputed issue, and nonetheless willfully flouted the governing law by refusing to apply it." *Seneca Nation*, 988 F.3d at 626 (internal quotation marks omitted). "In addition to this 'subjective component,' a finding of manifest disregard requires an objective determination that the disregarded legal principle was 'well defined, explicit, and clearly applicable.'" *Id.* (quoting *Westerbeke*, 304 F.3d at 209).

When parties opt for arbitration procedures that grant an arbitrator power that a court would not have, a party must show that the applicable "law clearly and explicitly prohibits [the] parties" from doing so. *Telecom Bus. Sol., LLC* v. *Terra Towers Corp.*, No. 23-144, 2024 WL 446016, at *4 (2d Cir. Feb. 6,

2024) (summary order).  The law in New York, which applies here, is that "'a court may not vacate an award because the arbitrator has exceeded the power the court would have' outside an arbitration proceeding; instead, '[t]hose who have chosen arbitration as their forum should recognize that arbitration procedures and awards often differ from what may be expected in courts of law.'"  *Id.* (alterations in original) (quoting *Rochester City Sch. Dist.* v. *Rochester Teachers Ass'n*, 41 N.Y.2d 578, 582 (1977)).  Indeed, the Second Circuit has recognized that, "[i]n general, '[w]here an arbitration clause is broad, ... arbitrators have discretion to order remedies they determine appropriate, so long as they do not exceed the power granted to them by the contract itself.'"  *Id.* (second alteration and omission in original) (quoting *Banco de Seguros*, 344 F.3d at 262).

*First*, Respondents claim that "the [A]rbitrator never ███████████ ████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████ ███████████████████████████████████████████████████████ ██████████████████████████  According to Respondents, this amounted to the Arbitrator's █████████████████████████████████████████████ ████████████████████████████████████████████████████████ ██████████████████  But the Arbitrator had broad authority to fashion a remedy of his choosing.  The arbitration clause provides that all disputes, controversies, or claims between the parties arising out of the agreement would be arbitrated under the AAA Rules.  (*See* SPA § 9.02(b); *see also* RRA § 11(e)).  Respondents

recognize that AAA Rule R-47(a) "authorized the arbitrator to grant equitable remedies" that are within the scope of the parties' agreement. (Resp. Reply 12). Respondents dispute whether the Arbitrator's ███████████████████████ ██████ was within the scope of the agreement. (*Id.* at 12-13). However, the Court finds that the Arbitrator was within his discretion under the SPA and the RRA to fashion this remedy. *See Banco de Seguros*, 344 F.3d at 262.

Even if the SPA and RRA, which are governed by New York law (*see* Joint 56.1 ¶ 14), were read to require that the Arbitrator ████████████████ ██████ because it is available only in limited circumstances (such as where two parties to a contract are co-promisors or alter egos (*see* Resp. Br. 23), the Court agrees with Petitioners that these rules are not "clearly applicable to the facts of this case" (Pet. Opp. 27 (internal quotation marks omitted)). As Petitioners note, the Arbitrator ██████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████ ████████████████████████████████████████ Lastly on the issue of ███████████████████ Respondents appear to argue that the Arbitrator ███████████████████████████████████ ████████████████████████████████ But in fact, the Arbitrator found ███████████████████████████████████████ ████████████████████████████████████████ █████████████████████ However Respondents think this amounts to manifest disregard of the law, it does not.

*Second*, Respondents argue that the Arbitrator's decision to ███████

█████████████████████████████████████████████████████████

██████, disregarded a well-settled principle of New York law that ███████████

█████████████████████████████████████████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

█████████████████████████████████████████████████████████

████████████████████████████ Following from his analysis of the case law and

the facts of this case, the Arbitrator concluded that ████████████████████

█████████████████████████████████████████████████████████

██████████████████████████████████████████████████

█████████████████████████████████████████████████████████

████████████████████████████████ It may be the case that under

New York law, breach of contract damages are ordinarily measured from the

date of breach.  (*See* Resp. Reply 13 (citing *Oscar Gruss & Son, Inc.* v.

*Hollander*, 337 F.3d 186, 196 (2d Cir. 2003))).  But the Court is satisfied that

the Arbitrator reached this conclusion based on ████████████████████████

████████████████████████████ and not a manifest disregard of it.  *Cf.*

*Seneca Nation*, 988 F.3d at 626.  Moreover, the Arbitrator's decision was based

on █████████████████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████████████████████  *See,*
*e.g.*, *Capgemini U.S. LLC* v. *Sorensen*, No. 04 Civ. 7584 (JGK), 2005 WL
1560482, at *10 (S.D.N.Y. July 1, 2005) (finding that an arbitration panel had
"fashioned an appropriate remedy based upon the facts and law before it"
where "the parties did not provide the [p]anel with the price of the stock on the
date of the breach"); *see also Getko Grp., Inc.* v. *Amica Mut. Ins. Co.*, No. 03 Civ.
5876 (VM), 2003 WL 22455303, at *3 (S.D.N.Y. Oct. 28, 2003) ("New York law
permits imprecise and even somewhat speculative contract damages in
arbitration proceedings.").  Therefore, the Arbitrator's decision to ███████
████████████████████████  was not in manifest disregard of the law.

   *Third* and finally, Respondents argue that the Arbitrator ███████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████████
██████████████████████████████████████████████
████████████████████████████  and for much the same reason the
Court rejected Respondents' second objection, the Court finds that the
Arbitrator's decision was within his broad authority under the arbitration
agreement and New York law.  *See Telecom*, 2024 WL 446016, at *4 (citing
*Rochester*, 41 N.Y.2d at 582); *Capgemini*, 2005 WL 1560482, at *10; *Getko*,
2003 WL 22455303, at *3.  Having rejected all of Respondents' challenges to
the Awards, the Court will grant Petitioners' motion to confirm them.

### d.    The Court Awards Post-Award, Prejudgment Interest and Post-Judgment Interest

Petitioners submitted a proposed judgment, which would award them the damages set forth in the Final Award plus (i) post-award, prejudgment interest and (ii) post-judgment interest. (Dkt. #118). In an accompanying memorandum — for which they did not seek the Court's leave to file — Petitioners argue that they are entitled to post-award, prejudgment interest on any remaining balance owed to them at an annual rate of 9% through the entry of judgment. (Dkt. #116 at 4-5). Respondents oppose the request for post-award, pre-judgment interest in a footnote in their reply. (*See* Resp. Reply 14 n.11).

"Post-award, prejudgment interest is generally awarded at the discretion of the district court, and there is a presumption in favor of awarding such interest." *Three Bros. Trading, LLC* v. *Generex Biotechnology Corp.*, No. 18 Civ. 11585 (KPF), 2020 WL 1974243, at *12 (quoting *In re Arbitration Between Westchester Fire Ins. Co.* v. *Massamont Ins. Agency, Inc.*, 420 F. Supp. 2d 223, 226 (S.D.N.Y. 2005)). "The common practice among courts within the Second Circuit is to grant interest at a rate of nine percent, the rate of pre-judgment interest under New York State law." *Herrenknecht Corp.* v. *Best Road Boring*, No. 06 Civ. 5106 (JFK), 2007 WL 1149122, at *3 (S.D.N.Y. Apr. 16, 2007) (internal quotation marks omitted); *see* N.Y. C.P.L.R. § 5004(a).

In the Final Award, the Arbitrator concluded that █████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████████████████████████████

█████████████████████████████████████    The Final Award contemplated

██████████████████████████████████; however, as of that date, Respondents

had paid only $7,000,000 of the $26,752,627 in damages awarded by the

Arbitrator, in the form of a May 24, 2024 disbursement of funds that had

previously been held in escrow.  (Dkt. #116 at 3).  Accordingly, Petitioners seek

not only the interest that was awarded by the Arbitrator, but also comparable

interest from this Court on the unpaid balance of the Final Award through the

date that final judgment is entered in this case.  (*See id.* at 5).

The Court, in its discretion, hereby awards post-award, prejudgment

interest on the remaining balance at an annual rate of 9% from the date the

Final Award was due to be paid (June 24, 2024), to the date of entry of

judgment in this case.  Given that the Arbitrator had already ████████████

████████████████████████████████████████████████████████

███████████████████████, the Court believes this is "'fair, equitable, and

necessary to compensate the wronged party fully.'"  *Three Bros. Trading*, 2020

WL 1974243, at *13 (quoting *Wickham Contracting Co.* v. *Loc. Union No. 3, Int'l

Bhd. Of Elec. Workers, AFL-CIO*, 955 F.2d 831, 835 (2d Cir. 1992)).  As a

practical matter, given the identity in interest rate figures awarded by the

Arbitrator and by this Court, post-award, prejudgment interest is to be

calculated in the following manner: (i) interest at a 9% annual rate from

November 5, 2021, through May 23, 2024, on the original aggregate damages

figure of $26,752,627; and (ii) interest at a 9% annual rate from May 24, 2024,

through the date of entry of the judgment in this case, on the remaining balance of $19,752,627. Post-judgment interest, by contrast, will accrue at the rate specified in 28 U.S.C. § 1961.

## CONCLUSION

For the reasons set forth above, the Court GRANTS Petitioners' motion for summary judgment and confirms the Arbitrator's November 17, 2023 Partial Final Award and May 10, 2024 Final Award. Pursuant to those Awards, the Court also awards post-award, prejudgment interest at an annual rate of 9% (i) from November 5, 2021, through May 23, 2024, on the original aggregate damages figure of $26,752,627; and (ii) from May 24, 2024, through the date of entry of the judgment in this case, on the remaining balance of $19,752,627, and awards post-judgment interest at the statutory rate. Conversely, the Court DENIES Respondents' cross-motion for summary judgment. Furthermore, the Court DENIES as moot Respondents' motion for oral argument. The Court also GRANTS the parties' respective sealing motions. Accordingly, the Clerk of Court is directed to terminate the motions pending at docket entries 92, 98, 99, 110, 119, and 125.

The Clerk of Court is directed to file this Opinion under seal, viewable to the Court and the parties only, The parties are hereby ORDERED to submit a joint letter proposing redactions to this Opinion, on or before **March 6, 2025**. In addition, Petitioners are ORDERED to submit a revised proposed judgment form, in accordance with this Opinion, in PDF and Word formats on or before **February 13, 2025**.

While it considered the instant motions, the Court put to the side Petitioners' concerns about Respondents' arguable noncompliance with the Interim Measures Award and contempt of the Court's orders, principally in light of Respondents' representations about their then-current financial condition. Now that the Court has confirmed the Awards, Respondents are hereby ORDERED to pay all of the amounts listed in the Final Award, plus post-award, prejudgment interest and post-judgment interest as specified in the Final Award and in this Opinion, within 90 days of the issuance of this Order. This decision is binding and can be, if necessary, enforced through contempt proceedings.

      SO ORDERED.

Dated:     February 6, 2025
             New York, New York

                                    KATHERINE POLK FAILLA
                                  United States District Judge