

mwe.com

David K. Momborquette
Attorney at Law
dmomborquette@mwe.com
+1 212 547 5490

March 28, 2025



**VIA ECF**

Honorable Katherine Polk Failla
United States District Court
Southern District of New York
Thurgood Marshall
United States Courthouse
40 Foley Square, Room 2103
New York, NY 10007

Re:   *GEM Yield Bahamas Limited, et al. v. Mullen Technologies, Inc. et al.*, No. 1:24-cv-01120-KPF
      Response to Petitioners' March 25, 2025 Letter Request for Pre-Motion Conference

To the Honorable Katherine Polk Failla:

We represent Respondents Mullen Automotive, Inc. ("MAI") and Mullen Technologies, Inc. ("MTI," and together with MAI, "Respondents") in the above-referenced action and write in response to Petitioners' March 25, 2025 letter requesting a pre-motion conference with the Court to seek leave to file a motion for expedited post-judgment discovery against Respondents (ECF No. 173, the "Letter"). As discussed below, Petitioners' request should be denied because they cannot satisfy their burden of demonstrating that the requisite "good cause" or a "reasonable basis" exists to expedite post-judgment discovery in this matter.

The discovery requests at issue here (the "Requests") are voluminous, consisting of (i) 53 separate requests to each Respondent for the production of documents, many with multiple subparts, and all apparently seeking production of documents from September 2021 to the present; (ii) 11 separate interrogatories to both Respondents, including (again) several requests with subparts or compounds; and (iii) four separate subpoenas for deposition testimony. (*See* Letter at Exs. A-F.) Petitioners demand responses to the Requests by no later than April 8, 2025, well before the typical 30-day post-judgment discovery response timeframe. (*See id.* at 1.)

Although Petitioners assert that they "urgent[ly] need" the evidence responsive to the Requests (*see id*. at 3), they inexplicably waited almost a full six weeks from the February 13, 2025 entry of the Judgment (*see* ECF No. 148) to seek that discovery. There is no justification for this delay, especially given that all but one of the public filings relied upon by them in their submission pre-date the entry of



One Vanderbilt Avenue   New York NY 10017-3852   Tel +1 212 547 5400   Fax +1 212 547 5444

*US practice conducted through McDermott Will & Emery LLP.*

Honorable Katherine Polk Failla
March 28, 2025
Page 2

the Judgment, with the remaining one available to Petitioners shortly thereafter. (*See* Letter at 2 n.2-3, n.5-6.) As a result, any purported "urgency" for expedited discovery is the direct result of Petitioners' decision to wait to serve that discovery.[1] That delay is grounds alone to deny Petitioners' request. *See Gidatex, S.r.L. v. Campaniello Imports, Ltd.*, 13 F. Supp. 2d 417, 419-20 (S.D.N.Y. 1998) (denying motion for expedited discovery because of, among other things, plaintiff's "inexcusable delay" and "dilatory behavior" in seeking the relief); *Elektra Ent. Grp., Inc. v. Does 1-6*, 2009 WL 10679073, at *2 (S.D. Ohio Feb. 5, 2009) ("Here, the Plaintiffs have not shown good cause for expedited discovery. The . . . timing of the Plaintiffs' filings, discount any claim of urgency."); *cf. Tough Traveler, Ltd. v. Outbound Prods.*, 60 F.3d 964, 968 (2d Cir.1995) ("[A]ny . . . presumption of irreparable harm is inoperative if the plaintiff has delayed either in bringing suit or in moving for preliminary injunctive relief.").

Petitioners' delay, and the consequences that flow therefrom, are not mitigated by Petitioners' reliance on their oft-repeated allegations that Respondents are intentionally ignoring their obligations to escrow certain amounts with the Court. The issue of Respondents' non-compliance has been extensively briefed before this Court (*see* ECF Nos. 86, 90, 93, 97, 108, 109, 126, 127, 133, 134) with the Court declining to compel Respondents' compliance with the arbitrator's escrow order or otherwise find Respondents in contempt of that order, primarily because of Respondents' financial condition. (*See* ECF No. 174 at 43.) Petitioners have cited to no authority (nor are Respondents aware of any) that would suggest that a judgment creditor's generalized concerns regarding a judgment debtor's inability to fulfill financial obligations can somehow serve as a basis to grant expedited post-judgment discovery.

Moreover, Petitioners have not come forth with <u>any</u> credible evidence that Respondents are attempting to make themselves "judgment proof" by "dissipat[ing] . . . assets" or otherwise operating their business in an "[e]vasive and [i]rresponsible" manner. (*See* Letter at 1-2.) Declining market capitalization or poor financial performance does not equate to "dissipation" of assets or suggest that a party is operating a for-profit enterprise with the goal of rendering it judgment proof. Nor does the compensation paid to MAI's CEO, David Michery, constitute irresponsible behavior that somehow amounts to "good cause" justifying expedited discovery. Mr. Michery's compensation over the last two years was largely paid in 2023,[2] well before the instant action was initiated and well before the entry of the Judgment. In addition, the bulk of that compensation was in the form of stock awards, a form of compensation routinely used by public companies to align the interests of executives with those of the shareholders and incentivize insiders to manage a company profitably. Petitioners provide no explanation for how the issuance of stock (here, publicly disclosed in SEC filings) is "evasive" or "irresponsible" or otherwise renders MAI judgment proof.

---

[1] The timing of the service of the Requests appears to be motivated more by a desire to gather evidence for a future contempt motion if Respondents fail to satisfy the Judgment on May 7, 2025 (*see* ECF No. 148 at 1-2), and not by any legitimate purpose to identify and locate Respondents' assets, much of which can be ascertained by MAI's public filings.

[2] *See* Mullen Automotive, Inc., Form 10-K for the fiscal year ended September 30, 2024 (https://www.sec.gov/Archives/edgar/data/1499961/000143774925001816/muln20240930_10k.htm), at 79.



Nor does the transfer of assets from MTI to MAI constitute "good cause," even assuming MAI overpaid for those assets (which it did not).[3] Both MAI and MTI are judgment debtors in this case, jointly and severally liable for the Judgment. Accordingly, any transfer of money or other property between them does not place any asset out of Petitioners' reach and cannot possibly constitute evidence of dissipation.

In any event, a party's poor financial performance is not sufficient to establish "good cause" for purposes of ordering expedited post-judgment discovery. The goal of post-judgment discovery is to obtain information on "concealed or fraudulently transferred assets." *See Magnaleasing, Inc. v. Staten Island Mall*, 76 F.R.D. 559, 561 (S.D.N.Y. 1977); *see also JP Morgan Chase Bank, N.A. v. DataTreasury Corp.*, 936 F.3d 251, 256 (5th Cir. 2019) ("[T]he discovery must be relevant to the purpose of obtaining information on hidden or concealed assets, including assets that may have been fraudulently transferred."); *Gesualdi v. Rockwala Inc.*, 2019 WL 4306349, at *1 (E.D.N.Y. Sept. 11, 2019) ("[T]he inquiry must be kept pertinent to the goal of discovering concealed assets of the judgment debtor and not be allowed to become a means of harassment of the debtor or third persons."); *Bruce Kirby, Inc. v. LaserPerformance (Eur.) Ltd.*, 2022 WL 20810192, at *3 (D. Conn. Apr. 4, 2022) ("Though post-judgment discovery is broad, the discovery must be tied to the collection of assets to satisfy the judgment. Plaintiffs cannot use post-judgment discovery to do a full audit of defendants . . . ."). Respondents' financial condition does not impair Petitioners' ability to obtain information from Respondents and others regarding the identity and location of assets that can be used to satisfy the Judgment. Given that fact, there is no need to accelerate any deadlines governing discovery regarding those topics.

While Petitioners have demonstrated little need for expedited post-judgment discovery in this matter, accelerated discovery would unquestionably place a significant burden on Respondents. As discussed above, if Respondents are forced to comply with Petitioners' Requests, Respondents and their executives will be obligated to respond to over 53 document requests and 11 interrogatories (not including subparts) and prepare for 4 depositions, all in two weeks' time. (*See* ECF No. 173 at Exs. A-F.) There is simply no good reason why such a burden should be placed on Respondents, particularly when MAI's public filings disclose much of the information needed to identify and locate MAI's assets.

In short, Petitioners have not come forth with any legitimate basis justifying an accelerated post-judgment discovery schedule. Consequently, Petitioners' request for a pre-motion conference should be rejected.

Respectfully submitted,

*/s/ David K. Momborquette*
David K. Momborquette

---

[3] The purchase price for those assets was based on an independent appraiser's evaluation of the fair value of the assets. *See id.* at F-21, F-22.



The Court has reviewed Petitioners' letter motion seeking leave to file a motion for expedited post-judgment discovery (Dkt. #173) and Respondents' letter in opposition (Dkt. #175). The Court hereby DENIES Petitioners' application. The Court would much prefer that the parties focus on completing post-judgment discovery within the ordinary timeframe.

The Clerk of Court is directed to terminate the pending motion at docket entry 173.

Dated:     March 31, 2025          SO ORDERED.
           New York, New York

                                   *[signature: Katherine Polk Failla]*

                                   HON. KATHERINE POLK FAILLA
                                   UNITED STATES DISTRICT JUDGE